**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

| | |
|---|---|
| EDEN ROGERS, *et al.*<br><br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF<br>HEALTH AND HUMAN SERVICES, *et al.*,<br><br><br>Defendants. | Case No. 6:19-cv-1567 (TMC) |

## FEDERAL DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS

# TABLE OF CONTENTS

NATURE OF THE CASE ......................................................................................... 1

STATEMENT OF THE FACTS ............................................................................... 3

I.    Statutory and Regulatory Background ............................................................ 3

II.   HHS Grants South Carolina's Exception Request. .......................................... 4

III.  Plaintiffs and Their Claims Against the Federal Defendants ............................ 6

ARGUMENT ........................................................................................................... 7

I.    Plaintiffs Lack Standing to Sue the Federal Defendants. ................................. 8

      A.    Plaintiffs Lack Standing to Sue the Federal Defendants on the Basis of
            Miracle Hill's Alleged Actions. .............................................................. 8

      B.    Whether They are Asserting It or Not, Plaintiffs Lack Taxpayer Standing. ........ 14

      C.    Plaintiffs Cannot Invoke the Rights of Third Parties. ............................. 16

II.   Plaintiffs Fail to State a Claim Against the Federal Defendants. ..................... 17

      A.    Plaintiffs Fail to State a Claim Against the Federal Government Based on
            Miracle Hill's Alleged Actions. ............................................................ 18

      B.    Plaintiffs Fail to State a Claim Against the Federal Government Based on
            South Carolina's Licensing and Funding Decisions. ............................. 21

      C.    Plaintiffs Fail to State a Claim Based on the January 23 Conditional
            Exception. ......................................................................................... 23

CONCLUSION ..................................................................................................... 28

## NATURE OF THE CASE

Plaintiffs contend that there is a "severe shortage" of foster parents in the South Carolina foster care system, caused by a simultaneous increase in the number of children in need and decline in the number of foster care beds available.  Compl. ¶¶ 6, 21, 22.  They estimate that there are 1,800 fewer licensed foster care providers in the State than children in the State's foster care system.  *Id.* ¶ 23.  They aver that they want to help in reducing this shortfall by serving as foster parents themselves.  *Id.* ¶ 77.  And they admit that they have been informed of opportunities in their area, both through the State and through private organizations, to obtain a license to bring a foster child into their home.  *Id.* ¶ 82.

But Plaintiffs have not sought those opportunities.  Instead, Plaintiffs seek to work with one particular private organization, Miracle Hill Ministries, an entity that recruits and helps train prospective foster parents to help meet the large and growing need for foster parents in South Carolina.  Miracle Hill declined to assist Plaintiffs on the basis of its sincerely held religious beliefs.  If that organization will not assist them with the State licensure process, Plaintiffs demand that this Court issue equitable relief against the Federal Defendants (or "HHS") that could threaten federal funding of the State foster care system or remove a key service provider from it.  That relief could exacerbate the very shortfall in foster care homes Plaintiffs decry, a counterproductive solution to the shortage they allege.  Indeed, Plaintiffs acknowledge that Miracle Hill is the "largest provider of foster care services for children requiring nontherapeutic foster care" in the State and that it provides "comprehensive support" to foster families, "respond[ing] promptly" to inquiries and "conduct[ing] regular home visits."  *Id.* ¶¶ 43, 46.

Given the allegations of the Complaint, it is pure speculation that any relief this Court might issue against the Federal Defendants would cause Miracle Hill to change its policy of

working only with prospective foster parents who share Miracle Hill's religious beliefs. It is just as likely, if not more so, that Miracle Hill would refuse and cease providing services under South Carolina's foster care program. It is to no one's benefit, and certainly not children who need foster families, for the largest child-placing agency in South Carolina to cease providing services to the State's foster care population. That outcome would not solve any shortfall in foster home placements. And it would also have little tangible benefit to Plaintiffs: by their own admission, there are other foster care agencies operating where Plaintiffs live *right now* to which they have been referred for assistance in obtaining licensure as foster parents. Thus, the relief Plaintiffs seek is unlikely to afford them a greater opportunity to serve as foster parents than they already possess.

Given this background, the Complaint should not pass the starting line because the Court lacks jurisdiction and Plaintiffs fail to state a claim.

*First*, Plaintiffs lack standing to sue the Federal Defendants. Plaintiffs allege injury in their capacity as prospective foster parents based on Miracle Hill's alleged refusal to assist them in obtaining State foster care licenses. But that injury affords Plaintiffs no basis to sue the Federal Defendants; it is *Miracle Hill*, not the Federal Government, that caused that alleged injury by applying its own independent criteria regarding the foster parents with which it will work. Miracle Hill is not a party to this litigation, and it is pure speculation to suppose that granting Plaintiffs the relief they seek against the Federal Government would lead Miracle Hill to begin working with Plaintiffs or otherwise redress their alleged injury. Plaintiffs also lack standing to complain generally that taxpayer funds are being spent in a manner with which they disagree, or to assert the rights of unnamed and unspecified third-party foster children.

*Second*, Plaintiffs fail to state a claim against the Federal Defendants. Plaintiffs have not shown that the Federal Defendants may be held legally responsible for Miracle Hill's actions or

for South Carolina's decision to license and fund Miracle Hill. As for the actual federal action alleged in the Complaint, Plaintiffs cannot show that HHS's decision to provide South Carolina a conditional exception from a portion of one of its grant regulations violates the Constitution. That exception is not an establishment of religion, but is instead a neutral accommodation of religious freedom that furthers key secular goals, including ensuring a robust network of service providers in the South Carolina foster care system. And HHS's decision to provide a conditional exception to South Carolina did not itself deny Plaintiffs equal treatment.

In sum, and for the reasons that follow, the Court should dismiss all claims against the Federal Defendants for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6).

**STATEMENT OF THE FACTS**

## I.     Statutory and Regulatory Background

Plaintiffs' claims against the Federal Defendants concern HHS's award of grants to South Carolina under Title IV-E of the Social Security Act, which authorizes federal funding to states "[f]or the purpose of enabling each State to provide, in appropriate cases, foster care" programs for eligible children. 42 U.S.C. § 670. To be eligible for Title IV-E payments, a state must submit a foster care plan containing certain features for HHS approval. *Id.* § 671(a). States with a compliant plan receive Title IV-E funding for a portion of the state's foster care maintenance payments for each statutorily eligible child in foster care. *Id.* § 674(a)(1). A state may also receive reimbursement for administrative expenses necessary for the provision of child placement services and the proper and efficient administration of the Title IV-E state plan. *Id.* § 674(a)(3). These expenses may include activities such as training, case management, and recruitment and licensing of foster homes. 45 C.F.R. § 1356.60(c). States have discretion to engage third parties to provide

many of these services. Title IV-E does not contemplate or express any preference regarding whether these third parties should or should not be faith-based.

