IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Eden Rogers; Brandy Welch, | ) | CA: No. 6-19-cv-1567-TMC |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| United States Department of Health and | ) | |
| Human Services; Alex Azar, *in his official* | ) | |
| *capacity as Secretary of United States* | ) | **JOINT RESPONSES PURSUANT** |
| *Department of Health and Human Services*; | ) | **TO LOCAL RULE 26.03 AND** |
| Administration for Children and Families; | ) | **FEDERAL RULE OF CIVIL** |
| Lynn Johnson, *in her official capacity as* | ) | **PROCEDURE 26(f)** |
| *Assistant Secretary of Administration for* | ) | |
| *Children and Families*; Scott Lekan, *in his* | ) | |
| *official capacity as Principal Deputy* | ) | |
| *Assistant Secretary of Administration for* | ) | |
| *Children and Families*; Henry McMaster, *in* | ) | |
| *his official capacity as Governor of the State* | ) | |
| *of South Carolina*; Michael Leach, *in his* | ) | |
| *official capacity as State Director of the South* | ) | |
| *Carolina Department of Social Services*, | ) | |
| | ) | |
| Defendants. | ) | |

The parties, having consulted pursuant to Rule 26(f), Fed. R. Civ. P., hereby report as follows (check one below):

☐    We agree that the schedule set forth in the Conference and Scheduling Order filed is appropriate for this case. **The parties' proposed discovery plan as required by Fed. R. Civ. P. Rule 26(f) and the information required by Local Civil Rule 26.03 will be separately filed by the parties.**

☒    We agree that the schedule set forth in the Conference and Scheduling Order filed requires modification as set forth in the proposed Consent Amended Scheduling Order which will be e-mailed to chambers as required (use format of the Court's standard scheduling order). **The parties' proposed discovery plan as required by Fed. R. Civ. P. Rule 26(f) and the information required by Local Civil Rule 26.03 will be separately filed by the parties.**

☐    We are unable, after consultation, to agree on a schedule for this case. We, therefore, request a scheduling conference with the Court. **The parties' proposed discovery plan as required by 26(f) Fed. R. Civ. P., with disagreements noted, and the information required by Local Civil Rule 26.03 will be separately filed by the parties.**

(SIGNATURE PAGE ATTACHED)

The following persons participated in the Rule 26(f) conference on June 15, 2015:

    M. Malissa Burnette, Nekki Shutt, Susan K. Dunn, Peter T. Barbur, Leslie Cooper, Daniel Mach, M. Currey Cook and Karen L. Lowey, representing Plaintiffs, by teleconference.

    Christie Newman and James R. Powers, representing the Federal Defendants, by teleconference.

    Kenneth P. Woodington, representing Defendant Leach, by teleconference.

    Miles Coleman and Jay Thompson, representing Defendant McMaster, by teleconference.

    At the conference, the parties agreed to propose the attached Consent Amended Scheduling Order.

    In addition, the parties submit the following information in response to Local Rule 26.03 and FRCP 26(f).

<strong><u>RULE 26(F) REPORT</u></strong>

1.    **What changes should be made in the timing, form, or requirement for disclosures under Rule 26(a), including a statement of when initial disclosures were made or will be made.**

    The Parties have submitted a proposed Consent Amended Scheduling Order to the Court, which proposes that Rule 26(a)(1) disclosures be made by July 13, 2020.

    Federal Defendants note that under Fed. R. Civ. P. 26(a)(1)(B)(i), actions for review on an administrative record are exempt from the initial disclosure requirement. It is Federal Defendants' position, as set forth below, that Plaintiffs' claims against them should be reviewed on an administrative record. Nonetheless, in light of the presence of additional claims and parties in this case, Federal Defendants do not object to producing initial disclosures by the date stated in the Consent Amended Scheduling Order.

As discussed in greater detail in Section 5 below, Plaintiffs disagree that discovery should be limited to an administrative record. Plaintiffs submit that the Federal Defendants should not be permitted to limit their initial disclosures in any way based on their contentions concerning review of an administrative record.

2.  **The subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues.**

**Plaintiffs:** Plaintiffs anticipate conducting discovery relevant to the causes of action asserted by Plaintiffs in this lawsuit, as well as the defenses asserted by Defendants, including discovery related to Defendants' authorization of state-contracted, government-funded child placement agencies to use religious eligibility criteria when performing the delegated public function of screening potential foster parents for children in State custody and Defendants' intentional discrimination against prospective foster parents on the basis of religion and sexual orientation. Discovery should be completed according to the timeline set forth in the proposed Consent Amended Scheduling Order, which extends the current deadlines by 90 days. Plaintiffs have agreed to this extension based on the understanding that Defendants should be able to complete their document production in time to allow at least three months for fact depositions following completion of document production.

Plaintiffs disagree with the Federal Defendants' assertion that discovery should be limited to an administrative record, an issue discussed in greater detail in Section 5 below.

The Federal Defendants also argue discovery "should be limited to information related to the Title IV-E foster care program in South Carolina and any actions by Federal Defendants in relation thereto," and argue that discovery related to "requests by officials in the states of Texas and Pennsylvania for relief from 45 C.F.R. § 75.300(c)" is not relevant to this case. That is incorrect.

Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "[I]nformation is relevant, and thus discoverable, if it bears on, or . . . reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case . . . . [R]elevancy is not limited by the exact issues identified in the pleadings, the merits of the case, or the admissibility of discovered information. Rather, the general subject matter of the litigation governs the scope of relevant information for discovery purposes. Therefore, courts broadly construe relevancy in the context of discovery." *Billioni v. Bryant*, No. 0:14-CV-03060-JMC, 2015 WL 9122776, at *1 (D.S.C. Dec. 14, 2015) (quoting *Amick v. Ohio Power Co.*, No. 2:13-cv-06593, 2014 WL 468891, at *1 (S.D.W.Va. Feb. 5, 2014)) (internal citations omitted).

