## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## GREENVILLE DIVISION

EDEN ROGERS and

BRANDY WELCH,

                              Plaintiffs,

          -against-

UNITED STATES DEPARTMENT OF HEALTH
AND HUMAN SERVICES;

ALEX AZAR, in his official capacity as Secretary
of the UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES;

ADMINISTRATION FOR CHILDREN AND
FAMILIES;

LYNN JOHNSON, in her official capacity as
Assistant Secretary of the ADMINISTRATION
FOR CHILDREN AND FAMILIES;

SCOTT LEKAN, in his official capacity as
Principal Deputy Assistant Secretary of the
ADMINISTRATION FOR CHILDREN AND
FAMILIES;

HENRY MCMASTER, in his official capacity as
Governor of the STATE OF SOUTH CAROLINA;
and

MICHAEL LEACH, in his official capacity as State
Director of the SOUTH CAROLINA
DEPARTMENT OF SOCIAL SERVICES,

                              Defendants.

Case No. 6:19-cv-1567-TMC

**PLAINTIFFS' MEMORANDUM
OF LAW IN OPPOSITION TO
FEDERAL DEFENDANTS'
MOTION FOR PROTECTIVE
ORDER**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 2

LEGAL STANDARD ........................................................................................................... 4

ARGUMENT ......................................................................................................................... 5

I.      Plaintiffs Are Entitled to Discovery Beyond the Administrative Record ................ 5

II.     Plaintiffs' Discovery Requests Are Well Within the Bounds of Rule 26 ............... 12

CONCLUSION .................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Otro Lado, Inc. v. McAleenan*, 394 F. Supp. 3d 1168 (S.D. Cal. 2019) .........................9

*Amick v. Ohio Power Co.*, No. 2:13-cv-06593, 2014 WL 468891
    (S.D.W.Va. Feb. 5, 2014) .........................................................................................4

*Baron Fin. Corp. v. Natanzon*, 240 F.R.D. 200 (D. Md. 2006).....................................5, 14

*Bellion Spirits, LLC .v United States*, 335 F. Supp 3d 32 (D.D.C. 2018).........................10

*Billioni v. Bryant*, No. 0:14-CV-03060-JMC, 2015 WL 9122776 (D.S.C.
    Dec. 14, 2015) ....................................................................................4, 5, 14, 15

*Bolton v. Pritzker*, No. C15-1607 MJP, 2016 WL 4555467 (W.D. Wash.
    Sept. 1, 2016) ............................................................................................................7

*Chiayu Chang v. U.S. Citizenship & Immigr. Servs.*, 254 F. Supp 3d 160
    (D.D.C. 2017) ..........................................................................................................11

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) ............................5

*Cook Cty., Illinois v. Wolf*, No. 19 C 6334, 2020 WL 2542155 (N.D. Ill.
    May 19, 2020)...................................................................................................7, 8, 9

*Dep't of Com. v. New York*, 139 S. Ct. 953 (2018)............................................................8

*Dep't of Com. v. New York*, 139 S. Ct. 2551 (2019).................................................1, 7, 8

*Grill v. Quinn*, No. CIV S-10-0757 GEB, 2012 WL 174873 (E.D. Cal. Jan.
    20, 2012) ....................................................................................................................7

*Harvard Pilgrim Health Care of New England v. Thompson*, 318 F. Supp.
    2d 1 (D.R.I. 2004)....................................................................................................11

*Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 58 F. Supp. 3d
    1191 (D.N.M. 2014)................................................................................................10

*Karnoski v. Trump*, No. C17-1297-MJP, 2017 WL 6311305 (W.D. Wash.
    Dec. 11, 2017)............................................................................................................6

*Karnoski v. Trump*, No. C17-1297-MJP, 2018 WL 1880046 (W.D. Wash. Apr. 19, 2018) ...................................................................................6, 7, 11

*Ketcham v. U.S. Nat'l Park Serv.*, No. 16-CV-17-SWS, 2016 WL 4268346 (D. Wyo. Mar. 29, 2016)...................................................................11, 12

*Medlin v. Andrew*, 113 F.R.D. 650 (M.D.N.C. 1987).........................................5

