## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## GREENVILLE DIVISION

| | |
|---|---|
| EDEN ROGERS and<br><br>BRANDY WELCH,<br><br>                         Plaintiffs,<br><br>          -against-<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES;<br><br>ALEX AZAR, in his official capacity as Secretary of the UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES;<br><br>ADMINISTRATION FOR CHILDREN AND FAMILIES;<br><br>LYNN JOHNSON, in her official capacity as Assistant Secretary of the ADMINISTRATION FOR CHILDREN AND FAMILIES;<br><br>SCOTT LEKAN, in his official capacity as Principal Deputy Assistant Secretary of the ADMINISTRATION FOR CHILDREN AND FAMILIES;<br><br>HENRY MCMASTER, in his official capacity as Governor of the STATE OF SOUTH CAROLINA; and<br><br>MICHAEL LEACH, in his official capacity as State Director of the SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES,<br><br>                       Defendants. | Case No. 6:19-cv-1567-TMC<br><br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL DISCOVERY** |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ......................................................................................................1

STATEMENT OF FACTS ..........................................................................................2

LEGAL STANDARD.................................................................................................7

ARGUMENT .............................................................................................................8

I.    STATE DEFENDANTS SHOULD BE ORDERED TO DISCLOSE THEIR
      DISCOVERY EFFORTS TO DATE AND TO NEGOTIATE IN GOOD
      FAITH CONCERNING CUSTODIANS AND SEARCH TERMS. .....................9

II.   STATE DEFENDANTS SHOULD BE ORDERED TO PROVIDE
      SUPPLEMENTAL DOCUMENT PRODUCTIONS WITH RESPECT TO
      THE FOLLOWING DISCOVERY REQUESTS. ................................................11

      A.    State Defendants Should Not Be Permitted To Restrict Their
            Productions According to a Truncated Date Range and Should Be
            Required To Supplement Their Productions In Response to McMaster
            Requests 1-9, 12 and 22 and Leach Requests 1-17, 27-28, 30-31 and
            34-36 Accordingly ....................................................................................12

      B.    Defendant Leach Should Be Required To Supplement His Response
            to Request 29..............................................................................................15

      C.    State Defendants Should Be Required To Supplement Their
            Responses to McMaster Requests 10-11, 15-17 and 20 and Leach
            Requests 18-20 and 25-26..........................................................................15

            1.    Relevance. ........................................................................................16

            2.    Undue Burden. .................................................................................17

            3.    Vague and Ambiguous.....................................................................18

            4.    Documents in the Possession of Other Parties or Third Parties.....19

CONCLUSION..........................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amick v. Ohio Power Co.*,
    No. 2:13-cv-06593, 2014 WL 468891 (S.D.W.Va. Feb. 5, 2014)........................12, 13

*Billioni v. Bryant*,
    No. 0:14-cv-03060-JMC, 2015 WL 9122776 (D.S.C. Dec. 14, 2015).................12, 13

*Burnett v. Ford Motor Co.*,
    No. 3:13-CV-14207, 2015 WL 4137847 (S.D.W. Va. July 8, 2015) .....................9, 10

*ContraVest Inc. v. Mt. Hawley Ins. Co.*,
    No. 9:15-cv-00304-DCN-MGB, 2016 WL 11200705 (D.S.C. Dec. 12,
    2016) ..........................................................................................................................6

*David v. Alphin*,
    No. 3:07-cv-11, 2010 WL 1404722 (W.D.N.C. Mar. 30, 2010) ..........................12, 13

*Deakins v. Pack*,
    No. 1:10-1396, 2012 WL 242859 (S.D.W. Va. Jan. 25, 2012) ...................................19

*East Bridge Lofts Property Owners Ass'n, Inc. v. Crum & Forster
    Specialty Ins. Co.*,
    No. 2:14-cv-2567-RMG, 2015 WL 12831731 (D.S.C. June 18, 2015)........................7

*Elhannon LLC v. F.A. Bartlett Tree Expert Co.*,
    No. 2:14-cv-262, 2017 WL 1382024 (D. Vt. Apr. 18, 2017) .....................................11

*Ethox Chem., LLC v. Coca-Cola Co.*,
    No. 6:12-CV-01682-TMC, 2014 WL 2719214 (D.S.C. June 16, 2014) .....................8

*F.D.I.C. v. Baldini*,
    No. 1:12-7050, 2014 WL 1302479 (S.D.W. Va. Mar. 28, 2014) ...............................17

*FormFactor, Inc. v. Micro-Probe, Inc.*,
    No. C-10-03095 PJH (JCS), 2012 WL 1575093 (N.D. Cal. May 3,
    2012) ........................................................................................................................10

*Gourdine v. Karl Storz Endoscopy-Am., Inc.*,
    225 F. Supp. 3d 428 (D.S.C. 2016)............................................................................9

*Green v. Fulton*,
    157 F.R.D. 136 (D. Me. 1994)...................................................................................20

*Johnson v. Ford Motor Co.*,
No. 3:13-6529, 2015 WL 6758234 (S.D.W. Va. Nov. 5, 2015) ...................................9

*Johnson v. N. Carolina Dep't of Justice*,
No. 5:16-CV-00679-FL, 2018 WL 5831997 (E.D.N.C. Nov. 7, 2018).......................7

*Kentucky v. Graham*,
473 U.S. 159 (1985) ...............................................................................................20

