Exhibit 5

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | | |
|---|---|---|
| Eden Rogers et al., | ) | |
| | ) | Civil Action No. 6:19-cv-01567-TMC |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **DEFENDANT MICHAEL LEACH'S** |
| | ) | **RESPONSES AND OBJECTIONS TO** |
| United States Department of Health and | ) | **PLAINTIFFS' FIRST SET OF REQUESTS** |
| Human Services, et al., | ) | **FOR THE PRODUCTION OF DOCUMENTS** |
| | ) | |
| Defendants. | ) | |

Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendant Michael Leach, in his official capacity as State Director of the South Carolina Department of Social Services, submits the following responses and objections to Plaintiffs' First Set of Requests for Production of Documents ("RFPs") served on June 4, 2020. This Defendant will be referred to herein as "DSS."

As an initial matter, Plaintiffs' RFPs seem calculated repeatedly to violate and overstep the bounds of the Rules of Civil Procedure in an effort to obtain documents and information that are not relevant to the claims and defenses at issue in this suit, are unlikely to lead to discoverable information, and are outside the scope of discovery articulated by Rules and applicable case law. For the sake of brevity, and to avoid repeating the same lengthy objections every time an additional request commits the same violation, DSS articulates below certain objections applicable to multiple requests and then incorporates these objections by reference into the specific responses where applicable.

## OBJECTIONS APPLICABLE TO ALL REQUESTS

Plaintiffs' Complaint challenges the constitutionality of specific actions of the Defendants, including specifically identified actions of DSS. Plaintiffs' RFPs, however, seek the production

1

of materials from January 1, 2017 to the present.[1] *See* RFPs at 6, ¶ 10. However, the actions of DSS which are challenged in this action occurred no earlier than January 27, 2018, if then. For this reason, DSS objects to all the Requests to the extent they seek documents prior to January 27, 2018, except to the extent such documents have already been provided pursuant to prior FOIA requests. Accordingly, DSS has not collected, reviewed, or produced documents prior to that date because such documents are not relevant to any claim or defense asserted in the case and are not proportional to the needs of the case.[2]

DSS further objects to the RFPs to the extent they seek materials dating "to the present." *See* RFPs at 6, ¶ 10. The causes of action asserted in this action arise from specific, identifiable, enumerated actions specifically including a letter sent by Governor McMaster on February 27, 2018); an Executive Order issued by Governor McMaster on March 13, 2018; and a response letter sent to Governor McMaster on January 23, 2019. The Complaint claims the alleged constitutional violations arose immediately from and occurred, if at all (which is not conceded), at the time of the challenged actions. Indeed, Plaintiffs specifically claim it was *these actions* that violated the Establishment and Equal Protection Clauses. The nature and effect of the challenged actions are discernable from the face of the documents referenced above, and documents and materials postdating them are not relevant to Plaintiffs' claims. Accordingly, such requests are not relevant or proportional to the needs of the case and would impose an undue burden, *see* Rule 26(b)(1), Fed. R. Civ. P., and except to the extent such documents have already been provided

---

[1] Two Requests seek materials from an even earlier date. *See* RFP Nos. 17 and 21 (seeking materials dating from January 1, 2015 and January 1, 2016 to the present, respectively).

[2] Indeed, the earliest alleged knowledge or actions by *any* Defendant appears to be late 2017 or early 2018, *see* Complaint, ¶¶ 54–56. One could argue that documents and materials predating any Defendants' knowledge of the facts alleged in the Complaint are not relevant to the claims and defenses in this litigation nor are they likely to lead to discoverable information.

pursuant to prior FOIA requests, DSS has not collected, reviewed, or produced documents from on or after January 24, 2019.

## OBJECTIONS APPLICABLE TO MORE THAN ONE REQUEST

Because certain of the objections asserted below are applicable to multiple Requests, DSS explains the objections here and, in the interest of efficiency, refers to them in shorthand form in the specific objections and responses to specific Requests that follow.

