IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Eden Rogers et al., | ) |
|            Plaintiffs, | ) Civil Action No. 6:19-cv-01567-TMC |
| v. | ) **DEFENDANT HENRY MCMASTER'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY** |
| United States Department of Health and Human Services, et al., | ) |
|            Defendants. | ) |

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, Defendant Henry McMaster, in his official capacity of Governor of the State of South Carolina, files this Response to the Motion to Compel Discovery and supporting memorandum filed by Plaintiffs on October 5, 2020 (ECF Nos. 107 and 107-1).

## INTRODUCTION

Plaintiffs' motion and supporting memorandum are heavy on inflammatory characterizations, misleading descriptions, and sometimes inaccurate assertions, but are exceedingly light on any explanation of the need for the disputed discovery and its relevance to the actual issues in the case. That absence is telling, for this dispute arises not from any inadequacy of the Governor's responses but, rather, from the extraordinarily broad fishing expedition undertaken by Plaintiffs—an undertaking they have neither attempted to narrow nor been able to justify. Their efforts to muddy the waters, however, should not be permitted to obscure the overbreadth of their requests.

Plaintiffs assert, for example, that counsel for the State Defendants "refused to engage in any fruitful conversation regarding potential next steps." Pltfs' Mot. to Compel (ECF No. 107) at 1. But the starting point for any conversation about a discovery dispute is for the *requesting* party to demonstrate (or at least offer a facially plausible explanation of) the relevance of the information

being sought. Plaintiffs were unable or unwilling to do so during counsels' meet-and-confer on September 1, 2020. Not surprisingly, then, little further progress was made when that threshold requirement was left unsatisfied.

Plaintiffs' Motion likewise relies on red herrings, including, for example, the inaccurate assertion that the Governor initially claimed "that documents held within the Office of the Governor of South Carolina are not within Governor McMaster's custody or control," but later "disavowed this position." (ECF No. 107-1 at 20 n.8.) The Governor never took that position (*see* McMaster's Obj. and Resp. (ECF No. 107-7) at 4–5 (explaining specifically the limited nature of the technical objection to the RFPs' implication that the Office of the Governor was a party to this suit)), and for Plaintiffs now to imply otherwise is yet another example of the misapprehensions and inflammatory allegations that characterize the Motion and memorandum.

As explained more fully below, Governor McMaster has undertaken a good faith, thorough search for responsive and relevant information and has produced nearly 400 pages of documents that are relevant to the claims and defenses asserted in this suit. He has not, however, responded to Plaintiffs' discovery requests that are unrelated to any claim or defense, and for which Plaintiffs have not (either in counsels' prior meet-and-confer or in the pending Motion) attempted, much less succeeded, in showing to be relevant. He has further declined to undertake additional search efforts that would be both unduly burdensome and expensive and which would be disproportionate to the needs of the case. Plaintiffs' Motion to Compel should be denied.

## RELEVANT BACKGROUND

This litigation arises from Governor McMaster's actions to lift an unconstitutional and discriminatory penalty targeting religious entities—a penalty that would otherwise have been imposed on private, faith-based Child Placing Agencies ("CPAs") as a result of their religiously-

compelled and constitutionally-protected associational choices. Specifically, on March 13, 2018, the Governor issued an Executive Order directing State agencies and employees that faith-based CPAs may not be penalized, including by the denial of a CPA license, for their exercise of religious beliefs protected by state and federal law, including the belief that certain roles (including foster parents) should be held only by individuals who share the CPA's religious beliefs. Despite the fact that the Governor's actions applied equally to all faith-based CPAs, regardless of sect or denomination, and did not prevent Plaintiffs or any other qualified person from seeking to be licensed and serving as a foster parent, Plaintiffs filed suit, alleging the Governor's accommodation of faith-based CPAs constituted the establishment of an official State religion and violated Plaintiffs' Equal Protection rights. *See* Complaint (ECF No. 1) at 29–31, 34–36.

