**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

Eden Rogers et al.,

Plaintiffs,

v.

United States Department of Health and Human Services, et al.,

Defendants.

Civil Action No. 6:19-cv-01567-TMC

**DEFENDANT MICHAEL LEACH'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, Defendant Michael Leach, in his official capacity as Director of the South Carolina Department of Social Services, files this Response to the Motion to Compel Discovery and supporting memorandum filed by Plaintiffs on October 5, 2020 (ECF Nos. 107 and 107-1). This Defendant will be referred to herein as "DSS."

## INTRODUCTION AND RELEVANT BACKGROUND

This Defendant incorporates by reference, to the extent relevant to this Defendant, the Introduction and Relevant Background sections of Defendant McMaster's Response to Plaintiffs' Motion to Compel Discovery which is being filed on this date.

As Governor McMaster has noted, on March 13, 2018, he issued an Executive Order directing State agencies and employees that faith-based CPAs may not be penalized, including by the denial of a CPA license, as a result of their exercise of religious beliefs protected by state and federal law, including the belief that certain roles (including foster parents) should be held only by those who share the CPA's religious beliefs. Any actions taken by DSS and of which the Plaintiffs complain were the result of DSS following that Executive Order, a 2018 legislative proviso (38.29), both of which authoritatively directed DSS not to penalize faith-based CPAs for actions, policies, or

practices compelled by their religious beliefs, and ultimately, as permitted by HHS's Waiver issued in January 2019. In light of the executive order, the legislative proviso, and the HHS Waiver authorization, DSS issued a standard license to Miracle Hill in late January of 2019. Simply put, that action of DSS was taken because it was authorized by the HHS Waiver. If the Court upholds the validity of the federal DHHS waiver, DSS will continue to grant standard licenses to Miracle Hill in the future, assuming all other licensing requirements have been met.

Despite the fact that the Governor's actions applied equally to all faith-based CPAs, regardless of their sect or denomination, and did not prevent Plaintiffs or any other qualified person from seeking to be licensed and serving as a foster parent, Plaintiffs filed suit, alleging the State Defendants' accommodation of faith-based CPAs constituted the establishment of an official State religion and violated Plaintiffs' Equal Protection rights. *See* Complaint (ECF No. 1) at 29–31, 34–36. It appears that DSS was added as a Defendant only out of a concern by Plaintiffs' counsel that DSS needed to be joined in order to obtain complete relief.

Discovery commenced on or around June 4, 2020, and, to date, Plaintiffs have served, and DSS has responded to, Requests for Production, Requests for Admissions, and (on or about the date of this filing) Interrogatories. The pending Motion to Compel relates to Plaintiffs' Requests for Production ("RFPs").

Well before the service of the RFPs on DSS in August 2020, the ACLU of South Carolina (one of the counsel for Plaintiffs) sent Freedom of Information requests to DSS on January 31, 2019 and July 11, 2019. Exhibits 1 and 2, attached. There were a total of 12 FOIA requests

contained in those two letters. DSS responded to those FOIA requests with several hundred pages of documents.[1]

The RFPs served on DSS included 36 requests. (*See* ECF No. 107-5.) Of those, 12 of the first 15 (Nos. 1, 2, 3, 4, 6, 8, 9, 10, 11, 13, 14, and 15) were virtually identical to the 12 FOIA requests in the January and July 2019 letters. While the RFPs were pending, undersigned counsel for DSS spoke with Susan Dunn, one of Plaintiffs' counsel and the author of the two ACLU FOIA letters, to ask whether she was aware of anything that had not been produced by DSS in response to the FOIA requests. *See* ECF No. 107-12. She said she would check with Plaintiffs' counsel team, but nothing further was heard from her or any other Plaintiffs' counsel while the requests were pending. *Id.*

In drafting the RFPs to DSS , Plaintiffs' counsel devised a total of 24 additional requests for production. DSS's responses to those "new" document requests, i.e., the ones not already contained in the prior ACLU request letters, fall into three categories. Those categories are summarized in ECF No. 107-12, the September 22, 2020 letter of DSS's counsel as follows: "[a] for 10 of the 'new' requests, DSS possessed no documents other than those previously produced, [b] for 5 of the 'new' requests, DSS possessed no responsive documents at all, and [c] DSS objected to 8 of the 24 'new' requests." Simply put, the mere fact that Plaintiffs' counsel might have been able to speculate that DSS might possess certain categories of documents does not mean that DSS would indeed have such documents, and for the most part, DSS did not.

The number of DSS staff members who would have knowledge of the existence of documents requested in the RFPs is small, because DSS's interactions with CPAs such as Miracle Hill are handled within a small niche of the agency. Accordingly, in the State Defendants' Rule

---

[1] Attorney material is not subject to FOIA, but DSS's responses to the RFPs included a privilege log for the limited amount of privileged material that existed.

