# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# GREENVILLE DIVISION

| | |
|---|---|
| EDEN ROGERS and BRANDY WELCH, Plaintiffs, -against- UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; ALEX AZAR, in his official capacity as Secretary of the UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; ADMINISTRATION FOR CHILDREN AND FAMILIES; LYNN JOHNSON, in her official capacity as Assistant Secretary of the ADMINISTRATION FOR CHILDREN AND FAMILIES; SCOTT LEKAN, in his official capacity as Principal Deputy Assistant Secretary of the ADMINISTRATION FOR CHILDREN AND FAMILIES; HENRY MCMASTER, in his official capacity as Governor of the STATE OF SOUTH CAROLINA; and MICHAEL LEACH, in his official capacity as State Director of the SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES, Defendants. | Case No. 6:19-cv-01567-TMC  **REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DISCOVERY** |

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 3

I.      Plaintiffs' Relevance Objections Are Baseless. ...................................................... 3

II.     State Defendants Should Be Ordered To Disclose Their Discovery Efforts to Date and To Negotiate in Good Faith Concerning Custodians and Search Terms. ....................................................................................................... 6

III.    Plaintiffs' Requests Do Not Impose an Undue Burden on Defendant McMaster. ............................................................................................................. 8

CONCLUSION ................................................................................................................ 9

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Desrosiers v. MAG Indus. Automation Sys., LLC*,
  675 F. Supp. 2d 598 (D. Md. 2009) .............................................................................3

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006) ....................................................................................................4

*Legend Night Club v. Miller*,
  637 F.3d 291 (4th Cir. 2011) ......................................................................................4

*Mach. Sols., Inc. v. Doosan Infracore Am. Corp.*,
  323 F.R.D. 522 (D.S.C. 2018) ....................................................................................3

*Wilson v. Decibels of Or., Inc.*,
  No. 1:16-cv-00855-CL, 2017 WL 1943955 (D. Or. May 9, 2017) .............................3

**Statutes & Rules**

Fed. R. Civ. P. 26 ..................................................................................................................8

Plaintiffs, Eden Rogers and Brandy Welch, respectfully submit this reply memorandum in support of their Motion to Compel Discovery ("MTC", ECF No. 107).

## INTRODUCTION

Having abandoned several of the objections made in their responses to Plaintiffs' First Set of Requests for Production ("Requests"),[1] Defendant McMaster's and Defendant Leach's (together, "State Defendants") principal argument in opposition to Plaintiffs' motion to compel is that Plaintiffs have not established that the Requests at issue are irrelevant. Even beyond State Defendants' improper attempt to shift the burden concerning whether the Requests are relevant,[2] State Defendants' argument is based on a flat out misrepresentation of the issues in this case that is directly contrary to this Court's decision denying Defendants' motion to dismiss. State Defendants argue, for example, that this case concerns only "specific, identifiable, enumerated actions" taken by Defendants. (McMaster Opp. 11; Leach Opp. 9.) State Defendants also argue that "this suit raises issues of law that can be resolved with minimal factual inquiry." (McMaster Opp. 14; Leach Opp. 10.) That is wrong.

In finding that Plaintiffs' had standing to assert their claims, this Court found Plaintiffs have alleged they were injured because Defendants "creat[ed] a system that permits religiously-affiliated [child placement agencies or] CPAs to use religious eligibility criteria to deny federally- and state-funded public services to prospective foster

---

[1] State Defendants fail to respond to Plaintiffs' arguments regarding their "vague and ambiguous" objections (McMaster Requests 15-17, 20; Leach Requests 20 and 25-26) and Defendant McMaster's objections that documents were in the possession of other parties or non-parties (McMaster Requests 10-11, 15-17, 20). In addition, Defendant Leach does not address Plaintiffs' argument regarding his inadequate response to Request 29.

[2] As discussed below, the law is clear that, in light of the liberal construction of the federal discovery rules, it is *State Defendants*' burden to explain why any relevance objections are proper.

1

families". (May 8, 2020 Order ("MTD Order") 29, ECF No. 81.) As the Court acknowledged, Plaintiffs seek a broad injunction dismantling that system and removing barriers to same-sex couples and individuals who do not meet an agency's religious litmus test becoming foster parents—with all the broad, factually-intensive equitable issues such a request entails. *(See id.* at 28.) The Court also held that Plaintiffs have adequately alleged a violation of the Establishment Clause, which requires "deciding what the primary purpose or effect of the government's conduct is" and examining "the entire context surrounding the challenged practice, rather than only reviewing the contested portion.'" (*Id.* at 31 (quotation marks and citation omitted).) To determine whether the challenged action endorses a religion, one must be "aware of the history and context of the forum in which the [challenged conduct] takes place." (*Id.* at 32 (alteration in original, quotation marks and citation omitted).)

