IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| EDEN ROGERS and BRANDY WELCH, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> UNITED STATES DEPARTMENT OF ) <br> HEALTH AND HUMAN SERVICES; ) <br> ALEX AZAR, in his official capacity as ) <br> Secretary of the UNITED STATES ) <br> DEPARTMENT OF HEALTH AND ) <br> HUMAN SERVICES; ADMINISTRATION ) <br> FOR CHILDREN AND FAMILIES; LYNN ) <br> JOHNSON, in her official capacity as ) <br> Assistant Secretary of the ) <br> ADMINISTRATION FOR CHILDREN ) <br> AND FAMILIES; SCOTT LEKAN, in his ) <br> official capacity as Principal Deputy ) <br> Assistant Secretary of the ) <br> ADMINISTRATION FOR CHILDREN ) <br> AND FAMILIES; HENRY MCMASTER, ) <br> in his official capacity as Governor of the ) <br> STATE OF SOUTH CAROLINA; AND ) <br> MICHAEL LEACH, in his official capacity ) <br> as State Director of the SOUTH ) <br> CAROLINA DEPARTMENT OF SOCIAL ) <br> SERVICES, ) <br> ) <br> Defendants. ) <br> ) | Case No.: 6:19-cv-01567-JD <br><br> **ORDER** |

This matter is before the Court on Defendants United States Department of Health and Human Services ("HHS"); Administration for Children and Families ("ACF"); Alex Azar, II, in his official capacity as Secretary of HHS; Lynn Johnson, in her official capacity as Assistant Secretary for ACF; and Scott Lekan, in his official capacity as Principal Deputy Assistant Secretary of ACF (collectively the "Federal Defendants") Motion for Protective Order under Federal Rule of Civil Procedure 26(c). Federal Defendants request that the Court enter a protective order prohibiting Plaintiffs from

1

seeking discovery from the Federal Defendants in this case beyond the limitations of the Administrative Procedure Act ("APA"), including a requirement that discovery may only be served with leave of Court obtained under APA standards after the Federal Defendants produce the administrative record. For the reasons set forth herein, the Federal Defendants' motion is granted.

## BACKGROUND

Plaintiffs, a married couple and Greenville-area residents, allege that they reached out to Miracle Hill Ministries ("Miracle Hill"), in April 2019 to inquire about working with the organization to seek State licensure as foster parents. Miracle Hill is a licensed child-placing agency in South Carolina that, among other things, recruits people to serve as foster parents in the SC Foster Care Program and assists them in obtaining foster-care licenses, (DE 1, ¶¶ 72, 73, 78–80; DE 50-2, p. 1.) Miracle Hill ultimately declined to assist Plaintiffs with obtaining State licensure because of its religious conviction that it should work only with foster parents who share Miracle Hill's religious beliefs. (DE 1, ¶ 81.) Plaintiffs allege that they have been denied the same opportunities to be foster parents in the SC Foster Care Program as families with whom Miracle Hill services, that they have suffered stigma, and that they have been coerced to support Miracle Hill's religious beliefs. (DE 1, ¶¶ 120, 134.)

Plaintiffs' claims against the Federal Defendants concern a regulatory exception issued to South Carolina in January 2019. That exception arises out of HHS' award of grants to South Carolina under Title IV-E of the Social Security Act, which authorizes federal funding to states "[f]or the purpose of enabling each State to provide, in appropriate cases, foster care" programs for eligible children. 42 U.S.C. § 670. To be eligible for Title IV-E payments, a state must submit a foster care plan containing certain features for HHS approval. Id. at § 671(a). Title IV-E grants may encompass reimbursement to states for administrative expenses necessary for the provision of child placement services and the proper and efficient administration of the Title IV-E foster care program. Id. at §

674(a)(3). Such expenses may include activities like training, case management, and recruitment and licensing of foster homes. 45 C.F.R. § 1356.60(c). States have discretion to engage third parties to provide many of these services.

HHS has promulgated a regulation that no person may be "denied the benefits of, or subjected to discrimination in the administration of HHS programs and services based on . . . religion." 45 C.F.R. § 75.300(c). In response to a request from the State, HHS granted South Carolina an exception from section 75.300(c)'s religious non-discrimination provision on January 23, 2019. See ECF No. 50-2 at 4. South Carolina sought the exception in connection with its use of federal funds to reimburse faith-based organizations that provide services under the State's Title IV-E foster care program ("the SC Foster Care Program"). In particular, the State rooted its request in the experience of Miracle Hill that, among other things, recruits people to serve as foster parents in the SC Foster Care Program and assists them in obtaining foster-care licenses. (DE 50-2, p. 1.)

