IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Eden Rogers, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> United States Department of Health and Human Services, et al., <br><br> Defendants. | Civil Action No. 6:19-cv-01567-JD <br><br> **DEFENDANT LEACH'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL** |

Defendant Michael Leach, in his official capacity as State Director of the South Carolina Department of Social Services, submits this response to Plaintiffs' Motion to Compel Production of an Amended Privilege Log (ECF No. 137).

## Introduction

Plaintiffs filed this suit on May 30, 2019, alleging Governor McMaster violated the Establishment Clause and Equal Protection Clause when he took actions to remove a governmental burden or penalty being imposed on private foster care providers (known in the industry as "child-placing agencies" or "CPAs") solely because of the CPAs' sincerely held religious beliefs. The Complaint contains almost no allegations pertaining specifically to Defendant Leach. Indeed, the Complaint asserts that "As Governor, Defendant McMaster has controlling authority over DSS." ECF No. 1 at 6, ¶ 15. In light of that statement, it is unclear why Plaintiffs felt it necessary to add Director Leach as a defendant. There can be no doubt that if the Court were to issue an order requiring action by the Governor, that order would effectively require Director Leach to take the same action without the next for him to have been named as a defendant.

This Court dismissed Plaintiffs' claims in part (*see* Order Granting in Part the Mots. to Dismiss (ECF No. 81) (May 8, 2020)), and discovery commenced on the remaining claims. Plaintiffs' recent Motion to Compel, and this Response thereto, relate to the production of

documents by Director Leach (hereinafter "DSS") and, more specifically, to DSS's privilege log listing and describing the documents withheld pursuant to the attorney-client privilege, the work-product doctrine, and the common-interest and joint-defense doctrines.

DSS, like the Governor, produced a number of documents in response to Plaintiffs' requests for production. DSS originally served its discovery responses, including a privilege log, on August 4, 2020. DSS had previously provided Plaintiffs' counsel with most of the requested documents as a result of a FOIA request made by Plaintiffs' counsel in January 2019, some months before this action was filed.

On October 5, 2020, Plaintiffs filed a Motion to Compel Discovery, ECF No. 107. Although DSS's privilege log had been served with its discovery responses on August 4, 2020, Plaintiffs did not challenge the privilege log in either the Motion to Compel or in the 28-page memorandum filed in support of it. After an extended effort, that motion was resolved by agreement. Plaintiffs withdrew the motion on January 20, 2021. ECF No. 124. Any dispute about the sufficiency of the State Defendants' production of documents was therefore resolved at that time. There was no suggestion that Plaintiffs intended to file a subsequent challenge to the privilege logs of either of the State Defendants. Plaintiffs' present effort to challenge the privilege logs, months after they were served, is untimely.

Like the Governor, DSS has withheld a number of documents based on a claim of privilege or work-product protection. *See* Leach (DSS{) Privilege Log (ECF No. 137-1 at 5–11). As with the documents withheld by the Governor, the overwhelming majority of the entries in DSS's privilege log are communications to, from, or between, or among the Office of the Governor's ("Office") in-house attorneys and/or DSS's attorneys relating to the issues in this case. Indeed, many of the documents withheld by DSS are the same as those withheld by the Governor. DSS's

privilege log, like that of the Governor, provides a description of the document including its date, type, author/sender, recipients, subject line or descriptive file name, and the privilege asserted. *Id.*

DSS's privilege log complies with the requirements of the applicable Rule. Federal Rule of Civil Procedure 26 requires only that a privilege log describe "the nature of the documents" that are otherwise discoverable but have been withheld because of a privilege or protection, and to describe them "in a manner that . . . will enable other parties to assess the claim." It does not, however, require that privilege logs contain the level of detail that Plaintiffs apparently seek to require. DSS's privilege log contains all the information required by Rule 26 and it customarily found in a privilege log, and provides ample information to enable the requesting party to assess the claim of privilege.

Because DSS's privilege log provides Plaintiffs enough information to assess the claim of privilege, it complies with Rule 26, and DSS respectfully requests this Court deny Plaintiffs' Motion to Compel.

