**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | |
|---|---|
| Eden Rogers, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> United States Department of Health and Human Services, et al., <br><br> Defendants. | Civil Action No. 6:19-cv-01567-JD <br><br><br> **GOVERNOR MCMASTER'S <br> RESPONSE TO PLAINTIFFS' <br> MOTION TO COMPEL** |

Governor Henry McMaster, in his official capacity as Governor of the State of South Carolina, submits this response to Plaintiffs' Motion to Compel Production of an Amended Privilege Log (ECF No. 137).

## INTRODUCTION

Plaintiffs filed this suit on May 30, 2019, alleging Governor McMaster violated the Establishment Clause and Equal Protection Clause when he took actions to remove a governmental burden or penalty being imposed on private foster care providers (known in the industry as "child-placing agencies" or "CPAs") solely because of the CPAs' sincerely held religious beliefs. The District Court dismissed Plaintiffs claims in part (*see* Order Granting in Part the Mots. to Dismiss (ECF No. 81) (May 8, 2020)), and discovery commenced on the remaining claims. Plaintiffs' recent Motion to Compel, and this Response thereto, relate to the Governor's production of documents and, more specifically, to the Governor's privilege log listing and describing the documents withheld pursuant to the attorney-client privilege, the work-product doctrine, and the common-interest and joint-defense doctrines.

In response to Plaintiffs' 22 requests for the production of documents, Governor McMaster has produced 843 pages of documents. He has withheld 105 documents based on a claim of

privilege or work-product protection. *See* McMaster Privilege Log (ECF No. 137-1 at 13–27).[1] The overwhelming majority of the entries in his privilege log are communications to, from, between, or among the Office of the Governor's ("Office") in-house attorneys relating to the issues in this case. For each document withheld by Governor McMaster, his privilege log provides a description of the document including its date, type, author/sender, recipients, subject line or descriptive file name, and the privileges and protections asserted. *Id.*

As explained more fully below, Plaintiffs' Motion should be denied for either of two reasons. *First*, it is untimely. During the course of discovery in this suit, Governor McMaster served four privilege logs on Plaintiffs: an original privilege log with his initial production of documents (on August 4, 2020), a supplemental privilege log accompanying a supplemental production (on January 5, 2021), another supplemental privilege log (on January 19, 2021), and finally the privilege log about which Plaintiffs now complain (on January 21, 2021). In neither their letter memorializing the parties' meet-and-confer about the Governor's initial production nor in their Motion to Compel and accompanying memorandum filed in 2020 nor anywhere else along the way did Plaintiffs complain of the Governor's privilege log. Nor did they timely do say after receiving the supplemental log on January 21, 2021. Rather, they waited 56 days before raising the issue with counsel for the Governor. Under the applicable rules, that is too little, too late.

*Second*, even if Plaintiffs' pending Motion to Compel were timely filed (which it is not), it lacks merit. The Governor's privilege log complies with the requirements of the applicable rule. Federal Rule of Civil Procedure 26 requires only that a privilege log describe "the nature of the documents" that are otherwise discoverable but have been withheld because of a privilege or

---

[1] Citations to the pages of ECF number 137-1 refer to the pagination found in the ECF file stamp, not to the original page numbers found within each of the several documents contained therein.

protection, and describe them "in a manner that . . . will enable other parties to assess the claim." It does not, however, require that privilege logs contain the level of detail that Plaintiffs apparently seek to require. Governor McMaster's privilege log contains all the information required by Rule 26 and customarily found in a privilege log, and it provides ample information to enable the requesting party to assess the claim of privilege.

Because Plaintiffs' Motion is untimely, and because the Governor's privilege log provides Plaintiffs enough information to assess the claim of privilege, Governor McMaster respectfully requests this Court deny Plaintiffs' Motion to Compel.

## STANDARD OF REVIEW

A trial judge enjoys "great discretion" in its consideration or and ruling on discovery matters. *Crawford v. Avon Prods., Inc.*, 842 F.2d 1289 (Table) (4th Cir. 1988); *see also Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 929 (4th Cir. 1995) (noting that a district court's ruling on a motion to compel discovery is reviewed only for abuse of discretion). A reviewing court will not "second-guess the district court's determination of such matters, given the complex task of managing the multifarious questions which arise in such litigation.'" *Id.* (citation omitted).

## ARGUMENT

**I.     Plaintiffs' Motion to Compel is untimely under Local Civil Rule 37.01(A) (D.S.C.).**

The Local Rules require that "Motions to compel discovery must be filed within twenty-one (21) days after receipt of the discovery response to which the motion to compel is directed." Local Rule 37.01(A) (D.S.C.). Plaintiffs' pending Motion is woefully belated. The relevant sequence of events is as follows:

3

(a)     Governor McMaster produced an initial privilege log on August 4, 2019 accompanying his initial document production. Plaintiffs did not assert that the initial privilege log was deficient.