Title IV-E prohibits states and their subgrantees from "deny[ing] to any person the opportunity to become an adoptive or a foster parent, on the basis of the race, color, or national origin of the person, or of the child involved." 42 U.S.C. § 671(a)(18)(A). The statute does not include a prohibition on denials based on religious beliefs. Instead, HHS has promulgated a regulation, rooted in an HHS "public policy requirement," that no person may be "denied the benefits of, or subjected to discrimination in the administration of HHS programs and services based on . . . religion." 45 C.F.R. § 75.300(c). An HHS regulation authorizes the agency to issue "[e]xceptions on a case-by-case basis" from this and other grant regulations where not otherwise required by law. *See* 45 C.F.R. § 75.102(b).

## II.    HHS Grants South Carolina's Exception Request.

In response to a request from the State, HHS granted South Carolina an exception from section 75.300(c)'s religious non-discrimination provision on January 23, 2019. Ex. A at 4.[1] South Carolina sought the exception in connection with its use of federal funds to reimburse faith-based organizations that provide services under the State's Title IV-E Foster Care Program ("the SC Foster Care Program").

One such faith-based organization, Miracle Hill Ministries, figured prominently in HHS's decision to grant the exception, as it does in Plaintiffs' Complaint. Miracle Hill is a licensed child-placing agency in South Carolina that, among other things, recruits people to serve as foster parents

---

[1] The Court may consider the attached letter from HHS to Governor McMaster without converting this motion to one for summary judgment because the letter "was integral to and explicitly relied on in the complaint" and there can be no serious dispute as to its authenticity. *See Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *see, e.g.*, Compl. ¶ 68 (citing and characterizing the letter).

in the SC Foster Care Program and assists them in obtaining foster-care licenses. Compl. ¶¶ 43, 44, 46[2]; Ex. A at 1. In its request for an exception, South Carolina informed HHS that Miracle Hill exclusively recruits foster parents of a particular religion, a criterion that Miracle Hill applies on the basis of its sincere religious beliefs. Ex. A at 1–2. South Carolina also informed HHS that Miracle Hill is a prominent provider in South Carolina, recruiting up to 15% of the foster care families in the SC Foster Care Program. *Id.*; *see also* Compl. ¶ 43 ("Miracle Hill is South Carolina's largest provider of foster care services for children requiring nontherapeutic foster care, recruiting 15% of the state's foster families."). Given Miracle Hill's substantial role in assisting with foster care placement in South Carolina, the State told HHS that it "would have difficulty continuing to place all children in need of foster care" if Miracle Hill were to forgo licensure and funding. Ex. A at 2.

HHS granted South Carolina's requested exception as to "Miracle Hill or any other subgrantee in the SC Foster Care Program that uses similar religious criteria in selecting among prospective foster care parents." Ex. A at 4. HHS's decision was based in part on its determination that the burden imposed on the free exercise rights of Miracle Hill and similarly situated religious entities by section 75.300(c)'s religious non-discrimination provision was not justifiable under the Religious Freedom Restoration Act ("RFRA"). RFRA provides that the Federal Government may not "substantially burden a person's exercise of religion" unless it demonstrates that the burden "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering" that interest. 42 U.S.C. § 2000bb-1(a), (b). HHS concluded that section 75.300(c)'s religious non-discrimination provision imposed a substantial burden on Miracle Hill's exercise of

---

[2] As they must at this stage, the Federal Defendants assume the truth of the Complaint's factual allegations for purposes of this motion, but not those allegations pleaded in only conclusory fashion or that state legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–81 (2009).

religion and that refusing the State's requested exception would fail RFRA's test. Ex. A at 3. HHS also based its exception decision on its determination that enforcing section 75.300(c) in a manner that could result in Miracle Hill withdrawing from the SC Foster Care Program "would . . . cause a significant programmatic burden . . . by impeding the placement of children into foster care." *Id.*

HHS granted the exception contingent on South Carolina requiring Miracle Hill (and any other subgrantee using the exception) "to refer potential foster parents that do not adhere to the subgrantee's religious beliefs to other subgrantees in the SC Foster Care Program" or to the State itself for service. *Id.* at 4. Through this condition, HHS ensured that the exception would accommodate Miracle Hill's religious beliefs without preventing individuals from having an opportunity to serve as foster parents in the SC Foster Care Program.

## III.    Plaintiffs and Their Claims Against the Federal Defendants.

Plaintiffs Eden Rogers and Brandy Welch are a married couple and Greenville-area residents. Compl. ¶ 73. Shortly after their counsel contacted the State regarding its views about Miracle Hill's beliefs and practices on March 14, 2019, Plaintiffs allege that they reached out to Miracle Hill in April 2019 to inquire about working with the organization to seek State licensure as foster parents. *Id.* ¶¶ 72, 78–80. Miracle Hill ultimately declined to assist Plaintiffs with obtaining State licensure because of its religious conviction that it should work only with foster parents who share Miracle Hill's religious beliefs. *Id.* ¶ 81. Plaintiffs also allege in conclusory fashion that Miracle Hill's decision was based on its alleged objection to Plaintiffs' same-sex marriage. *Id.* ¶ 83.

At the same time that Miracle Hill informed Plaintiffs that it would not assist them, it provided Plaintiffs with a list of nine agencies that could assist them in obtaining licensure—the State itself, six private organizations that assist with therapeutic foster care, and two other private

organizations that assist with non-therapeutic foster care. *Id.* ¶ 82. Plaintiffs do not allege that they have sought State licensure through the State or any of these private organizations. Plaintiffs allege injury on the basis of Miracle Hill's decision, asserting that they have been denied the same opportunities to be a foster parent in the SC Foster Care Program as families with whom Miracle Hill will work, that they have suffered stigma, and that they have been coerced to support Miracle Hill's religious beliefs. *Id.* ¶¶ 120, 134.