The Federal Defendants' request for limited discovery contradicts both the spirit and language of Rule 26. Documents and communications related to requests the Federal Defendants received from officials in Texas and Pennsylvania for relief from 45 C.F.R. § 75.300(c) plainly "bear on" issues in this case, as they may shed light on the Federal Defendants' treatment of a similar request from the Governor of South Carolina. And in any event, any

objections the Federal Defendants may have with respect to specific discovery requests should be raised in a motion for a protective order.

Discovery does not need to be conducted in phases or otherwise limited.

**State Defendants:** Defendants McMaster and Leach contest and do not agree with Plaintiffs' argumentative characterization of the facts above. Defendants McMaster and Leach expect to conduct discovery relating to the facts and circumstances surrounding Plaintiffs' alleged injury; whether and on what basis a private, non-profit child placing agency referred Plaintiffs to other nearby private agencies or to SCDSS in their efforts to be licensed as foster parents; whether Defendants McMaster's and Leach's challenged, alleged actions have hindered qualified prospective foster parents of any religion or sexual orientation from seeking licensure as foster parents; whether Defendants McMaster's and Leach's challenged, alleged actions have increased, decreased, or had no effect on the pool of available foster homes; the absence of any discriminatory intent or effect of Defendants McMaster and Leach challenged actions; the secular purpose, neutral effect, and non-entanglement resulting from Defendants McMaster's and Leach's challenged actions; and the rational bases and legitimate state interests relating to and supporting Defendants McMaster's and Leach's challenged actions. Defendants McMaster and Leach concur with the revisions to the discovery schedule reflected in the proposed Consent Amended Scheduling Order.

**Federal Defendants:** Federal Defendants believe that discovery in this litigation as to them should be limited to production of the administrative record for any federal agency action challenged in this litigation. This outcome is consistent with the Administrative Procedure Act and judicial authorities interpreting it, as set forth below in section 5 of this Report.

If the Court determines that discovery in this litigation should proceed as to the Federal Defendants, that discovery should be limited to information related to the Title IV-E foster care program in South Carolina and any actions by Federal Defendants in relation thereto. In contrast, Plaintiffs' first requests for production to Federal Defendants seek discovery regarding matters wholly unrelated to South Carolina's Title IV-E program. For example, Plaintiffs' requests for production expressly seek discovery regarding requests by officials in the states of Texas and Pennsylvania for relief from 45 C.F.R. § 75.300(c), as to entities in those states. Those matters plainly have no relevance to these proceedings, which concern only the state foster care program in South Carolina and Plaintiffs' attempts to work with a particular provider in that program.

3.    **Any issues about disclosure or discovery of electronically stored information, including the form or forms in which it should be produced.**

None at this time.

4.    **Any issues about claims of privilege or of protection as trial-preparation materials, including — if the parties agree on a procedure to assert these claims after production — whether to ask the court to include their agreement in an order.**

The Parties anticipate requesting that the Court so-order the District of South Carolina form Confidentiality Order, or a modified form thereof. The Parties further anticipate negotiating and submitting for the Court's entry an agreed Fed. R. Evid. 502(d) order. The Parties plan to file a joint motion regarding these issues at a later date.

5. **What changes should be made in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed.**

**Plaintiffs:** Plaintiffs seek no amendment to the limitations on discovery set forth by the Federal Rules of Civil Procedure or the Local Rules.

**I.** During the parties' Rule 26(f) conference, the Federal Defendants argued for the first time that Plaintiffs are bound by discovery limits set forth under the Administrative Procedure Act ("APA"), even though Plaintiffs are not pursuing a claim under the APA. The Federal Defendants now seek a scheduling order precluding Plaintiffs from discovery as to the Federal Defendants except with leave of the Court, on the grounds that courts "routinely restrict review to the administrative record in cases that raise constitutional claims." The Federal Defendants are wrong on the merits and are also wrong in seeking to have this issue resolved as part of entering a scheduling order.

Unlike in the cases cited by the Federal Defendants, Plaintiffs assert only constitutional challenges and are not suing under the APA. This case is thus similar to *Karnoski v. Trump*, No. C17-1297-MJP, 2018 WL 1880046, at *1 (W.D. Wash. Apr. 19, 2018), where the court rejected defendants' efforts to limit discovery to an administrative record, holding that "there is no reason for discovery to be confined to the administrative record" where plaintiffs "do not challenge the policy under the APA, but instead raise direct constitutional claims."

Even in cases involving claims brought under the APA, "district courts have struggled to coalesce around a categorical rule and instead apply a fact-specific inquiry" when assessing whether to authorize discovery in such cases, and "several courts recognize that discovery may be appropriate for a constitutional claim involving agency action." *State v. U.S. Dep't of Homeland Sec.*, No. 19-CV-04975-PJH, 2020 WL 1557424, at *14 (N.D. Cal. Apr. 1, 2020). Thus, as in *Karnoski,* the appropriate course is for the Federal Defendants to bring a motion for a protective order so that this issue can be fully briefed and considered by the Court. In that motion, the Federal Defendants should be required to specify exactly what is in the administrative record to which they seek to limit discovery.