*Miccosukee Tribe of Indians of Fla. v. United States*, No. 08-23001-CIV, 2010 WL 337653 (S.D. Fla. Jan. 22, 2010) ...........................................7, 12

*Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144 (9th Cir. 2017)...............................6

*New York v. U.S. Dep't of Com.*, 339 F. Supp. 3d 144 (S.D.N.Y. 2018) ...........................8

*Pickering v. Bd. of Ed. of Twp. of High Sch. Dist. 205, Will Cty.*, 391 U.S. 563 (1968) (Douglas, J., concurring) .......................................................10

*Porter v. Califano*, 592 F.2d 770 (5th Cir. 1979) ...........................................6, 9

*The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518 (9th Cir. 1989) ....................................................................................................6

*Sierra Club v. Trump*, 929 F.3d 670 (9th Cir. 2019) ........................................5

*Spell v. McDaniel*, 591 F. Supp. 1090 (E.D.N.C. 1984).....................................4

*State v. U.S. Dep't of Homeland Security*, No. 19-CV-04975-PJH, 2020 WL 1557424 (N.D. Cal. Apr. 1, 2020) ..............................................5, 7, 10

*UAI Tech., Inc. v. Valutech, Inc.*, 122 F.R.D. 188 (M.D.N.C. 1988) ...............14

*Webster v. Doe*, 486 U.S. 592 (1988) ................................................................5

**Statutes & Rules**

Administrative Procedure Act................................................................ passim

Fed. R. Civ. P. 26.................................................................1, 4, 12, 15, 16

**Other Authorities**

U.S. Const. amend. I ...................................................................3, 6, 12

U.S. Const. amend. V....................................................................3, 5

U.S. Const. amend. XIV ......................................................................3

Plaintiffs Eden Rogers and Brandy Welch ("Plaintiffs") respectfully submit this memorandum of law in opposition to the Federal Defendants' Motion for Protective Order ("Mot. for PO", ECF No. 102).

## PRELIMINARY STATEMENT

Seeking to evade any meaningful discovery in this action, Federal Defendants invoke the Administrative Procedure Act ("APA") and maintain that Plaintiffs and the Court are limited to reviewing an "administrative record"—the contents of which Federal Defendants decline to describe. Federal Defendants also argue that Plaintiffs' discovery requests are irrelevant and disproportionate to this litigation. They are wrong on both counts.

*First*, because Plaintiffs are pursuing direct constitutional claims rather than asserting rights under the APA, the APA's limitations on discovery do not apply. Federal Defendants' contrary arguments rely primarily on a misreading of the Supreme Court's decision in *Department of Commerce v. New York*, 139 S. Ct. 2551 (2019). That case says nothing about what discovery is appropriate in a case involving a constitutional challenge because the constitutional claims in that case had been dismissed at an earlier stage and were not even before the Supreme Court. The Supreme Court's ruling only concerns APA claims, which, as noted, Plaintiffs do not bring here. Federal Defendants also rely on a number of easily distinguishable district court cases while ignoring overwhelming authority rejecting precisely the arguments made by the Federal Defendants here. As those cases make clear, the scope of appropriate discovery in this case is not limited to any "administrative record".

*Second*, contrary to Federal Defendants' assertion, Plaintiffs' first set of requests for production are well within the scope of permissible discovery under Rule 26. In arguing

otherwise, Federal Defendants simply mischaracterize the standard for discoverability; it is in fact a liberal standard and Plaintiffs easily meet it.  It is the standard for issuance of a protective order that is high.  The requests at issue are proper and seek information directly related to the subject matter of this litigation.

Accordingly, Federal Defendants' motion for a protective order should be denied in its entirety.

### STATEMENT OF FACTS

South Carolina contracts out foster care services to private organizations and pays them with state and federal tax dollars.  (Compl. ¶¶ 15, 24, ECF No. 1.)  Miracle Hill is the largest state-contracted, government-funded child placement agency ("CPA") in South Carolina.  (Compl. ¶¶ 2, 4, 43.)  However, Miracle Hill restricts eligibility for participation in its foster care programs to prospective foster parents who meet its religious requirements—namely, individuals must share its evangelical Christian beliefs and be heterosexual.  (Compl. ¶¶ 2, 47-52.)