*Kinetic Concepts, Inc. v. ConvaTec Inc.*,
268 F.R.D. 226 (M.D.N.C. 2010) .............................................................................8

*Kunneman Props. LLC v. Marathon Oil Co.*,
No. 17-CV-456-GKF-JFJ, 2019 WL 5188355 (N.D. Okla. Oct. 15, 2019) ...............................................................................................................10

*Mancia v. Mayflower Textile Servs. Co.*,
253 F.R.D. 354 (D. Md. 2008).............................................................................8, 9

*Mills v. E. Gulf Coal Preparation Co.*,
LLC, 259 F.R.D. 118 (S.D.W. Va. 2009) ................................................................7

*In re Mt. Hawley Ins. Co.*,
773 F. App'x 771 (4th Cir. 2019) ............................................................................6

*Radian Asset Assur., Inc. v. Coll. of the Christian Bros. of N.M.*,
No. CIV 09-0885 JB/DJS, 2010 WL 4338346 (D.N.M. Sept. 15, 2010) ..................11

*In re Sampedro*,
No. 3:18 MC 47 (JBA), 2018 WL 6264834 (D. Conn. Nov. 30, 2018) .....................10

*Small v. Univ. Med. Ctr.*,
No. 2:13-cv-0298-APG-PAL, 2018 WL 3795238 (D. Nev. Aug. 9, 2018) ...............................................................................................................11

*Smith v. Life Invs. Ins. Co. of Am.*,
No. 2:07-cv-681, 2009 WL 2045197 (W.D. Pa. July 9, 2009) ...................................10

*Tyler v. Suffolk Cnty.*,
256 F.R.D. 34 (D. Mass. 2009)................................................................................20

*U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*,
No. 05-2192-JWL, 2008 WL 2699908 (D. Kan. July 3, 2008) ..................................19

*Westdale Recap Props., Ltd. v. NP/I & G Wakefield Commons, L.L.C.*,
No. 5:11-CV-659-D, 2013 WL 5424844 (E.D.N.C. Sept. 26, 2013) ..........................18

**Statutes & Rules**

Fed. R. Civ. P. 1 ...................................................................................................7

Fed. R. Civ. P. 26 ...........................................................................................7, 17

**Other Authorities**

Fed. R. Civ. P. 26(g) advisory committee's notes to 1983 Amendment ............................7

Plaintiffs Eden Rogers and Brandy Welch ("Plaintiffs") respectfully submit this memorandum of law in support of their Motion to Compel Discovery. Plaintiffs have conferred with opposing counsel in a good faith attempt to resolve the matter herein, but the parties have reached an impasse.

## INTRODUCTION

This case implicates the First Amendment, due process and equal protection rights of South Carolina citizens. As to Defendants Henry McMaster and Michael Leach (together, "State Defendants"), in particular, Plaintiffs challenge their authorization of state-contracted, government-funded child placement agencies ("CPAs") to use religious eligibility criteria when screening potential foster parents for children in state custody and their intentional discrimination against prospective foster parents on the basis of religion and sexual orientation. In light of these significant issues, Plaintiffs served requests for production on State Defendants that are relevant to and commensurate with the claims and defenses in this case.

In response to these requests, State Defendants produced fewer than 700 pages of documents combined. Beyond their small size, the document productions were deficient on their face: they included no draft documents, appeared to derive from only a few custodians per Defendant and were limited in time, topic and scope. Accompanying these document productions was an extensive set of objections, many of which were ambiguous, frivolous or overstated. As a result of these broad objections, State Defendants refused to produce documents in response to nearly two-thirds of Plaintiffs' discovery requests and, in response to the remaining requests, generally produced documents that have already long been circulating in this case.

1

Moreover, when counsel for Plaintiffs attempted to meet and confer with counsel for the State Defendants concerning their discovery responses, counsel for the State Defendants refused to provide any information beyond what is in the written responses.  In particular, counsel for State Defendants refused to describe in any way what they had actually done to search for and produce responsive documents, and they also refused to negotiate a reasonable list of custodians whose electronic documents might be searched using agreed search terms.

Because State Defendants' responses and objections to Plaintiffs' discovery requests are incompatible with State Defendants' obligations under the federal rules, Plaintiffs now respectfully seek an order requiring State Defendants to cooperate in the discovery process and to produce documents that have been wrongfully withheld.

## STATEMENT OF FACTS

Plaintiffs served their First Set of Requests for Production ("Requests") on both State Defendants on June 4, 2020.  (Barbur Decl., Exs. 1, 2.)  At a high level, the 36 Requests served on Defendant Leach ("Leach Requests") and the 22 Requests served on Defendant McMaster ("McMaster Requests") sought documents related to State Defendants' use of government funds for religious purposes and activities, in preference of certain religious beliefs over others and over nonreligion and with the predominant effect of advancing and endorsing religion, as well as documents related to State Defendants' authorization and funding of Miracle Hill and other child placement agencies' discrimination against lesbian, gay, bisexual and transgender ("LGBT") prospective foster parents.  The Requests covered a narrow time frame (generally January 1, 2017, to the present) and, where appropriate, were limited to "documents sufficient to

2

show" in order to better target relevant materials and minimize State Defendants' discovery burden.