1.    Materials prepared, sent, received, or memorializing information prepared or communicated **"In Anticipation of Litigation."** The likelihood of litigation relating to the interpretation or enforcement of 45 C.F.R. § 75.300 was apparent to Governor McMaster and his staff from the time they first became aware of the regulation. DSS was equally aware of this likelihood of litigation. Accordingly, documents and communications among and between the Director of DSS, his or her staff, and other State officers and employees relating to that regulation that were prepared for or which memorialize deliberations and communications made in anticipation of such litigation are exempt from discovery pursuant to Rule 23(b)(3), Fed. R. Civ. P., even if such documents or communications would not otherwise be independently protected by the attorney-client privilege. DSS objects to the production of such documents on that basis.

2.    Materials whose collection, review, and production would impose an **"Undue Burden or Expense."** DSS objects, in some instances, to specific Requests on the basis that responding to the Request or specific portions thereof would impose an undue burden or expense in violation of Rule 26(b)(1), Fed. R. Civ. P. This objection relates especially, but not exclusively, to the burden and expense involved in searching for, collecting, reviewing, and producing certain electronically stored documents. The undue burden and expense is caused, in

some instances, by the extraordinarily broad scope of Plaintiffs' RFPs. Request 20, for example, seeks "[d]ocuments regarding religious accommodations for faith-based foster care or adoption agencies," but does define "religious accommodations" or "faith-based" and does not limit the scope of the Request to licensed Child Placing Agencies ("CPAs") in South Carolina.

3.      Requests seeking "**Documents Sufficient to Show**" a fact. Requests 1, 2, 3 , 8, 9, 12, 24, 28, 32 and 34 request "[d]ocuments sufficient to show" certain facts. That phrase is not defined in the RFPs and, further, is vague and ambiguous. In addition, to the extent the Requests appear to seek information as opposed to Documents or Communications, such information (assuming it is relevant and not otherwise objectionable or privileged) should be sought by way of an Interrogatory rather than by a request to produce some unknown quantum of documents "sufficient" to establish a fact.

## OBJECTIONS TO DEFINITIONS

DSS incorporates by reference the Objections to Definitions found in any other Defendants' Responses and Objections to the RFPs to the extent to which the definitions to which other Defendants have objected are identical to those found in the RFPs served on the Governor (though in some instances found in different numbered paragraphs of the RFPs' Definitions), including the definitions found in paragraphs 5, 6, 7, and 16 of the RFPs served on DSS, to the extent they differ from or purport to impose an obligation broader than that found in Rules 26(b)(1) or 34(a)(1), Fed. R. Civ. P., or any other applicable Rule of Civil Procedure.

DSS further objects to the definition of the terms "You" and "Your" found in Definition 18 of the RFPs served on Defendant Leach to the extent that the definition would impose on DSS any obligation to search for, collect, review, or produce documents in the possession, custody, or

control of individuals, offices, departments, and divisions beyond the immediate employees of DSS.

## OBJECTIONS TO INSTRUCTIONS

DSS incorporates by reference the Objections to Instructions found in any other Defendants' Responses and Objections to the RFPs to the extent to which the instructions to which other Defendants have objected are identical to those found in the RFPs served on the Governor, including the instructions found in paragraphs 2, 3, 4, 6, 8, 13, and 14 of the RFPs served on DSS, to the extent they differ from or purport to impose an obligation broader than that found in Rules 26 or 34, Fed. R. Civ. P., or any other applicable Rule of Civil Procedure, and to the extent they purport to impose obligations that are not proportionate to the needs of this lawsuit or which would result in the imposition of an Undue Burden of Expense.

## RESPONSES

1.  Documents sufficient to show (i) the identity of the faith-based child placement agencies ("CPAs") that serve the South Carolina Region 1 counties of Abbeville, Anderson, Cherokee, Greenville, Greenwood, Laurens, Newberry, Oconee, Pickens and Spartanburg; (ii) whether the activities of any of those CPAs are limited to or focused on serving children with special needs requiring therapeutic foster care; (iii) the age range of the children for whom each of those CPAs recruits, screens and supports prospective foster families; and (iv) the number of foster children who have been placed with families that have been recruited, screened and supported by each of those CPAs over the last two years.