Discovery commenced on or around June 4, 2020, and, to date, Plaintiffs have served, and Governor McMaster has responded to, Requests for Production, Requests for Admissions, and Interrogatories. The pending Motion to Compel relates to Plaintiffs' Requests for Production ("RFPs").

The RFPs served on Governor McMaster included 22 requests. (*See* ECF No. 107-4.) Some of the Requests seek documents with a plausible connection to the Complaint's factual allegations and legal claims, *e.g.*, documents or communications relating to (i) Executive Order 2018-12, (ii) the Governor's letter requesting a waiver or deviation from 45 C.F.R. § 75.300(c), (iii) HHS' subsequent letter granting such waiver or deviation, and (iv) communications between the Governor or his staff and Miracle Hill. (*See*, *e.g.*, *id.* at 8–9 (Requests 1–7).)

Many other of the Requests, however, seek information far beyond the claims or defenses asserted in this suit, or which would impose an undue burden or were disproportionate. They seek, for example, documents or communications relating to (i) HHS actions that occurred more than a

3

year after the Complaint was filed and which, therefore, did not (and could not) cause Plaintiffs' alleged injury, (ii) Miracle Hill's internal policies and procedures beyond the associational policy acknowledge in the Executive Order, waiver request, and waiver letter, (iii) foster parent applications other than Plaintiffs' application that have been received by Miracle Hill, and Miracle Hill's response to them, (iv) and documents in the possession of other parties (including Plaintiffs) that had, in fact, been requested from those parties. (*See id*. at 10–12 (Requests 10–11, 15–22).)

Upon receipt of the Plaintiffs' RFPs, Governor McMaster's in-house and outside counsel, along with his staff, began the process of searching for, collecting, reviewing, and producing responsive, non-privileged documents and communications. In-house counsel advised the Governors' staff of the RFPs and requested staff members collect and provide such information to counsel. In addition, a comprehensive set of search terms were used to search the Governor's and his staff's email accounts for potentially responsive documents. In-house counsel further reviewed the network folders where responsive electronic documents would most likely be found and where known, potentially-responsive documents were housed. The collected materials were compiled, reviewed by counsel for responsiveness and privilege, and prepared for production.[1]

Ultimately, Governor McMaster responded to Plaintiffs' RFPs by producing 394 pages in response to eight of the Requests.[2] *See* McMaster's Obj. and Resp. (ECF No. 107-7). He asserted

---

[1] Plaintiffs incorrectly and misleadingly assert in their Motion that they granted the State defendants a 30-day extension to complete this process. (ECF 107 at 1.) Not true. In fact, Plaintiffs *refused* to grant the requested 30-day extension, opining instead that an extension of merely two weeks "should be sufficient." *See* ECF No. 107-6 at 2 (email from P. Barbur dated July 2, 2020). It was only after the State defendants requested a second extension that Plaintiffs grudgingly consented to a second two-week extension. *See id*. at 1 (email from M. Coleman dated July 15; email from P. Barbur dated July 16). All told, both extensions together totaled 28 days.

[2] Specifically, Governor McMaster produced documents in response to Requests 1–5, 8–9, and 12, and stated he had no responsive documents to Requests 6–7. *See* McMaster's Obj. and Resp. (ECF No. 107-7) at 5–19.

4

one objection applicable to all the Requests, namely that the chronological scope of the Requests was too broad, because documents predating his installation as Governor and postdating any of the allegedly unconstitutional actions challenged in the Complaint were not relevant to the claims asserted against him. *Id*. at 1–3. He further objected to the undue burden or expense that would result from system-wide searches for electronically stored documents (as opposed to communications), the burden and expense of which arises from the extraordinarily broad scope of Plaintiffs' RFPs, compounded by the technological constraints of the State's IT system, which can only perform document searches using a single search term at a time, and which, as a result, generate an overwhelming volume of "false hit" documents. *Id*. at 3–4. In addition, the Governor objected to specific Requests or portions of Requests as overly broad, disproportionate to the needs of the case, and unduly burdensome, but nevertheless, when possible, produced documents responsive to the relevant and proportionate portions of those requests. *See id*. at 4, 8–19.