26(a)(1) responses served on Plaintiffs' counsel on July 13, 2020, Plaintiffs' counsel were advised that there were two DSS employees, Jacqueline Lowe and Lauren Staudt, who were familiar with SCDSS' licensing of and relationship to CPAs, as well as one other person, Laura Claspill, who is knowledgeable of SCDSS' business relationship to CPAs. The assistance of those individuals, as well as that of DSS's in-house counsel, was sought in searching for the requested documents.[2]

## LEGAL STANDARD

DSS adopts and incorporates by reference the "Legal Standard" section of Defendant McMaster's Response to Plaintiffs' Motion to Compel Discovery which is being filed on this date.

## ARGUMENTS

Plaintiffs' Motion to Compel is stunning in its near-complete failure even to discuss the issues in this case, much less to discuss why the additional requests to DSS are relevant to any issue raised in a claim or defense. Instead, Plaintiffs' motion is primarily devoted to complaints that DSS's responses do not satisfy Plaintiffs' expectations that DSS might possess documents in response to the "new" requests, although DSS has stated that it does not have such documents. Having requested, in the two 2019 FOIA request letters, documents that DSS for the most did possess to some degree, and having received those documents, Plaintiffs now make the remarkable assertion that the Defendants only produced "documents that have already long been circulating in this case." ECF No. 107-1 at 6. However, if Plaintiffs' prior requests already resulted in the production of nearly every arguably-relevant document in DSS's possession, which they did, this argument to the effect of "what have you done for me lately" is out of place.

[2] For information pertaining to the communications that between counsel for the State Defendants and Plaintiffs that occurred thereafter, DSS would refer the Court to the discussion of those communications in Governor McMasters's Response to Plaintiffs' Motion to Compel.

Plaintiffs also assert that DSS "refused" to produce documents in response to most of the "new" RFPs. *Id.* This is a misleading and inaccurate characterization of DSS's responses. For most of the new document requests, DSS advised that it had no documents at all (RFPs 21, 22, 23, 32 and 33), or that it had no documents in addition to those already produced in response to the FOIA letters (RFPs 5, 7, 16, 17, 24, 27, 28, 30, 31, 34 and 36). DSS only objected to a handful of RFPs. (12, 18, 19, 20, 25, 26, 27 and 32), all but one of which (No. 12) were identical to RFPs served on Governor McMaster and to which he objected as well.

**I. Plaintiffs have provided no intelligible explanation why the information sought by the disputed Requests is relevant to any claim or defense.**[3]

Plaintiffs devote the bulk of their motion and supporting memorandum to arguments seeking the disclosure of search terms and document custodians; weighing of the burdens imposed by their

[3] This section of this Memorandum is similar, but not identical, to the section by the same title in Governor McMaster's Memorandum in Opposition. In instances where specific requests to the Governor are discussed and where identical requests were made to DSS, that fact is noted in italics. The chart below lists RFPs which are essentially identical for both State Defendants, and to which both State Defendants objected.

| Leach RFP No. | McMaster FRP No. |
|---|---|
| 18 | 10 |
| 19 | 11 |
| 20 | 12 |
| 25 | 15 |
| 26 | 16 |
| 27 | 17 |
| 32 | 18 |

discovery requests; debating the vagueness and ambiguity of their discovery requests; and the like. In their haste to dispute the finer points of the law, however, they brush past the initial threshold requirement of relevance, which is relegated to a few paragraphs near the end of Plaintiffs' memorandum. The short shrift they give the topic is not surprising, since the breadth of their discovery requests sweeps far beyond any possible nexus to the claims and defenses in this suit.

A showing of relevance is a critical, mandatory, threshold requirement to determine if information is discoverable. *See* Fed. R. Civ. P. 26(b)(1) (stating a party may obtain discovery only of information that "is relevant to any party's claim or defense"). Information is relevant if it has a "'tendency to make the existence of any fact that is of any consequence to the determination of the action more . . . or less probable.'" *Money Point Diamond Corp. v. Union Corp.*, Nos. 92-2539, 92-2540, 1993 WL 280144 *1, at *7 (4th Cir. July 23, 1993) (citation omitted).