Plaintiffs' Requests go precisely to these broad factual issues identified by the Court. Moreover, there are many discovery requests to which State Defendants did not respond, or responded insufficiently, and as to which they make no relevance objection. State Defendants have rebuffed all of Plaintiffs' reasonable efforts to determine why State Defendants' productions in response to these requests are facially deficient. Contrary to State Defendants' assertions, neither Plaintiffs nor the Court are required blindly to accept that State Defendants' efforts to locate and produce documents were adequate. State Defendants should be required to disclose what steps they took to ensure compliance with Plaintiffs' Requests, including what search terms and custodians they used. And this Court should ensure that those search terms and custodians are adequate.

2

**ARGUMENT**

**I.     PLAINTIFFS' RELEVANCE OBJECTIONS ARE BASELESS.**

State Defendants attempt to shift the burden to Plaintiffs to demonstrate that their Requests are relevant.  However, it is well-established that "[t]he burden is on the party resisting discovery to explain specifically why its objections, including those based on irrelevance, are proper given the broad and liberal construction of federal discovery rules."  *Desrosiers v. MAG Indus. Automation Sys., LLC*, 675 F. Supp. 2d 598, 601 (D. Md. 2009).  State Defendants also gloss over the law making clear that relevance under the federal rules is to be liberally construed.  (*See* MTC 12-13.)  Essentially, "[a] discovery request is relevant 'if there is any possibility that the information sought might be relevant to the subject matter of [the] action.'"  *Mach. Sols., Inc. v. Doosan Infracore Am. Corp.*, 323 F.R.D. 522, 526 (D.S.C. 2018) (quoting *Wilson v. Decibels of Or., Inc.*, No. 1:16-cv-00855-CL, 2017 WL 1943955, at *5 (D. Or. May 9, 2017)).

In any event, regardless of the applicable standard and regardless of who bears the burden, Plaintiffs' Requests, as described in more detail below, are clearly relevant and State Defendants should be required to comply with them.  As this Court has held, what is at issue in this case is the entire "system" Defendants have created that denies federally- and state-funded public services to prospective foster parents on the basis of religion, sex, sexual orientation or their exercise of the fundamental right to marry.  (*See* MTD Order 29.)  Plaintiffs seek broad, injunctive relief that will benefit not only them but all potential foster families in South Carolina.  The merits of the Plaintiffs' Establishment Clause claims turn on the whole context and history of the "system" Plaintiffs challenge.  (*Id.* at 31-32.)  In addition, Plaintiffs' request for injunctive relief must be judged based on a factually-intensive, multi-part test that includes a balancing of

3

hardships. *See Legend Night Club v. Miller*, 637 F.3d 291, 297 (4th Cir. 2011) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)) (to prevail on a permanent injunction, a plaintiff must establish: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction").

By no means are the issues in this case limited to some "specific, identifiable, enumerated actions" (McMaster Opp. 11; Leach Opp. 9); nor does this suit raise only "issues of law that can be resolved with minimal factual inquiry" (McMaster Opp. 14; Leach Opp. 10.) State Defendants' relevance objections, which are grounded in this mistaken view of the issues in the case, are baseless.

For example, State Defendants assert that Requests seeking information relating to CPAs other than Miracle Hill are irrelevant.[3] They claim that "Plaintiffs' Complaint . . . does not challenge the adequacy of [the South Carolina Department of Social Services's or] SCDSS' general systemic efforts to 'prevent discrimination'", and therefore, information regarding SCDSS's actions to prevent discrimination by other CPAs is irrelevant. (McMaster Opp. 10; Leach Opp. 7.) This is directly contrary to this Court's order denying Defendants' motion to dismiss, which rejected the notion this this case only concerns Miracle Hill and not other CPAs: "Defendants' arguments might be persuasive if the harm alleged by Plaintiffs was the ability to foster specifically through Miracle Hill. However, that is not the harm Plaintiffs allege or seek to remedy by the

---

[3] McMaster Requests 15-17, 20; Leach Requests 25-27, 34.