HHS granted South Carolina's requested exception as to "Miracle Hill or any other subgrantee in the SC Foster Care Program that uses similar religious criteria in selecting among prospective foster care parents." (DE 50-2, p. 4.) HHS determined that the burden imposed on the free exercise rights of Miracle Hill and similarly situated religious entities by section 75.300(c)'s religious non-discrimination provision was not justifiable under the Religious Freedom Restoration Act ("RFRA"), and that enforcing section 75.300(c) in a manner that could result in Miracle Hill withdrawing from the SC Foster Care Program "would . . . cause a significant programmatic burden . . . by impeding the placement of children into foster care." (DE 50-2, p. 3.) Plaintiffs filed this lawsuit seeking declaratory and injunctive relief against Defendants for unlawfully authorizing state-contracted, government-funded foster care agencies to use religious eligibility criteria to exclude qualified families from fostering children in the public child welfare system. Plaintiffs contend this practice violates the Establishment, Equal Protection and Due Process Clauses of the United States Constitution and harms vulnerable children by denying them access to the loving families they desperately need and limits

opportunities for would-be foster parents to participate in the public child welfare system on the bases of religion and sexual orientation. As part of the ongoing litigation, Plaintiffs served on the Federal Defendants a first set of requests for production ("RFPs") on June 4, 2020. (See DE 102-2.) By consent, the Federal Defendants' responses and objections to these RFPs were due July 21, 2020. Plaintiffs' 26 RFPs seek information regarding foster care systems in every state in the country, including specific requests for information about officials and agencies in Texas and Pennsylvania. (DE 102-2, pp. 10, 12, RFP Nos. 5, 6, 11.) The RFPs also seek documents regarding religious accommodations of any kind for faith-based foster care or adoption agencies anywhere in the country. (DE 102-2, pp. 12, 13, RFP Nos. 12–15.) Federal Defendants produced only the Administrative Record to Plaintiffs on September 14, 2020.

## LEGAL STANDARD

Under the Administrative Procedure Act ("APA"), "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Camp v. Pitts, 411 U.S. 138, 142 (1973) (per curiam). In APA actions, the agency supplies the court with the record of the materials that were considered by the agency at the time of the challenged action. See Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985) (explaining that the APA provides for review "based on the record the agency presents to the reviewing court" (citing Citizens to Preserve Overton Park, 401 U.S. 402)). A party challenging an agency bears a special burden of demonstrating that the court should reach beyond the record . . . ." Sanitary Bd. v. Wheeler, 918 F.3d 324, 334 (4th Cir. 2019); Audubon Naturalist Soc'y of the Cent. Atl. States v. U.S. Dep't of Transp., 524 F. Supp. 2d 642, 660 (D. Md. 2007) ("[C]laims brought under the APA are adjudicated without a trial or discovery, on the basis of an existing administrative record . . . ."). Thus, the Government is entitled to a strong presumption of regularity in its designation of the

administrative record for review. See, e.g., Outdoor Amusement Bus. Ass'n, Inc. v. Dep't of Homeland Security, Civ. No. ELH-16-1015, 2017 WL 3189446, *12 (D. Md. July 27, 2017).

Courts have discretion to issue a protective order under Federal Rule of Civil Procedure 26(c) upon a showing of good cause in order to "protect a party from annoyance, embarrassment, oppression or undue burden or expense." Fed. R. Civ. P. 26(c)(1); see also Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984) (stating that "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required"); Crawford-El v. Britton, 523 U.S. 574, 598 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery."). The Court has wide discretion to control the nature and timing of discovery and "should not hesitate to exercise appropriate control over the discovery process." Herbert v. Lando, 441 U.S. 153, 177 (1979); cf. Clinton v. Jones, 520 U.S. 681, 706–07 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." (citation omitted)).  This discretion includes orders forbidding the requested discovery altogether. Fed. R. Civ. P. 26(c)(1)(A).

## DISCUSSION

Although the Plaintiffs' claims are couched in terms of constitutional violations,[1] their discovery requests must still be limited to the Administrative Record, absent a "strong showing of bad faith or improper behavior". Department of Commerce v. New York, 139 S. Ct. 2551, 2574 (2019).[2]

---

[1] Even if the text of the APA standing alone could be understood to permit some leeway for the consideration of additional non-record evidence, it would plainly subvert the purpose of the APA to permit plaintiffs to avoid the APA's strictures and pursue wide-ranging discovery simply by casting their claim as a "constitutional" one. See Ketcham, 2016 WL 4268346, at *2 ("To distinguish between a 'stand-alone constitutional challenge' and an 'APA challenge[]' . . . would run afoul of Congress's intent."). That is because a contrary rule would "incentivize every unsuccessful party to agency action to allege bad faith, retaliatory animus, and constitutional violations to trade in the APA's restrictive procedures for the more even-handed ones of the Federal Rules of Civil Procedure." Jarita Mesa, 58 F. Supp. 3d at 1238.