## Standard of Review

A trial judge enjoys "great discretion" in its consideration or and ruling on discovery matters. *Crawford v. Avon Prods., Inc*., 842 F.2d 1289 (Table) (4th Cir. 1988); *see also Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc*., 43 F.3d 922, 929 (4th Cir. 1995) (noting that a district court's ruling on a motion to compel discovery is reviewed only for abuse of discretion). A reviewing court will not "second-guess the district court's determination of such matters, given the complex task of managing the multifarious questions which arise in such litigation.'" *Id*. (citation omitted).

**ARGUMENT**

**1.    Plaintiffs' motion raises issues that could have been raised in their October 5, 2020, Motion To Compel, and is untimely in any event.**

As noted above, Plaintiffs filed a Motion to Compel on October 5, 2020. ECF No. 107. After extensive discussions and supplemental productions by both of the State Defendants, that motion was withdrawn by Plaintiffs on January 20, 2021. ECF No. 124. As far as undersigned counsel can recall after a review of communications between the parties, Plaintiffs did not raise or reserve issues about the State Defendants' privilege logs at any time during that process. The resolution of the Motion to Compel therefore should be regarded as having concluded any issues about privilege logs.

In addition, Plaintiffs' motion has been filed well after the 21-day deadline set by Local Rule 37.01(A). That rule provides in pertinent part that "Motions to compel discovery must be filed within twenty-one (21) days after receipt of the discovery response to which the motion to compel is directed. . . ." Plaintiffs' current motion notes that the last dates of service of privilege logs by the State Defendants occurred on December 18, 2020 (Director Leach) and January 21, 2021 (Governor McMaster). ECF No. 137 at 2. (The motion is misleading in that it does not mention that both of the State Defendants first served privilege logs on August 4, 2020.)

On March 18, 2021, three months after DSS served a supplemental privilege log and two months after the Governor served a supplemental privilege log, Plaintiffs wrote counsel for the State Defendants, claiming insufficiencies in the logs. ECF No. 137 at 29-30. This belated cavil came long after the 21-day deadline set by Local Rule 37.01. Plaintiffs do not suggest that they raised this issue before March 18, 2021. Instead, they attempt to start to run the 21-day period from the dates of the responses of Defendants' counsel to Plaintiffs' untimely March 18 letter. ECF No. 137 at 3. However, that contention is simply without legal support. A party should not be permitted

4

to allow Rule 37.01's 21-day period to run out (by several months) and then claim that the issue subsequently became ripe months later under Rule 7.03 when the opposing party responded unfavorably to an untimely effort to resuscitate the issue.

While DSS recognizes that the Court has discretion to excuse noncompliance with Rule 37.01's deadlines, there is nothing about this case that would justify Plaintiffs' dilatory motion. As discussed in more detail herein, Plaintiffs are not seeking facts relevant to their claims, but instead are engaging in an unnecessary and belated effort to discover attorney communications of a type that would be expected in a case such as this where litigation was readily anticipated. Indeed, most, if not all, of the facts relevant to Plaintiffs' claims were matters of public record already known to Plaintiffs at the time this action was filed.

### 2. Plaintiffs' motion is without merit in any event.

Federal Rule of Civil Procedure 26(b)(5)(A) provides that a party "withhold[ing] information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material . . . must . . . describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that . . . *will enable other parties to assess the claim*." Fed. R. Civ. P. 26(b)(5)(A) (emphasis added). A privilege log need not be "detailed," so long as the information contained in the log shows why an item was withheld from production. *N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 502 (4th Cir. 2011) (holding that a privilege log that "identified the nature of each document, the date of its transmission or creation, the author and recipients, the subject, and the privilege asserted" was adequate because "[a]lthough the log is not detailed, if the assertions contained in it are credited, a court could reasonably conclude that all of the elements in Rule 26(a)(5) and the test [for attorney-client privilege] had been met"). This district has, time and again, held that a privilege

5

log is adequate if it "identifies each document withheld, information regarding the nature of the privilege/protection claimed, the name of the person making/receiving the communication, the date and place of the communication, and the document's general subject matter." *AVX Corp. v. Horry Land Co.*, No. 4:07-CV-3299-TLW-TER, 2010 WL 4884903, at *3 (D.S.C. Nov. 24, 2010).