(b)     Plaintiffs filed a Motion to Compel on October 5, 2019 (ECF No. 107), alleging various deficiencies and supposed shortcomings in Governor McMaster's document production. Neither the Motion nor the lengthy memorandum in support thereof made any mention of any alleged inadequacy in the Governor's privilege log.

(c)     Governor McMaster served a supplemental privilege log on Plaintiffs on January 5, 2021. Plaintiffs again raised no issues or grievance relating to it.

(d)     Governor McMaster served another supplemental privilege log on Plaintiffs on January 19, 2021. Yet again, Plaintiffs expressed no dissatisfaction with it.

(e)     Plaintiffs withdrew their then-pending Motion to Compel because the parties had resolved their dispute relating to the Governor's response to the Plaintiffs' document requests. *See* Plaintiffs' Withdrawal of Mot. to Compel (ECF No. 124). The Withdrawal did not reserve any right subsequently (much less belatedly) to challenge the privilege logs that accompanied the productions that had resolved the discovery dispute.

(f)     On January 21, 2021, after completing additional searches requested by Plaintiffs, Governor McMaster served the supplemental privilege log of which Plaintiffs now complain.

(g)     Plaintiffs waited **56 days** before expressing any dissatisfaction with the Governor's privilege log. *See* Plaintiffs' Mot. to Compel at 2 (ECF No. 137) (conceding Plaintiffs first raised the supposed inadequacies of the Governor's privilege log in a letter dated March 18, 2021). Three weeks after *that*, Plaintiffs filed their pending Motion to Compel.

The Local Rules are clear: "Motions to compel discovery must be filed within twenty-one (21) days after receipt of *the discovery response* to which the motion to compel is directed." Local Rule 37.01(A) (D.S.C.) (emphasis added). Plaintiffs did not do so, and their Motion to Compel is, therefore, untimely. Plaintiffs novel argument to the contrary—namely, that Rule 37.01(A) allows them to wait nearly two months after receipt of the discovery response before raising the issue and then to file their Motion within 21 days after *that* event, *see* Plaintiffs' Mot. to Compel at 3 (ECF No. 137)—would render the 21-day requirement a total nullity. Such an interpretation is contrary

4

to settled rules of constructions, which apply to procedural rules as well as statutes. *See generally* 32 Am. Jur. 2d Federal Courts § 292 Construction of Federal Rules of Civil Procedure ("The federal courts employ the traditional tools of statutory construction to interpret the Federal Rules of Civil Procedure. . . . An interpretation that gives effect to every clause is generally preferable to one that does not.") (citations omitted).

Plaintiffs' Motion to Compel was untimely, and this untimeliness alone is a sufficient basis on which to deny the Motion. *See*, *e.g.*, *Evans v. Int'l Paper Co.*, C/A No. 3:16-cv-1215-JMC-KDW, 2017 WL 1231086, at *5–6 (D.S.C. April 4, 2017) (denying a Motion to Compel that was not filed within the 21-days mandated by Local Rule 37.01(A) and noting that an untimely motion could be "denied as a matter of course"); *Anderson v. United States*, C/A No. 8:12–3203–TMC–KDW, 2015 WL 1268011, at *8, (D.S.C. March 19, 2015), *aff'd* 2015 WL 1754530 (D.S.C. April 17, 2015) (same).

## II. Governor McMaster's privilege log satisfies the requirements of Federal Rule of Civil Procedure 26(b).

Even if Plaintiffs' Motion were timely filed, it nevertheless lacks any merit. Federal Rule of Civil Procedure 26(b)(5)(A) requires that a party "withhold[ing] information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material . . . must . . . describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that . . . *will enable other parties to assess the claim*." Fed. R. Civ. P. 26(b)(5)(A) (emphasis added). A privilege log need not be "detailed," so long as the information contained in the log shows why an item was withheld from production. *N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 502 (4th Cir. 2011) (holding that a privilege log that "identified the nature of each document, the date of its transmission or creation, the author and recipients, the subject, and the privilege asserted" was adequate because "[a]lthough

5

the log is not detailed, if the assertions contained in it are credited, a court could reasonably conclude that all of the elements in Rule 26(a)(5) and the test [for attorney-client privilege] had been met"). This district has, time and again, held that a privilege log is adequate if it "identifies each document withheld, information regarding the nature of the privilege/protection claimed, the name of the person making/receiving the communication, the date and place of the communication, and the document's general subject matter." *AVX Corp. v. Horry Land Co.*, No. 4:07-CV-3299-TLW-TER, 2010 WL 4884903, at *3 (D.S.C. Nov. 24, 2010).