On the basis of these alleged injuries, Plaintiffs bring Establishment Clause and equal protection claims against the Federal Defendants in Counts II and IV. Plaintiffs allege that they are entitled to relief on these claims because HHS has purportedly "authorized and enabled the use of religious eligibility criteria" by Miracle Hill. *Id.* ¶ 115. This characterization is based on (1) HHS's issuance of the January 23 conditional exception and (2) HHS's continued "federal funding to South Carolina for its foster care program" with knowledge of Miracle Hill's conduct and beliefs. *Id.* Plaintiffs ask the Court to declare unconstitutional both the January 23 conditional exception and continued federal funding of the SC Foster Care Program—at least insofar as Miracle Hill and similarly situated faith-based grantees continue to receive reimbursement while adhering to their religious beliefs in selecting foster parents for recruitment and assistance with licensure. *Id.* at 38 ¶ B. Plaintiffs also seek an injunction requiring rescission of the January 23 conditional exception, as well as a nationwide injunction against the issuance of any other similar federal agency action with respect to any state's foster care system. *Id.* at 39 ¶ D.

## ARGUMENT

Plaintiffs' Complaint against the Federal Defendants should be dismissed. The Court lacks subject matter jurisdiction because Plaintiffs lack standing to sue the Federal Defendants. And even if there were jurisdiction, the Complaint fails to state a claim under the Constitution.

## I.    Plaintiffs Lack Standing to Sue the Federal Defendants.

As the parties invoking federal jurisdiction, Plaintiffs bear the burden of establishing the three elements that constitute the "irreducible constitutional minimum of standing," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)—namely, that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citation omitted).  Standing is necessary for Plaintiffs to establish the existence of an Article III case or controversy and, thus, to invoke the jurisdiction of the federal courts. *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998).  "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element [of standing]." *Spokeo*, 136 S. Ct. at 1547 (alteration in original) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

Plaintiffs fail to establish standing to sue the Federal Defendants.

### A.    Plaintiffs Lack Standing to Sue the Federal Defendants on the Basis of Miracle Hill's Alleged Actions.

Plaintiffs appear to base their standing to sue primarily on the ground that Miracle Hill declined to work with them as prospective foster parents.  *See* Compl. ¶¶ 115, 120, 143, 147 (alleging various harms based on Miracle Hill's application of religious criteria in selecting the foster parents with which it will work).  Plaintiffs lack standing to sue the Federal Defendants on this basis for two interrelated reasons.  First, Miracle Hill's decision not to assist Plaintiffs as prospective foster parents is not fairly traceable to the Federal Defendants.  Miracle Hill caused the alleged injury to Plaintiffs by applying its own criteria for selecting the foster parents with which it will work, not any policy of the Federal Defendants.  Second, Plaintiffs have not shown

8

that a favorable decision against the Federal Defendants is likely to redress their asserted injury, rather than to cause Miracle Hill to cease providing services under the SC Foster Care Program.

      1.      To establish Article III standing, Plaintiffs must demonstrate both that their alleged injury is "fairly traceable to the defendant's allegedly unlawful conduct" and that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561, 590 (citation omitted). Where an alleged injury "hinge[s] on the response of [a] regulated (or regulable) third party to the government action" that is not before the court, it is "substantially more difficult to establish" standing. *Id.* at 562 (citation omitted).

      Consistent with Supreme Court precedent, the Fourth Circuit has held that "where a third party . . . makes the independent decision that causes an injury, that injury is not fairly traceable to the government" because the third party's decision is an "intervening cause of the injury." *Doe v. Obama*, 631 F.3d 157, 161–62 (4th Cir. 2011). For similar reasons, fatal difficulties arise in attempting to show redressability where a non-party has caused the alleged injury because the court is unable to issue relief compelling the non-party to refrain from taking the action causing the injury or to take other action to redress it. *See Frank Krasner Enters., Ltd. v. Montgomery Cty.*, 401 F.3d 230, 236 (4th Cir. 2005). As the Fourth Circuit has explained, "[a]n injury sufficient to meet the causation and redressability elements of the standing inquiry must result from the actions of the [defendant], not from the actions of a third party beyond the Court's control." *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 755 (4th Cir. 2013) (quoting *Mirant Potomac River, LLC v. EPA*, 577 F.3d 223, 226 (4th Cir. 2009)).

      In line with these principles, the Fourth Circuit has repeatedly denied standing to plaintiffs challenging government policies where the plaintiff's alleged injury was caused by the actions of a third party. For example, the Fourth Circuit held in *Doe v. Obama* that the decision by private

parties to donate their embryos for federally funded stem cell research was not fairly traceable to the federal government, despite the "fact that the government permit[ted]" that conduct by lifting restrictions on federal funding of such research. 631 F.3d at 162. Similarly, in *Frank Krasner*, a third-party venue refused to rent space to the plaintiff for his gun show because of a county law prohibiting any county money from going to locations that hosted gun shows. The court held that the plaintiff's claim against the county failed the traceability and redressability elements because his injury stemmed from the venue's refusal to rent space to him, not the county law that made it "perhaps prohibitively" more expensive for the venue to rent space to the plaintiff. 401 F.3d at 232–33, 236. The court further held that it could not compel the venue to rent space to the plaintiff because the venue was not a party to the suit. *Id.* at 236.

The Supreme Court also rejected an assertion of standing premised on injuries caused by the actions of third parties not before the Court in *Allen v. Wright*, 468 U.S. 737, 739–40 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). In *Allen*, the Court held that parents of public school children lacked standing to challenge the government's grant of tax-exempt status to racially discriminatory private schools because the plaintiff's asserted injury—segregated public education—depended upon the decisions of third parties not before the Court. Among other things, the Court noted that it was speculative "whether withdrawal of [the] tax exemption from any particular school would lead the school to change its policies." *Id.* at 758. The plaintiffs in *Allen* lacked standing even though, like here, they had alleged that the Government's conduct was unconstitutional and, thus, that enjoining it would necessarily halt the allegedly unconstitutional action. *See id.* at 745 n.12.

2.       Plaintiffs' Complaint suffers the same essential defect found in all of these cases: it was the actions of a third party—here, Miracle Hill—that caused Plaintiffs' alleged injury. *See,*

10

*e.g.*, Compl. ¶ 120 (prospective foster families are "den[ied] the same opportunities to foster that are available to families that meet *Miracle Hill's* religious requirements") (emphasis added). Plaintiffs cannot establish traceability or redressability for that reason.