**II.** Defendants further indicated during the parties' meet and confer that certain individual Defendants and/or witnesses may not be "amenable" to depositions. Citing *Franklin Savings Ass'n v. Ryan*, 922 F.2d 209 (4th Cir. 1991), Defendants now claim that the apex doctrine precludes Plaintiffs from deposing "current or former high-ranking government officials" absent "extraordinary circumstances." But "the rule stated in *Franklin* is not as broad as [the Federal Defendants] urge[]." *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1023 (E.D. Cal. 2010), *order clarified*, No. 1:05-CV-01198-LJOJ-MDHC, 2010 WL 797019 (E.D. Cal. Mar. 5, 2010). "A 'strong showing of bad faith or improper behavior' is only required where a party challenges the substantive merits of an administrative decision that is supported by contemporaneous formal findings; this rule appears to be based on the general prohibition

against consideration of extra-record evidence during the judicial review of administrative action." *Id.* (quoting *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)). Where, as here, discovery as to Plaintiffs' claim should not be limited to the administrative record, the rule set forth in *Franklin* does not apply. In any case, Plaintiffs agree with the Federal Defendants that this issue is not yet ripe and should be addressed via a motion for a protective order if or when the issue arises.

**State Defendants:** Defendants McMaster and Leach seek no amendment to the limitations on discovery set forth by the Federal Rules of Civil Procedure or the Local Rules.

During the parties' Rule 26(f) conference, Plaintiffs indicated they anticipate taking up to twenty depositions in this proceeding, but did not identify the individuals they anticipate deposing. To the extent Plaintiffs intend to depose Governor McMaster or SCDSS Director Leach, Defendants McMaster and Leach do not at this time consent to such depositions and may at the appropriate time move for appropriate protective orders on the basis of the established legal doctrine protecting high-ranking government officials from being called to testify regarding their official actions except, perhaps, in "extraordinary circumstances." *See generally Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209 (4th Cir. 1991); *United States v. Morgan*, 313 U.S. 409 (1941).

**Federal Defendants:**

**I.** Discovery as to the Federal Defendants is inappropriate in this case because review of Plaintiffs' constitutional claims should be governed by the judicial review provisions of the Administrative Procedure Act ("APA"). Accordingly, the Court's scheduling order should preclude Plaintiffs from discovery as to the Federal Defendants except with leave of Court, sought under the standards of the APA.

Under the APA, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam). The agency supplies the court with the record of the materials that were before the agency at the time of the challenged action. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). "[C]ourts will ordinarily assume that the administrative record is complete and exclusive for purposes of judicial review. A party challenging an agency bears a special burden of demonstrating that the court should reach beyond the record . . . ." *Sanitary Bd. v. Wheeler*, 918 F.3d 324, 334 (4th Cir. 2019).

These fundamental principles of administrative law are not discarded simply because Plaintiffs' claims rely on constitutional principles. *See Tafas v. Dudas*, 530 F. Supp. 2d 786, 802–03 (E.D. Va. 2008) (denying discovery beyond the administrative record on constitutional claims). To the contrary, judicial review under the APA expressly includes claims that agency action is "contrary to constitutional right." 5 U.S.C. § 706(2)(B). And the Supreme Court's recent decision in *Department of Commerce v. New York*, 139 S. Ct. 2551 (2019), confirms that constitutional challenges to agency action should be reviewed based on the agency record. *See id.* at 2563–64, 2574 (in case raising statutory and constitutional claims, holding that the district court "should not have ordered extra-record discovery when it did" because the

plaintiffs had not made the "strong showing of bad faith or improper behavior" needed to justify such a step at that time).

Consistent with that reasoning, courts across the country routinely restrict review to the administrative record in cases that raise constitutional claims. *See, e.g.*, *Bellion Spirits, LLC v. United States*, 335 F. Supp. 3d 32, 44 (D.D.C. 2018); *Outdoor Amusement Bus. Ass'n, Inc.* v. *DHS*, 2017 WL 3189446, at *21 (D. Md. July 27, 2017); *Tafas*, 530 F. Supp. 2d at 803.  A contrary rule would "incentivize every unsuccessful party to agency action to allege bad faith, retaliatory animus, and constitutional violations to trade in the APA's restrictive procedures for the more even-handed ones of the Federal Rules of Civil Procedure." *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 58 F.Supp.3d 1191, 1238 (D.N.M. 2014).

The only federal agency action challenged in the current complaint is the January 2019 conditional exception decision issued to South Carolina. *See, e.g.*, Compl., Prayer for Relief (requesting equitable relief as to the conditional exception).  Federal Defendants anticipate producing an administrative record regarding that decision by August 13, 2020.  To the extent Plaintiffs seek leave to amend their complaint to challenge additional federal agency actions, Federal Defendants anticipate producing additional administrative records in support of such actions.

Federal Defendants do not object to any motion practice that would be helpful to the Court in resolving this issue, including filing a motion for protective order.

**II.**    If the Court determines that discovery in this litigation should proceed as to the Federal Defendants, Federal Defendants' position as to depositions is that any dispute is not yet ripe and need not be addressed by the Court at this time.  Federal Defendants clarify the point above regarding whether certain persons are "amenable" to depositions by stating that they may object to the deposition of certain high-ranking government officials on the basis of the apex doctrine.  That doctrine provides that current or former high-ranking government officials may not be called to testify in litigation regarding their official actions except, at minimum, on a showing of "extraordinary circumstances." *See, e.g.*, *Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209, 211 (4th Cir. 1991); *United States v. Morgan*, 313 U.S. 409, 421–22 (1941).