After determining that Miracle Hill likely was in violation of state and federal law (Compl. ¶ 2), the South Carolina Department of Social Services ("DSS") rescinded Miracle Hill's CPA license and issued a temporary license, which required Miracle Hill to adopt a written plan to correct the areas of noncompliance within a six-month probationary period (Compl. ¶¶ 28, 56-57).  But, rather than requiring Miracle Hill to amend its practices to comply with state and federal laws and policies, Defendant McMaster requested and received a waiver from the federal government to allow South Carolina to continue to receive federal funding for its public child welfare system despite violating a federal

2

regulation barring discrimination based on non-merit factors, including religion and sexual orientation.  (Compl. ¶¶ 3, 62.)

The waiver allows Miracle Hill and any other subgrantees to use "religious criteria in selecting among prospective foster care parents" as long as they refer potential foster parents who they reject to other subgrantees or to DSS.  (Compl. ¶ 69.)  With the waiver in hand, DSS issued Miracle Hill a new standard license to continue its public foster care work while allowing it to discriminate against prospective foster parents on the basis of religion and sexual orientation.  (Compl. ¶¶ 3, 70.)  As a result, when Plaintiffs applied to work with Miracle Hill as prospective foster parents, they were summarily rejected on the basis of their religion and sexual orientation.  (Compl. ¶¶ 8, 80-81.)

In their complaint challenging the actions of the Federal and State Defendants, Plaintiffs allege violations of the Establishment, Equal Protection and Due Process Clauses of the United States Constitution.  (Compl. ¶¶ 1, 97-156.)  Plaintiffs seek declaratory and injunctive relief against Defendants for unlawfully authorizing and enabling state-contracted, government-funded CPAs to use religious criteria to exclude prospective parents.  (Compl. ¶ 1.)  The requested relief goes well beyond South Carolina and would apply to other states where, among other things, Federal Defendants are permitting government-funded CPAs to do the same.

Defendants moved to dismiss the complaint.  (Mots. to Dismiss, ECF Nos. 50, 54, 57.)  This Court denied the motion in all respects other than relating to Plaintiffs' Equal Protection claims based on religious discrimination.  (Order (D.S.C. May 8, 2020), ECF No. 81.)  In particular, the Court denied the motion to dismiss Plaintiffs' Establishment Clause claims.  Plaintiffs then moved ahead with discovery and served a first set of requests

for production ("RFPs") on June 4, from which the Federal Defendants now seek a protective order.  (*See* Mot. for PO, Ex. A.)

## LEGAL STANDARD

Rule 26 of the Federal Rules of Civil Procedure has "been interpreted liberally to allow maximum discovery".  *Spell v. McDaniel*, 591 F. Supp. 1090, 1114 (E.D.N.C. 1984).  Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  "[I]nformation is relevant, and thus discoverable, if it bears on, or . . . reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case. . . . [R]elevancy is not limited by the exact issues identified in the pleadings, the merits of the case, or the admissibility of discovered information.  Rather, the general subject matter of the litigation governs the scope of relevant information for discovery purposes.  Therefore, courts broadly construe relevancy in the context of discovery."  *Billioni v. Bryant*, No. 0:14-cv-03060-JMC, 2015 WL 9122776, at *1 (D.S.C. Dec. 14, 2015) (internal citations and quotation marks omitted) (quoting *Amick v. Ohio Power Co.*, No. 2:13-cv-06593, 2014 WL 468891, at *1 (S.D.W.Va. Feb. 5, 2014)).