Both State Defendants requested an extension from the 30-day deadline for serving responses and objections to the Requests.  (Barbur Decl., Ex. 3)  Plaintiffs initially agreed to a two-week extension, and, at State Defendants' request and on their representation that they were making "diligent efforts" to collect and review documents, Plaintiffs later agreed to a second two-week extension.  (*Id.*)  Plaintiffs explained that they were agreeing to the second extension on the understanding that State Defendants and their counsel have been collecting and reviewing documents and would begin producing those documents on August 4, 2020.  (*Id.*)

On August 4, 2020, Plaintiffs received State Defendants' responses and objections to the Requests.  (Barbur Decl., Exs. 4, 5.)  Defendant Leach's entire document production spanned 302 pages.  Of these 302 pages, 38 pages—more than 10% of the production—are simply correspondence between Plaintiffs' counsel and Freedom of Information Act ("FOIA") officers regarding FOIA requests Plaintiffs' counsel submitted in 2019.  Save for 24 newly produced pages, the remainder of Defendant Leach's production consists of materials the Department of Social Services ("DSS") previously provided in response to Plaintiffs' FOIA requests.  Some overlap with DSS's prior FOIA productions is understandable, as Plaintiffs intentionally included several of their prior FOIA requests in their Requests to ensure that the productions responsive to those Requests are or will be complete.  But Plaintiffs also served 24 requests on Defendant Leach that are entirely distinct from their earlier FOIA requests.[1]  Defendant

---

[1] Requests 5, 7, 12, 16-36.

Leach produced *no* documents in response to any of these 24 requests.  And in response to requests that expanded upon earlier FOIA requests, such as Requests 14 and 15, Defendant Leach simply reproduced DSS's prior FOIA responses, with no efforts to supplement the production to account for the broader scope of the current requests. Defendant Leach's document production also appears to contain no draft versions of documents, and all email correspondence appears to derive from three or four custodians, one of whom is a FOIA officer tracking down responses to Plaintiffs' earlier FOIA requests and is not a true custodian with responsive documents of her own.  In addition, Defendant Leach refused to search for, collect or produce any documents created before January 27, 2018, or after January 23, 2019.

Defendant McMaster's document production is similarly limited.  To start, the production contains only 394 pages, a sizeable portion of which duplicates materials Plaintiffs have received before.  Like Defendant Leach's production, Defendant McMaster's production appears to omit draft versions of any documents, including Governor McMaster's February 27, 2018, letter to Steven Wagner requesting an exemption for South Carolina child placement agencies from 45 C.F.R. § 75.300 and the executive order Governor McMaster issued on March 13, 2018.  All email correspondence appears to derive from a few custodians' files.  Moreover, Defendant McMaster failed to produce any documents in response to 14 of the 22 requests in Plaintiffs' Requests,[2] and expressly refused to search for, collect, review or produce materials responsive to 10 of these requests.[3]  Like Defendant Leach, Defendant

---

[2] Requests 6-7, 10-11, 13-22.

[3] Requests 10-11, 13-19, 21.

McMaster refused to search for, collect or produce any documents created after January 23, 2019.

Upon receiving State Defendants' productions and responses and objections, Plaintiffs scheduled a meet-and-confer call with State Defendants to address the issues identified above.  On this call, which took place on September 1, 2020, Plaintiffs noted that State Defendants' document productions appeared to be incomplete, as evidenced by their small size, significant overlap with prior FOIA productions and State Defendants' objection to running ESI searches with respect to at least some subset of the requests.[4]  Plaintiffs explained that the parties could go a long way toward resolving their disputes if counsel for State Defendants were willing to provide the names and titles of the individuals whose files were searched and what search terms or other criteria were applied.  Plaintiffs stated that they would be happy to work with State Defendants to identify a reasonable set of custodians and negotiate a reasonable set of search terms.

In response, State Defendants stood behind their broad objections and limited productions and declined to engage in good-faith discussions regarding the scope of their discovery efforts.  In particular, State Defendants refused to provide any information about what was done to look for documents beyond stating that some form of an ESI search was run over "more than one custodian" with respect to some unidentified subset of the Requests.  They refused to identify the custodians whose files were searched, the search criteria that were applied or the Requests for which ESI searches were conducted.  They refused to explain whether State Defendants are withholding

---

[4] *See* McMaster Requests 9-11, 13-19, 21.

documents on the basis of their various objections beyond pointing Plaintiffs to their written responses. They refused to explain what criteria they applied to determine whether materials were relevant to the case beyond referring Plaintiffs to their complaint. When Plaintiffs asked how they could possibly assess the sufficiency of State Defendants' productions when they would provide no information about what they did or did not do to gather documents, State Defendants told Plaintiffs to "be assured that we took this obligation seriously".

Plaintiffs once again attempted to start a productive discussion by sending State Defendants a letter on September 16, 2020, detailing the main issues on which the parties disagreed, providing the bases for Plaintiffs' positions and offering to have another conversation if State Defendants were willing to cooperate. (Barbur Decl., Ex. 7.) State Defendants responded to Plaintiffs' letter on September 22, 2020, confirming their positions are unchanged. (Barbur Decl., Exs. 8, 9.)