**RESPONSE #1:** This request is identical or substantially identical to Request 1 in the January 31, 2019 FOIA letter sent by one of Plaintiff's counsel to DSS. The documents supplied by DSS in response to that request are included in the document set served concurrently herewith and

5

identified by Bates Numbers 10545-B-001 through -265, subject to the "Objection Applicable to All Requests," the "Objections to Definitions and Instructions," and any applicable privilege or protection.

2.   Documents sufficient to show the differences between the recruitment, screening and support services to show the differences provided to prospective foster and adoptive families by Miracle Hill Ministries ("Miracle Hill"), and those provided to prospective foster and adopted families by DSS and other non-therapeutic CPAs in Region 1.

**RESPONSE #2:** This request is identical or substantially identical to Request 2 in the January 31, 2019 FOIA letter sent by one of Plaintiff's counsel to DSS. The documents supplied by DSS in response to that request are included in the document set served concurrently herewith and identified by Bates Numbers 10545-B-001 through -265, subject to the "Objection Applicable to All Requests," the "Objections to Definitions and Instructions," and any applicable privilege or protection.

3.   Documents sufficient to show the average length of time for a prospective foster or adoptive family working with each CPA listed in response to Request 1 to become licensed and the average length of time for a prospective foster or adoptive family working directly with DSS to become licensed.

**RESPONSE #3:** This request is identical or substantially identical to Request 3 in the January 31, 2019 FOIA letter sent by one of Plaintiff's counsel to DSS. The documents supplied by DSS in response to that request are included in the document set served concurrently herewith and identified by Bates Numbers 10545-B-001 through -265, subject to the "Objection Applicable to All Requests," the "Objections to Definitions and Instructions," and any applicable privilege or protection.

4. Documents concerning the McMaster Request, including, but not limited to,

Communications between any person at DSS, including, but not limited to, Michael Leach, and (i) any person at Miracle Hill, (ii) any person at HHS, (iii) any person at Governor McMaster's office, including, but not limited to, Governor McMaster, (iv) any person at the office of any state or federal elected officials, (v) any member of the public or (vi) any person at DSS, including, but not limited to, Michael Leach.

**RESPONSE #4:** This request is identical or substantially identical to Request 4 in the January 31, 2019 FOIA letter sent by one of Plaintiff's counsel to DSS. The documents supplied by DSS in response to that request are included in the document set served concurrently herewith and identified by Bates Numbers 10545-B-001 through -265, subject to the "Objection Applicable to All Requests," the "Objections to Definitions and Instructions," and any applicable privilege or protection. In addition, see Bates Numbers 10545-C-001 through 020, -025 through -028, -033 through -035, and 039 through 048.

5. Documents concerning the McMaster Executive Order, including, but not limited to,

Communications between any person at DSS, including, but not limited to, Michael Leach, and (i) any person at Miracle Hill, (ii) any person at HHS (iii) any person at Governor McMaster's office, including, but not limited to, Governor McMasters, (iv) any person at the office of any state or federal elected officials, (v) any member of the public or (vi) any other person at DSS, including, but not limited to, Michael Leach.

**RESPONSE #5:** DSS states that other than any documents produced pursuant to other Requests that may contain such information, there are no additional documents in its custody, possession, or control that are responsive to this Request.

6. Documents referencing the ACF Letter or reflecting Communications concerning the ACF

Letter, including, but not limited to, interpretations of the ACF Letter of the scope of the exception granted thereby.

**RESPONSE #6:** This request is identical or substantially identical to Request 5 in the January 31, 2019 FOIA letter sent by one of Plaintiff's counsel to DSS. The documents supplied by DSS in response to that request are included in the document set served concurrently herewith and identified by Bates Numbers 10545-B-001 through -265, subject to the "Objection Applicable to All Requests," the "Objections to Definitions and Instructions," and any applicable privilege or protection.