Apparently disappointed the production had not revealed whatever documents they were hoping to find, and, on that basis alone, assuming the search and production must have been in some way deficient, Plaintiffs' counsel sought to confer with counsel for the Governor and counsel for Defendant Leach.[3] Counsel conferred telephonically on September 1, 2020. On that call, Plaintiffs' counsel offered nothing more than *ipse dixit* to explain how their wide-ranging discovery requests to which the Governor had objected were relevant to any claim or defense, and, in regard to the Governor's objections and production, seemed surprised to learn that many of their questions were already expressly answered in the Governor's Objections and Responses themselves. Further, for the first time in this case, Plaintiffs' counsel mentioned that, in hindsight,

---

[3] Mr. Leach had produced 302 pages and asserted some similar objections in his Response to the Plaintiffs' RFPs. *See* Leach's Obj. and Resp. (ECF No. 107-8).

they wished they had had a hand in creating or reviewing and approving the search terms used in the Governor's searches for responsive materials, and they expressed frustration that they had not participated in that process, even though they never mentioned or requested such collaboration before that point—either in the Rule 26(f) conference, in advance of serving their discovery requests, or at any time in the discovery process up to counsel's meet-and-confer. Tellingly, during and after that call (and to this day), they have never even attempted to offer any suggestions or proposed search terms, even though the undersigned counsel specifically explained that the requesting party would need to initiate that discussion. Rather , they have merely complained that what they received is not enough, apparently asserting the burden is somehow on the Defendant to tell the Plaintiffs what Plaintiffs should request to best advance their case. Ultimately, what Plaintiffs want, it seems, was to come along after the fact and learn in precise detail who, where, when, how, and what the Governor and his counsel have done to respond to the RFPs, and then to determine whether those efforts meet with their approval.

Plaintiffs' counsel subsequently wrote to counsel for the Governor and counsel for Mr. Leach in an apparent effort to articulate a response to the Governor's and Mr. Leach's various objections. (*See* ECF No. 107-10.) The letter, however, like the call before it, was beset by mistaken assumptions, incomplete descriptions of events and information, and misapprehensions of the Governor's positions. (*See* ECF No. 107-11 (noting and correcting various misstatements and erroneous assumptions found in the September 16 letter from Plaintiffs' counsel).) Plaintiffs subsequently filed the pending Motion to Compel on October 5, 2020. (*See* ECF No. 107.)

## **LEGAL STANDARD**

Rule 26 of the Federal Rules of Civil Procedure states, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional

to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Although the scope of discovery permitted by Rule 26 is intended to be broad enough to provide a party with sufficient information to develop its case, that breadth is not limitless. The information sought must be "relevant" to a claim or defense, *id*., and a court may protect a party from "oppression" or "undue burden or expense," Fed. R. Civ. P. 26(c).

If a party declines to provide information requested in discovery by another party, the requesting party may move to compel its disclosure. Fed. R. Civ. P. 37(a). District courts generally have broad discretion in managing discovery, including whether to grant or deny a motion to compel. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va.*, 43 F.3d 922, 929 (4th Cir. 1995).