To avoid subjecting a responding party to a fishing expedition, the Fourth Circuit has required the requesting party to present an "intelligible explanation" for why the requested discovery is relevant to a party's claim or defense in the suit. *Cook v. Howard*, 484 Fed. Appx. 805, 813 (4th Cir. 2012). "Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Doe v. Nebraska*, 788 F. Supp. 2d 975, 980 (D. Neb. 2011). Upon a motion to compel production, the "moving party must make a '*clear* showing that the documents are relevant to the issues involved' in the litigation." *Pioneer Hi-Bred Intern. Inc. v. Holden's Foundation Seeds, Inc.*, 105 F.R.D. 76, 82 (N.D. Ind. 1985) (emphasis added) (quoting *Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1186 (D.S.C. 1974)). Plaintiffs have not done so here.

*First*, certain of Plaintiffs' RFPs are facially irrelevant to the claims and defenses in this suit. Requests 10 and 11, *[Requests 18 and 19 to DSS]* for example, seek information relating to HHS rulemaking actions and administrative determinations in November 2019—more than *a year after* the Complaint was filed. See DSS's Obj. and Resp. to Pltfs' RFPs (ECF No. 107-8) at 14. Those events did not (and could not) cause Plaintiffs' alleged injury; Plaintiffs did not (and could not) mention them in the Complaint; and Plaintiffs lack standing to challenge them even in an Amended Complaint. Further, information about HHS's 2019 regulatory actions has no tendency either to prove or disprove any of the actual claims or defenses in the suit, particularly as regards the constitutionality of the Governor's challenged actions in late 2017 and early 2018. Request 20 *[Request 30 to DSS]* likewise sweeps too broadly, seeking information about "any and all steps" SCDSS has taken to "prevent discrimination" by any CPA, including Miracle Hill. Plaintiffs' Complaint, however, does not challenge the adequacy of SCDSS' general, systemic efforts to "prevent discrimination," nor are the claims and defenses that *are* asserted in this suit dependent on or influenced by information regarding DSS's nondiscrimination efforts. Notably, Plaintiffs' pending Motion to Compel does not even *attempt* to articulate any basis upon which the information sought in Requests 10, 11, and 20 *[Requests 18, 19 and 30 to DSS]* is relevant. Instead, Plaintiffs simply summarize the Requests and then baldly claim they are "central to the claims and defenses in this case." Mem. in Supp. Pltfs' Mot. to Compel (ECF No. 107-1) at 16–18. Such conclusory assertions are grossly insufficient to pass the starting point of the discoverability analysis, and Plaintiffs' request to compel responses to these Requests should be denied.

*Second*, other of Plaintiffs' RFPs seek irrelevant information by requesting information regarding the practices of CPAs *nationwide*. Specifically, Requests 15, 16, and 17 *[Requests 25, 26 and 27 to DSS]* seek documents relating to the practice of "Miracle Hill or *any other CPA*" in

regard to prospective foster parents who are non-religious, non-Protestant, or LGBTQ. *See* DSS's Obj. and Resp. to Pltfs' RFPs (ECF No. 107-8) at 16-18. DSS objected to these requests on multiple bases, including that information relating to "any CPA"—a term not defined in the RFPs and not restricted to this State—was irrelevant to the claims and defenses in this suit. *Id*. But the actions and policies of CPAs in other States did not (and could not) cause Plaintiffs' alleged injury, and Plaintiffs did not (and could not) challenge them in the Complaint or any Amended Complaint. Further, such information has no tendency either to prove or disprove any claim or defense in this suit. Yet again, Plaintiffs' Motion to Compel does not even *attempt* to explain how such information is relevant, but, rather, simply repeats the Requests and then intones that they are "central to the claims and defenses in this case." Mem. in Supp. Pltfs' Mot. to Compel (ECF No. 107-1) at 16–17. Conclusory assertions of this sort are insufficient to provide the intelligible explanation of relevance necessary even to begin the discoverability analysis, and Plaintiffs' request to compel responses to these Requests should be denied.

*Third*, all of the RFPs seek irrelevant information to the extent they seek materials that predate Governor McMasters' time in office or that postdate the challenged actions. This timeframe-related irrelevancy applies equally to DSS documents. The Complaint challenges specifically identified actions, including actions of Governor McMaster taken in his official capacity as Governor of the State of South Carolina. Plaintiffs' RFPs, however, seek the production of materials from January 1, 2017 to the present. Governor McMaster, however, was not the Governor of the State of South Carolina on January 1, 2017, and documents and materials that predate his installation as Governor are not relevant to the claims asserted against him in his official capacity as Governor. Accordingly, Governor McMaster did not collect, review, or produce documents predating his installation as Governor on January 24, 2017 because such documents

are not relevant to any claim or defense asserted in the case. Plaintiffs have not provided any explanation at all why documents predating the Governor's installation are relevant to their claims, and the Complaint itself acknowledges that the Governor's earliest knowledge of the relevant facts was on or around February 21, 2018, *see* Complaint (ECF No. 1) ¶ 61.