4

relief requested." (MTD Order 29.) Rather, the waiver granted by the Department of Health and Human Services ("HHS") and the executive order issued by Defendant McMaster—the actions at the heart of this case—apply to all faith-based CPAs within South Carolina. "Plaintiffs seek a mandate of equal treatment with respect to participation in South Carolina's public child welfare and foster program" by asking the Court "to enjoin Defendants from funding or licensing 'any CPA that discriminates against prospective foster parents based on their religion, sex, sexual orientation, or exercise of the fundamental right to marry a person of the same sex'". (*Id.* at 28 (quoting Comp. at 38-39, ECF No. 1).) The Court also found that "Plaintiffs have plausibly alleged that Defendants conveyed a message endorsing religion by allowing state-licensed, government-funded CPAs to reject prospective foster parents based on religious criteria", further recognizing that the harm in this case relates to CPAs in South Carolina generally, not just Miracle Hill. (*See id.* at 32.) Thus, information concerning other CPAs is clearly germane to this action.[4]

State Defendants also take issue with Requests regarding HHS rulemaking actions[5]—actions whereby HHS, at the urging of State Defendants and others, essentially sought to extend the waiver provided to South Carolina and turn it into a rule that would apply nationwide. State Defendants argue that information relating to HHS rulemaking actions is irrelevant because "[t]hose events did not (and could not) cause Plaintiffs' alleged injury." (McMaster Opp. 9; Leach Opp. 7.) However, documents concerning

---

[4] State Defendants purport to object to these Requests (McMaster Requests 15-17 and Leach Requests 25-27) on the basis that they ask for information concerning CPAs outside of South Carolina. (McMaster Opp. 10; Leach Opp. 7-8.) That is disingenuous. State Defendants are well aware that Plaintiffs seek information about other CPAs *in* South Carolina, and it is that information State Defendants refuse to produce.
[5] McMaster Requests 10-11; Leach Requests 18-19.

these HHS actions plainly go to whether State Defendants, in concert with HHS, have "creat[ed] a system" that permits publicly-funded CPAs to discriminate on the basis of religious criteria—and to Plaintiffs' request for an injunction that "removes barriers to same-sex couples becoming foster parents" and requires evaluation of "their eligibility by the same criteria as any heterosexual couple or person". (MTD Order 29 (quotation marks and citation omitted).)

State Defendants also contend that "all of the Requests seek irrelevant information to the extent they seek materials that predate the Governor's time in office or postdate the challenged actions". (McMaster Opp. 11; *see* Leach Opp. 8.) They state that "[d]ocuments . . . postdating the specific, identifiable, enumerated actions that allegedly violated constitutional provisions are not relevant to Plaintiffs' claims". (McMaster Opp. 12; Leach Opp. 9.) This again misrepresents the nature of Plaintiffs' claims and is inconsistent with what this Court found in denying the motion to dismiss. As this Court held, Plaintiffs' Establishment Clause claims require examining "the history" and "the entire context surrounding the challenged practice." (MTD Order 31-32 (quotation marks and citation omitted).) Moreover, Plaintiffs' request for injunctive relief requires examining a number of factually-intensive, equitable factors, including balancing the hardships and evaluating the public interest—now and into the future.

## II. STATE DEFENDANTS SHOULD BE ORDERED TO DISCLOSE THEIR DISCOVERY EFFORTS TO DATE AND TO NEGOTIATE IN GOOD FAITH CONCERNING CUSTODIANS AND SEARCH TERMS.

Beyond State Defendants' unfounded relevance objections, there are many document requests at issue as to which State Defendants make no such objection.[6] As Plaintiffs demonstrated in their opening brief, State Defendants' productions in response

---

[6] McMaster Requests 1-7, 12, 22; Leach Requests 1-11, 13-17, 20, 28-31, 34, 36.

to these requests are limited and facially deficient. (MTC 3-5.) Moreover, while asserting in conclusory and self-serving terms that their discovery efforts have been reasonable, State Defendants have refused to explain in any meaningful way what they have done.[7] Their response is "trust us". But especially given all of the baseless objections State Defendants have made, Plaintiffs and the Court are entitled to an explanation of what has actually happened.

Defendant Leach asserts that Plaintiffs have not plausibly challenged his claim that all relevant documents were previously produced or do not exist. (Leach Opp. 9-10.) To attempt to justify his small production, Defendant Leach states that "DSS's licensing interactions with CPAs such as Miracle Hill are handled within a small and discrete niche in the agency, such that DSS has identified only three potential witnesses regarding those interactions". (*Id.* at 10.) But Defendant Leach cannot justify the adequacy of his efforts by selectively disclosing only *some* information about his efforts. Any doubts about the adequacy of the efforts Defendant Leach took to comply with Plaintiffs' Requests could be put to rest were he to, as Plaintiffs requested of him, simply share the steps he took to search for responsive documents and negotiate with Plaintiffs a reasonable set of search terms and custodians. Indeed, if the universe of individuals with relevant information is as small as Defendant Leach says, then this should be easy to do—and certainly his complaints about the proportionality of Plaintiffs' Requests would be misplaced.