[2] Both parties have cited to Department of Commerce as dispositive of the matter. In Department of Commerce, a group of plaintiffs challenged a decision by the Department of Commerce related to the Census and raised both statutory and constitutional claims, including a claim based on the equal protection

In accord with that principle, the APA limits courts' equitable jurisdiction by dictating what evidence courts are to evaluate in suits for nonmonetary relief by a "person suffering legal wrong because of agency action," 5 U.S.C. § 702, even when that challenged agency action is allegedly "contrary to constitutional right," Id. at § 706(2)(B).  In such cases, as in all challenges to agency action, "the court shall review the whole record or those parts of it cited by a party." 5 U.S.C. § 706; see also Harkness v. Sec'y of Navy, 858 F.3d 437, 451 n.9 (6th Cir. 2017) (holding an Establishment Clause claim "properly reviewed on the administrative record").

Further, in cases where Congress has provided for judicial review under a statute "without setting forth the standards to be used or the procedures to be followed," the Supreme Court "has held that consideration is to be confined to the administrative record and that no de novo proceeding may be held." United States v. Carlo Bianchi & Co., 373 U.S. 709, 715 (1963). The same applies here. Here, the Federal Defendants have produced an administrative record, and the Plaintiffs have not alleged bad faith or improper behavior that warrants Federal Defendants producing information beyond the Administrative Record at this time.  Equally, nothing forecloses Plaintiffs from seeking this Court's leave to serve additional discovery upon a proper showing of the need for such discovery under the

---

component of the Due Process Clause. See id. at 2563–64.  The Supreme Court held that the district court "should not have ordered extra-record discovery when it did" because the plaintiffs had not made the "strong showing of bad faith or improper behavior" needed to justify such a step. Id. at 2574.  The Court further explained that although extra-record discovery was ultimately justified in the case, it became proper only after the plaintiffs had identified material in the administrative record that justified extra-record discovery. Id. Before that point, discovery outside the agency record was "premature."  Id.

Consistent with Department of Commerce, and this Court's decision here, numerous courts across the country have restricted review to the administrative record in cases that raise constitutional claims.  See, e.g., Bellion Spirits, LLC v. United States, 335 F. Supp. 3d 32, 44 (D.D.C. 2018); Chiayu Chang v. U.S. Citizenship & Immigration Servs., 254 F. Supp. 3d 160, 161 (D.D.C. 2017); Ketcham v. U.S. Nat'l Park Serv., No. 16-CV-17-SWS, 2016 WL 4268346, at *1-2 (D. Wyo. Mar. 29, 2016); Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv., 58 F. Supp. 3d 1191, 1237–38 (D.N.M. 2014); Tafas v. Dudas, 530 F. Supp. 2d 786, 803 (E.D. Va. 2008); Harvard Pilgrim Health Care of New England v. Thompson, 318 F. Supp. 2d 1, 10 (D.R.I. 2004).  Indeed, this outcome is a necessary result of Congress's direction in the APA. The Supreme Court has instructed that the "power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations." Armstrong v. Exceptional Child Ctr., Inc., 575 U.S. 320, 327 (2015).

principles of APA review.  See, e.g., Carlsson v. U.S. Citizenship & Immigration Servs., No. 2:12-cv-7893-CAS, 2015 WL 1467174, at *10–13 (C.D. Cal. Mar. 23, 2015) (permitting only limited discovery pertaining to particular claims after a showing of need).

In short, "when a constitutional challenge to agency action requires evaluating the substance of an agency's decision made on an administrative record, that challenge must be judged on the record before the agency." Bellion Spirits, LLC v. United States, 335 F. Supp. 3d 32, 43 (D.D.C. 2018); see also n. 2, supra.  Based on the Plaintiffs' claims, this Court will ultimately be called on to "evaluat[e] the substance of an agency's decision," namely the January 2019 conditional exception. That evaluation rests on the administrative record, just as the APA requires.

## CONCLUSION

For the foregoing reasons, it is Ordered that the Federal Defendants' Motion for Protective Order is granted.

**AND IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

Greenville, South Carolina
March 8, 2021