DSS's privilege log satisfies these requirements. It provides all the necessary information, including the general subject matter of the withheld items, that is required to assess if an item is indeed privileged or protected from disclosure. For each withheld item, DSS lists the date, document type, sender/drafter, recipient, persons copied (if the item is an email), subject/file name, and which privileges, protections, or both, apply to the item. *See* DSS Privilege Log (ECF No. 137-1 at 5–11). Contrary to Plaintiffs' assertions, the "Subject/File Name" column on the privilege log, when viewed within the context of each entry by a person with even passing familiarity with this litigation, does provide Plaintiffs with ample information to assess whether an item is privileged or protected. As with the items listed on Governor McMaster's privilege log, practically all of the items on DSS's log are emails and attachments sent to or from counsel. (A substantial number of these emails were sent to *and* from counsel.)  Further, the subject line of the email, and, in the case of attachments, the file name, provide a sufficiently clear nexus to the subject matter of this litigation to allow an attorney familiar with the litigation and the document requests to discern the privileged nature of the communication. . *See* Fed. R. Civ. P. 26(a)(5)(A)(ii) (providing that the withholding party must "describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable *other parties* to assess the claim" (emphasis added)); *cf.* Fed. R. Civ. P. 45(d)(2)(A)(ii) (providing that a person withholding subpoenaed information must "describe the nature of the withheld documents, communications, or tangible things in a manner

6

that, without revealing information itself privileged or protected, will enable *the parties* to assess the claim" (emphasis added)).

Plaintiffs cite a few documents on the DSS log in their Motion to Compel, ECF No. 137 at 5, but those conclusory contentions provide no basis for granting the motion. The fact that litigation such as this might be forthcoming was apparent at least as early as February 27, 2018, when Governor McMaster requested that HHS ACF Principal Deputy Assistant Secretary Steven Wagner grant a deviation or waiver from the nondiscrimination provisions of HHS regulation 45 CFR § 75.300 "on behalf of South Carolina and faith-based organizations like Miracle Hill" operating under South Carolina's Title IV-E Foster Care Program. *See* Complaint, ECF No. 1 at 20. The communications in the DSS privilege log specifically cited in Plaintiffs' motion were all between counsel for the Governor and counsel for DSS. It is readily apparent that all of them would have been made in anticipation of litigation. Moreover, if Plaintiffs' counsel wished to obtain statistics they believed relevant to this litigation, they could have done so (and in fact did do so) via requests for the statistics themselves, rather than seeking attorney communications about the statistics.

As with the specific entries Plaintiff complains about, all the entries on DSS's privilege log, when considered in the context of the issues in this case, describe the documents withheld in adequate detail to assess the claim that it is privileged or protected. It is unsurprising that some documents which might otherwise be responsive to Plaintiffs' discovery requests are covered by the attorney-client privilege and work-product protection, since DSS anticipated from the time it became aware of the Governor's awareness of the alleged facts that they would eventually culminate in litigation. *See* Def. Henry McMaster's Mot. to Dismiss, August 30, 2019 (ECF No. 57) 4–6 (describing the Governor's actions upon which Plaintiffs' base their claims). Since the

7

moment the foster care issues came onto Governor McMaster's radar, almost all communications were among or involved counsel, including DSS's counsel on a few occasions. It is thus unsurprising that DSS claims a privilege or protection for some documents, emails, and other items.

Finally, in order to avoid undue duplication, DSS incorporates by reference any applicable contentions made by the Governor in his opposition to Plaintiffs' motion.

## Conclusion

Plaintiffs' motion is significantly untimely, but even if it had been timely filed, DSS's privilege log adequately describes each withheld document to any party familiar with this litigation. Therefore, DSS asks that this Court deny Plaintiffs' motion to compel DSS to amend its privilege log.

Respectfully submitted,

DAVIDSON, WREN & DEMASTERS P.A.

*s/Kenneth P. Woodington*
WILLIAM H. DAVIDSON, II, #425
KENNETH P. WOODINGTON, #4741
1611 Devonshire Drive, 2nd Floor
Post Office Box 8568
Columbia, South Carolina 29202-8568
wdavidson@dml-law.com
kwoodington@dml-law.com
T: 803-806-8222
F: 803-806-8855

*Counsel for Defendant Leach*

Columbia, South Carolina

April 26, 2021

8