Governor McMaster's privilege log satisfies these requirements. It provides all the necessary information, including the general subject matter of the withheld items, that is required to assess if an item is indeed privileged or protected from disclosure. For each withheld item, Governor McMaster lists the date, document type, sender/drafter, recipient, persons copied (if the item is an email), subject/file name, and which privileges, protections, or both apply to the item. *See* McMaster Privilege Log (ECF No. 137-1 at 13–27). Contrary to Plaintiffs' assertions, the "Subject/File Name" column on the privilege log, when viewed within the context of each entry by a person with even passing familiarity with this litigation, does provide Plaintiffs with ample information to assess whether an item is privileged or protected. Of the 105 items listed on Governor McMaster's privilege log, 99 of them are internal emails and attachments sent to or from counsel. (A substantial number of these emails were sent to *and* from counsel.) Further, in all 99 of these instances, the subject line of the email, and, in the case of attachments, the file name, provide a sufficiently clear nexus to the subject matter of this litigation to allow an attorney familiar with the litigation and the document requests to discern the privileged nature of the communication. *See* Fed. R. Civ. P. 26(a)(5)(A)(ii) (providing that the withholding party must "describe the nature of the documents, communications, or tangible things not produced or

6

disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable *other parties* to assess the claim" (emphasis added)); *cf.* Fed. R. Civ. P. 45(d)(2)(A)(ii) (providing that a person withholding subpoenaed information must "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable *the parties* to assess the claim" (emphasis added)).

Of the remaining six documents on the log, two are legal memoranda authored by the Office's then-in-house counsel, Richele Taylor; another is a draft letter authored by Richele Taylor, with the file name "Letter Religious Exemption — Final.docx"; two are draft letters authored by the Office's in-house counsel, Thomas Limehouse, with file names clearly indicating they relate to a congressional inquiry relating to the Governor's challenged actions; and the last is a legal memo authored by the Office's in-house counsel, Anita Fair, with a file name indicating it relates to the same congressional inquiry. *See* McMaster Privilege Log (ECF No. 137-1 at 13, 19, 24, and 26, respectively).

The handful of documents Plaintiffs complain of in their Motion to Compel provide no basis for granting that Motion. For example, Plaintiffs take issue with the first entry of Governor McMaster's privilege log, dated February 21, 2018, and described as "Draft memo on the issues," with an attachment labeled "Title IV.docx." *See* Pltfs' Mot. to Compel at 4 (ECF No. 137). Plaintiffs argue this entry lacks information for them to assess whether the assertion of privilege or protection is proper. However, this entry contains information that clearly shows it is subject to a claim of privilege. The information listed in the "Document type," "From," and "To" columns shows that it is an email from the Office's in-house counsel to the Office's press secretary or public relations director. *See* McMaster Privilege Log (ECF No. 137-1 at 13). The "Subject/File Name"

for the email and accompanying attachment, listed as "Draft memo on the issues" and "Title IV.docx," respectively, indicate the email is a communication regarding the legal issues relating to Title IV-E of the Social Security Act. *Id*. Anyone familiar with this litigation (and especially the parties' counsel) knows that Title IV-E authorizes the federal government to provide states funding related to foster care. Indeed, the very funds at issue in the suit are Title IV-E funds, and Plaintiffs cannot feign ignorance since they cite Title IV-E in their Complaint. *See* Compl., May 30, 2019 (ECF No. 1) ¶¶ 11, 33–34, and 37. Put together, this information shows this item is an internal email from the Office's in-house counsel regarding legal issues relating to the statutory provision underlying the regulation and funds at issue in this suit, and is thus protected by the attorney-client privilege and work-product doctrine.

Plaintiffs cite other examples of allegedly inadequate entries on the privilege log, but those entries are likewise adequate under Rule 26(a)(5) when taken as a whole. For example, Plaintiffs cites the following entry, "RE: meeting – phone or in person" (dated March 12, 2018) as inadequate, *see* Pltfs' Mot. to Compel at 5 (ECF No. 137), but when the "Subject/File Name" is included with other information in the entry, the privilege clearly applies. Specifically, this entry describes an "Email" from the Office's in-house counsel to in-house counsel for the South Carolina Department of Social Services ("SCDSS"), whose director is named in his official capacity as a Defendant in this lawsuit. *See* McMaster Privilege Log (ECF No. 137-1 at 7). The log asserts privileges and protections pursuant to, and in accordance with, the attorney-client privilege, work-product doctrine, and common-interest and joint-defense doctrines. *Id*. The information in this entry, taken together, clearly shows that the email is from the Office's in-house counsel to SCDSS's in-house counsel regarding a potential meeting, whether over the phone or in person, which, based on the privileges asserted, was to discuss a common defense strategy in the case,

8

especially since Governor McMaster and Director Leach were both named as the "State Defendants" in two of Plaintiffs claims and listed as the "State Defendants." *See* Compl., May 30, 2019 (ECF No. 1), at 1–2 n.1, ¶¶ 97–113, 127–40.