Starting with traceability, Plaintiffs expressly plead that Miracle Hill declined to assist Plaintiffs in becoming foster parents because of its own religious beliefs, not any federal criteria or policy.  *See id.*   ¶¶ 8, 120 (alleging injury on the basis of "Miracle Hill's religious requirements").  Plaintiffs point to no federal policy that requires Miracle Hill to recruit foster parents only if they share Miracle Hill's beliefs, because no such policy exists.  Miracle Hill is thus an "intervening cause" of the Plaintiffs' alleged injury, and that injury is not fairly traceable to the Federal Defendants.  *Doe v. Obama*, 631 F.3d at 161.

Plaintiffs seek to escape this problem by alleging that the Federal Defendants had "knowledge" of Miracle Hill's beliefs and "enabled" its actions by granting South Carolina a conditional exception from section 75.300(c)'s religious non-discrimination provision and by continuing to fund the SC Foster Care Program. *See* Compl. ¶ 115.  Those allegations only confirm the lack of causal connection between the alleged injury and the Federal Defendants because those allegations necessarily imply that the direct cause of the injury at issue was not the government, but the third party that was purportedly "enabled."  The Fourth Circuit has rejected traceability even where the government "permit[ted]" the third-party action that allegedly caused plaintiff's injury by lifting restrictions on federal funding.  *Doe v. Obama*, 631 F.3d at 162.  In *Doe*, the fact that the government's decision to lift funding restrictions may have in some remote sense arguably enabled the third-party actions that allegedly injured the plaintiffs was not enough to establish that those actions were traceable to the government.  The same rule applies here, particularly where HHS did not "permit" Miracle Hill's actions, but merely chose not to disqualify the State from

11

receiving Title IV-E reimbursement for allowable administrative expenses in relation to Miracle Hill's work.

The disconnect between Plaintiffs' alleged injury and the Federal Defendants is even more apparent when considering that, in the January 23 conditional exception, HHS took steps to ensure that persons such as Plaintiffs would be referred to other foster care service providers.  And in keeping with that condition, Plaintiffs concede that Miracle Hill did in fact refer them to other child-placing agencies.  Compl. ¶ 82.  Therefore, Plaintiffs cannot allege that Miracle Hill, let alone the Federal Defendants, denied them the opportunity to serve as foster parents.  Plaintiffs' alleged injury is thus all the more properly attributable to Miracle Hill, not to the Federal Defendants, because it solely concerns Plaintiffs' ability to work with Miracle Hill, not their ability to serve as foster parents in the SC Foster Care Program.

Plaintiffs' Complaint similarly fails to establish that their asserted injury is redressable by the relief they request against the Federal Defendants.  The inability to work with Miracle Hill is the core injury Plaintiffs allege and, because Miracle Hill is not a party to this litigation, this Court cannot require the opposite.  That alone is largely dispositive of Plaintiffs' attempt to invoke the Court's jurisdiction.  *See Frank Krasner*, 401 F.3d at 236 (no redressability against county government on basis of third-party venue's decision not to rent space to plaintiff because the court could not "compel" the non-party venue to act).

Even as to the relief that might be directed against the Federal Defendants, any such relief would do nothing more than raise a speculative chance of remedying Plaintiffs' alleged injury. Plaintiffs seek an injunction requiring rescission of the January 23 conditional exception for South Carolina, as well as a declaration that the exception is unlawful, as is continued federal funding of the SC Foster Care Program.  But HHS cannot force Miracle Hill to continue accepting funds from

South Carolina or to continue working within the State's foster care system. Plaintiffs allege that Miracle Hill's actions were the result of deeply held religious convictions. Compl. ¶ 81. It is, thus, speculative at best that the removal of the January 23 conditional exception, or a declaration that continued federal funding of the SC Foster Care Program is unlawful, would actually lead Miracle Hill to reverse its position and begin working with Plaintiffs. *See, e.g.*, *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 43–44 (1976) (plaintiff lacked standing because even if the government withheld favorable tax treatment from third-party hospitals that were causing the plaintiff's alleged injury, it was "just as plausible" that the hospitals "would elect to forgo" that tax treatment rather than change their behavior).

It is also speculative that granting relief against the Federal Defendants would cause South Carolina to cease licensing Miracle Hill as a child-placing agency, a decision over which Federal Defendants have no control. *Cf. Mirant Potomac River*, 577 F.3d at 230 (petitioner failed to show traceability to sue federal agency because the alleged injury arose from a state regulatory regime separate from federal regulations and "each [regulatory scheme] received final approval from different sovereigns through different processes"). Plaintiffs cannot overcome this problem by alleging that the State would not have issued a permanent child-placing agency license to Miracle Hill in the absence of the January 23 conditional exception. *See* Compl. ¶ 116. Under Fourth Circuit precedent, the assertion that an injunction rescinding the January 23 letter would cause South Carolina to revoke Miracle Hill's child-placing agency license is too speculative to support standing. Indeed, in *Frank Krasner*, the Fourth Circuit held that the plaintiff failed to show traceability and redressability even where the "record [left] no doubt that" the county law was a "deal-breaker" for a third-party venue in deciding whether to rent space to the plaintiff. 401 F.3d at 236 (law made it "perhaps prohibitively" expensive to rent to plaintiff). Thus, even accepting

for the sake of argument that the January 23 conditional exception had some impact on South Carolina's decision to continue licensing Miracle Hill, Plaintiffs would fail to establish standing. It also makes no difference that the State is a party to these proceedings; Plaintiffs have the burden to "demonstrate standing for each claim [they] seek[] to press and for each form of relief that is sought," including their claims against the Federal Defendants. *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (citation omitted).

In sum, the Federal Defendants were not the cause of Plaintiffs' alleged injury, and issuing the relief Plaintiffs request against the Federal Defendants would not likely redress Plaintiffs' alleged injury. Plaintiffs lack standing to sue the Federal Defendants.