6.    **Any other orders that the court should issue under Rule 26(c) or under Rule 16(b) and (c).**

The Parties anticipate requesting that the Court so-order the District of South Carolina form Confidentiality Order, or a modified form thereof.  The Parties plan to file a joint motion as to this issue at a later date.

## JOINT RESPONSES TO LOCAL RULE 26.03 QUERIES

1.    **Short Statement of the Facts (set forth separately by the parties according to their respective positions).**

**Plaintiffs**:  In 2018, the South Carolina Department of Social Services determined that Miracle Hill Ministries ("Miracle Hill"), the largest state-contracted, government-funded

foster care agency in South Carolina, violated state and federal law by restricting eligibility to prospective foster parents who are evangelical Protestant Christians. Miracle Hill's religious eligibility criteria for prospective foster families also disqualify families headed by same-sex couples regardless of their faith. Miracle Hill has turned away families seeking to open their hearts and homes to children in need because they were Jewish, Catholic, same-sex couples, or otherwise failed to meet the agency's religious test.

Rather than enforce state and federal laws and policies prohibiting such discrimination, the Governor of South Carolina requested a waiver from the federal government to allow South Carolina to continue to receive federal funding for its public child welfare system despite violating a federal regulation barring discrimination based on non-merit factors, including religion and sexual orientation. The United States Department of Health and Human Services granted South Carolina a waiver in January 2019, which applies to Miracle Hill and any other subgrantee in the South Carolina Foster Care Program that uses religious criteria in selecting among prospective foster care parents. Thereafter, DSS issued Miracle Hill a new standard license to continue its public foster care work while allowing it to exclude countless prospective foster families that do not satisfy the agency's religious criteria.

Defendants' actions have created a public child welfare system in South Carolina, funded by taxpayer dollars, that authorizes and enables state-contracted foster care agencies to discriminate against families based on religious criteria, exacerbates the already severe shortage of foster families in South Carolina, and limits the diversity of family placement options for children. Such actions violate the Establishment, Equal Protection and Due Process Clauses of the United States Constitution. Plaintiffs' Eden Rogers and Brandy Welch now seek declaratory and injunctive relief from these constitutional violations.

**State Defendants:** Defendants McMaster and Leach contest and do not agree with Plaintiffs' argumentative and inflammatory characterization of the facts alleged by Plaintiffs above. Defendants McMaster's and Leach's short statement of facts is as follows.

The South Carolina Department of Social Services ("SCDSS") oversees the training, licensing, and supervision of foster homes and residential foster facilities in the state. Consistent with longstanding historical practice, SCDSS contracts with private Child Placing Agencies ("CPAs") to assist in training and supervising foster homes and assisting in the placement of children into those homes. SCDSS reimburses CPAs for certain of their services. One such CPA is Miracle Hill Ministries ("Miracle Hill"), a faith-based organization that, among other social services, provides encouragement and support to over 200 families licensed as foster homes by SCDSS.

In 2017, SCDSS learned of newly-effective, improperly promulgated, partisan amendments to federal regulations that purported to prohibit State agencies from distributing certain funds to private CPAs who choose to partner only with co-religionists. In 2018, Miracle Hill was due for its annual CPA license review and renewal. In light of the uncertainties relating to the amended federal regulation, SCDSS issued Miracle Hill a temporary license. Recognizing that the amended regulation appeared to be unconstitutional and a transgression of federal law, that faith-based CPAs do not (and cannot) prevent any qualified person from seeking and obtaining licensure as a foster parent, and that faith-based CPAs add to the available pool of

foster homes, Governor McMaster subsequently wrote to federal officials seeking a deviation or waiver from the new regulation. Governor McMaster later issued an Executive Order directing SCDSS not to "deny licensure to faith-based CPAs solely on account of their religious identity or sincerely held religious beliefs" and to "ensure that DSS does not directly or indirectly penalize religious identity or activity." In early 2019, the U.S. Department of Health and Human Services responded to Governor McMaster's request, granting the deviation requested by the Governor. SCDSS subsequently granted Miracle Hill a regular one-year license.

After these things occurred, apparently in a pretextual attempt to set up a legal challenge, Plaintiffs inquired of Miracle Hill about licensure as foster parents. Upon information and belief, Miracle Hill referred them to other nearby providers or to SCDSS directly, any of which would meet Plaintiffs' needs and desires to an equal or greater degree as Miracle Hill, since Plaintiffs acknowledged that they did not and were not willing to meet Miracle Hill's sincerely-held religious belief that it can partner only with foster parents who share Miracle Hill's Christian religious beliefs. Rather than inquiring with other agencies or with SCDSS, Plaintiffs filed this lawsuit alleging in part that Defendants McMaster's and Leach's challenged actions constituted an establishment of religion and a denial of Plaintiff's equal protection rights.

**Federal Defendants:**

HHS awards grants to South Carolina under Title IV-E of the Social Security Act, which authorizes federal funding to states "[f]or the purpose of enabling each State to provide, in appropriate cases, foster care" programs for eligible children.  42 U.S.C. § 670.  These grants may encompass reimbursement to states for administrative expenses necessary for the provision of child placement services and the proper and efficient administration of the Title IV-E foster care program.  *Id.* § 674(a)(3).  These expenses may include activities such as training, case management, and recruitment and licensing of foster homes.  45 C.F.R. § 1356.60(c).  States have discretion to engage third parties to provide many of these services.