"[T]he burden of showing that the requested discovery is not relevant to the issues in this litigation is clearly on the party resisting discovery."  *Spell*, 591 F. Supp. at 1114.  "[D]iscovery requests should be complied with if there is a reasonable possibility that the information sought may be relevant to the subject matter of the action."  *Id.*  Protective orders are only appropriate if good cause is shown and "[t]he standard for issuance of a protective order is high."  *Billioni*, 2015 WL 9122776, at *2.  "In order to establish good cause, a proponent may not rely upon stereotyped and conclusory statements, but must

4

present a particular and specific demonstration of fact, as to why a protective order should issue." *Baron Fin. Corp. v. Natanzon*, 240 F.R.D. 200, 202 (D. Md. 2006) (internal citations and quotation marks omitted).  Acknowledging the importance of a liberal discovery process, courts have found that "protective orders should be sparingly used and cautiously granted".  *Id.* (internal quotation marks omitted) (quoting *Medlin v. Andrew*, 113 F.R.D. 650, 652 (M.D.N.C. 1987)).

## ARGUMENT

### I.     PLAINTIFFS ARE ENTITLED TO DISCOVERY BEYOND THE ADMINISTRATIVE RECORD.

Suits under the APA are subject to a number of procedural limitations, including the requirement that, unless certain exceptions apply, judicial review of the challenged action is limited to "the full administrative record that was before the Secretary at the time he made his decision".  *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).  Plaintiffs' suit here, however, does *not* arise under the APA.  Rather, it involves direct constitutional challenges.

As various courts, including the U.S. Supreme Court, have recognized, "claims challenging agency actions—particularly constitutional claims—may exist wholly apart from the APA".  *State v. U.S. Dep't of Homeland Security*, No. 19-cv-04975-PJH, 2020 WL 1557424, at *13 (N.D. Cal. Apr. 1, 2020) (internal quotation marks omitted) (quoting *Sierra Club v. Trump*, 929 F.3d 670, 699 (9th Cir. 2019)); *see also Webster v. Doe*, 486 U.S. 592, 603-05 (1988) (holding that plaintiff's suit against the U.S. Central Intelligence Agency alleging wrongful termination was not reviewable under the APA, but analyzing plaintiff's separate constitutional claims independently and authorizing discovery for such

claims); *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1170 (9th Cir. 2017) (finding that "a court is foreclosed by [APA] § 704 from entertaining claims *brought under the APA* seeking review of non-final agency action (and not otherwise permitted by law)," but "no such limitation applies to other types of claims (like . . . constitutional claims . . . )") (internal citations and quotation marks omitted); *The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 523 (9th Cir. 1989) (allowing constitutional claims to proceed without deciding whether an APA cause of action was available); *Porter v. Califano*, 592 F.2d 770, 781 (5th Cir. 1979) (stating that, in addition to being able to sue under the APA, the plaintiff "would of course have a right to sue directly under the constitution to enjoin . . . federal officials from violating her constitutional rights").

Where, as here, plaintiffs are pursuing a direct constitutional claim, the APA's discovery limitations do not apply. The Federal Defendants' claim that such limits apply to constitutional challenges to federal agency actions was addressed and rejected in *Karnoski v. Trump*, No. C17-1297-MJP, 2018 WL 1880046 (W.D. Wash. Apr. 19, 2018). There, plaintiffs alleged that the ban on transgender individuals serving in the military violates the Fifth Amendment's equal protection and substantive due process guarantees and their rights under the First Amendment. *Karnoski v. Trump*, No. C17-1297-MJP, 2017 WL 6311305, at *3 (W.D. Wash. Dec. 11, 2017). The federal government attempted to cut off discovery, arguing, *inter alia*, that the challenge is subject to the APA and thus, discovery should be limited to the administrative record. *Karnoski*, 2018 WL 1880046, at *1. The court found that "there is no reason for discovery to be confined to the administrative record. Plaintiffs . . . do not challenge the policy under the APA, but instead

raise direct constitutional claims." *Id.* Accordingly, the court denied the federal government's motion for a protective order and ordered that discovery proceed. *Id.* at *2.