In light of State Defendants' refusal to engage in good faith in the discovery process, Plaintiffs now file the present motion to compel discovery.[5]

---

[5] This motion is timely under Local Rule 7.03 because Plaintiffs have brought this issue to this Court's attention "immediately after the issue[] raised thereby [is] ripe for adjudication". *See ContraVest Inc. v. Mt. Hawley Ins. Co.*, No. 9:15-cv-00304-DCN-MGB, 2016 WL 11200705, at *8 (D.S.C. Dec. 12, 2016), *report and recommendation adopted by* 273 F. Supp. 3d 607 (D.S.C. 2017), *mandamus granted in part on other grounds sub nom. In re Mt. Hawley Ins. Co.*, 773 F. App'x 771 (4th Cir. 2019). In particular, Plaintiffs learned on September 22, 2020, that State Defendants intend to stand behind their written responses and objections to Plaintiffs' Requests despite being presented with contrary case law, and Plaintiffs filed the present motion within two weeks of receiving this information.

This motion is also timely under Local Rule 37.01(A) because the parties have been actively trying to resolve the discovery dispute since State Defendants served their Responses and Objections on August 4, 2020, including through email correspondence on August 24, 2020, August 25, 2020, and August 26, 2020, (Barbur Decl. Ex. 6), a telephonic meet-and-confer on September 1, 2020, and letter correspondence on

## LEGAL STANDARD

In assessing motions to compel, courts are guided by a fundamental principle of civil litigation: "[t]he civil discovery process is to be engaged in cooperatively." *Mills v. E. Gulf Coal Preparation Co.*, LLC, 259 F.R.D. 118, 130 (S.D.W. Va. 2009). "[C]ourts depend on the parties to exchange documents and information in a manner that is consistent with the Rules and works towards 'the just, speedy, and inexpensive' resolution of disputes." *Johnson v. N. Carolina Dep't of Justice*, No. 5:16-CV-00679-FL, 2018 WL 5831997, at *1 (E.D.N.C. Nov. 7, 2018) (quoting Fed. R. Civ. P. 1).

Good-faith cooperation among civil litigants is not merely encouraged; it is required under the federal rules. Rule 26(g), in particular, requires counsel to certify that discovery responses are "consistent with [the federal] rules", Fed. R. Civ. P. 26(g)(1)(B), and it "imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37," Fed. R. Civ. P. 26(g) advisory committee's notes to 1983 Amendment. "It cannot

---

September 16, 2020, and September 22, 2020 (Barbur Decl, Exs. 7, 8, 9). The parties' correspondence from August 24 to August 26, 2020, evinces the parties' intent to extend the time to resolve issues related to State Defendants' Responses and Objections and the "[c]ompleteness of productions" (Barbur Decl., Ex. 6), and Plaintiffs' September 16, 2020, letter expressly extended the period of time for State Defendants to confirm they would produce complete discovery responses (Barbur Decl., Ex. 7). Plaintiffs did not definitively learn that further negotiations would be unproductive until receiving State Defendants' September 22, 2020, letter. (Barbur Decl., Exs. 8, 9.) This motion is therefore timely under Rule 37.01. *See East Bridge Lofts Property Owners Ass'n, Inc. v. Crum & Forster Specialty Ins. Co.*, No. 2:14-cv-2567-RMG, 2015 WL 12831731, at *1 (D.S.C. June 18, 2015) (holding motion to compel timely when filed after the close of discovery but within 21 days of confirming that "Defendant did not search the emails of certain employees for information related to Plaintiffs'" claims).

seriously be disputed that compliance with the 'spirit and purposes' of these discovery rules requires cooperation by counsel to identify and fulfill legitimate discovery needs . . . ." *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 357-58 (D. Md. 2008).

Ultimately, "the trial court has broad discretion to grant or deny a motion to compel discovery." *Ethox Chem., LLC v. Coca-Cola Co.*, No. 6:12-CV-01682-TMC, 2014 WL 2719214, at *1 (D.S.C. June 16, 2014) (Cain, J.). In exercising its discretion, however, the court places the "burden of persuasion" on "the party or person resisting discovery, not the party moving to compel discovery". *Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 243 (M.D.N.C. 2010) (collecting cases).

## ARGUMENT

As set forth above, State Defendants' document productions are facially deficient. Beyond these truncated productions, State Defendants insist they have no additional responsive documents with respect to McMaster Requests 6-7 and 22 and Leach Requests 5, 7, 12, 16-17, 24, 27-28, 30-31, 34 and 36. Moreover, State Defendants explicitly refused to search for, collect or produce documents responsive to McMaster Requests 10-11, 15-17 and 20 and Leach Requests 18-19 and 25-26, and implicitly did the same with respect to Leach Requests 20 and 29.

Given these deficiencies, Plaintiffs respectfully request an order compelling State Defendants to disclose their discovery efforts and to negotiate in good faith concerning a mechanism for compiling supplemental responses, including by agreeing on a reasonable set of search terms to be run over a reasonable set of custodians In particular, Plaintiffs respectfully request an order compelling production of documents

responsive to McMaster Requests 1-12, 15-17, 20 and 22 and Leach Requests 1-20, 24-31 and 34-36.

## I.    STATE DEFENDANTS SHOULD BE ORDERED TO DISCLOSE THEIR DISCOVERY EFFORTS TO DATE AND TO NEGOTIATE IN GOOD FAITH CONCERNING CUSTODIANS AND SEARCH TERMS.