7.   Documents referencing or reflecting Communications concerning any factual assertions in the ACF Letter regarding the South Carolina foster care program, including, but not limited to, the assertions that (i) there are more than 4,000 children in foster care in South Carolina, (ii) Miracle Hill recruits 15% of the families in the South Carolina foster care program, (iii) South Carolina would have difficulty continuing to place children in need of foster care without the participation of faith-based CPAs in the program and (iv) without the exception requested in the McMaster Request certain faith-based CPAs would have to abandon their religious beliefs or forgo licensure and funding, which would cause a hardship to such organizations.

**RESPONSE #7:** DSS states that other than any documents produced pursuant to other Requests that may contain such information, there are no additional documents in its custody, possession, or control that are responsive to this Request.

8.   Documents sufficient to show revisions or additions to the DSS human Services Policy and procedure, including all draft revisions, made after March 13, 2018 pursuant to the McMaster Executive Order.

**RESPONSE #8:** This request is identical or substantially identical to Request 1 in the July 11, 2019

FOIA letter sent by one of Plaintiff's counsel to DSS. The documents supplied by DSS in response to that request are included in the document set served concurrently herewith and identified by Bates Numbers 10545-B-001 through -265, subject to the "Objection Applicable to All Requests," the "Objections to Definitions and Instructions," and any applicable privilege or protection.

9.    Documents sufficient to show amendments or additions to the South Carolina Code of Regulations with regard to foster care, made after March 13, 2018 pursuant to the McMaster Executive Order.

**RESPONSE #9:** This request is identical or substantially identical to Request 2 in the July 11, 2019 FOIA letter sent by one of Plaintiff's counsel to DSS. The documents supplied by DSS in response to that request are included in the document set served concurrently herewith and identified by Bates Numbers 10545-B-001 through -265, subject to the "Objection Applicable to All Requests," the "Objections to Definitions and Instructions," and any applicable privilege or protection.

10. Copies of DSS Form 1520, Annual Report of Children under Care or Supervision of Licensed Child Placing Agencies, for the years 2019, 2018, 2017 and 2016 for Miracle Hill, Church of God Home for Children, Connie Maxwell Children's Home, Tamassee DAR School and Thornwell Home of Children.

**RESPONSE #10:** This request is identical or substantially identical to Request 3 in the July 11, 2019 FOIA letter sent by one of Plaintiff's counsel to DSS. The documents supplied by DSS in response to that request are included in the document set served concurrently herewith and identified by Bates Numbers 10545-B-001 through -265, subject to the "Objection Applicable to All Requests," the "Objections to Definitions and Instructions," and any applicable privilege or protection.

11. Copies of the financial reports certified by a Certified Public Accountant for the fiscal years

of 209, 2018, 2017 and 2016 for Miracle Hill, Church of God Home for Children, Connie Maxwell

Children's Home, Tamassee DAR School and Thornwell Home of Children.

**RESPONSE #11:** This request is identical or substantially identical to Request 4 in the July 11,

2019 FOIA letter sent by one of Plaintiff's counsel to DSS. The documents supplied by DSS in

response to that request are included in the document set served concurrently herewith and

identified by Bates Numbers 10545-B-001 through -265, subject to the "Objection Applicable to All

Requests," the "Objections to Definitions and Instructions," and any applicable privilege or

protection.

12. Documents sufficient to show the amount of state and federal funding received by Miracle

Hill, Church of God Home for Children, Connie Maxwell Children's Home, Tamassee DAR School

and Thornwell Home of Children.

**RESPONSE #12:** DSS objects to this request. First, the Request seeks "Documents

sufficient to show" an alleged fact, such term and request are undefined, vague, and ambiguous.

DSS further objects because the materials that may be sought by this Request are not relevant to

the claims and defenses of this Case, which concern only the constitutionality of specific of

Defendants' actions, regardless of whether, when, and in what amounts specific CPAs have been

the recipients of state and/or federal funds.