The party *seeking* discovery bears the initial burden of proving the requested information is both relevant and likely to lead to the discovery of admissible evidence.[4] *See Pioneer Hi-Bred Intern. Inc. v. Holden's Found. Seeds, Inc*., 105 F.R.D. 76, 82 (N.D. Ind. 1985) ("[The] moving party must make a 'clear showing that the documents are relevant to the issues involved' in the litigation.") (quoting *Duplan Corp. v. Deering Milliken, Inc*., 397 F. Supp. 1146, 1186 (D.S.C. 1974)); *J&J Sports Prods., Inc. v. Wofford*, No. 6:13–cv–02403–GRA, 2014 WL 2980250 *1, at *2 (D.S.C. June 30, 2014) ("[A] party may not merely assert that requested materials may lead to the discovery of admissible evidence without presenting any intelligible explanation of how that is so.") (citing *Cook v. Howard*, 484 Fed. Appx. 805 (4th Cir. 2012); *Woodson v. McGeorge Camping Ctr., Inc.*, 974 F.2d 1333 (4th Cir. 1992)). Only *after* the twin showings of relevance and likelihood to lead to admissible evidence have been made does the burden of persuasion shift to the party resisting discovery. *Machinery Solutions, Inc. v. Doosan Infracor Am. Corp*., 323 F.R.D.

---

[4] Plaintiffs' articulation of the legal standard skips completely past this initial burden, and instead erroneously states that the burden rests on the party *resisting* discovery. *See* Pltfs' Mem. in Supp. Mot. to Compel (ECF No. 107-1) at 8.

522, 526 (D.S.C. 2018); *Waters v. Stewart*, No. 4:15-cv-4143-RBH-TER, 2017 WL 770535, at *2 (D.S.C. 2017) (citation omitted).

## ARGUMENTS

Plaintiffs' Motion to Compel seeks to require Governor McMaster (1) to pull back the curtain and prove to Plaintiffs' satisfaction that the Governor and his counsel's discussions of and efforts to search for, collect, and produce of documents was, in Plaintiffs' estimation, sufficiently exhaustive, and (2) to provide responses or additional responses to Plaintiffs' Requests for Production numbers 1–12, 15–17, 20 and 22. *See* Pltfs' Mem. in Supp. Mot. to Compel (ECF No. 107-1) at 9, 15; *id*. at Appx. A (ECF No. 107-2).[5] As explained more fully below, Governor McMaster's objections to those requests are well-founded due to the irrelevance of the requested information, the requests' lack of proportionality, and the undue burden and expense that would result from responding to them.

**I.   Plaintiffs have provided no intelligible explanation why the information sought by the disputed Requests is relevant to any claim or defense.**

Plaintiffs devote the bulk of their motion and supporting memorandum to arguments seeking the disclosure of search terms and document custodians, (weighing the burdens imposed by their discovery requests, debating the vagueness and ambiguity of their discovery requests, and the like. In their haste to dispute the finer points of the law, however, they brush past the initial threshold requirement of relevance, which is relegated to a few quick and conclusory paragraphs buried in Plaintiffs' memorandum. Their failure to draw attention to that topic is not surprising, since the breadth of their discovery requests sweeps far beyond any possible nexus to the claims and defenses in this suit and, therefore, seek information that is not discoverable.

---

[5] In contrast, Plaintiffs have *not* sought to compel any or additional responses to Requests 13–14, 18–19, and 21, and have, therefore, abandoned them.

A showing of relevance is a critical, mandatory, threshold requirement to determine if information is discoverable. *See* Fed. R. Civ. P. 26(b)(1) (stating a party may obtain discovery only of information that "is relevant to any party's claim or defense"). Information is relevant if it has a "'tendency to make the existence of any fact that is of any consequence to the determination of the action more . . . or less probable.'" *Money Point Diamond Corp. v. Union Corp.*, Nos. 92-2539, 92-2540, 1993 WL 280144 *1, at *7 (4th Cir. July 23, 1993) (citation omitted).

To avoid subjecting a responding party to a fishing expedition, the Fourth Circuit has required the requesting party to present an "intelligible explanation" for why the requested discovery is relevant to a party's claim or defense in the suit. *Cook v. Howard*, 484 Fed. Appx. 805, 813 (4th Cir. 2012). "Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Doe v. Nebraska*, 788 F. Supp. 2d 975, 980 (D. Neb. 2011). Upon a motion to compel production, the "moving party must make a '*clear* showing that the documents are relevant to the issues involved' in the litigation." *Pioneer Hi-Bred Intern. Inc. v. Holden's Foundation Seeds, Inc.*, 105 F.R.D. 76, 82 (N.D. Ind. 1985) (emphasis added) (quoting *Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1186 (D.S.C. 1974)). Plaintiffs have not done so here.