Plaintiffs' request for materials dating "to the present" fare no better. Such documents are irrelevant to the claims and defenses in this suit, and are, therefore, not discoverable. The causes of action asserted against DSS arise from, at most, the issuance by DSS of conditional licenses to Miracle Hill in January and July 2019, and the issuance of a standard license to Miracle Hill in January 2019. DSS's alleged constitutional violations, then, occurred no earlier than in early 2018 and no later than early 2019. Documents and materials postdating the specific, identifiable, enumerated actions that allegedly violated constitutional provisions are not relevant to Plaintiffs' claims.

Plaintiffs argue the "continuing" nature of their claims makes such documents relevant. *See* Mem. in Supp. Pltfs' Mot. to Compel (ECF No. 107-1) at 13. Plaintiffs' argument, however, conflates alleged continuing *harm* with continued *actions*. Plaintiffs have alleged the former, asserting the *effect* of the challenged actions remain in place, but they have not alleged a single affirmative, discrete, allegedly wrongful action postdating the three events noted in the preceding paragraph. Accordingly, the chronological bookends to DSS's search, collection, review, and production of documents capture all the relevant materials, and Plaintiffs' request to compel additional responses to the Requests should be denied.

## II. Plaintiffs have not made a plausible challenge to DSS's assertions that all relevant documents were either previously produced or that no responsive documents existed.

As noted above, for most of the new document requests, DSS advised either that it had no documents at all (RFPs 21, 22, 23, 32 and 33), or that it had no documents in addition to those

already produced in response to the FOIA letters (RFPs 5, 7, 16, 17, 24, 27, 28, 30, 31, 34 and 36). Again, Plaintiffs' Motion to Compel contains virtually no mention of the issues in this case or of the relationship between those discovery requests and the issues in this case. Instead, Plaintiffs primarily argue that the State Defendants should be made to agree upon search terms and a list of likely custodians of documents. That issue is discussed in Heading III below.

In any event, this suit raises issues of law that can be resolved with minimal factual inquiry, and the potential benefit of the additional searches (which are unlikely to yield responsive documents in addition to those already located and reviewed using other means) are not proportional to the needs of the case.

**III. Plaintiffs did not (and still have not) proposed any set of search terms or parameters they would find satisfactory and have not identified any reason they should be permitted to assess the terms and parameters used by DSS.**

Plaintiffs' Motion and supporting memorandum appears to suggest that there is a trove of DSS documents that has not been searched. However, as already indicated above, DSS's licensing interactions with CPAs such as Miracle Hill are handled within a small and discrete niche in the agency, such that DSS has identified only three potential witnesses regarding those interactions. Nevertheless, Plaintiffs demand that DSS turn over the search terms, protocols, and document custodians for Plaintiffs to review and assess.

Neither the Fourth Circuit Court of Appeals nor the District Court for the District of South Carolina have held that a party must disclose the search terms it used, or custodians searched, in complying with requests for discovery. The Federal Rules of Civil Procedure require the parties to confer at the outset of discovery and for any party who wishes to propose a plan for discovery of electronically stored information to make such a proposal in that conference. *See* Fed. R. Civ. P. 26(f)(3)(C). While it is not uncommon for parties to agree at that time to search terms and

parameters, the Rules do not contemplate disclosure of a party's discovery efforts after the initial discovery plan, and a party ought not be able to sit silent at the time it is required to propose its discovery plan, only later to complain about the plan actually used. Indeed, Plaintiffs' counsel declined to respond to a request for information from Plaintiffs' counsel about whether Plaintiffs' counsel believed DSS's responses to the FOIA requests to have been incomplete.

Plaintiffs have not at any time proposed search terms they think would be adequate, nor have they identified any reason (other than the fact they were apparently assuming, expecting, or hoping for more responsive documents) to suspect that DSS's search was inadequate. Without more, and especially when (as here, as noted above) the RFPs are a fishing expedition in search of documents unrelated to any claim or defense in the suit, Plaintiffs have not justified a need to examine in detail and evaluate DSS's discovery efforts.

## CONCLUSION

For the foregoing reasons, DSS respectfully requests this Court deny Plaintiffs' Motion to Compel in whole or in part.

Respectfully submitted,

DAVIDSON, WREN & DEMASTERS P.A.

*s/Kenneth P. Woodington*
WILLIAM H. DAVIDSON, II, #425
KENNETH P. WOODINGTON, #4741
1611 Devonshire Drive, 2nd Floor
Post Office Box 8568
Columbia, South Carolina 29202-8568
wdavidson@dml-law.com
kwoodington@dml-law.com
T: 803-806-8222
F: 803-806-8855
*Counsel for Defendant Leach*

Columbia, South Carolina

October 19, 2020