---

[7] While originally claiming that information regarding their discovery efforts is protected by work product and/or attorney-client privilege (*see* MTC, Ex. 7 at 2-3), State Defendants have abandoned that argument as they make no mention of it in their opposition briefs.

7

State Defendants cite no case law in support of their position that they are within their rights to cease cooperating with Plaintiffs regarding discovery just because the initial discovery plan has already been submitted. (*See* McMaster Opp. 15-16; Leach Opp. 10-11.) As the many cases in Plaintiffs' opening brief establish, courts routinely direct the parties to negotiate search terms and custodians when they disagree about the sufficiency of a document production. (*See* MTC 10-11.)

State Defendants also make much of the fact that "Plaintiffs have not at any time proposed search terms." (McMaster Opp. 16; Leach Opp. 11.) That is specious. State Defendants announced during the parties' meet and confer call that they would not be willing to discuss search terms or custodians, so Plaintiffs had no reason (or even opportunity) to propose any. And as the present motion demonstrates, Plaintiffs are more than willing to discuss a set of terms and custodians with State Defendants; that is exactly what they have requested and are continuing to request.

### III. PLAINTIFFS' REQUESTS DO NOT IMPOSE AN UNDUE BURDEN ON DEFENDANT MCMASTER.

Defendant McMaster's conclusory assertion that "[t]he time and expense involved in searching for electronic documents in this case is not proportionate to the needs of the case" is wrong. (*See* McMaster Opp. 14.) Indeed, although he lists the factors courts consider when analyzing proportionality—the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit, *id.* (quoting Fed. R. Civ. P. 26(b)(1))—he fails actually to address any of them in his brief.

8

This failure to address the factors is unsurprising since they weigh heavily in favor of allowing the requested discovery. The "issues at stake" in this case are of the utmost importance, as the case concerns whether organizations providing taxpayer-funded government programs can exclude participants based on those organizations' religious views and whether agencies hired and funded by the state and federal government to find families to care for children in state custody can turn away qualified families. In addition, absent the requested discovery, Plaintiffs have no other way to access information regarding Defendant McMaster's internal handling of, and decision-making regarding, the issues central to this case. And, as discussed in further detail above, this discovery is important in resolving the issues because it will shed light on the history and context surrounding the challenged actions.

Moreover, Defendant McMaster's arguments are circular. The test for proportionality is, as Defendant McMaster's brief concedes, inherently factual. However, like Defendant Leach, Defendant McMaster refuses to disclose the facts concerning where relevant documents are located or what efforts have been undertaken to collect and produce them. Certainly, Defendant McMaster cannot possibly establish that Plaintiffs' Requests are not proportional without pointing to facts he has so far refused to disclose.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion to compel discovery.

October 26, 2020

9

*/s/ Susan K. Dunn*

Susan K. Dunn (Federal Bar No. 647)
AMERICAN CIVIL LIBERTIES UNION
OF SOUTH CAROLINA FOUNDATION
P.O. Box 20998
Charleston, SC 29413
(843) 282-7953
sdunn@aclusc.org

South Carolina Equality Coalition, Inc.
Nekki Shutt (Federal Bar No. 6530)
M. Malissa Burnette (Federal Bar No. 1616)
BURNETTE SHUTT & MCDANIEL, PA
912 Lady Street, 2nd floor
P.O. Box 1929
Columbia, SC 29202
(803) 850-0912
mburnette@burnetteshutt.law
nshutt@burnetteshutt.law

Peter T. Barbur (admitted *pro hac vice*)
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
pbarbur@cravath.com

Leslie Cooper (admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2633
lcooper@aclu.org

Daniel Mach (admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street NW
Washington, DC 20005
(202) 675-2330
dmach@aclu.org

M. Currey Cook (admitted *pro hac vice*)
Cathren Cohen (admitted *pro hac vice*)

10

LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005
(212) 809-8585
ccook@lambdalegal.org
ccohen@lambdalegal.org

Karen L. Loewy (admitted *pro hac vice*)
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
1776 K Street NW, 8th Floor
Washington, DC 20006-2304
(202) 804-6245
kloewy@lambdalegal.org

*Attorneys for Plaintiffs*

11