Other alleged inadequate entries are three entries whose "Subject/File Name" include "Constituent Letter." They are dated March 13, 2018; March 15, 2018; and March 20, 2018. *See* McMaster Privilege Log (ECF No. 137-1 at 15). Each is an internal email from the Office's in-house counsel regarding a letter to Governor McMaster's constituents. The collective information from the entry shows that the emails contain advice from in-house counsel to the Deputy Chief of Staff, which is covered by the attorney-client privilege and work-product doctrine. Further, when this information is considered by an attorney familiar with the Plaintiffs' document requests and the Governor's search protocol and document productions (which included final drafts of communications sent by the Governor to his constituents relating to the facts underlying the claims in this suit), the nexus between the privileged and protected communications and the suit are clear.

Two other alleged inadequate entries are emails between the Office's in-house counsel and Amy Hornsby in the South Carolina Department of Administration, who assists with constituent communications. *See* McMaster Privilege Log (ECF No. 137-1 at 15 and 22). One is from April 4, 2018 and has the subject line "Miracle Hill"; the other is from April 8, 2019 and has the subject line "AUSCS FOIA Request." *See id*. The claim of privilege and protection can be assessed from the information available: these were internal emails sent to, from, or among counsel; the subject line of the one plainly indicates it relates to the private CPA whose alleged actions underly the facts and claims at issue in this suit; the subject line of the other reveals (to someone familiar with the litigation) that it relates to a FOIA request served by Americans United for Separation of Church and State (*e.g.*, AUSCS), which is counsel for Plaintiff in the related case of *Maddonna v.*

9

*U.S. Dept. of Health & Human Servs. et al.*, C/A No. 6:19-cv-03551-JD (D.S.C.)—a case of which Plaintiffs and their counsel are well aware and which, like this suit, challenges the constitutionality of the Executive Order and waiver request.

Lastly, Plaintiffs take issue with an entry describing a March 13, 2019 email from SCDSS's in-house counsel to the Office's in-house counsel with the "Subject/File Name," "Re: Governor McMaster." *See* Pltfs' Mot. to Compel at 5 (ECF No. 137). But the information on the log and the privileges and protection asserted—attorney-client, work product, common interest, and joint defense—show that this email is between counsel and related to about the issues in this case, specifically how the State Defendants plan to defend against Plaintiffs' claims. *See* McMaster Privilege Log (ECF 137-1 at page 10).

Like the specific entries Plaintiff complains about, all the entries on Governor McMaster's privilege log, when considered in the context of the issues in this case, describe the document withheld in adequate detail to assess the claim that it is privileged or protected. It is unsurprising that some documents which would otherwise be responsive to Plaintiffs' discovery requests are privileged or otherwise protected, since litigation was anticipated from the outset. *See* Def. Henry McMaster's Mot. to Dismiss, August 30, 2019 (ECF No. 57), at 4–6 (describing the Governor's actions upon which Plaintiffs' base their claims). Since the moment the foster care issues came onto Governor McMaster's radar, almost all communications pertaining to these issues were among or involved counsel. It is thus unsurprising that Governor McMaster claims privilege or protection for some documents, emails, and other items when it was clear early on that his role in protecting South Carolina's foster care system would likely be scrutinized in litigation.

## CONCLUSION

Plaintiffs' pending Motion to Compel was not timely filed and may, on that basis alone, be denied. Furthermore, Governor McMaster's privilege log describes each withheld document in a way adequate to allow any party familiar with this litigation to assess the claim of privilege. Therefore, Governor McMaster asks that this Court deny Plaintiffs' Motion to Compel Governor McMaster to amend his privilege log.

Respectfully submitted,

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: s/ Miles E. Coleman
    Miles E. Coleman
    Federal Bar No. 11594
    E-Mail: miles.coleman@nelsonmullins.com
    2 W. Washington St. / Fourth Floor
    Greenville, SC 29201
    (864) 373-2352

    Jay T. Thompson
    Federal Bar No. 09846
    E-Mail: jay.thompson@nelsonmullins.com
    1320 Main Street / 17th Floor
    Post Office Box 11070 (29211-1070)
    Columbia, SC 29201
    (803) 799-2000

OFFICE OF THE ATTORNEY GENERAL

    Robert D. Cook, South Carolina Solicitor General
    Federal Bar No. 285
    E-Mail: bcook@scag.gov
    Post Office Box 11549
    Columbia, SC 29211
    (803) 734-3970

*Attorneys for Governor Henry McMaster*

Greenville, South Carolina
April 26, 2019

11