### B.     Whether They are Asserting It or Not, Plaintiffs Lack Taxpayer Standing.

Plaintiffs also make various references to the expenditure of federal funds by the Federal Defendants. *See, e.g.*, Compl. ¶¶ 4, 96. Although Plaintiffs do not expressly allege injury on the basis of their disagreement with these expenditures, it is possible that Plaintiffs seek to establish standing as taxpayers. Indeed, Plaintiffs seek a nationwide injunction from this Court covering every state foster care program in the country, despite the fact that such relief would have no relationship to their Greenville County-based Complaint or redressing their alleged injury.[3]

If Plaintiffs intend to assert taxpayer standing against the Federal Defendants, however, their attempt must fail; decades of Supreme Court precedent show that Plaintiffs cannot invoke this Court's jurisdiction on the basis of taxpayer status. The long-established general rule is that

---

[3] It should be noted that the Complaint provides no basis to show that any such request for relief concerning hypothetical agency actions in other states could support standing in any event, *Spokeo*, 136 S. Ct. at 1548 (injury in fact must be "actual or imminent, not conjectural or hypothetical"); that such claims are ripe, *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003); or that any valid claim has been stated in support of the request (considering that the Complaint contains no allegations of any HHS conduct beyond the SC Foster Care Program). Dismissal of that portion of the Complaint is warranted on this basis as well.

status as a federal taxpayer does not confer Article III standing to challenge actions by the Federal Government. *See Frothingham v. Mellon, decided with Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923). Except for one narrow circumstance discussed below, a plaintiff may not use his or her status as a federal taxpayer to raise a "generally available grievance about government— claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large." *See Lujan*, 504 U.S. at 573–74. Under this unbroken line of authority, Plaintiffs cannot invoke taxpayer standing to support their equal protection claim.[4]

The same is true for Plaintiffs' Establishment Clause claim. In just two cases—*Flast v. Cohen*, 392 U.S. 83 (1968), and *Bowen v. Kendrick*, 487 U.S. 589 (1988)—the Supreme Court has recognized a "narrow exception . . . to the general rule against taxpayer standing" for certain Establishment Clause claims. *Kendrick*, 487 U.S. at 618. This exception allows taxpayers to challenge an expenditure that allegedly violates the Establishment Clause where the expenditure is "funded by a specific congressional appropriation . . . disbursed . . . pursuant to a direct and unambiguous congressional mandate" under the Taxing and Spending Clause. *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 604 (2007).[5] This exception has rarely been satisfied. *See Ansley v. Warren*, 861 F.3d 512, 519 (4th Cir. 2017) (recognizing that the Supreme Court's "application of the doctrine has been narrowly circumscribed").

---

[4] This attempt would fail for the additional threshold reason that Plaintiffs do not actually allege that they are federal taxpayers.

[5] Throughout this brief, the Federal Defendants cite Justice Alito's opinion in *Hein* announcing the Judgment of the Court; where "no single rationale explaining the result enjoys the assent of five Justices," as in *Hein*, "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *See Marks v. United States*, 430 U.S. 188, 193 (1977) (citation omitted). The Fourth Circuit accordingly appears to treat the *Hein* plurality opinion as authoritative. *See Ansley*, 861 F.3d 512 (repeatedly citing the *Hein* plurality opinion as representing the holding of the Supreme Court).

15

Indeed, the Supreme Court has made clear that the *Flast* exception applies only where the relevant statute expressly requires or contemplates expenditures to religious organizations or activities. In *Hein*, a group of taxpayers sought to challenge the use of "Congressional taxpayer appropriations" to pay for conferences at which the President promoted federal grant-making to faith-based organizations. 551 U.S. at 596. The Court denied taxpayer standing because the relevant appropriations act did not "*specifically authorize* the use of federal funds to pay for the conferences or speeches that the plaintiffs challenged." *Id.* at 593 (emphasis added). There was no statute in *Hein* that "expressly contemplated that [federal funds] might go to projects involving religious groups." *Id.* at 607. To the contrary, "the expenditures that respondents challenge[d] were not expressly authorized or mandated by any specific congressional enactment," and thus, "respondents' lawsuit [was] not directed at an exercise of congressional power." *Id.* at 608. Accordingly, absent a statute that expressly contemplates the specific objectionable expenditures at issue, the *Flast* exception does not apply.

Plaintiffs have not identified any act of Congress that appropriates funds specifically for faith-based organizations under the Title IV-E program. Nor is there any act of Congress that expressly contemplates, let alone requires, the involvement of faith-based organizations in the program. As explained above, Title IV-E only contemplates the issuance of federal grants to *state governments*. The statute says nothing about whether states will, or should, use those funds to pay faith-based entities. Congress did not "*specifically authorize* the use of federal funds" for grants to faith-based organizations under Title IV-E, and that fact is dispositive of any taxpayer standing claim here. *See Hein*, 551 U.S. at 593 (emphasis added).

### C. Plaintiffs Cannot Invoke the Rights of Third Parties.

Plaintiffs also make various allegations of injuries to unnamed and unspecified foster

16

children.  *See, e.g.*, Compl. ¶ 108.  It is unclear whether Plaintiffs are invoking these alleged injuries as a basis for standing.  Regardless, these allegations provide no support for Plaintiffs' Complaint because Plaintiffs fail to allege the elements necessary to assert third-party rights.  A plaintiff seeking to overcome the general rule against third-party standing must show "a close relationship between herself and the person whose right she seeks to assert," as well as "a hindrance to the third party's ability to protect his or her own interests."  *See Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 215 (4th Cir. 2002) (citing *Powers v. Ohio*, 499 U.S. 400, 410–11 (1991)).  The Complaint contains no allegation supporting either of these elements.[6]

## II.    Plaintiffs Fail to State a Claim Against the Federal Defendants.

Plaintiffs raise Establishment Clause and equal protection claims against the Federal Defendants in Counts II and IV.  The Complaint appears to support these claims with three sets of allegations: 1) the alleged actions of Miracle Hill and Federal Defendants' purported failure to prevent them; 2) the State of South Carolina's expenditure of federal grant funds on faith-based subgrantees, including Miracle Hill; and 3) the Federal Defendants' issuance of the January 23 conditional exception.  None of these allegations is an adequate basis for Plaintiffs' constitutional claims against the Federal Defendants.  Plaintiffs have not adequately alleged that the Federal Defendants may be held legally responsible for Miracle Hill's actions or South Carolina's licensing and funding decisions.  And the January 23 conditional exception does not violate the Constitution under any of the relevant standards.  Plaintiffs' claims against the Federal Defendants should, therefore, be dismissed for failure to state a claim.

---

[6] The limitation on asserting third-party rights, although identified as a "standing" doctrine, is a prudential and thus non-jurisdictional limitation on justiciability; accordingly, the Federal Defendants' arguments on this point are made pursuant to Rule 12(b)(6).  *See Freilich*, 313 F.3d at 215; *United States v. Day*, 700 F.3d 713, 721 (4th Cir. 2012) ("issues of prudential standing are non-jurisdictional").