HHS has promulgated a regulation, rooted in an HHS "public policy requirement," that no person may be "denied the benefits of, or subjected to discrimination in the administration of HHS programs and services based on . . . religion."  45 C.F.R. § 75.300(c).  In response to a request from the State, HHS granted South Carolina an exception from section 75.300(c)'s religious non-discrimination provision on January 23, 2019.  South Carolina sought the exception in connection with its use of federal funds to reimburse faith-based organizations, including Miracle Hill Ministries, that provide services under the State's Title IV-E Foster Care Program ("the SC Foster Care Program").  HHS granted South Carolina's requested exception after determining that the burden imposed on the free exercise rights of Miracle Hill and similarly situated religious entities by section 75.300(c)'s religious non-discrimination provision was not justifiable under the Religious Freedom Restoration Act ("RFRA"), and that enforcing section 75.300(c) in a manner that could result in Miracle Hill withdrawing from the SC Foster Care Program "would . . . cause a significant programmatic burden . . . by impeding the placement of children into foster care."

HHS has since issued a Notification of Nonenforcement of Health and Human Services Grants Regulation, 84 Fed. Reg. 63809 (Nov. 19, 2019) (the "Notice"), that among other things, provides that HHS will not enforce section § 75.300(c) in any circumstances until

its provisions have been repromulgated to address concerns about compliance with the requirements of the Regulatory Flexibility Act, 5 U.S.C. 601 *et seq.* On the day the Notice was published, HHS also issued a notice of proposed rulemaking ("NPRM") to amend § 75.300(c), among other provisions. *See* 84 Fed. Reg. 63,831 (Nov. 19, 2019). This NPRM has not yet resulted in a final rule. At present, the rule is pending before the Office of Management and Budget for review, which may approve the proposal or return some or all of the provisions of the rule to the agency for further consideration.

2.    **Potential Fact Witnesses**

All Parties reserve the right to call any of the witnesses identified or listed in forthcoming Witness Disclosures as well as any and all expert witnesses as necessary to support Parties' affirmative claims and defenses. All Parties further reserve the right to call rebuttal, impeachment or rehabilitation witnesses based upon the issues and witnesses identified in the Parties' Initial Disclosures, the other Parties' Witness Disclosures, and during discovery. Pursuant to the Rules and the Scheduling Order, this witness disclosure is based upon preliminary information, is not exhaustive, exclusive, or final, and Parties reserve the right to alter or amend their list of possible witnesses based upon information obtained in discovery in accordance with the Rules.

**Plaintiffs' List:**

| <u>NAME</u> | <u>TITLE</u> | <u>KNOWLEDGE</u> |
|---|---|---|
| Eden Rogers | Plaintiff | Her attempts to foster a child with her wife through Miracle Hill Ministries. |
| Brandy Welch | Plaintiff | Her attempts to foster a child with her wife through Miracle Hill Ministries. |
| Alex Azar and/or a similarly knowledgeable representative from HHS | Defendant | Communications and facts regarding (i) the granting of Governor McMaster's request for a waiver from prohibitions on discrimination set forth in 45 C.F.R. § 75.300(c) ("the HHS Grants Rule"), (ii) requests from other parties regarding waivers from the HHS Grants Rule, (iii) HHS's Notification of Nonenforcement of Health and Human Services Regulation, published at 84 Fed. Reg. 63,809 (the "Nonenforcement Policy"), (iv) HHS's proposed rulemaking, published at 84 Fed. Reg. 63,831, to modify the HHS Grants Rule (the "Proposed Rulemaking") and (v) religious accommodations for |

| | | private faith-based foster care and/or adoption agencies. |
|---|---|---|
| Lynn Johnson, Scott Lekan and/or a similarly knowledgeable representative from the Administration for Children and Families | Defendant | Communications and facts regarding (i) the granting of Governor McMaster's request for a waiver from the HHS Grants Rule, (ii) requests from other parties regarding waivers from the HHS Grants Rule, (iii) the Nonenforcement Policy, (iv) the Proposed Rulemaking and (v) religious accommodations for private faith-based foster care and/or adoption agencies. |
| Henry McMaster and/or a similarly knowledgeable representative from the Governor's Office of the State of South Carolina | Defendant | Communications and facts regarding (i) Governor McMaster's request for a waiver from the HHS Grants Rule and the consequences thereof, (ii) Governor McMaster's Executive Order No. 2018-12 and the consequences thereof, (iii) licensing of same-sex couples or LGBTQ individuals as foster parents, (iv) South Caroline Department of Social Services ("DSS") actions taken in response to a child placement agency's ("CPA") failure to abide by federal or state nondiscrimination requirements, (v) the Nonenforcement Policy, (vi) the Proposed Rulemaking, (vii) religious accommodations for private faith-based foster care and/or adoption agencies and (viii) Miracle Hill's practices and policies. |
| Michael Leach and/or a similarly knowledgeable representative from the South Carolina Department of Social Services | Defendant | Communications and facts regarding (i) CPAs within the state, (ii) foster care needs within the state, (iii) Governor McMaster's request for a waiver from the HHS Grants Rule and the consequences thereof, (iv) Governor McMaster's Executive Order No. 2018-12 and the consequences thereof, (v) DSS policies and procedures, (vi) licensing of same-sex couples or LGBTQ individuals as foster parents, (vii) DSS actions taken in response to a CPA's failure to abide |

| | | by federal or state nondiscrimination requirements, (viii) the Nonenforcement Policy, (ix) the Proposed Rulemaking, (x) religious accommodations for private faith-based foster care and/or adoption agencies and (xi) Miracle Hill's practices and policies. |
|---|---|---|
| Reid Lehman and/or a similarly knowledgeable representative from Miracle Hill Ministries | Third Party | Communications and facts regarding (i) Miracle Hill's policies, practices, mission and compliance with legal requirements concerning eligibility and screening of foster parents and religious training or activities with youth in Miracle Hill's care, (ii) licensing, including investigations and disciplinary measures concerning Miracle Hill's eligibility and screening of prospective foster parents and religious training or activities with youth in Miracle Hill's care, (iii) the Nonenforcement Policy and (iv) the Proposed Rulemaking. |