Other courts have reached similar conclusions. In *Bolton v. Pritzker*, No. C15-1607 MJP, 2016 WL 4555467 (W.D. Wash. Sept. 1, 2016), for instance, the court explained that "[a] direct constitutional challenge is reviewed independent of the APA, and [a]s such the court is entitled to look beyond the administrative record in regard to such a claim." *Id.* at 4 (alteration in original) (internal quotation marks omitted); *see also Cook Cty., Illinois v. Wolf*, No. 19 C 6334, 2020 WL 2542155, at *10 (N.D. Ill. May 19, 2020) (same); *State*, 2020 WL 1557424, at *13; *Grill v. Quinn*, No. CIV S-10-0757 GEB GGH PS, 2012 WL 174873, at *2 (E.D. Cal. Jan. 20, 2012) (same); *Miccosukee Tribe of Indians of Fla. v. United States*, No. 08-23001-CIV, 2010 WL 337653, at *2 (S.D. Fla. Jan. 22, 2010) (same).

Federal Defendants suggest this Court should ignore these precedents because they are inconsistent with the Supreme Court's recent ruling in *Department of Commerce v. New York*. That is wrong and, indeed, precisely the same argument has been rejected elsewhere. Simply put, the Supreme Court's decision in *Department of Commerce* cannot be read to say anything about the appropriate scope of discovery in a case involving a constitutional challenge because it involved only an APA claim. Federal Defendants disingenuously say that the *Department of Commerce* case involved "both statutory and constitutional claims" (Mot. for PO at 7) but omit to inform this Court that the constitutional claims in that case had been dismissed by the district court at an earlier stage and were not before, and were not addressed by, the Supreme Court. *See Dep't of Com.*, 139 S. Ct. at 2564. Indeed, in another case decided after *Department of Commerce* and involving precisely the same issue presented here, counsel for the Department of Homeland

Security was forced to concede at oral argument that the Supreme Court's discussion in *Department of Commerce* "pertained only to the APA claim" and that "there was no equal protection claim" before the Court. *Wolf*, 2020 WL 2542155, at *9. That concession applies with equal force here.

As the *Wolf* court noted, the Supreme Court's decision in *Department of Commerce* "did not hold, either explicitly or implicitly, that ordinary APA discovery rules govern constitutional challenges to agency action". *Id.* The district court in *Department of Commerce* did not reach the issue of the appropriate scope of discovery for a constitutional claim but rather held that, based on their APA claim alone, the plaintiffs were entitled to discovery beyond the administrative record because they "had made a strong preliminary or *prima facie* showing that they will find material beyond the Administrative Record indicative of bad faith"—one of the exceptions that allows for additional discovery on an APA claim. *New York v. U.S. Dep't of Com.*, 339 F. Supp. 3d 144, 147 (S.D.N.Y. 2018) (internal quotation marks omitted). After a bench trial, the district court rejected plaintiffs' constitutional claim and granted judgment in favor of plaintiffs' APA claim. *Dep't of Com.*, 139 S. Ct. at 2564. The Government then sought and obtained immediate review by the Supreme Court of the district court's decision on the APA question. *See Dep't of Com. v. New York*, 139 S. Ct. 953 (2018). Upon review of the APA claim, the Supreme Court reasoned that the district court, by ordering extra-record discovery before the Government had completed production of the administrative record, had acted "premature[ly]". *Dep't of Com.*, 139 S. Ct. at 2574. Nevertheless, the Court determined that the district court's decision was "ultimately justified" in light of material later added to the administrative record, and therefore extra-record evidence was properly before the Court. *Id.* As the court

8

noted in *Wolf*, "[h]aving concluded that the plaintiffs ultimately satisfied the 'strong showing' standard, the Supreme Court had no occasion to, and in fact did not, expressly address whether extra-record discovery could have been justified on the ground that the plaintiffs had brought an equal protection claim along with their APA claim." *Wolf*, 2020 WL 2542155, at *9.

Federal Defendants' remaining arguments are equally unavailing. For instance, Federal Defendants erroneously insist that the text of the APA forecloses the possibility of discovery on direct constitutional claims. But § 706(2)(B) of the APA, which directs courts to "review the whole record or those parts of it cited by a party" when determining whether an agency action is "contrary to constitutional right", has no bearing on whether APA procedural limitations apply to direct constitutional claims; indeed, this section applies only to challenges brought under the APA. Moreover, this text "conveys merely that the court should review the administrative record in evaluating a constitutional challenge, not that the court (subject to the 'strong showing' exception) may review *only* the administrative record". *Wolf*, 2020 WL 2542155, at *10.