The Federal Rules of Civil Procedure contemplate that attorneys will "work cooperatively to conduct discovery". *Gourdine v. Karl Storz Endoscopy-Am., Inc.*, 225 F. Supp. 3d 428, 430 (D.S.C. 2016) (quoting *Mancia*, 253 F.R.D. at 361 n.3). In particular, Rule 26 "anticipates a sharing of facts and, if necessary, discovery about the sources to be searched for ESI". *Burnett v. Ford Motor Co.*, No. 3:13-CV-14207, 2015 WL 4137847, at *8 (S.D.W. Va. July 8, 2015), *objections sustained on other grounds sub nom. by Johnson v. Ford Motor Co.*, No. 3:13-6529, 2015 WL 6758234 (S.D.W. Va. Nov. 5, 2015). State Defendants, however, have refused to discuss productively any of their discovery efforts thus far. Instead, when Plaintiffs asked State Defendants to disclose their search criteria and negotiate a reasonable set of search terms and custodians, State Defendants responded with two main objections—each of which is unavailing.

*First*, State Defendants contend that any agreement among litigants "on search terms, document custodians, and search parameters . . . is almost universally discussed and reached *prior* to the service of discovery requests". (Barbur Decl., Ex. 8 at 2.) State Defendants both declined to initiate such discussions after they received Plaintiffs' documents request and insist they have absolutely no obligation to cooperate now. This is contrary to well-established authority. *See, e.g.*, *Burnett*, 2015 WL 4137847, at *8 (explaining that "[w]hen two-way planning does not occur upfront, and questions about the adequacy of the document production subsequently arise, common

9

sense dictates that the party conducting the search must share information regarding . . . the search terms used in collecting relevant documents and the identities of the custodians from whom the documents were retrieved"). Indeed, it makes perfect sense that the party producing documents must, when requested, share information regarding its search, collection and production process, as "the party responsible for the search and production has the duty to demonstrate its reasonableness". *Id.* At bottom, the notion that parties must cooperate only at the outset of discovery and never again finds no support in the federal rules or in federal practice.

*Second*, State Defendants suggest that work product and/or attorney-client privilege prevents them from revealing their efforts to identify responsive materials. Again, well-established authority is directly to the contrary. *See FormFactor, Inc. v. Micro-Probe, Inc.*, No. C-10-03095 PJH (JCS), 2012 WL 1575093, at *7 n.4 (N.D. Cal. May 3, 2012) ("[D]isclosure of search terms . . . is not subject to any work product protection because it goes to the underlying facts of what documents are responsive to Defendants' document request, rather than the thought processes of Plaintiff's counsel."); *see also Burnett*, 2015 WL 4137847, at *10 (same); *Smith v. Life Invs. Ins. Co. of Am.*, No. 2:07-cv-681, 2009 WL 2045197, at *7 (W.D. Pa. July 9, 2009) (same).

Given the importance of cooperation during discovery, federal courts frequently direct parties to negotiate custodians and search terms when parties disagree about the sufficiency of a document production. *See, e.g.*, *Kunneman Props. LLC v. Marathon Oil Co.*, No. 17-CV-456-GKF-JFJ, 2019 WL 5188355, at *4 (N.D. Okla. Oct. 15, 2019) (directing parties to "meet and confer to . . . identify relevant search terms and relevant custodians"); *In re Sampedro*, No. 3:18 MC 47 (JBA), 2018 WL 6264834, at

\*3 (D. Conn. Nov. 30, 2018) (same); *Small v. Univ. Med. Ctr.*, No. 2:13-cv-0298-APG-PAL, 2018 WL 3795238, at \*51 (D. Nev. Aug. 9, 2018) (same); *Elhannon LLC v. F.A. Bartlett Tree Expert Co.*, No. 2:14-cv-262, 2017 WL 1382024, at \*9 (D. Vt. Apr. 18, 2017) (stating that "cooperation among counsel is central to ensuring compliance with discovery obligations" and directing parties to "meet and confer in order to reach an agreement regarding . . . search terms"); *Radian Asset Assur., Inc. v. Coll. of the Christian Bros. of N.M.*, No. CIV 09-0885 JB/DJS, 2010 WL 4338346, at \*2 (D.N.M. Sept. 15, 2010) (requiring that the parties "confer in good faith to negotiate search terms").

In line with these cases, Plaintiffs respectfully request that the Court enter an order: (a) requiring State Defendants to describe in good faith their efforts to collect and produce documents to date, including identifying which custodians files were searched and which search terms were used; and (b) requiring State Defendants to negotiate in good faith with Plaintiffs concerning supplemental responses to their deficient document productions, including by agreeing to a set of custodians over which State Defendants will run an agreed-to set of search terms. Such an order will enable State Defendants to supplement their current documents productions where appropriate and will assure Plaintiffs and this Court of the sufficiency of State Defendants' productions.

## II. STATE DEFENDANTS SHOULD BE ORDERED TO PROVIDE SUPPLEMENTAL DOCUMENT PRODUCTIONS WITH RESPECT TO THE FOLLOWING DISCOVERY REQUESTS.

The cooperation requested above is essential because State Defendants' productions with respect to nearly all Requests are inadequate. Plaintiffs thus also seek an order directing State Defendants to produce documents in response to McMaster

Requests 1-12, 15-17, 20 and 22 and Leach Requests 1-20, 24-31 and 34-36.  These

include requests seeking only "documents sufficient to show" (*i.e.*, McMaster Request 20

and Leach Requests 1-3, 8-9, 12, 16, 24, 28 and 34-35) as well as requests seeking a

broader group of documents (*i.e.*, McMaster Requests 1-12, 15-17 and 22 and Leach

Requests 4-7, 10-11, 13-15, 17-20, 25-27, 29-31 and 36).  State Defendants should be

directed to supplement their productions by running agreed-upon search terms over an

agreed-upon set of custodians.  In all cases, State Defendants should be instructed not to

withhold or refuse to collect responsive materials based on the improper objections

discussed below.