In addition, even assuming such materials or information were relevant to the claims and

defenses of the Case, DSS objects to the Request as overbread in that it does not limit its scope to

funds received by CPAs from DSS for tasks and services fundable by Title VI-E and related

specifically to the private agencies' work as CPAs (as opposed to other tasks or services they may

10

provide and for which they may receive payment from DSS).[3]

Finally, DSS states that there are no additional documents in its custody, possession, or control that are responsive to this Request.

13. Copy of Miracle Hill's Foster Care Manual.

**RESPONSE #13:** This request is identical or substantially identical to Request 5 in the July 11, 2019 FOIA letter sent by one of Plaintiff's counsel to DSS. The documents supplied by DSS in response to that request are included in the document set served concurrently herewith and identified by Bates Numbers 10545-B-001 through -265, subject to the "Objection Applicable to All Requests," the "Objections to Definitions and Instructions," and any applicable privilege or protection.

14. Copies of the current contracts and/or licensing agreements between DSS and all faith-based CPAs identified in Your response to RFP. 1.

**RESPONSE #14:** This request is identical or substantially identical to Request 6 in the July 11, 2019 FOIA letter sent by one of Plaintiff's counsel to DSS. The documents supplied by DSS in response to that request are included in the document set served concurrently herewith and identified by Bates Numbers 10545-B-001 through -265, subject to the "Objection Applicable to All Requests," the "Objections to Definitions and Instructions," and any applicable privilege or protection.

15. Document regarding CPAs accepting or approving same-sex couples or LGBT people as foster parents, including, but not limited to, Communications between DSS employees, including, but not limited to, Michael Leach; between DSS employees and employees of Governor

---

[3] Some CPAs in South Carolina also provide other services for which they may receive state or federal reimbursements, including, for example, residential foster care services, transportation services, vocational training, continued support and services for youths who age out of foster care, adult literacy programs, alcohol and drug rehabilitation programs, and more.

11

McMaster's office, including but not limited to, Governor McMaster; and between DSS employees and employees of HHS.

**RESPONSE #15:** This request is identical or substantially identical to Request 7 in the July 11, 2019 FOIA letter sent by one of Plaintiff's counsel to DSS. The documents supplied by DSS in response to that request are included in the document set served concurrently herewith and identified by Bates Numbers 10545-B-001 through -265, subject to the "Objection Applicable to All Requests," the "Objections to Definitions and Instructions," and any applicable privilege or protection.

16. Documents sufficient to identify all CPAs in the State (not limited to region 1) that do not accept or approve prospective foster familied headed by same-sex couples of LGBT individuals or that do not adhere to particular religious beliefs.

**RESPONSE #16:** DSS states that other than any documents produced pursuant to other Requests that may contain such information, there are no additional documents in its custody, possession, or control that are responsive to this Request.

17. Documents reflecting DSS actions, including, but not limited to, notifications, letters, complaints, revocations of licenses or any other disciplinary measures against any CPA or other South Carolina beneficiary of HHS funds for failure to abide by state or federal non-discrimination, requirements, including, but not limited to, the HHS Grants Rule, from 2016 to the present. For the elimination of doubt, the RFP includes any and all Documents related to DSS action against Miracle Hill.

**RESPONSE #17:** : DSS states that other than any documents produced pursuant to other Requests that may contain such information, there are no additional documents in its custody, possession, or control that are responsive to this Request.

18. Documents concerning the Proposed Rulemaking, including, but not limited to, Communications between any person at DSS, including, but not limited to, Michael Leach, and (i) any person at Miracle Hill, (ii) any person at HHS, (iii) any person at Governor McMaster's office, including, but not limited to, Governor McMaster, (iv) any person at the office of any state or federal elected officials, (v) any member of the public or (vi) any other person at DSS, including, but not limited to Michael Leach.

**RESPONSE #18:**  DSS objects to this request because it is irrelevant to the claims and defenses of the Case. Plaintiffs' alleged injury predates and does not arise from the Proposed Rulemaking, which postdates and is not mentioned in the Complaint. Further, the Proposed Rulemaking and related documents, if any exist, sought by this Request occurred or were prepared or communicated long after any Defendants' actions challenged in this Case.