*First*, certain of Plaintiffs' RFPs are facially irrelevant to the claims and defenses in this suit. Requests 10 and 11, for example, seek information relating to HHS rulemaking actions and administrative determinations in November 2019—more than *a year after* the Complaint was filed. *See* McMaster's Obj. and Resp. (ECF No. 107-7) at 10–11. Those events did not (and could not) cause Plaintiffs' alleged injury; Plaintiffs did not (and could not) mention them in the Complaint; and Plaintiffs lack standing to challenge them even in an Amended Complaint. Further, information

about HHS's 2019 regulatory actions has no tendency either to prove or disprove any of the actual claims or defenses in the suit, particularly as regards the constitutionality of the Governor's challenged actions in late 2017 and early 2018. Request 20 likewise sweeps too broadly, seeking information about "any and all steps" SCDSS has taken to "prevent discrimination" by any CPA. *See id*. at 17. Plaintiffs' Complaint, however, does not challenge the adequacy of SCDSS' general, systemic efforts to "prevent discrimination," nor are the claims and defenses that *are* asserted in this suit dependent on or influenced by information regarding SCDSS's generalized nondiscrimination efforts. Notably, Plaintiffs' pending Motion to Compel does not even *attempt* to articulate any basis upon which the information sought in Requests 10, 11, and 20 is relevant. Instead, Plaintiffs simply summarize the Requests and then baldly claim they are "central to the claims and defenses in this case." Pltfs' Mem. in Supp. Mot. to Compel (ECF No. 107-1) at 16–17. Such conclusory assertions are grossly insufficient to pass the starting point of the discoverability analysis, and Plaintiffs' request to compel responses to these Requests should be denied.

*Second*, other of Plaintiffs' RFPs seek irrelevant information by requesting information regarding the practices of CPAs *nationwide*. Specifically, Requests 15, 16, and 17, seek documents relating to the practice of "Miracle Hill or *any other CPA*" in regard to prospective foster parents who are non-religious, non-Protestant, or LGBTQ. *See* McMaster's Obj. and Resp. (ECF No. 107-7) at 13–15. Governor McMaster objected to these requests on multiple bases, including that information relating to "any CPA"—a term not defined in the RFPs and not restricted to this State— is irrelevant to the claims and defenses in this suit. *Id*. The actions and policies of CPAs in other States did not (and could not) cause Plaintiffs' alleged injury, and Plaintiffs did not challenge them in the Complaint and could not challenge them in any Amended Complaint. Further, such information has no tendency either to prove or disprove the actual claims or defenses in this suit. Yet

10

again, Plaintiffs' Motion to Compel does not even *attempt* to explain how such information is relevant, but, rather, simply repeats the Requests and then intones that they are "central to the claims and defenses in this case." Pltfs' Mem. in Supp. Mot. to Compel (ECF No. 107-1) at 16–17. Conclusory assertions of this sort are insufficient to provide the intelligible explanation of relevance necessary even to begin the discoverability analysis, and Plaintiffs' request to compel responses to these Requests should be denied.

*Third*, all of the RFPs seek irrelevant information to the extent they seek materials that predate the Governor's time in office or that postdate the challenged actions. The Complaint challenges specific, affirmative actions, including actions of Governor McMaster taken in his official capacity as Governor of the State of South Carolina. Plaintiffs' RFPs, however, seek the production of materials from January 1, 2017 to the present. Governor McMaster was not the Governor of the State of South Carolina on January 1, 2017, and documents and materials that predate his installation as Governor are not relevant to the claims asserted against him in his official capacity as Governor. Accordingly, Governor McMaster did not collect, review, or produce documents predating his installation as Governor on January 24, 2017 because such documents are not relevant to any claim or defense asserted in the case. Plaintiffs have not provided any explanation at all why documents predating the Governor's installation are relevant to their claims, and the Complaint itself acknowledges that the Governor's earliest knowledge of the relevant facts was on or around February 21, 2018, *see* Complaint (ECF No. 1) ¶ 61.