A.    **Plaintiffs Fail to State a Claim Against the Federal Government Based on Miracle Hill's Alleged Actions.**

To hold the government legally responsible for the action of a private party, a plaintiff must show that "there is a sufficiently close nexus between the State and the challenged action of the [private party] so that the [challenged] action of the [private party] may be fairly treated as that of the State itself." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (citation omitted). "The purpose of this requirement is to assure that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Id.*  The government's "[m]ere approval of or acquiescence in the initiatives of a private party" is not sufficient to meet this standard. *Id.* at 1004–05.  Instead, to attribute a third party's actions to the government, those actions must have been the product of "coercive power" by the government or of "significant encouragement, either overt or covert," by the government. *Id.*  The government will thus not be held responsible for others' acts, even where those acts were allegedly authorized by the government, if the acts were the result of "judgments made by private parties without standards established by the State." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 43–44, 52–53 (1999) (quoting *Blum*, 457 U.S. at 1008) (alterations omitted); *see also id.* (no state action in private parties' decisions to withhold payment for disputed medical treatments, even though Pennsylvania's workers' compensation laws authorized such withholding pending an independent review process to determine a treatment's reasonableness).

1.    The Complaint falls far short of establishing state action for which the Federal Defendants can be held responsible.  Plaintiffs' claims rest on the alleged decision of a private party, Miracle Hill, to decline to assist them in seeking State licensure as foster parents. Compl. ¶ 8.  The Complaint does not allege that the Federal Defendants compelled or significantly encouraged Miracle Hill's decision.  Rather, the Complaint alleges that Miracle Hill's decision not

18

to work with Plaintiffs was the result of Miracle Hill's own religious beliefs. *See id.* ¶¶ 8, 81. That is not a sufficient basis to hold the government liable. *See Blum*, 457 U.S. at 1004–05.

Indeed, the Fourth Circuit has previously affirmed dismissal of foster-care-related claims against government defendants on state action grounds for reasons that are dispositive here. *See Milburn v. Anne Arundel Cty. Dep't of Social Servs.*, 871 F.2d 474 (4th Cir. 1989). *Milburn* involved claims under 42 U.S.C. § 1983 based on a state government's decision to place the plaintiff with foster parents that physically abused him. *Id.* at 475–76. The court concluded that the state could not be held responsible for the foster parents' actions because it "did not order or cause the action complained of," nor did the state "encourage" those actions. *Id.* at 479. Similarly, the Federal Defendants here did not order, cause, or encourage Miracle Hill's alleged decision not to work with Plaintiffs. *Milburn* accordingly shows that Plaintiffs cannot seek relief against the Federal Defendants on the basis of Miracle Hill's decision.

Plaintiffs attempt to escape the straightforward lack of state action here by alleging that the Federal Defendants were aware of Miracle Hill's religious beliefs and enabled, or at least failed to prevent, Miracle Hill's allegedly discriminatory actions. *See* Compl. ¶ 115. But that is insufficient to state a claim. The Supreme Court and Fourth Circuit have long rejected claims of state responsibility for private conduct where the government had notice of the conduct but did not act to prohibit it. For example, in *Blum*, the Court held that a state was not responsible for a private nursing home's allegedly improper discharge or transfer of patients even when the state was notified of the nursing home's conduct and adjusted the patients' Medicaid benefits accordingly. *Blum*, 457 U.S. at 1004–05. The premise of the plaintiff's foster-care-related claims in *Milburn* was likewise that the state had failed to exercise adequate care in preventing harms to him at the hands of his foster parents, and the Fourth Circuit rejected those claims for lack of state action.

19

871 F.2d at 475–76 (summarizing plaintiff's claim that the state "displayed gross negligence and deliberate indifference" through his continued placement in the foster home).  Here, Plaintiffs' allegations amount to no more than "[m]ere approval of or acquiescence in" Miracle Hill's alleged conduct.  That is insufficient to establish governmental liability.  *Blum*, 457 U.S. at 1004–05.

That Miracle Hill receives public funds to carry out services under the SC Foster Care Program also does not render the Federal Defendants liable for Miracle Hill's conduct.  In analogous circumstances, the Supreme Court rejected an attempt to characterize a nonprofit private school as a state actor, even when "nearly all of the students at the school [had] been referred to it" by various governmental entities and "[i]n recent years, public funds [had] accounted for at least 90% and in one year 99%, of respondent school's operating budget."  *Rendell-Baker v. Kohn*, 457 U.S. 830, 832 (1982).  The Court explained that the school was not "fundamentally different from many private corporations whose business depends primarily" on government contracts.  *Id.* at 840–41.  "Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts."  *Id.*

That Miracle Hill administers public services on behalf of children in the State foster care system also does not change the high burden Plaintiffs must meet to show coercion or significant encouragement by the Federal Government.  "That a private entity performs a function which serves the public does not make its acts state action."  *Id.* at 842.  An entity performing functions that serve the public becomes a state actor on that basis only when carrying out powers that are "traditionally exclusively reserved to the State" as attributes of sovereignty, "such as eminent domain" or the administration of elections.  *See Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352–53 (1974) (citing cases).  Under Fourth Circuit case law, the care of foster children does not meet

this restrictive standard. *Milburn*, 871 F.2d at 479 ("The care of foster children is not traditionally the exclusive prerogative of the State.").

2.      Plaintiffs also assert in conclusory fashion that Miracle Hill engages in proselytization of children in the care of foster parents with which it works. Compl. ¶¶ 94, 121. The Complaint contains no facts supporting this allegation—Plaintiffs' citation of statements on the organization's website affirming its religious affiliation and vaguely referencing the organization's desire to "*share* the Good News," *id.* ¶ 94, provide inadequate support for the accusation that Miracle Hill requires parents to impose any religious values on foster children.

In any event, Plaintiffs cannot assert this conduct against the Federal Defendants. The Complaint contains no basis to say that HHS has even "approv[ed] of or acquiesce[d] in" this asserted proselytization, let alone that it is the product of the Government's "significant encouragement, either overt or covert," as would be required to impute this alleged conduct to the Federal Defendants. *Blum*, 457 U.S. at 1004–05. The January 23 conditional exception certainly contains no reference to such activity. Moreover, by Plaintiffs' own admission, any injury arising from such alleged proselytization would be suffered by foster children, Compl. ¶ 121, and Plaintiffs cannot assert the rights of third parties in this lawsuit. *See supra*.