The State Defendants below suggest that "certain of the topics" listed above are "not relevant to this proceeding." As discussed in Section 2 of the Rule 26(f) Report above, relevancy for purposes of discovery is "broadly construe[d]," and any information that could reasonably lead to other information that "bear[s] on" an issue that is or may be in dispute is relevant for purposes of Rule 26. *Billioni*, 2015 WL 9122776, at *1. Plaintiffs thus disagree with the notion that any topic identified above is "not relevant" to this case, but in any event agree that the issue is better decided on a motion for protective order brought at the appropriate time.

**State Defendants' List:** Defendants McMaster and Leach incorporate and adopt by reference Plaintiffs' list above. Defendants McMaster and Leach believe Plaintiffs' description of the relevant knowledge of the listed individuals is in some instances too narrow and in others too broad. As to the former, for example, Defendants McMaster and Leach believe that Eden Rogers and Brandy Welch also possess relevant knowledge regarding their efforts (or the absence thereof) to seek licensure as foster parents or to seek to foster a child through SCDSS or private CPAs willing to partner with them, as well as other information relevant to Plaintiffs' alleged injury, standing, and motivation to bring this suit.

As to Plaintiffs' characterizations of the knowledge of the other listed parties, Defendants McMaster and Leach assert that certain of the topics listed Plaintiffs are not relevant to this proceeding, and they reserve the right to dispute or challenge the relevance of inquiries into such topics at the appropriate time.

In addition, factual investigation is still in its infancy, and Defendants McMaster and Leach reserve the right to identify and call additional fact witnesses as factual investigation and discovery continue.

**Federal Defendants' List:**     Federal Defendants' position is that this case should be resolved as to them at summary judgment on review of the administrative record of any federal agency action challenged.  That outcome is consistent with the Administrative Procedure Act and judicial authorities interpreting it.  *See Audubon Naturalist Soc'y of the Cent. Atl. States v. U.S. Dep't of Transp.*, 524 F. Supp. 2d 642, 660 (D. Md. 2007).

Insofar as this case proceeds to a trial involving Federal Defendants, Federal Defendants anticipate calling an agency employee with authority to testify regarding the authenticity and completeness of the administrative record regarding any agency action under challenge.  Federal Defendants may identify and call additional witnesses consistent with the joint statement above regarding potential fact witnesses.

3.     **Potential Expert Witnesses**

The Parties have not yet identified or retained an expert witness or witnesses to testify at trial, but reserve the right to do so.  The Parties have agreed to comply with the expert disclosure deadlines set forth in the proposed Consent Amended Scheduling Order.

**Plaintiffs:**  Plaintiffs expect to potentially call expert witnesses concerning foster care and adoption practices and the impact on children of discrimination against prospective foster families.

**State Defendants**:  Defendants McMaster and Leach anticipate they may call expert witnesses concerning foster care practices; the effect (or absence thereof) on foster children or on prospective foster parents of differing faiths (or no faith) or sexual orientations resulting from State accommodation of faith-based foster care agencies; and the effect on foster children of the closure, delicensing of, or inability to contract with faith-based foster care agencies.

**Federal Defendants:**  Federal Defendants do not anticipate that expert testimony will be necessary or appropriate in this litigation as to the claims against them.  Federal Defendants reserve their rights to identity one or more expert witnesses, including for rebuttal purposes, should circumstances change.

4.     **Summary of Claims and Defenses**

**Plaintiffs:**

First Amendment, Establishment Clause (State Defendants):  The State Defendants have authorized a state-contracted, government-funded agency to use religious eligibility criteria when performing the delegated public function of screening prospective foster parents for children in State custody.  Through these actions, the State Defendants are using government funds for religious purposes and activities, preferring certain religious beliefs over others and over nonreligion, and privileging religion to the detriment of third parties—both

prospective foster families and children in foster care. *See, e.g.*, *Lemon v. Kurtzman*, 403 U.S. 602, 612 (1971).

First Amendment, Establishment Clause (Federal Defendants): The Federal Defendants have authorized and enabled the use of religious eligibility criteria to discriminate against prospective foster parents in the South Carolina public child welfare system by exempting the State from a federal regulation that prohibits such discrimination by recipients of federal funding and continuing to provide federal funding to South Carolina for its foster care program, with the knowledge that the State is permitting Miracle Hill to turn away prospective foster parents who are not evangelical Protestant Christians. But for the HHS Waiver, the State Defendants would not have provided Miracle Hill with a standard CPA license and authorized its continued use of religious criteria in screening prospective foster parents. Through these actions, the Federal Defendants are using government funds for religious purposes and activities, preferring certain religious beliefs over others and over nonreligion, and privileging religion to the detriment of third parties—both prospective foster families and children in the foster care system. *See, e.g.*, *Lemon v. Kurtzman*, 403 U.S. 602, 612 (1971).

Fourteenth Amendment, Equal Protection (State Defendants): The State Defendants, by allowing a state-contracted, government-funded foster care agency to exclude couples that are not evangelical Protestant Christian or same-sex couples of any faith while performing the delegated public function of screening prospective foster parents for children in State custody, intentionally have discriminated and continue to discriminate against prospective foster parents on the basis of religion and sexual orientation, and the State Defendants' actions subject prospective foster parents to different and unfavorable treatment based on religion and sexual orientation, in violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. *See, e.g.*, *Obergefell v. Hodges*, 135 S. Ct. 2584, 2604-05 (2015).