Next, Federal Defendants wrongly claim that allowing extra-record discovery here would "subvert the purpose of the APA". (Mot. for PO at 9.) However, the APA was not intended to displace direct constitutional claims, *see, e.g.*, *Porter*, 592 F.2d at 781; *Al Otro Lado, Inc. v. McAleenan*, 394 F. Supp. 3d 1168, 1217 (S.D. Cal. 2019), *as amended* (Aug. 2, 2019), and applying the APA's limitations to a direct constitutional claim would subvert clear Supreme Court guidance to the contrary. Recognizing this, the court in *State*, when presented with the same issue here, noted that "permitting discovery on constitutional claims [is] in accord with the foundational tenet of constitutional adjudication that where

constitutional rights are in issue, courts must ensure that the controlling legal principles [are] applied to the *actual facts of the case*". *State*, 2020 WL 1557424, at *14 (alteration in original) (quoting *Pickering v. Bd. of Ed. of Twp. of High Sch. Dist. 205, Will Cnty. Ill.*, 391 U.S. 563, 578 n.2 (1968)). Allowing discovery on direct constitutional claims ensures that courts are able to apply legal principles "to the actual facts of the case", as is required.

Finally, Federal Defendants point to a handful of lower court decisions restricting review to an administrative record (Mot. for PO at 8, 10), but each is readily distinguishable. Notably, in all these cases, save for one (discussed below), the plaintiffs brought both APA and constitutional claims. The courts in these cases were concerned that, in the context of what were in essence purely administrative challenges, opening the door to broad discovery would encourage plaintiffs in every such case to supplement their APA claims with constitutional challenges. *E.g.*, *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 58 F. Supp. 3d 1191, 1238 (D.N.M. 2014) (allowing broad discovery would "incentivize every unsuccessful party to agency action to allege bad faith, retaliatory animus, and constitutional violations"). Indeed, virtually all of these cases involved plaintiffs who were emmeshed in the administrative process itself and only later added constitutional claims after they were unsuccessful at the administrative stage. *See Bellion Spirits, LLC .v United States*, 335 F. Supp 3d 32, 36-37 (D.D.C. 2018) (plaintiff sued in federal court after unsuccessfully seeking approval to make certain claims about its product from the Alcohol and Tobacco Tax and Trade Bureau); *Chiayu Chang v. U.S. Citizenship & Immigr. Servs.*, 254 F. Supp 3d 160, 161 (D.D.C. 2017) (plaintiffs sued in federal court following the U.S. Citizenship and Immigration Services' denial of their EB-5 visa petitions); *Harvard Pilgrim Health Care of New England v. Thompson*, 318 F. Supp. 2d 1,

4-5 (D.R.I. 2004) (plaintiff sued in federal court after the U.S. Department of Health and Human Services rejected its proposed cost apportionment method).

This case is entirely different.  Plaintiffs were not involved in the administrative process and bring only constitutional claims.  *See Karnoski*, 2018 WL 1880046, at *1 (holding APA discovery limitations do not apply when plaintiffs are pursuing only constitutional claims).  And the fact that Plaintiffs also bring those claims against the State Defendants—who had no direct role in the federal regulatory process and as to whom there is no possible APA claim—further demonstrates that this is not in essence an APA claim to which Plaintiffs have simply appended constitutional claims.  Limiting Plaintiffs' access to discovery from Federal Defendants would thus prejudice Plaintiffs' ability to litigate claims that are in no way related to or constrained by the APA.

Federal Defendants cite one and only one case in which the plaintiff brought only a direct constitutional claim.  *See Ketcham v. U.S. Nat'l Park Serv.*, No. 16-CV-17-SWS, 2016 WL 4268346 (D. Wyo. Mar. 29, 2016).  However, *Ketcham* is distinguishable for at least two reasons.  First, it involved a unique procedural mechanism available in the Wyoming federal court whereby the federal defendants filed an administrative record instead of answering, and the plaintiffs objected to that process.  *Id.* at *1.  No such objection is at issue here; indeed, both State and Federal Defendants have answered the complaint.  (*See* Answers, ECF Nos. 83, 84, 85.)  Second, the plaintiffs in *Ketcham* asserted a general First Amendment interest in watching the culling of bison in Yellowstone Park but alleged no individual right of action to support their lawsuit.  *Ketcham*, 2016 WL 4268346, at *1.  Thus, the court concluded that the only possible claim was one under the APA and, accordingly, found that the processes mandated by the APA must be followed.