> **A.     State Defendants Should Not Be Permitted To Restrict Their
> Productions According to a Truncated Date Range and Should Be
> Required To Supplement Their Productions In Response to
> McMaster Requests 1-9, 12 and 22 and Leach Requests 1-17, 27-28,
> 30-31 and 34-36 Accordingly**

State Defendants generally object to producing documents dated outside a

limited range.  In particular, State Defendants refuse to produce materials created after

January 24, 2019, or (in the case of Defendant Leach) before January 27, 2018.  In

support, State Defendants insist that this case arises from "specific, identifiable,

enumerated actions" within that time period, such that earlier and later materials are

irrelevant.   (Barbur Decl., Ex. 4 at 2-3; Barbur Decl., Ex. 5 at 2-3.)

State Defendants' position is unfounded.  "[R]elevancy is not limited by

the exact issues identified in the pleadings, the merits of the case, or the admissibility of

discovered information", *Billioni v. Bryant*, No. 0:14-cv-03060-JMC, 2015 WL 9122776,

at *1 (D.S.C. Dec. 14, 2015) (quoting *Amick v. Ohio Power Co.*, No. 2:13-cv-06593,

2014 WL 468891, at *1 (S.D.W.Va. Feb. 5, 2014)), nor is it "limited to materials upon

which liability can or cannot be founded", *David v. Alphin*, No. 3:07-cv-11, 2010 WL

1404722, at *6 (W.D.N.C. Mar. 30, 2010). Material that predates or postdates allegedly unlawful conduct may be essential "to understand[ing] the original decision[s] that led to" State Defendants' unlawful actions, *id.*, and is therefore well within the scope of discoverable materials, *see Billioni*, 2015 WL 9122776, at *1 ("[I]nformation is relevant, and thus discoverable, if it bears on, or . . . reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." (quoting *Amick*, 2014 WL 468891, at *1)). And in any event, the premise that this case is limited to specific actions between 2018 and 2019 is itself wrong, as evidenced by the allegations of "continuing" violations and requests for injunctive relief in Plaintiffs' complaint. (Compl. ¶¶ 113, 140, Prayer for Relief C, E.)

Indeed, documents produced by Federal Defendants in this case showcase the impropriety of State Defendants' approach. For instance, Miles Coleman, counsel for Defendant McMaster here, sent an email on July 6, 2017, to a staffer at the U.S. Department of Health and Human Services ("HHS") on behalf of Miracle Hill, noting that he believes Miracle Hill's compliance with the non-discrimination regulations would significantly burden Miracle Hill's free exercise of its religion and asking "what, if anything, we or HHS could do to alleviate the burden being imposed on my client and on other religious entities providing foster care who are being similarly burdened by this regulation". The HHS staffer then forwarded the message along to an HHS Office for Civil Rights employee just days after DSS rescinded Miracle Hill's permanent license. This email—which concerns issues and entities at the heart of this case and indicates that the scope of the problem goes beyond just Miracle Hill—makes clear the relevancy of

documents and communications that predate January 27, 2018 (Defendant Leach's proposed start date).

State Defendants also generally object to Plaintiffs' requests "to the extent they purport to impose obligations that are not proportionate to the needs of this lawsuit or which would result in the imposition of an Undue Burden or Expense". (Barbur Decl., Ex. 4 at 5; Barbur Decl., Ex. 5 at 5.) Yet State Defendants have offered no reason to believe these requests are disproportionate, and no basis for concluding they are unduly burdensome.

Accordingly, the Court should enter an order requiring State Defendants to supplement its productions in response to the subset of Requests where State Defendants produced anything at all (namely, McMaster Requests 1-5, 8-9 and 12; Leach Requests 1-4, 6, 8-11 and 13-15) consistent with the date range specified in Plaintiffs' Requests. Plaintiffs cannot determine based on State Defendants' responses whether they have also improperly withheld documents responsive to any other Requests addressed in this motion based on the artificial date limits discussed above, including with respect to the many requests to which State Defendants asserted they have no documents (or additional documents) in their possession, custody or control (*i.e.*, McMaster Requests 6-7 and 22 and Leach Requests 5, 7, 12, 16-17, 27-28, 30-31 and 34-36). To the extent they have, they should be ordered supplement their document productions for those requests, as well.

**B.    Defendant Leach Should Be Required To Supplement His Response to Request 29.**

In Request 29, Plaintiffs seek "[d]ocuments concerning the practices of Miracle Hill and other-faith CPAs concerning the practices of Miracle Hill and other faith-based CPAs concerning religious instruction or prayer involving youth in their care". (Barbur Decl., Ex. 2 at 18.)  In response, Defendant Leach simply refers Plaintiffs to DSS Regulation 114-550(H)(11), which states that "[r]eligious education shall be in accordance with the expressed wishes of the natural parents, if such wishes are expressed". (*Id.*)  This response in no way sufficiently addresses Plaintiffs' request for documents in Defendant Leach's custody, possession or control and should be supplemented by running an ESI search over an agreed-upon set of search terms and custodians.  Accordingly, Defendant Leach should be ordered to produce documents responsive to Request 29.