19. Documents concerning the Nonenforcement Policy, including, but not limited to, Communications between any person at DSS, including, but not limited to, Michael Leach, and (i) any person at Miracle Hill, (ii) any person at HHS, (iii) any person at Governor McMaster's office, including, but not limited to, Governor McMaster, (iv) any person at the office of any state or federal elected officials, (v) any member of the public or (vi) any other person at DSS, including, but not limited to Michael Leach.

**RESPONSE #19:** DSS objects to this request because it is irrelevant to the claims and defenses of the Case. Plaintiffs' alleged injury predates and does not arise from the Nonenforcement Policy, which postdates and is not mentioned in the Complaint. Further, the Nonenforcement Policy and related documents, if any exist, sought by this Request occurred or were prepared or communicated long after any Defendants' actions challenged in this Case.

20. Documents regarding religious accommodations for faith-based foster care and/or adoption

agencies.

**RESPONSE #20:** DSS objects to this request because it is vague, ambiguous, and so overbroad as to be not proportional to the needs of the Case. Specifically, the terms "religious accommodations" and "faith-based" are not defined, and the unlimited geographic scope of the information and materials sought by the Request is not proportionate to the needs of the Case and thus imposes an Undue Burden or Expense. DSS further notes that any materials that might be both potentially responsive to this Request *and* relevant to the factual and legal claims of this Case would (if not privileged or otherwise protected) be within the responses to other Requests.

21. Documents concerning the impact of the granting of the McMaster Request on (i) the availability of foster families(ii) the diversity of eligible, willing and able foster families, (iii) the ability of non-Christian and/or LGBT families to serve as foster parents and (iv) individual exercise of religious freedom.

**RESPONSE #21:** DSS states there are no documents in its custody, possession, or control that are responsive to this Request.

22. Documents concerning the impact of revisions or additions to the DSS Human Services policy and Procedures Manual, or any other DSS policy or procedure, made after March 13, 2018 pursuant to the McMaster Executive Order on (i) the availability of foster families(ii) the diversity of eligible, willing and able foster families, (iii) the ability of non-Christian and/or LGBT families to serve as foster parents and (iv) individual exercise of religious freedom.

**RESPONSE #22:** DSS states there are no documents in its custody, possession, or control that are responsive to this Request.

23. Documents concerning the impact of amendments or additions to the South Carolina Code of Regulations with regard to foster care, made after March 13, 2018 Pursuant to the McMaster

14

Executive Order on (i) the availability of foster families(ii) the diversity of eligible, willing and able foster families, (iii) the ability of non-Christian and/or LGBT families to serve as foster parents and (iv) individual exercise of religious freedom.

**RESPONSE #23:** DSS states there are no documents in its custody, possession, or control that are responsive to this Request.

24. Documents sufficient to show the eligibility requirements each CPA identified in response to RFP No. 1 applies to prospective foster parents seeking assistance in obtaining licenses.

**RESPONSE #24:** DSS states that other than any documents produced pursuant to other Requests that may contain such information, there are no additional documents in its custody, possession, or control that are responsive to this Request.

25. Documents concerning Miracle Hill's or any other CPA's practice of refusing to accept prospective foster parents who are same-sex couples or LGBT individuals or to place foster children with such families.

**RESPONSE #25:** DSS objects to this request because it is vague, ambiguous, and so overbroad as to be not proportional to the needs of the Case and, therefore, would impose an Undue Burden or Expense. First, the Request incorrectly implies that Miracle Hill or any other CPA can "accept" or "approve" a prospective foster parent's application for licensure as a foster parent in South Carolina. Not so. The Request is also premised on an incorrect assumption or implication that Miracle Hill or any other CPA can "place" a foster child with a licensed foster family. Again, this assumption or implication is incorrect. In addition, the Request is overbroad and seeks materials not relevant to the claims or defenses of this Case by requesting documents relating to the practices of "any" CPA without geographic restriction, thus the Request is not proportionate to the needs of the Case and is, therefore, unduly burdensome. Further, it is unclear