Plaintiffs' request for materials dating "to the present" fare no better. Such documents are irrelevant to the claims and defenses in this suit, and are, therefore, not discoverable. The causes of action asserted against Governor McMaster arise from two specific, identifiable, enumerated actions: (1) a letter sent by Governor McMaster on February 27, 2018, and (2) an Executive Order

11

issued by Governor McMaster on March 13, 2018. The Governor's alleged constitutional violations, then, occurred in early 2018.[6] Even assuming, *arguendo*, that the Governor's challenged actions did not ripen into alleged constitutional violations until HHS responded to the request, the alleged violations occurred upon issuance of HHS's letter. The nature and effect of the challenged actions are discernable from the face of the documents that constitute the supposed constitutional violations, ad Plaintiffs specifically and repeatedly claim it was *these actions* that supposedly violated the Constitution. *See* Compl. (ECF No. 1) at ¶¶ 102–06, 117–19, and Prayer for Relief "A." Documents and materials postdating the specific, identifiable, enumerated actions that allegedly violated constitutional provisions are not relevant to Plaintiffs' claims.

Plaintiffs argue the "continuing" nature of their claims makes such documents relevant. *See* Pltfs' Mem. in Supp. Mot. to Compel (ECF No. 107-1) at 13. Plaintiffs' argument, however, conflates alleged continuing *harm* with continued *actions*. Plaintiffs have alleged the former, asserting the *effect* of the challenged actions remain in place, but they have not alleged a single affirmative, discrete, allegedly wrongful action postdating the three events noted in the preceding paragraph. Accordingly, the chronological bookends to the Governor's search, collection, review, and production of documents capture all the relevant materials, and Plaintiffs' request to compel additional responses to the Requests should be denied.

## II.  The information sought by the disputed Requests would impose an undue burden or expense that is not proportional to the needs of the case.

Discovery should not be had when the burden or expense of the proposed discovery outweighs its likely benefit. *See* Fed. R. Civ. P. 26(b)(1). Governor McMaster objected to portions

---

[6] If, hypothetically, HHS had *declined* to provide the requested waiver nearly a year later, one can be sure Plaintiffs would not believe that the denial cured the allegedly unconstitutional actions and retroactively absolved them of their supposed constitutional infirmities. The actions were either constitutional or unconstitutional at the time they occurred.

of Plaintiffs' RFPs on the basis that the technological limitations of the State's information technology system permit electronically stored documents to be searched on a system-wide basis only by running one search term at a time (rather than by searching for terms in combination or in proximity to each other), and that the volume of search results—most of which will be false positives, but all of which must be reviewed for responsiveness and privilege—would impose an undue burden or expense. *See* McMaster's Obj. and Resp. (ECF No. 107-7) at 3.[7] Plaintiffs concede that a party can decline to produce electronically stored information if it is "not reasonably accessible because of undue burden or cost." *See* Pltfs' Mem. in Supp. Mot. to Compel (ECF No. 107-1) at 17. Such is the case with the Governor's ability. For example, a search for electronically stored documents requires IT staff to write multiple scripts, each of which is designed to capture a search terms (*e.g*., "HHS," "DSS," "SCDSS," "Social Services" "Human Services," "CPA" etc.). The scripts are then run across the system, one after the other. The IT staff must then review the error logs for each script after it has been run; address the errors; and runs new/revised scripts to reduce or eliminate errors. The IT staff repeats the preceding steps until all errors have been addressed. Even for a simple search, this process takes between one and four hours of employee time per search, and between 24 and 48 hours of actual time. As the searches involve more complex parameters, the amount of staff time, potential for errors, and processing time in the system increase. Additionally, this is one of the many time-sensitive tasks that IT staff must complete on a regular basis, meaning that competing priorities may further extend the time required to complete a search. The significant time and expense required to review these documents would impose an undue burden that render the documents not reasonably accessible.