*   *   *

In sum, Plaintiffs have failed to show that the Federal Defendants may be held legally responsible for Miracle Hill's alleged actions. Thus, their claims against the Federal Defendants arising from the decisions made by Miracle Hill should be dismissed under Rule 12(b)(6).

**B.      Plaintiffs Fail to State a Claim Against the Federal Government Based on South Carolina's Licensing and Funding Decisions.**

Plaintiffs also take issue with the alleged expenditure of federal funds on faith-based subgrantees, specifically Miracle Hill. But that allegation also fails to state a claim against the

Federal Defendants for reasons similar to the Miracle Hill-related allegations, namely, that Plaintiffs have not alleged any action by South Carolina for which the Federal Defendants can be held legally responsible.

The Federal Defendants themselves do not expend federal funds on the activities of Miracle Hill or on the activities of any other non-state entity, faith-based or not, under the SC Foster Care Program. Instead, it is *South Carolina* that licenses child-placing agencies for participation in the state's foster care system, Compl. ¶ 57, and it is *South Carolina* that contracts with and distributes money to these entities as reimbursement for applicable expenses, *id.* ¶¶ 33, 34. Plaintiffs' Complaint recognizes that, under Title IV-E of the Social Security Act, HHS provides funding only to South Carolina, "which uses those funds, as well as state funds, to reimburse licensed CPAs for the services they provide." *id.* ¶ 33. Plaintiffs are correct—HHS has no direct grant or contractual relationship with Miracle Hill, or any other subgrantee of South Carolina, for purposes of the Title IV-E program.

Just as Plaintiffs failed to establish that the Federal Defendants are responsible for Miracle Hill's actions, they have failed to show that the Federal Defendants may be held responsible for South Carolina's decision to license or issue funding to Miracle Hill (or any other child-placing agency). Plaintiffs have not alleged that the State's decisions regarding licensure or funding were the product of any coercion or encouragement by the Federal Defendants. *Blum*, 457 U.S. at 1004–05. And the Federal Defendants' mere acquiescence in those decisions through their continued funding of grants to South Carolina cannot support a finding of federal action. *See id.* The Federal Defendants thus are not the proper party against whom to test this claim.[7]

---

[7] As for HHS's award of grants *to South Carolina* under the Title IV-E program, there is no plausible basis to say that that action, standing alone, raises any concern under the Establishment

**C.     Plaintiffs Fail to State a Claim Based on the January 23 Conditional Exception.**

Plaintiffs' attempt at stating constitutional claims based on the January 23 conditional exception also fails to meet the standards applicable to each of the constitutional provisions they invoke.  Accordingly, Plaintiffs' claims against the Federal Defendants should be dismissed.

**1.**     The January 23 conditional exception does not violate the Establishment Clause.  According to the well-worn test established in *Lemon v. Kurtzman*, 403 U.S. 602 (1971), the Establishment Clause requires that "government conduct (1) must be driven in part by a *secular purpose*; (2) must have a *primary effect* that neither advances nor inhibits religion; and (3) must not *excessively entangle* church and State."  *Wood v. Arnold*, 915 F.3d 308, 314 (4th Cir. 2019) (quoting *Moss v. Spartanburg Cty. Sch. Dist. 7*, 683 F.3d 599, 608 (4th Cir. 2012)); *see also Lambeth v. Bd. of Comm'rs of Davidson Cty., NC*, 407 F.3d 266, 268–69 (4th Cir. 2005) (applying *Lemon* test in affirming the dismissal of an Establishment Clause claim under Rule 12(b)(6)).  The January 23 conditional exception easily meets each of these requirements.

First, the January 23 conditional exception was driven by a secular purpose.  The purpose prong of the *Lemon* test "imposes a fairly low hurdle" and simply requires the government to "show that it had a plausible secular purpose for its action" that was not "pretextual."  *Wood*, 915 F.3d at 315.  The government's purpose need not even have been "exclusively secular," so long as "advancing religion" was not the "*predominant purpose*" of the action.  *Id.*; *see also McCreary Cty., Ky. v. ACLU of Ky.*, 545 U.S. 844, 864 (2005) (secular purpose cannot be "merely secondary to a religious objective" and "not a sham").

The January 23 HHS letter to Governor McMaster explains at least two secular purposes

Clause or the Fifth Amendment.  Nor do Plaintiffs appear to assert otherwise (they do not challenge Title IV-E itself, for example).

supporting HHS's conditional exception: first, to comply with the requirements of RFRA; and second, to ensure the continued availability of entities to serve the welfare of children in the SC Foster Care Program. Ex. A at 3–4. These are legitimate and plausible secular purposes, and Plaintiffs have not alleged any basis to say they were pretextual. *See Lambeth*, 407 F.3d at 270 n.2 (affirming dismissal where complaint did not allege that concededly secular purpose was pretextual). Moreover, Plaintiffs have not made any non-conclusory allegation that the Federal Defendants had any purpose of advancing religion at all, let alone that such a purpose was "predominant." Plaintiffs' conclusory allegation that Federal Defendants had a "predominant purpose of advancing religion," Compl. ¶ 122, is not sufficient under federal pleading standards to survive dismissal. *See Iqbal*, 556 U.S. at 680–81 (allegation that government officials subjected plaintiff to harsh conditions "solely on account of [his] religion, race, and/or national origin" was "conclusory" and, thus, "not entitled to be assumed true"). Plaintiffs' threadbare assertion of the *Lemon* test's first prong will not suffice.

Second, the January 23 conditional exception's primary effect neither advances nor inhibits religion. The second *Lemon* prong asks whether "the principal effect of government action is to suggest" to a "reasonable, informed observer" a "government preference for a particular religious view or for religion in general." *Wood*, 915 F.3d at 316 (citation omitted). The January 23 conditional exception does not suggest to a reasonable observer a government preference for particular religious views or for religion in general, especially when viewed in the context provided by that letter. *See id.* at 317 (challenged government conduct must be viewed in its full context) (citing *Lambeth*, 407 F.3d at 271).

As an initial matter, HHS's recognition that faith-based entities may participate as providers in the SC Foster Care Program does not advance religion; the Establishment Clause

permits religious organizations to participate as providers of secular services under government programs. *Kendrick*, 487 U.S. at 609. HHS's January 23 letter recognizes both the strict statutory requirement of religious accommodation imposed by RFRA and the programmatic burden on South Carolina's foster care system that would come with losing a large provider like Miracle Hill. With those premises in mind, the letter grants an exception from the religious non-discrimination provision of section 75.300(c) while imposing a condition that Miracle Hill and other faith-based entities using the exception refer prospective foster parents to other agencies when they are unable to work with them.