Fifth Amendment, Equal Protection (Federal Defendants): The Federal Defendants, by exempting South Carolina from a federal regulation that prohibits discrimination on the basis of religion and sexual orientation by recipients of federal funding and continuing to provide federal funding to South Carolina for its foster care program, with the knowledge that the State is permitting Miracle Hill to turn away prospective foster parents who are not evangelical Protestant Christians, intentionally have discriminated and continue to discriminate against prospective foster parents on the basis of religion and sexual orientation, and the Federal Defendants' actions subject prospective foster parents to different and unfavorable treatment based on religion and sexual orientation, in violation of the Due Process Clause of the U.S. Constitution. *See, e.g.*, *United States v. Windsor*, 570 U.S. 744, 774 (2013).

The Federal Defendants' decision "not to enforce 45 C.F.R. § 75.300(c) in any circumstances" does not moot Plaintiffs' claims against the Federal Defendants. If Plaintiffs establish that the Federal Defendants' refusal to enforce the nondiscrimination provisions in 45 C.F.R. § 75.300(c) as to foster care agencies in South Carolina was unconstitutional, then the Federal Defendants will not be able to rely on their subsequent nonenforcement policy to avoid complying with that constitutional determination. Thus, because a favorable ruling will offer Plaintiffs relief, this case is not moot. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016), *as revised* (Feb. 9, 2016). Any dispute as to this issue should be resolved following a fully briefed motion before this Court.

Defendants' remaining defenses regarding the merits of Plaintiffs' claims are better addressed in later motions and/or proceedings, and Defendants' arguments with respect to standing have already been rejected by this Court.

**State Defendants:** Plaintiffs lack standing to assert their claims. Plaintiffs have not suffered an injury-in fact, and, in any event, their alleged injury resulted from the independent, intervening actions of a private third party that is not a named defendant in the litigation, and thus is not traceable to or caused by Defendants McMaster and Leach and is not redressable by this Court. Further, Plaintiffs lack standing to assert claims based on sexual orientation discrimination because there is no factual basis to conclude they were subject to any discrimination on that basis, let alone by Defendants McMaster and Leach. Nor can Plaintiffs assert claims arising from alleged injuries allegedly suffered by others. *See, e.g.*, *In re Trump*, 928 F.3d 360, 375–76 (4th Cir. 2019); *Taubman Realty Grp. Ltd. P'ship v. Mineta*, 320 F.3d 475, 480 (4th Cir. 2003).

Plaintiffs cannot establish an Equal Protection violation. Contrary to Plaintiffs' summary of their claims in the preceding paragraphs, they cannot establish a claim for denial of Equal Protection on the basis of religion because this Court has already dismissed that portion of Plaintiffs' Equal Protection claim. Nor can Plaintiffs establish a denial of Equal Protection on the basis of sexual orientation because there is no factual basis to conclude they were subject to any discrimination on that basis, let alone by Defendants McMaster and Leach. Further, Defendants McMaster's and Leach's challenged actions were rationally related to legitimate state interests, and thus cannot give rise to an Equal Protection violation. *See, e.g.*, *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 211 (4th Cir. 2002); *Pulte Homes Corp. v. Montgomery Cty.*, 909 F.3d 685, 693 (4th Cir. 2018).

Plaintiffs cannot establish an Establishment Clause violation. A State's licensure of, accommodation of, and contracting with faith-based providers is permissible under the Establishment Clause. Such partnerships are historically permissible, have been upheld by the courts, and are supported by a legitimate secular purpose that neither advances religion nor excessively entangles the state with it. Further, such accommodations are permitted—and, in some cases, required—by state and federal law and Supreme Court precedent. *See, e.g.*, *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012 (2017); *Hosana-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171 (2012); *Bowen v. Kendrick*, 487 U.S. 589 (1988); 42 U.S.C. § 2000bb to 2000bb-4.

**Federal Defendants:** Plaintiffs' claims against Federal Defendants—which only concern the January 2019 conditional exception from enforcement of a portion of section 75.300(c) issued to South Carolina—have become moot. That is because in a separate agency action issued November 2019, HHS has since provided that it will not enforce section § 75.300(c) in any circumstances until that regulation's provisions have been repromulgated to address concerns about compliance with the requirements of the Regulatory Flexibility Act, 5 U.S.C. 601 *et seq*. Any relief that this Court may issue regarding the January 2019 conditional exception to South Carolina, therefore, would have no impact on whether Federal Defendants will enforce section 75.300(c) as to South Carolina.

Plaintiffs' claims as to the January 2019 conditional exception also lack merit. First, the conditional exception does not violate the Establishment Clause because it is a neutral accommodation of religious freedom motivated by secular concerns. Moreover, it does not excessively entangle the Government with religion and does not have the primary effect of advancing or inhibiting religion. *See, e.g.*, *Wood v. Arnold*, 915 F.3d 308, 314 (4th Cir. 2019); *Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327 (1987). Instead, Federal Defendants' actions are consistent with the "ideals of respect and tolerance embodied in the First Amendment." *See Am. Legion v. American Humanist Association*, 139 S. Ct. 2067 (2019). Second, Federal Defendants have not themselves denied equal treatment to Plaintiffs, nor can Plaintiffs show any basis to attribute to the Government any denial of equal treatment by another person or entity. *See Blum v. Yaretsky*, 457 U.S. 991 (1982); *Allen v. Wright*, 468 U.S. 737, 755–56 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).