*Id.* at *1 (finding that "[t]he APA . . . provides Plaintiffs with the right to challenge the constitutionality of the Defendants' decisions and action" but that the other arguments put forward by plaintiffs "do not establish a cognizable right to relief"). Again, this case is very different. This Court has found that Plaintiffs have stated a claim for relief outside the APA. (Order (D.S.C. May 8, 2020) at 35, 46.)

In sum, because Plaintiffs bring "constitutional claim[s] independent of any APA claim", discovery should not be "limited by the APA [] nor the agency record, but rather requires independent review". *Miccosukee*, 2010 WL 337653, at *2. And in all events, even if this Court were inclined to apply the APA's procedural limitations on discovery here, it would be premature to do so now when Federal Defendants have not yet provided access to the administrative record and it is not yet clear whether the record will be complete or whether an exception to the bar on extra-record discovery would apply.

## II.    PLAINTIFFS' DISCOVERY REQUESTS ARE WELL WITHIN THE BOUNDS OF RULE 26.

Plaintiffs' requests for discovery are entirely appropriate and in keeping with the standard set in Rule 26. Because Plaintiffs' document requests are relevant to the claims and defenses in this action, and because Federal Defendants have made no effort to demonstrate disproportionality, the Court should deny Federal Defendants' efforts to evade discovery here.

To start with, Federal Defendants incorrectly proceed as if Plaintiffs' claims are limited to South Carolina and South Carolina alone. This is wrong. Although Plaintiffs reside in South Carolina and suffered harm in South Carolina, the complaint specifically seeks injunctive relief against the Federal Defendants that would apply to "any state's federally funded child welfare system". (Compl. Prayer for Relief D.) Federal Defendants

12

nowhere acknowledge this breadth of Plaintiffs' claims and that failure alone warrants denying the motion.

In any event, Federal Defendants are also wrong in arguing that a number of Plaintiffs' RFPs "have no relevance at all to their challenge to the January 2019 conditional exception issued to South Carolina in relation to the SC Foster Care Program". (Mot. for PO at 12.) The specific RFPs Federal Defendants challenge seek information relating to requests made by government officials in Texas and Pennsylvania for exceptions to the HHS Grants Rule—the same regulation at issue in this action. (Mot. for PO, Ex. A at 10, RFP Nos. 5, 6.) They also take issue with RFPs asking for information regarding HHS's religious accommodations for faith-based foster care or adoption agencies—the same type of accommodation at issue in this action. (Mot. for PO, Ex. A at 12-13, RFP Nos. 11-15.) Thus, even overlooking that Plaintiffs seek relief outside South Carolina, these RFPs seek information providing important context for Plaintiffs' claims concerning South Carolina in specific.

Federal Defendants interpret the standard for relevance in discovery far too narrowly. As stated above, "information is relevant, and thus discoverable, if it bears on, or . . . reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case". *Billioni*, 2015 WL 9122776, at *1 (internal citation and quotation marks omitted). Federal Defendants appear to argue that in order to be relevant, each discovery request must elicit information directly tied to the specific allegations concerning the conduct of Federal Defendants that led to the harm suffered by Plaintiffs. This is not true. Since "relevancy is not limited by the exact issues identified in the pleadings", there is no requirement that each request be narrowly tailored so as to only pertain to the specific

13

allegations in the complaint. *Id.* (internal citation and quotation marks omitted). Indeed, it is "the general subject matter of the litigation governs the scope of relevant information for discovery purposes". *Id.* (internal citation and quotation marks omitted). Further, the party seeking a protective order does not merely have to prove lack of relevance, but he or she "must demonstrate that the discovery sought lacks relevance 'to the extent that the likelihood and severity of the harm or injustice caused by the [discovery] outweighs any need for the information'". *Natanzon*, 240 F.R.D. at 202 (quoting *UAI Tech., Inc. v. Valutech, Inc.*, 122 F.R.D. 188, 191 (M.D.N.C. 1988)).