**C.    State Defendants Should Be Required To Supplement Their Responses to McMaster Requests 10-11, 15-17 and 20 and Leach Requests 18-20 and 25-26.**

With respect to each of these Requests, State Defendants either expressly state that they have "not searched for, collected, reviewed, or produced materials responsive to [the] Request", or else they have raised objections without any accompanying production and without noting that no responsive materials exist in their possession, custody or control.  In either case, State Defendants raise a litany of objections in response to each Request, often making it impossible to determine the precise basis on which each Defendant is withholding or refusing to search for documents.  Each of the objections made is meritless, and therefore State Defendants

should be ordered to supplement their responses to each of the above Requests without relying on improper objections.

### 1.    Relevance.

State Defendants claim the materials requested in McMaster Requests 10-11, 15-17 and 20 and Leach Requests 18-19 are irrelevant to the claims or defenses in this case.  Given the topics addressed in each of these requests (set forth below), State Defendants' objections make little sense:

- Documents sufficient to show any and all steps taken by DSS to prevent discrimination by Miracle Hill or any other CPA against prospective foster parents based on religion or sexual orientation (McMaster Request 20);

- Documents concerning the Proposed Rulemaking (McMaster Request 10; Leach Request 18) and the Nonenforcement Policy (McMaster Request 11, Leach Request 19);[6]

- Documents concerning Miracle Hill's or any other CPA's practice of refusing to accept or approve foster parents who are same-sex couples or LGBT individuals (McMaster Request 15), or who practice a religion other than Protestant Christianity or who practice no religion at all (McMaster Request 16); and

---

[6] "Proposed Rulemaking" and "Nonenforcement Policy" are defined terms in Plaintiffs' Requests referring, respectively, to HHS's proposed rulemaking to eliminate the provision in 45 C.F.R. § 75.300(c) that prohibits subgrantees from selecting among prospective foster parents based on religion or sexual orientation and HHS's notification to the public that it would not enforce those provisions pending finalization of the proposed rule change.  (Barbur Decl., Ex. 1 at 4; Barbur Decl., Ex. 2 at 4.)

- Documents concerning families who were denied services by Miracle Hill or any other CPA because they do not practice a particular religion or because they are same-sex couples or LGBT individuals (McMaster Request 17).

As the above list demonstrates, each of the requests concern Defendants' and CPAs' discriminatory actions against LGBT individuals and same-sex couples and individuals who do not share the CPA's faith, and each request is therefore central to the claims and defenses in this case. Thus, to the extent any documents were withheld or not collected on the basis of this objection, State Defendants should be ordered to produce responsive documents without relying on the relevancy objections addressed above.

## 2.    Undue Burden.

State Defendants claim that McMaster Requests 10-11, 15-17 and 20 and Leach Requests 25-26 are unduly burdensome and "excessively expansive". This objection, too, is unavailing.

Although it is not entirely clear, Defendant McMaster's "undue burden" objection appears to rest principally on "the technological constraints of the State's information technology system", which apparently only allows one search term to be run at a time. (Barbur Decl., Ex. 4 at 3.) This is not a proper basis for declining to search for responsive documents. A party can decline to produce ESI only if the ESI is "not reasonably accessible because of undue burden or cost". Fed. R. of Civ. P. 26(b)(2)(B). In other words, the party seeking relief from producing ESI must establish that "the burdens and costs of searching for, retrieving and producing documents and information which it holds electronically . . . make the documents and information inaccessible". *F.D.I.C. v. Baldini*, No. 1:12-7050, 2014 WL 1302479, at *7 (S.D. W. Va. Mar. 28,

2014); *Westdale Recap Props., Ltd. v. NP/I & G Wakefield Commons, L.L.C.*, No. 5:11-CV-659-D, 2013 WL 5424844, at *3 (E.D.N.C. Sept. 26, 2013) (party requesting relief from request "has the burden of demonstrating such inaccessibility on a motion to compel or for a protective order"). While the State's IT system may not be the most efficient, Defendant McMaster has failed to show that the burden of running a search is so great as to make the documents inaccessible.

As to McMaster Requests 15-17 and Leach Requests 25-26, in particular, State Defendants' burden argument seems to turn on the fact that these requests lack a geographic restriction and/or a limit on the definition of "services" at issue in each request. Under the Instructions, however, State Defendants were required to produce documents "responsive to the part of the Request to which [they] did not object"—*i.e.*, at the very least, documents relevant to South Carolina and to the "services" most obviously at issue in this case (namely, foster care and adoption).

Thus, to the extent either State Defendant failed to search for, collect or produce documents potentially responsive to Plaintiffs' Requests on "undue burden" grounds, they should be ordered to supplement their productions accordingly.

### 3.    Vague and Ambiguous.

State Defendants also object to McMaster Requests 15-17 and 20 and Leach Requests 20 and 25-26 on the ground that certain terms contained therein are "vague and ambiguous", including, with respect to McMaster Request 20, that the term "documents sufficient to show" is "undefined" and an improper attempt to seek information rather than documents. As an initial matter, Plaintiffs are unaware of any case law suggesting a request for "documents sufficient to show" is a request for

18

information rather than, as the Request states, a request for documents.  And more broadly, State Defendants are required to give terms their ordinary meanings and to produce documents accordingly.  *See Deakins v. Pack*, No. 1:10-1396, 2012 WL 242859, at *12 (S.D. W. Va. Jan. 25, 2012).  None of the terms and phrases to which State Defendants object (*i.e.*, "document sufficient to show", "religious accommodations", the "practice of refusing to accept or approve" prospective foster parents, or "services") is a technical term warranting further explication.  State Defendants should therefore be directed to produce documents responsive to these requests in accordance with the plain meaning of the words used therein.