15

what is meant by the "practice of refusing to accept or approve" certain prospective foster parents. As noted above, a private CPA cannot accept or approve an application for licensure as a foster parent. If what the Request really means is Miracle Hill's alleged practice of politely referring inquiries from prospective foster parents who do not share its religious beliefs to other nearby providers who can assist them, documents concerning Miracle Hill's practices are in the possession of Miracle Hill, which Plaintiffs have served with a subpoena *duces tecum* seeking such documents. Accordingly, DSS has not collected, reviewed, or produced materials responsive to this Request.

26. Documents concerning Miracle Hill's or any other CPA's practice of refusing to accept or approve prospective foster parents who practice a religion other than Protestant Christianity or who practice no religion at all, or to place foster children with such families.

**RESPONSE #26:** DSS objects to this request because it is vague, ambiguous, and so overbroad as to be not proportional to the needs of the Case and, therefore, would impose an Undue Burden or Expense. First, the Request incorrectly implies that Miracle Hill or any other CPA can "accept" or "approve" a prospective foster parent's application for licensure as a foster parent in South Carolina. Not so. The Request is also premised on an incorrect assumption or implication that Miracle Hill or any other CPA can "place" a foster child with a licensed foster family. Again, this assumption or implication is incorrect. In addition, the Request is overbroad and seeks materials not relevant to the claims or defenses of this Case by requesting documents relating to the practices of "any" CPA without geographic restriction, thus the Request is not proportionate to the needs of the Case and is, therefore, unduly burdensome. Further, it is unclear what is meant by the "practice of refusing to accept or approve" certain prospective foster parents. As noted above, a private CPA cannot accept or approve an application for licensure as a

16

foster parent. If what the Request really means is Miracle Hill's alleged practice of politely referring inquiries from prospective foster parents who do not share its religious beliefs to other nearby providers who can assist them, documents concerning Miracle Hill's practices are in the possession of Miracle Hill, which Plaintiffs have served with a subpoena *duces tecum* seeking such documents. Accordingly, DSS has not collected, reviewed, or produced materials responsive to this Request.

27. Documents from January 1, 2015 to the present concerning families who were denied services by Miracle Hill or any other CPA because they do not practice a particular religion or because they are same-sex couples or LGBT individuals, including but not limited to, complaints made by those families.

**RESPONSE #27:** DSS objects to this request because it is vague, ambiguous, and so overbroad as to be not proportional to the needs of the Case and, therefore, would impose an Undue Burden or Expense. First, it incorrectly assumes or implies that Miracle Hill or any other private CPA can prevent a foster parent or prospective foster parent from obtaining "services" necessary to seek or obtain licensure as a foster parent or to serve as a foster parent. Not so. Further, the Request is unclear and, relatedly, overbroad in that it neither limits the scope of the inquiry to the provision of foster care, which is the only social service relevant to this Case, nor defines the "services" about which it inquires. The Request is further overbroad and seeks materials not relevant to the claims or defenses of this Case by requesting documents relating to the practices of "any" CPA without geographic restriction, thus the Request is not proportionate to the needs of the Case and is, therefore, unduly burdensome. In addition, DSS objects to the chronological range contemplated by this Request for the reasons articulated in the Objection Applicable to All Requests. Further, documents concerning Miracle Hill's practices are in the possession of Miracle Hill, which

17

Plaintiffs have served with a subpoena *duces tecum* seeking such documents.

Without waiving any objection herein made, however, DSS states that other than any documents produced pursuant to other Requests that may contain such information, there are no additional documents in its custody, possession, or control that are responsive to this Request.

28. Documents sufficient to show the role Miracle Hill and other CPAs play in the process of recruiting, screening, and placing children with foster families.

**RESPONSE #28:** DSS states that other than any documents produced pursuant to other Requests that may contain such information, there are no additional documents in its custody, possession, or control that are responsive to this Request.