---

[7] The Governor can more easily search for electronically stored *communications* and has searched for and produced responsive, non-privileged communications.

Further, inaccessibility is not the only basis upon which a discovery request for electronic documents may be objectionable. Plaintiffs incorrectly argue that a party can decline to produce electronically stored documents *only* if they are "not reasonably accessible because of undue burden or cost." Pltfs' Mem. in Supp. Mot. to Compel (ECF No. 107-1) at 17. Not so. A party may also object that the discovery is not "proportional to the needs of the case." See Rule 26(b)(1); *Ingle v. Yelton*, 264 Fed. Appx. 336, 339 (4th Cir. 2008) (noting that "the simple fact that requested information is discoverable . . . does not mean that discovery must be had" because there is the additional requirement that discovery be "proportional to the needs of the case"); *Kunneman Properties LLC v. Marathon Oil Co.*, No. 17-CV-456-GKF-JFJ, 2019 WL 5188355 *1, at *3 (N.D. Okla. Oct. 15, 2019) (considering whether production of ESI was "overly burdensome *or* disproportionate to the needs of [the] case" in deciding whether to compel discovery of ESI) (emphasis added).

Whether discovery is proportional to the needs of the case depends on the "issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). As the United States Supreme Court has held, "discovery, like all matters of procedure, has ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978).

The time and expense involved in searching for electronic documents in this case is not proportionate to the needs of the case. This suit raises issues of law that can be resolved with minimal factual inquiry, and the potential benefit of the additional searches (which are unlikely to yield responsive documents in addition to those already located and reviewed using other means) are not proportional to the needs of the case.

**III.     Plaintiffs did not (and still have not) proposed any set of search terms or parameters they would find satisfactory and have not identified any reason they should be permitted to assess the terms and parameters used by the Governor.**

Plaintiffs' Motion and supporting memorandum seek to construe the Governor's document search and production as shrouded in mystery and worthy of suspicion. That cloud of suspicion, however, is dispelled by a review of the Governor's Objections and Responses, which spell out the objections and the way in which those objections did or did not limit his responses. (Indeed, during the parties' meet-and-confer call, Plaintiffs were surprised to learn that a great number of their questions regarding the Governor's objections and production were already expressly answered in the Objections and Responses themselves.)

Those legal and Rules-based objections are discussed above. What is left, then, is Plaintiffs' abiding suspicion—apparently because they were hoping for a larger volume to the document production—that the Governor's search and collection efforts were in some way deficient. On that basis, Plaintiffs demand the Governor turn over the search terms, protocols, and document custodians for Plaintiffs to review and assess.

Neither the Fourth Circuit Court of Appeals nor the District Court for the District of South Carolina have held that a party must disclose the search terms it used, or custodians searched, in complying with requests for discovery. The Federal Rules of Civil Procedure require the parties to confer at the outset of discovery and for any party who wishes to propose a plan for discovery of electronically stored information to make such a proposal in that conference. *See* Fed. R. Civ. P. 26(f)(3)(C). While it is not uncommon for parties to agree at that time to search terms and parameters, the Rules do not contemplate disclosure of a party's discovery efforts after the initial discovery plan, and a party ought not be able to sit silent at the time it is required to propose its discovery plan, only later to complain about the plan actually used.

Plaintiffs have not at any time proposed search terms they think would be adequate, nor have they identified any reason (other than the fact they were apparently assuming, expecting, or hoping for more documents) to suspect the Governor's search was inadequate. Without more, and especially when (as here) the RFPs are a fishing expedition in search of documents unrelated to any claim or defense in the suit, Plaintiffs have not justified a need to examine and evaluate the Governor's discovery efforts.