This context would indicate to a reasonable, informed observer that HHS's conditional exception did not express a preference for any particular religious view or for religion in general. Instead, the agency worked to ensure that no prospective foster parent will be prevented from serving children in the SC Foster Care Program on the basis of any person's or entity's religious beliefs, while reasonably accommodating Miracle Hill's religious beliefs. That action neither advances nor inhibits religion; it is fundamentally neutral toward the religious views of Plaintiffs, Miracle Hill, and anyone else. Indeed, accommodations of religious practice are a permissible, and often required, form of government action. *See, e.g.*, *Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327, 334 (1987) ("[The Supreme Court] has long recognized that the government may (and sometimes must) accommodate religious practices and that it may do so without violating the Establishment Clause." (citation omitted)). The Supreme Court's decision in *Amos* upholding Title VII's exemption of religious organizations from the prohibition against religious discrimination in employment is instructive here. *Amos* teaches that the government does not endorse an entity's religious beliefs through such neutral efforts at accommodation. *See id.* at 327, 337 & n.15 (rejecting argument that Title VII exemption

"conveys a message of governmental endorsement of religious discrimination" and stating that, to fail *Lemon*'s second prong, "the *government itself*" must have "advanced religion through its own activities and influence"). The January 23 conditional exception bears the same essential characteristics of neutrality.

The January 23 conditional exception also does not have a primary effect of advancing religion simply because it acknowledges that Miracle Hill may receive payment for providing secular services that the organization administers in a manner consistent with its religious beliefs. *See Kendrick*, 487 U.S. at 621 (evidence that publicly funded work "happen[s] to coincide with the [grantee's] religious views" does not show advancement of religion). The Establishment Clause does not prohibit government aid from reaching private entities that select employees or students on the basis of religion (analogous circumstances to this case). *See Columbia Union Coll. v. Oliver*, 254 F.3d 496, 508 (4th Cir. 2001) (upholding state grants to a college affiliated with the Seventh-day Adventist Church, even though the college "gave an express preference in hiring and admissions to members of the Church"); *Mitchell v. Helms*, 530 U.S. 793, 804 (2000) (plurality op.) (upholding aid program where district court found that "pervasively sectarian" schools were among those receiving aid).

Third, the January 23 conditional exception does not create an excessive entanglement between church and state. The final prong of the *Lemon* test prohibits "'comprehensive, discriminating, and continuing state surveillance' of religious exercise." *Lambeth*, 407 F.3d at 273 (quoting *Lemon*, 403 U.S. at 619). A showing of such "comprehensive surveillance" is "necessary" to show a violation of this aspect of *Lemon*. *Id.* (quoting *Mueller v. Allen*, 463 U.S. 388, 403 (1983)). The January 23 conditional exception does not require any kind of "pervasive monitoring" or comprehensive surveillance of religious exercise. *See id.* To the contrary, the

conditional exception works to avoid government entanglement with religious practice by accommodating Miracle Hill's religious views, so long as the State ensures compliance with the religiously neutral condition of making referrals when Miracle Hill is unable to work with a prospective foster parent.

Thus, under the *Lemon* test, the Complaint fails to state an Establishment Clause claim against the Federal Defendants on the basis of the January 23 conditional exception. That dismissal is warranted is only reinforced by the Supreme Court's recent decision in *American Legion v. American Humanist Association*, 139 S. Ct. 2067 (2019). There, the Court reaffirmed that the "Religion Clauses of the Constitution aim to foster a society in which people of all beliefs can live together harmoniously" and held that the presence on public land of a longstanding Latin cross memorializing fallen soldiers in World War I was consistent with the Clauses' purpose, even though the "cross is undoubtedly" a religious symbol. *Id.* at 2074, 2090. The Court held that, when evaluating "established, religiously expressive monuments, symbols, and *practices*," "[t]he passage of time gives rise to a strong presumption of constitutionality." *Id.* at 2085 (emphasis added). Here, Plaintiffs themselves allege that Miracle Hill "has been recruiting Christian foster families . . . and providing them with vital support throughout the licensing process, placements and beyond" for over 30 years, since 1988. Compl. ¶ 47. The Federal Defendants' effort to accommodate this longstanding practice is fully consistent with the Supreme Court's teaching in *American Legion* and, therefore, with the Establishment Clause. *Cf.* 139 S. Ct. at 2090 (for many in the community, "destroying or defacing the Cross [at issue] that has stood undisturbed for nearly a century would not be neutral and would not further the ideals of respect and tolerance embodied in the First Amendment").

**2.**    Plaintiffs also cannot state an equal protection claim on the basis of the January 23 conditional exception.  An equal protection claim must be tied to a personal denial of equal treatment, and there is no plausible basis to allege that the January 23 conditional exception personally denied Plaintiffs equal treatment.  The Supreme Court has held that "stigma" and "value interests" alone are not judicially cognizable injuries when they are not tied to a personal denial of equal protection.  *See Allen*, 468 U.S. at 755–56 ("Our cases make clear, however, that [stigmatic] injury accords a basis for standing only to those persons who are personally denied equal treatment by the challenged discriminatory conduct." (citation omitted)).  Plaintiffs have alleged no direct interaction between themselves and the Federal Defendants, and the January 23 conditional exception, which HHS issued to Governor McMaster, certainly is not one.  Thus, Plaintiffs' equal protection claim related to the January 23 conditional exception must be tied to the alleged actions of Miracle Hill, and Plaintiffs cannot state a claim on that basis against the Federal Defendants for the reasons described above.

## CONCLUSION

For the foregoing reasons, the Federal Defendants respectfully request that the Court dismiss the Complaint as to the Federal Defendants for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

Dated:  August 29, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

SHERRI A. LYDON
United States Attorney

*/s/ Christie V. Newman*
CHRISTIE V. NEWMAN (#5473)
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, SC 29201
Telephone: (803) 929-3021
Email: Christie.Newman@usdoj.gov

MICHELLE BENNETT
Assistant Branch Director

CHRISTOPHER A. BATES
Senior Counsel to the Assistant Attorney General

JAMES R. POWERS (TX Bar No. 24092989)*
Trial Attorney
Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L Street, NW
Washington, DC 20005
Telephone:  (202) 353-0543
Email:  james.r.powers@usdoj.gov

*Admitted *pro hac vice*

*Counsel for Federal Defendants*