Finally, Federal Defendants note that they respectfully disagree with the Court's finding that Plaintiffs have standing to bring their claims against the Federal Defendants and preserve that position for purposes of any appeal.

5.    **Deadlines for Local Civil Rule (D.S.C.) 16.02**

As discussed in Section 2 of the Rule 26(f) Report above, in light of the complexities of the issues presented as well as potential difficulties raised by COVID-19, the parties have agreed to extend all deadlines contained in the original scheduling order by 90 days.

|  | **AGREED-UPON PROPOSED DATES** |
| --- | --- |
| Mandatory Initial Disclosures | July 13, 2020 |
| Motions to Join Other Parties and/or Amend the Pleadings | November 9, 2020 |
| Plaintiffs' Expert Disclosures (Witness List and Initial Reports) | December 8, 2020 |
| Defendants' Expert Disclosures (Witness List and Initial Reports) | January 7, 2021 |
| Affidavits of Records Custodian Witnesses | January 7, 2021 |
| Plaintiffs' Expert Disclosures (Rebuttal Reports) | January 21, 2020 |
| Discovery Cut-Off | February 8, 2021 |
| Dispositive Motion Cut-Off | February 22, 2021 |

| Trial Date | The later of May 3, 2021, or sixty (60) days after dispositive motions have been resolved |
| --- | --- |

6.      **Special Circumstances Affecting Timing**

COVID-19, the novel coronavirus pandemic, has presented circumstances that for now require conducting traditional discovery and trial preparation remotely, including document production and review, depositions and motions practice.  The parties will notify the Court if they believe this requires further adjustment of any deadlines.

7.      **Additional Information**

i.      Magistrate Judge

The Parties do not consent to the trying of this matter before a Magistrate Judge.

ii.      Mediation

The Parties have discussed the availability, as well as the advisability and timing of mediation, and do not intend to seek relief from the Court's mediation Order at this time.

iii.      Settlement

The parties are unable to determine the prospects for settlement at this time but will reassess settlement prospects as discovery proceeds.

iv.      Electronic Service

The Parties hereby consent to electronic service on counsel of record of any document for which the Federal Rules of Civil Procedure require service.

June 29, 2020

Respectfully submitted,

_____
                                    */s/ Susan K. Dunn*

                                    Susan K. Dunn (Federal Bar No. 647)
                                    AMERICAN CIVIL LIBERTIES UNION

OF SOUTH CAROLINA FOUNDATION
P.O. Box 20998
Charleston, SC 29413
(843) 282-7953
sdunn@aclusc.org

South Carolina Equality Coalition, Inc.
M. Malissa Burnette (Federal Bar No. 1616)
Nekki Shutt (Federal Bar No. 6530)
BURNETTE SHUTT & MCDANIEL, PA
912 Lady Street, 2nd floor
P.O. Box 1929
Columbia, SC 29202
(803) 850-0912
mburnette@burnetteshutt.law
nshutt@burnetteshutt.law

Peter T. Barbur (admitted *pro hac vice*)
Katherine D. Janson (admitted *pro hac vice*)
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
pbarbur@cravath.com
kjanson@cravath.com

Leslie Cooper (admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2633
lcooper@aclu.org

Daniel Mach (admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street NW
Washington, DC 20005
(202) 675-2330
dmach@aclu.org

M. Currey Cook (admitted *pro hac vice*)
Karen L. Loewy (admitted *pro hac vice*)

LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005
(212) 809-8585
ccook@lambdalegal.org
kloewy@lambdalegal.org

**ATTORNEYS FOR PLAINTIFFS**

NELSON MULLINS RILEY & SCARBOROUGH LLP

By:_____/s/ Miles E. Coleman_____

Miles E. Coleman
Federal Bar No. 11594
E-Mail: miles.coleman@nelsonmullins.com
2 W. Washington Street / 4th Floor
Greenville, SC 29201
(864) 373-2352

Jay T. Thompson
Federal Bar No. 09846
E-Mail: jay.thompson@nelsonmullins.com
1320 Main Street / 17th Floor
Post Office Box 11070 (29211-1070)
Columbia, SC  29201
(803) 799-2000

OFFICE OF THE ATTORNEY GENERAL

Robert D. Cook, South Carolina Solicitor General
Federal Bar No. 285
E-Mail: bcook@scag.gov
Post Office Box 11549
Columbia, SC  29211
(803) 734-3970

DAVIDSON, WREN & DEMASTERS P.A.

William H. Davidson
Federal Bar No. 425
E-Mail: wdavidson@dml-law.com
Kenneth P. Woodington
Federal Bar No. 4741
E-Mail: kwoodington@dml-law.com
1611 Devonshire Drive, 2nd Floor
Post Office Box 8568
Columbia, South Carolina 29202-8568
(803) 806-8222

**ATTORNEYS FOR DEFENDANTS MCMASTER AND LEACH**

JOSEPH H. HUNT
Assistant Attorney General

PETER M. MCCOY, JR.
United States Attorney

*/s/ Christie V. Newman*
CHRISTIE V. NEWMAN (#5473)
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, SC 29201
Telephone: (803) 929-3021
Email: Christie.Newman@usdoj.gov

MICHELLE BENNETT
Assistant Branch Director

CHRISTOPHER A. BATES
Senior Counsel to the Assistant Attorney General

JAMES R. POWERS (TX Bar No. 24092989)*
Trial Attorney
Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L Street, NW
Washington, DC 20005
Telephone:  (202) 353-0543
Email:  james.r.powers@usdoj.gov

*Admitted *pro hac vice*

*Counsel for Federal Defendants*