When applying the proper legal standard, Plaintiffs' discovery requests are plainly relevant to this litigation. Federal Defendants' treatment of requests for other exceptions to the HHS Grants Rule will likely shed light on their treatment of the specific request for exception at issue here. Similarly, Federal Defendants' treatment of religious accommodations for faith-based foster care or adoption agencies outside of South Carolina will likely elucidate their decision-making with respect to foster care or adoption agencies within South Carolina.

The topics on which Plaintiffs seek discovery are clearly within "the general subject matter of the litigation" and the information produced is likely to provide insight into how Federal Defendants handled the request from Governor McMaster. *Billioni*, 2015 WL 9122776, at *1 (internal citation and quotation marks omitted). In addition, Federal Defendants cite no "undue burden or expense" or other factor to preclude complying with Plaintiffs' requests. Fed. R. Civ. P. 26(c)(1). Thus, they not only fail to show that the requested discovery lacks relevance, but do not offer any other grounds on which to limit the discovery Plaintiffs seek.

14

Moreover, to the extent Federal Defendants believe Plaintiffs' discovery requests are "not proportional to the needs of this case" (Mot. for PO at 12), they have made no effort to make such a showing here.  Under Federal Rule of Civil Procedure 26(b)(1), relevant considerations for assessing proportionality include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit". Federal Defendants fail to address a single one of these factors.  Nor could they.  The "issues at stake" in this case are of the utmost importance, as the case concerns whether taxpayer-funded government programs can exclude participants based on religious criteria and whether agencies hired by the state to find families to care for children in state custody can turn away qualified families.  In addition, absent the requested discovery, Plaintiffs have no other way to access information about Federal Defendants' internal handling of requests for exceptions to the HHS Grants Rule, which may prove essential to understanding the challenged action at issue in this case.  And again, Federal Defendants present no argument as to any "burden or expense" connected with the discovery sought. Thus, the Rule 26 factors weigh heavily in support of permitting the requested discovery.

In short, because Federal Defendants cannot satisfy the high bar for limiting discovery under Rule 26, their motion for a protection order should be denied.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court deny Federal Defendants' request for a protective order.

s/ Nekki Shutt

South Carolina Equality Coalition, Inc.
M. Malissa Burnette (Federal Bar No. 1616)
Nekki Shutt (Federal Bar No. 6530)
Burnette Shutt & McDaniel, PA
    912 Lady Street, 2nd floor
        P.O. Box 1929
            Columbia, SC 29202
                (803) 850-0912
                mburnette@burnetteshutt.law
                nshutt@burnetteshutt.law


Susan K. Dunn (Federal Bar No. 647)
American Civil Liberties Union
of South Carolina Foundation
    P.O. Box 20998
        Charleston, SC 29413
            (843) 282-7953
            sdunn@aclusc.org


Peter T. Barbur (admitted *pro hac vice*)
Cravath, Swaine & Moore LLP
    Worldwide Plaza
        825 Eighth Avenue
            New York, NY 10019
                (212) 474-1000
                pbarbur@cravath.com


Leslie Cooper (admitted *pro hac vice*)
American Civil Liberties Union Foundation
    125 Broad Street, 18th Floor
        New York, NY 10004
            (212) 549-2633
            lcooper@aclu.org


Daniel Mach (admitted *pro hac vice*)
American Civil Liberties Union Foundation
    915 15th Street NW
        Washington, DC 20005
            (202) 675-2330
            dmach@aclu.org


M. Currey Cook (admitted *pro hac vice*)
Karen L. Loewy (admitted *pro hac vice*)
Cathren Cohen (admitted *pro hac vice*)
Lambda Legal Defense and

16

Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY 10005
(212) 809-8585
ccook@lambdalegal.org
kloewy@lambdalegal.org
ccohen@lambdalegal.org

*Attorneys for Plaintiffs*

July 24, 2020

17