### 4.    Documents in the Possession of Other Parties or Third Parties

With respect to Requests 10-11, 15-17 and 20, Defendant McMaster refuses to search for, collect or produce documents purportedly more easily obtainable from non-parties to the suit.[7]  The notion that Plaintiffs should subpoena third parties for documents within Defendant McMaster's control contravenes basic discovery principles. *See, e.g.*, *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, No. 05-2192-JWL, 2008 WL 2699908, at *1 (D. Kan. July 3, 2008) (rejecting a party's argument that it didn't have to comply with a discovery request because the request could have been made to a third party).  So, too, does Defendant McMaster's repeated refusal to search for documents that are

---

[7] In his September 22, 2020, letter to Plaintiffs, Defendant McMaster indicated that certain materials are in the sole custody of third parties, "not the Governor".  (Barbur Decl., Ex. 8 at 3.)  Plaintiffs obviously do not expect Defendant McMaster to produce documents he does not possess; however, he does have an obligation to search for responsive documents, and if they are in his possession, produce them to Plaintiffs.

purportedly in DSS's control. Even if DSS also has relevant documents, Defendant

McMaster still must search for potentially responsive documents held by his office.[8]

Again, to the extent Defendant McMaster withheld or failed to search for

responsive materials on these bases, he should be directed to supplement his document

production with the missing material.

*    *    *

The federal rules require that State Defendants cooperate with Plaintiffs

during discovery. In the circumstances present here, where State Defendants have

provided deficient productions and refused to take reasonable, good faith steps to resolve

Plaintiffs' discovery concerns, the only viable next step is to strike State Defendants'

baseless objections and direct State Defendants to supplement their productions to

McMaster Requests 1-12, 15-17, 20 and 22 and Leach Requests 1-20, 24-31 and 34-36.

In gathering responsive materials, State Defendants should be directed to negotiate in

good faith with Plaintiffs, including by agreeing on a set of search terms and custodians

to apply to McMaster Requests 1-12, 15-17 and 22 and Leach Requests 4-7, 10-11, 13-

15, 17-20, 25-27, 29-31 and 36.

---

[8] In his responses and objections, Defendant McMaster also seemed to suggest that documents held within the Office of the Governor of South Carolina are not within Governor McMaster's custody or control. This contradicts well-established Supreme Court and federal court precedent. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also Tyler v. Suffolk Cnty.*, 256 F.R.D. 34, 37 (D. Mass. 2009); *Green v. Fulton*, 157 F.R.D. 136, 142 (D. Me. 1994). In his September 22, 2020, letter to Plaintiffs, Defendant McMaster disavowed this position and said "the Governor simply objects to a definition in [Plaintiffs'] Request for Documents to the extent that the definition implies that the Office of the Governor—a department of the State—is a party to this suit". (Barbur Decl., Ex. 8 at 3.) Plaintiffs do not imply that the Office of the Governor is a party to this suit. Rather, Plaintiffs simply seek confirmation that Defendant McMaster will produce all relevant documents that are in his custody or control, including those held within the Office of the Governor of South Carolina.

20

Because of the complexity stemming from the number of Requests at issue and the number of issues relating to them, Plaintiffs have attached a table in Appendix A summarizing the requested relief.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion to compel discovery.

## LOCAL CIVIL RULE 7.02 (D.S.C.) CERTIFICATION

The undersigned counsel for Plaintiffs hereby certifies that they attempted in good faith to confer with State Defendants' counsel in an effort to resolve the issues raised in this motion prior to its filing as described in greater detail herein above.


October 5, 2020


*/s/ Susan K. Dunn*
Susan K. Dunn (Federal Bar No. 647)
AMERICAN CIVIL LIBERTIES UNION
OF SOUTH CAROLINA FOUNDATION
P.O. Box 20998
Charleston, SC 29413
(843) 282-7953
sdunn@aclusc.org

South Carolina Equality Coalition, Inc.
Nekki Shutt (Federal Bar No. 6530)
M. Malissa Burnette (Federal Bar No. 1616)
BURNETTE SHUTT & MCDANIEL, PA
912 Lady Street, 2nd floor
P.O. Box 1929
Columbia, SC 29202
(803) 850-0912
mburnette@burnetteshutt.law
nshutt@burnetteshutt.law

Peter T. Barbur (admitted *pro hac vice*)
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
pbarbur@cravath.com

Leslie Cooper (admitted *pro hac vice*)

22

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2633
lcooper@aclu.org

Daniel Mach (admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street NW
Washington, DC 20005
(202) 675-2330
dmach@aclu.org

M. Currey Cook (admitted *pro hac vice*)
Cathren Cohen (admitted *pro hac vice*)
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005
(212) 809-8585
ccook@lambdalegal.org
ccohen@lambdalegal.org

Karen L. Loewy (admitted *pro hac vice*)
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
1776 K Street NW, 8th Floor
Washington, DC 20006-2304
(202) 804-6245
kloewy@lambdalegal.org


*Attorneys for Plaintiffs*