29. Documents concerning the practices of Miracle Hill and other faith-based CPAs concerning religious instruction or prayer involving youth in their care.

**RESPONSE #29:** *See* DSS Regulation 114-550(H)(11)(Religious education shall be in accordance with the expressed wishes of the natural parents, if such wishes are expressed.)

30. Documents concerning the practices of Miracle Hill and other faith-based CPAs to protect youth in their care from discrimination based on sexual orientation.

**RESPONSE #30:** DSS states that other than any statutes or regulations that may apply, there are no documents in its custody, possession, or control that are responsive to this Request. To the extent that this Request asks DSS to perform uncompensated legal research with regard to publicly available legal requirements, DSS objects to this Request, because the rules of discovery do not require such information from a party in response to a discovery request.

31. Documents concerning Miracle Hill's and other faith-based CPAs' compliance with DSS's Foster Care Bill of Rights.

**RESPONSE #31:** Aside from the Foster Care Bill of Rights itself, DSS states that other than any

documents produced pursuant to other Requests that may contain such information, there are no additional documents in its custody, possession, or control that are responsive to this Request.

32. Documents sufficient to show that "Plaintiffs have knowingly declined to pursue opportunities available to them to seek licensure as foster parents by SCDSS and to serve as foster parents directly with SCDSS or with private agencies near them who are willing to assist them." (*see* Governor McMaster's Answer ¶¶ 8, 77.)

**RESPONSE #32:** DSS objects to this request because "sufficient to show" is undefined, vague, and ambiguous. In addition, the information or materials sought by this Request are more properly in the possession of other parties, including Plaintiffs themselves, from whom it could be obtained. In any event, Plaintiffs' own pleadings and other filings in this Case indicate they were aware of other opportunities to seek licensure as foster parents and to serve as foster parents but have not taken advantage of those opportunities. Such documents, which are already in Plaintiffs' possession, may show that Plaintiffs knowingly declined such opportunities. Accordingly, DSS has not collected, reviewed, or produced materials responsive to this Request.

33. Copy of Miracle Hill's written plan of compliance that DSS required as a condition of the temporary CPA license it issued to Miracle Hill on January 27, 2018.

**RESPONSE #33:** Because subsequent developments made it unnecessary for Miracle Hill to submit that plan of compliance, there are no documents in its custody, possession, or control that are responsive to this Request.

34. Documents sufficient to show any and all steps DSS has taken to prevent discrimination by Miracle Hill against prospective foster parents based on religion or sexual orientation.

**RESPONSE #34:** DSS states that other than any documents produced pursuant to other Requests that may contain such information, there are no additional documents in its custody, possession, or

control that are responsive to this Request.

35. Documents sufficient to show any and all state and/or federal funding DSS distributed to all faith-based CPAs identified in Your response to RFP No 1 for their foster care services from 2016 to present.

**RESPONSE #35:** *See* Response to Request No. 12, which is substantially identical to this Request.

36. Documents concerning the requirement that miracle Hill and any other subgrantee making use of the exception granted in the ACF Letter "refer potential foster parents that do not adhere to the subgrantee's religious belief to other subgrantees in the SC Foster Care Program, or to…the SC Foster Care Program staff themselves: (ACF Letter as 4), including, but not limited to, plans and process for making such referrals, and evidence of such referrals since the exception took place.

**RESPONSE #36:** DSS states that other than any documents produced pursuant to other Requests that may contain such information, there are no additional documents in its custody, possession, or control that are responsive to this Request.

DAVIDSON, WREN & DEMASTERS P.A.

*s/Kenneth P. Woodington*
WILLIAM H. DAVIDSON, II, #425
KENNETH P. WOODINGTON, #4741
1611 Devonshire Drive, 2nd Floor
Post Office Box 8568
Columbia, South Carolina 29202-8568
wdavidson@dml-law.com
kwoodington@dml-law.com
T: 803-806-8222
F: 803-806-8855

*Counsel for Defendant Leach*

Columbia, South Carolina

August 4, 2020