## CONCLUSION

For the foregoing reasons, Governor McMaster respectfully requests this Court deny Plaintiffs' Motion to Compel in whole or in part.

        NELSON MULLINS RILEY & SCARBOROUGH LLP

        By:   s/ Miles Coleman
             Miles E. Coleman
             Federal Bar No. 11594
             E-Mail: miles.coleman@nelsonmullins.com
             2 W. Washington Street / 4th Floor
             Greenville, SC 29201
             (864) 373-2352

             Jay T. Thompson
             Federal Bar No. 09846
             E-Mail: jay.thompson@nelsonmullins.com
             1320 Main Street / 17th Floor
             Post Office Box 11070 (29211-1070)
             Columbia, SC  29201
             (803) 799-2000

        OFFICE OF THE ATTORNEY GENERAL

             Robert D. Cook, South Carolina Solicitor General
             Federal Bar No. 285
             E-Mail: bcook@scag.gov
             Post Office Box 11549
             Columbia, SC  29211
             (803) 734-3970

        *Attorneys for Governor Henry McMaster*

Greenville, South Carolina
October 19, 2020

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | |
|---|---|
| Eden Rogers et al., ) | |
| ) | Civil Action No. 6:19-cv-01567-TMC |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | **CERTIFICATE OF SERVICE** |
| United States Department of Health and ) | |
| Human Services, et al., ) | |
| ) | |
| Defendants. ) | |

    I hereby certify that I have served a copy of Defendant Henry McMaster's Response to Plaintiffs' Motion to Compel Discovery by electronic mail on the following:

M. Malissa Burnette
Nekki Shutt
BURNETTE SHUTT & MCDANIEL, PA
912 Lady Street, 2nd floor
P.O. Box 1929
Columbia, SC 29202
(803) 850-0912
mburnette@burnetteshutt.law
nshutt@burnetteshutt.law

Susan K. Dunn
AMERICAN CIVIL LIBERTIES UNION OF SOUTH CAROLINA FOUNDATION
P.O. Box 20998
Charleston, SC 29413
(843) 282-7953
sdunn@aclusc.org

Peter T. Barbur
Katherine D. Janson
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
pbarbur@cravath.com
kjanson@cravath.com

Leslie Cooper
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2633
lcooper@aclu.org

Daniel Mach
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15th Street NW
Washington, DC 20005
(202) 675-2330
dmach@aclu.org

M. Currey Cook
Karen L. Loewy
Cathren Cohen
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005
(212) 809-8585
ccook@lambdalegal.org
kloewy@lambdalegal.orgccohen@lambdalegal.org

*Counsel for Plaintiffs*


Peter M. McCoy, Jr., Esq.
Joseph H. Hunt, Esq.
Christie V. Newman, Esq.
Christopher A. Bates, Esq.
Michelle Bennett, Esq.
UNITED STATES ATTORNEY'S OFFICE
1441 Main Street, Suite 500
Columbia, South Carolina 29201
Christie.Newman@usdoj.gov

James R. Powers, Esq.
Trial Attorney
Federal Programs Branch
U.S. DEPARTMENT OF JUSTICE, CIVIL DIVISION
1100 L. Street, NW
Washington, D.C. 20005
James.R.Powers@usdoj.gov

*Counsel for the Federal Defendants*

18

William H. Davidson
Kenneth P. Woodington
DAVIDSON, WREN & DEMASTERS P.A.
1611 Devonshire Drive, 2nd Floor
Post Office Box 8568
Columbia, South Carolina 29202-8568
(803) 806-8222
wdavidson@dml-law.com
kwoodington@dml-law.com

*Counsel for Defendant Leach*

/s
    Miles E. Coleman

*Counsel for Governor Henry McMaster*

19