# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## GREENVILLE DIVISION

EDEN ROGERS and

BRANDY WELCH,

                                        Plaintiffs,

            -against-

UNITED STATES DEPARTMENT OF HEALTH
AND HUMAN SERVICES;

ALEX AZAR, in his official capacity as Secretary
of the UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES;

ADMINISTRATION FOR CHILDREN AND
FAMILIES;

LYNN JOHNSON, in her official capacity as
Assistant Secretary of the ADMINISTRATION
FOR CHILDREN AND FAMILIES;

SCOTT LEKAN, in his official capacity as
Principal Deputy Assistant Secretary of the
ADMINISTRATION FOR CHILDREN AND
FAMILIES;

HENRY MCMASTER, in his official capacity as
Governor of the STATE OF SOUTH CAROLINA;
and

MICHAEL LEACH, in his official capacity as State
Director of the SOUTH CAROLINA
DEPARTMENT OF SOCIAL SERVICES,

                                        Defendants.

Case No. 6:19-cv-01567-JD

**MEMORANDUM OF LAW IN
SUPPORT OF PLAINTIFFS'
OPPOSITION TO GOVERNOR
MCMASTER'S MOTION FOR A
PROTECTIVE ORDER**

# TABLE OF CONTENTS

PAGE

INTRODUCTION ...................................................................................................1

STATEMENT OF FACTS ......................................................................................3

LEGAL STANDARD..............................................................................................7

ARGUMENT ...........................................................................................................8

    I.    Plaintiffs Are Entitled To Take Discovery of Governor McMaster Via Deposition. ................................................................................................8

        A.    Governor McMaster's and the Office's combined gamesmanship have precluded Plaintiffs from deposing anyone from the Governor's Office and should not be rewarded. .............11

        B.    Other discovery methods are inadequate replacements for deposition discovery here. ...........................................................13

        C.    Plaintiffs do not seek to burden Governor McMaster unnecessarily..................................................................................16

    II.    Governor McMaster's Deposition Is Not Barred by the Apex Doctrine or the Deliberative Process Privilege..........................................................17

        A.    Governor McMaster's deposition is not prohibited by the apex doctrine. ......................................................................................17

            1.    The apex doctrine does not prohibit Plaintiffs from taking Governor McMaster's deposition if he has "unique or special knowledge of the facts at issue" ..........19

            2.    Plaintiffs have exhausted other less burdensome avenues for obtaining the information they seek, and other discovery devices cannot substitute for deposition testimony.........................................................................23

        B.    Plaintiffs do not intend to invade the deliberative process privilege. ...................................................................................23

CONCLUSION.......................................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baron Fin. Corp. v. Natanzon*, 240 F.R.D. 200 (D. Md. 2006)............................................7

*Burnett v. Ford Motor Co.*, No. 3:13-cv-14207, 2015 WL 4137847 (S.D.W. Va. July 8, 2015)..........................................................................................14

*Buxton v. Kurtinitis*, 862 F.3d 423 (4th Cir. 2017)......................................................21

*Church v. Montgomery Cnty., Md.*, 335 F. Supp. 3d 758 (D. Md. 2018)............................23

*City of Huntington v. AmerisourceBergen Drug Corp.*, No. 3:17-01362, 2020 WL 3520314 (S.D.W. Va. June 29, 2020)........................................8, 18

*Clayland Farm Enters. v. Talbot Cnty., Md.*, No. GLR-14-03412, 2018 WL 1609623 (D. Md. Apr. 3, 2018) ..............................................................22

*Cooner v. Clayton*, No. 5:06-CV-338-D, 2008 WL 821541 (E.D.N.C. Mar. 26, 2008) ..........................................................................................8

*Cunagin ex rel. J.C. v. Cabell Huntington, Hospital, Inc.*, No. 3:19-cv-00250, 2021 WL 1518877 (S.D.W. Va. April 16, 2021)..........................................17, 19

*Edelman v. Jordan*, 415 U.S. 651 (1974) ............................................................11

*Edwards v. Aguillard*, 482 U.S. 578 (1987) ......................................................21

*Estate of Latoya Nicole Valentine v. State of South Carolina*, C/A No. 3:18-00895-JFA (D.S.C.) ......................................................................20

*Ex Parte Young*, 209 U.S. 123 (1908) ................................................................11

*Furlow v. United States*, 55 F. Supp. 2d 360 (D. Md. 1999)..................................7

*Glassman v. Arlington Cty., Va.*, 628 F.3d 140 (4th Cir. 2010) ...........................21

*Green v. Mansour*, 474 U.S. 64 (1985)..............................................................11

*Greenoe v. United States*, No. 5:10-CR-277-FL, 2015 WL 437560 (E.D.N.C. Feb. 3, 2015).............................................................................24

*Hart v. Lew*, 973 F. Supp. 2d 561 (D. Md. 2013)................................................8

*In re C. R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, MDL No. 2187,
2014 WL 12703776 (S.D.W. Va. June 30, 2014)..................................................8, 18, 19

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab.
Litig.*, MDL No. 2:14-mn-02502-RMG, 2014 WL 12621613 (D.S.C.
Nov. 13, 2014) ......................................................................................................................18

*Intelligent Verification Sys., LLC v. Microsoft Corp.*, No. 2:12CV525, 2014
WL 12544827 (E.D. Va. Jan. 9, 2014) ...............................................................................17

*JTH Tax, Inc. v. Aime*, No 2:16cv279, 2016 WL 9223926 (E.D. Va. Dec. 13,
2016) .............................................................................................................................18, 23

*Kentucky v. Graham*, 473 U.S. 159 (1985)...................................................................................12

*Kimberlin v. Frey*, No. GJH-13-3059, 2015 WL 13203619 (D. Md. July 27,
2015) ...................................................................................................................................10

*Lemon v. Kurtzman*, 403 U.S. 602 (1971.) ...............................................................................21

*Medlin v. Andrew*, 113 F.R.D. 650 (M.D.N.C. 1987)..................................................................7

*Mellen v. Bunting*, 327 F.3d 355 (4th Cir. 2003) ...................................................................21

*Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118 (D. Md. 2009)..................................7, 20

*N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*, 117 F.R.D. 83 (M.D.N.C.
1987) .....................................................................................................................................8

*Paice, LLC v. Hyundai Motor Co.*, No. CIV. WDQ-12-0499, 2014 WL
3613394 (D. Md. June 27, 2014) ........................................................................................17

*Performance Sales & Mktg. LLC v. Lowe's Cos., Inc.*, No. 5:07-CV-00140-
RLV, 2012 WL 4061680 (W.D.N.C. Sept. 14, 2012) ....................................................18

*Prop. of the People, Inc. v. Off. of Mgmt. & Budget*, 330 F. Supp. 3d 373
(D.D.C. 2018) ....................................................................................................................16

*Rosinbum v. Azar*, No. CV TDC-19-3119, 2020 WL 6545853 (D. Md. Nov.
6, 2020) .................................................................................................................................8

*Santa Fe Independent School District v. Doe*, 530 U.S. 290 (2000) ....................................21

*Smithfield Bus. Park, LLC*, No. 5:12-CV-282-F, 2014 WL 547078
(E.D.N.C. Feb. 10, 2014) ...................................................................................................18

iii

*Static Control Components, Inc. v. Darkprint Imaging*, 201 F.R.D. 431 (M.D.N.C. 2001)............................................................................................7

*Szego v. Comm'r*, No. 91-2153, 1993 WL 211655 (4th Cir. June 17, 1993) (per curiam)......................................................................................................15

*Taylor v. Oak Forest Health & Rehab., LLC*, 302 F.R.D. 390 (M.D.N.C. 2014), *aff'd*, 590 F. App'x 254 (4th Cir. 2015) ...........................................13

*Tierra Blanca High Country Youth Program v. Gonzales*, 329 F.R.D. 694 (D.N.M. 2019)....................................................................................................18

*Tyler v. Suffolk Cty.*, 256 F.R.D. 34 (D. Mass. 2009)..........................................12

*United States v. Moussaoui*, 365 F.3d 292 (4th Cir.) (Gregory, J. concurring in part and dissenting in part), *opinion amended on reh'g*, 382 F.3d 453 (4th Cir. 2004).....................................................................................................8

*United States v. Wal-mart Stores*, No. PJM-01-cv-152, 2002 WL 562301 (D. Md. Mar. 29, 2002) ...........................................................................................19

*Willis v. Town of Marshall, N.C.*, 426 F.3d 251 (4th Cir. 2005) .........................22

*Wood v. Harshbarger*, No. 3:13-CV-21079, 2014 WL 3056855 (S.D.W. Va. July 7, 2014).....................................................................................................7, 8

**Statutes & Rules**

Fed. R. Civ. P. 26(b) ..............................................................................................7

Fed. R. Civ. P. 26(c) ..............................................................................................7

Fed. R. Civ. P. 30(b) ..................................................................................... passim

Fed. R. Civ. P. 45..................................................................................1, 5, 6, 12

**Other Authorities**

U.S. Const. amend. XI .........................................................................................11

Plaintiffs Eden Rogers and Brandy Welch ("Plaintiffs") respectfully submit this memorandum of law in support of their Opposition to Governor Henry McMaster's Motion for a Protective Order ("Mot.", ECF No. 138). Plaintiffs have conferred with opposing counsel in a good faith attempt to resolve the matter herein, but the parties have reached an impasse.

## INTRODUCTION

This case implicates the First Amendment, due process and equal protection rights of South Carolina citizens. As to Defendant Henry McMaster, Plaintiffs challenge his actions authorizing state-contracted, government-funded child placing agencies ("CPAs") to use religious eligibility criteria when screening potential foster parents for children in state custody and their intentional discrimination against prospective foster parents on the basis of religion and sexual orientation. Specifically, the complaint alleges that Governor McMaster interfered with the South Carolina Department of Social Services' ("DSS") revocation of the permanent CPA license held by Miracle Hill Ministries ("Miracle Hill"); sought a waiver from the U.S. Department of Health & Human Services ("HHS") for all faith-based CPAs in South Carolina, relieving them of certain federal non-discrimination requirements (the "waiver request"); and issued an Executive Order requiring DSS to revise its own non-discrimination policies to allow faith-based CPAs to continue discriminating against potential foster parents. (*See* Compl. ¶¶ 54-67, ECF No. 1.)

In light of these significant issues, Plaintiffs sought to depose a representative of the Office of the Governor (the "Office") under Federal Rule of Civil Procedure 30(b)(6) and served Rule 45 subpoenas for depositions of two employees of the Governor's Office. Plaintiffs also planned to notice the deposition of Governor McMaster. In response, Governor McMaster filed the instant motion for a protective order, and, several days later, the Office filed a separate

1

motion for a protective order and to quash the subpoenas (ECF No. 142). Plaintiffs will explain fully their reasons for opposing the Office's motion in their opposition to be filed with the Court on May 13, 2021.

Governor McMaster argues that his deposition is prohibited by the apex doctrine and the deliberative process privilege, and the Office argues that the subpoenaed deposition testimony of any employees of the Office is prohibited by principles of sovereign immunity, as well as by the apex doctrine and the deliberative process privilege. Taken together, Governor McMaster's and the Office's arguments, if credited, would prevent Plaintiffs from obtaining any deposition testimony whatsoever from any witness associated with Governor McMaster's Office concerning any of the Governor's actions that form the basis of this lawsuit. Such an outcome has no basis in law and would violate the spirit and the letter of the Federal Rules of Civil Procedure governing discovery. Given the very similar and intertwined issues between Governor McMaster's motion here and the Office's motion for a protective order and to quash the subpoenas, Plaintiffs respectfully request that the Court consolidate these motions and consider them together once briefing is complete on both.

Taken on their own merit, Governor McMaster's arguments fail. The apex doctrine is designed to prevent the deposition of a high-ranking government official who truly has no knowledge of the facts of the case. That is not the case here. As the allegations of Plaintiffs' complaint and documents produced during discovery make clear, Governor McMaster was directly involved in the actions that gave rise to Plaintiffs' complaint. Moreover, Plaintiffs have already exhausted less burdensome avenues of discovery—Governor McMaster's responses to interrogatories and requests for admission were evasive, nonresponsive and argumentative. And given the position taken by the Office in this litigation, Plaintiffs have been unable to take

2

the depositions of employees of the Office who might be able to provide sufficient information in response to Plaintiffs' requests.  For these reasons, Plaintiffs are entitled to Governor McMaster's deposition.

Plaintiffs recognize that Governor McMaster is a busy government official with many demands on his time, and they do not intend to burden him unnecessarily.  But Governor McMaster's assertion that he is the only party to this litigation from the Office of the Governor, combined with the Office's refusal to produce any witnesses for deposition, necessitated Plaintiffs' pursuit of Governor McMaster's deposition.  If Plaintiffs are permitted to depose other witnesses from the Office, and assuming those witnesses provide meaningful testimony on the topics at issue, Plaintiffs may not ultimately need to take Governor McMaster's deposition.  But Plaintiffs nonetheless must reserve their rights to do so, and thus Plaintiffs respectfully request that the Court deny Governor McMaster's motion for a protective order without prejudice until such time as the parties can determine whether his deposition is necessary.

## STATEMENT OF FACTS

Discovery in this case has proceeded for nearly a year now.  Promptly after the Court's decision on Defendants' motions to dismiss (ECF No. 81), Plaintiffs served requests for production of documents ("RFPs") on Governor McMaster (and DSS and HHS), which triggered a protracted dispute culminating in Plaintiffs' motion to compel discovery from Governor McMaster and DSS Director Michael Leach.  After 60 days, Governor McMaster finally served 394 pages of discovery, most of which was duplicative of materials Plaintiffs had already received through FOIA requests, and Governor McMaster failed to produce any documents in response to more than half of Plaintiffs' requests.  After multiple meet-and-confers and correspondence through which Plaintiffs attempted to understand Governor McMaster's search

3

process, Governor McMaster stood by his overly broad objections and refused to engage any further with Plaintiffs to overcome the impasse on discovery.  Plaintiffs thereafter filed a motion to compel discovery (ECF No. 107), which resulted in an order (i) requiring the parties to continue negotiating the discovery disputes and to file joint reports appraising the Court of the status of the parties' negotiations and (ii) reminding the parties that the Court "reserved the right to assess sanctions . . . against any person or entity who fails to act in good faith to resolve the issues before the [C]ourt".  (ECF No. 112.)  Governor McMaster finally completed his document production in January 2021, and Plaintiffs withdrew their motion to compel.  (ECF No. 124.)

Plaintiffs also served interrogatories and requests for admissions ("RFAs") on Governor McMaster.  Governor McMaster's responses to the RFAs consisted of nothing but argumentative denials.  (*See* Barbur Decl., Ex. 4.)  And in his first round of responses to Plaintiffs' interrogatories, Governor McMaster erroneously invoked the deliberative process privilege to deny Plaintiffs access to basic, factual information that goes to the heart of the case, such as who was involved in drafting the Governor's March 13, 2018 Executive Order (ECF No. 138-2).  (*See* Barbur Decl., Ex. 5.)  Without this information, Plaintiffs had no way to know whom from Governor McMaster's Office to depose concerning essential facts of the case. Governor McMaster eventually provided this information, but only after another protracted process of meet-and-confers and exchanges of correspondence between the parties.  (*See* Barbur Decl., Ex. 6.)

In an effort to move the case forward into deposition discovery, on March 4, 2021, counsel for Plaintiffs sent a letter to Governor McMaster's counsel, indicating that Plaintiffs planned to notice a Rule 30(b)(6) deposition of the Office or the Governor, attaching a list of proposed deposition topics and requesting a meet-and-confer to discuss the topics.  (ECF

4

No. 138-4.)  Plaintiffs also stated that they planned to notice depositions of two members of

Governor McMaster's staff, Leigh Lemoine and Brian Symmes.  (*Id.*)  Governor McMaster's

counsel responded on March 23, 2021, stating that the Governor was unable to produce a Rule

30(b)(6) representative or the two individual witnesses in response to deposition notices, because

Governor McMaster himself is the only defendant named in the complaint from the Office of the

Governor.  (ECF No. 138-6.)

On April 2, 2021, Plaintiffs' counsel informed Governor McMaster's counsel

that, in light of the position taken by the Governor in his counsel's March 23 letter, Plaintiffs

planned to serve Rule 45 subpoenas on the Office of the Governor and the two individual

witnesses and to notice the deposition of Governor McMaster.  (ECF No. 138-7, at 1.)  Plaintiffs'

counsel also offered to meet and confer about the proposed Rule 30(b)(6) topics and to discuss

suitable deposition dates in advance of serving a subpoena on the Office of the Governor.  (*Id.* at

1-2.)  Plaintiffs served Rule 45 subpoenas on Leigh Lemoine and Brian Symmes via certified

mail on April 12, 2021.

On April 14, 2021, and six weeks after Plaintiffs first raised the prospect of a Rule

30(b)(6) deposition of the Office of the Governor, Governor McMaster's counsel responded—for

the first time and with no explanation—that he was "unable" to confer regarding a Rule 30(b)(6)

deposition on behalf of the Office of the Governor.  (ECF 138-9, at 1.)  Instead, Governor

McMaster's counsel invited Plaintiffs' counsel to confer with in-house counsel for the Office of

the Governor.  (*Id.*)  Also in the April 14 letter, Governor McMaster's counsel objected to any

deposition of Governor McMaster, stating that such a deposition would be "impermissible under

the apex doctrine and/or the privilege that surrounds the deliberations and decisional process of

high-ranking executive officials".  (*Id.*)  He offered to meet and confer but noted that "if . . .you

5

intend to persist in serving a notice of deposition on Governor McMaster such a conference may be fruitless, and we will instead proceed to move for a protective order." (*Id.* at 2.)

Plaintiffs' counsel responded on April 21, 2021, stating that "[e]specially since you have taken the position that we are not entitled to take the deposition of anyone else in the Governor's Office, we are entitled to depose Governor McMaster, who has unique, personal knowledge of facts relevant to this case". (ECF No. 138-10, at 1.) Plaintiffs' counsel further indicated that they would serve a notice for the Governor's deposition shortly. (*Id.*) In response, Governor McMaster filed this motion for a protective order to prohibit Plaintiffs from taking his deposition, to which Plaintiffs now respond.

At the direction of Governor McMaster's counsel, on April 19, 2021, Plaintiffs' counsel sent a letter to in-house counsel for the Office of the Governor, stating Plaintiffs' intention to serve a Rule 45 subpoena on the Office of the Governor and asking for counsel's availability to meet and confer on the proposed topics and to discuss suitable deposition dates. (Barbur Decl., Ex. 1.) Plaintiffs' counsel's letter also asked whether the Office's counsel would be representing Ms. Lemoine and Mr. Symmes, the two members of the Governor's staff whom Plaintiffs had subpoenaed, and whether they would be available for deposition on the dates indicated in the subpoenas. (*Id.*)

On April 20, 2021, the Office's counsel responded that "any such subpoena directed to the Office would be both substantively inappropriate and procedurally improper" and "would impose an undue, and unnecessary, burden on the Office". (ECF No. 142-4, at 1.) The Office's counsel also indicated that the two individual witnesses were not available on the subpoenaed dates, and that the Office objected to any such discovery efforts and, absent withdrawal of the subpoenas, would move to quash or for a protective order. (*Id.* at 2.)

6

Counsel for Plaintiffs and counsel for the Office of the Governor held a meet-and-confer on April 22, 2021 to discuss these issues, during which Plaintiffs' counsel explained that, when combined, the positions taken by Governor McMaster and by his Office would leave Plaintiffs with no deposition discovery as to one central party in the case. The Office's counsel nonetheless maintained that Plaintiffs were not entitled to a Rule 30(b)(6) deposition or to the depositions of the two members of Governor McMaster's staff. The Office filed a consolidated motion for a protective order and to quash the subpoenas on April 29, 2021 (ECF No. 142), which is also pending before the Court.

Plaintiffs now oppose Governor McMaster's motion for a protective order.

## LEGAL STANDARD

The court has broad authority under Federal Rules of Civil Procedure 26(b)(2)(C) and 26(c) "to determine 'when a protective order is appropriate and what degree of protection is required.'" *Wood v. Harshbarger*, No. 3:13-CV-21079, 2014 WL 3056855, at *3 (S.D.W. Va. July 7, 2014) (quoting *Furlow v. United States*, 55 F. Supp. 2d 360, 366 (D. Md. 1999)). Protective orders are to be "sparingly used and cautiously granted." *Baron Fin. Corp. v. Natanzon*, 240 F.R.D. 200, 202 (D. Md. 2006) (quoting *Medlin v. Andrew*, 113 F.R.D. 650, 652 (M.D.N.C. 1987)).

Significantly, courts are reluctant to "constrain discovery" by "prevent[ing] the taking of a deposition." *Wood*, 2014 WL 3056855, at *3 (citing *Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 125 (D. Md. 2009)). The "need for prospective relief" with respect to a deposition "is more difficult to establish than in other methods of discovery." *Id.* Ordinarily, "[b]y requesting the Court to prohibit plaintiff from deposing a witness, defendant . . . assumes a heavy burden because protective orders which totally prohibit a deposition 'should be rarely

7

granted absent extraordinary circumstances.'" *Static Control Components, Inc. v. Darkprint Imaging*, 201 F.R.D. 431, 434 (M.D.N.C. 2001) (quoting *N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*, 117 F.R.D. 83, 84 (M.D.N.C. 1987)).[1]

## ARGUMENT

## I.    PLAINTIFFS ARE ENTITLED TO TAKE DISCOVERY OF GOVERNOR MCMASTER VIA DEPOSITION.

"Depositions are an essential part of civil litigation*". Cooner v. Clayton*, No. 5:06-CV-338-D, 2008 WL 821541, at *8 (E.D.N.C. Mar. 26, 2008). As such, parties are deprived of "material evidence" by bad faith refusals to be deposed. *Id.*; *see also Wood*, 2014 WL 3056855, at *5 (granting motion to compel and denying motion for a protective order precluding the deposition of a government official because "[w]ithout the deposition, Plaintiff will be precluded from discovering" evidence that is essential to the "Plaintiff's stated claims"); *Rosinbum v. Azar*, No. CV TDC-19-3119, 2020 WL 6545853, at *6 (D. Md. Nov. 6, 2020) ("Depositions are needed because in their absence, a plaintiff has had "no means of ferreting out inconsistencies or falsehoods. . . ." (quoting *Hart v. Lew*, 973 F. Supp. 2d 561, 574 (D. Md. 2013))). Other discovery methods "cannot be considered a functional equivalent of live (or deposition) testimony, nor are they adequate or sufficient to substitute for testimony." *See United States v. Moussaoui*, 365 F.3d 292, 331 (4th Cir.) (Gregory, J. concurring in part and dissenting in part), *opinion amended on reh'g*, 382 F.3d 453 (4th Cir. 2004).

---

[1] By invoking the apex doctrine, Governor McMaster seeks to "reallocate[] the burden that accompanies a motion for a protective order". *In re C. R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, MDL No. 2187, 2014 WL 12703776, at *4 (S.D.W. Va. June 30, 2014). As explained below, Governor McMaster's deposition should be allowed even if Governor McMaster's proffered burden shifting framework is correct. *See City of Huntington v. AmerisourceBergen Drug Corp.*, No. 3:17-01362, 2020 WL 3520314, at *3-4 (S.D.W. Va. June 29, 2020).

Plaintiffs need, and are entitled, to take deposition discovery of Governor McMaster, who is perhaps the most important defendant in this case. Indeed, Governor McMaster has been directly and personally involved in the actions giving rise to Plaintiffs' claims in this suit. Judge Cain recognized Governor McMaster's critical role when the Court denied Governor McMaster's motion to dismiss: "rather than requiring Miracle Hill to comply with the applicable state and federal non-discrimination requirements as DSS had, Governor McMaster sought to create and obtain exemptions from such requirements to enable Miracle Hill to continue excluding prospective foster parents based on its religious criteria"; "[Governor] McMaster requested that HHS grant South Carolina a waiver from the non-discrimination provisions of" federal law; and "before the HHS waiver was granted, [Governor] McMaster entered the Executive Order . . . prohibiting DSS from denying licensure to faith-based CPAs solely on account of their . . . sincerely held religious beliefs". (May 8, 2020 Order, ECF No. 81, at 25-26.)

Plaintiffs have already identified (in, for example, their proposed Rule 30(b)(6) deposition topics) a number of topics and issues that can only adequately be explored through depositions of Governor McMaster, his Office or his staff. These topics include (but are not limited to):

- The involvement of Governor McMaster, or any person in Governor McMaster's Office, in the 2018 dispute between DSS and Miracle Hill over Miracle Hill's CPA license;

- The extent of Governor McMaster's or his Office's awareness of Miracle Hill's history of discriminating on the basis of religion and/or sexual orientation before the dispute between DSS and Miracle Hill;

- Communications between the Governor's Office and DSS regarding the Miracle Hill licensing issue, and what happened to cause DSS to change its position and start to work with the Governor's Office on the waiver request;

- Communications between the Governor's Office and HHS or others in the federal government regarding the application of the federal non-discrimination requirements to faith-based CPAs in South Carolina, both before and after Governor McMaster's waiver request;

- The process followed by Governor McMaster in drafting and submitting the waiver request, and in drafting and issuing the Executive Order, including the involvement of members of his staff;

- Whether anyone at the Governor's Office considered the impact the waiver granted by HHS to faith-based South Carolina CPAs or the Executive Order would have on the availability of foster parents in South Carolina;

- The involvement of Governor McMaster, or any person in Governor McMaster's Office, if any, in HHS's 2019 decision not to enforce its own non-discrimination requirements and to ultimately eliminate certain protections that previously applied to HHS-grant-funded service providers; and

- Governor McMaster's and his Office's efforts to search for, collect and produce documents and communications in response to Plaintiffs' RFPs and interrogatories.

Given Governor McMaster's critical role and the centrality of these issues to this case, it cannot be that Plaintiffs are not entitled to a single deposition of any official associated with his Office, and yet that is the combined effect of the positions taken by Governor McMaster and the Office. Despite Governor McMaster's arguments to the contrary (Mot. at 13-15), other discovery methods have not sufficed and will not serve as adequate substitutes for live deposition testimony. Plaintiffs do not seek to unduly burden Governor McMaster, but they do need to depose some witnesses from the Governor's Office so they can obtain discovery regarding key topics and issues in the case. For these reasons, and the reasons Plaintiffs will explain in response to the Office's motion, the Court should deny with prejudice the Office's motion for a protective order and to quash the subpoenas, and deny without prejudice Governor McMaster's motion for a protective order until the parties can determine whether the Governor's deposition is necessary. *See Kimberlin v. Frey*, No. GJH-13-3059, 2015 WL 13203619, at *3 (D. Md. July

10

27, 2015) (denying without prejudice a motion for protective order, even where the subpoenaed individual was no longer a defendant in the case, on the ground that the "request could lead to the discovery of admissible evidence" regarding events and communications that had taken place during the relevant time period in the action).

> **A.** **Governor McMaster's and the Office's combined gamesmanship have precluded Plaintiffs from deposing anyone from the Governor's Office and should not be rewarded.**

As the chronology laid out in the Statement of Facts makes clear, Plaintiffs' legitimate attempts to pursue deposition discovery of Governor McMaster have only been met with delay and stonewalling.  In an effort to avoid burdening the Governor with a deposition, Plaintiffs began in early March by asking for a Rule 30(b)(6) deposition of the Office of the Governor and the depositions of two members of Governor McMaster's staff, Ms. Lemoine and Mr. Symmes.  However, Governor McMaster's counsel refused to produce a Rule 30(b)(6) designee or the two individuals, on the grounds that neither the Office of the Governor nor either of the individuals (and only Governor McMaster) is a party to the case.[2]

The idea that the Governor, sued in his official capacity, and the Office of which he is the head are somehow separate and distinct entities is nothing but a fiction created to stymie the discovery process.  "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against

---

[2] Plaintiffs could not have named the Office of the Governor as a defendant in this case under well established principles of sovereign immunity.  Although the Eleventh Amendment generally bars suit against states or state agencies, the Supreme Court has crafted an exception to state sovereign immunity that permits suits against state officials in their official capacities to enforce federal law to go forward, but only for prospective injunctive and declaratory relief—and only for continuing or threatened violations of federal constitutional rights.  *See, e.g.*, *Ex Parte Young*, 209 U.S. 123 (1908); *Green v. Mansour*, 474 U.S. 64 (1985); *Edelman v. Jordan*, 415 U.S. 651 (1974).

the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  As such, "any non-privileged,

relevant information within the control of the related public entity is also discoverable against

that official." *Tyler v. Suffolk Cty.*, 256 F.R.D. 34, 37 (D. Mass. 2009).  But in order to move

discovery along and proceed to depositions, Plaintiffs served Rule 45 subpoenas on the two

individuals and stated their intention to serve a subpoena on the Governor's Office after the

parties had an opportunity to meet and confer on the proposed Rule 30(b)(6) topics.

Plaintiffs were then surprised to learn for the first time—six weeks after first

stating their intention to take depositions of the Governor's Office and nearly two years into this

litigation—that counsel for Governor McMaster does not represent the Office of the Governor.

After all, Governor McMaster's counsel produced documents from and asserted privilege on

behalf of exactly the same people in the Office of the Governor that he now says he does not

represent.

However, at the instruction of Governor McMaster's counsel, Plaintiffs contacted

in-house counsel for the Office about the depositions, but were only met by further obstacles.  In-

house counsel for the Office of the Governor refused to produce a Rule 30(b)(6) representative

of the Office or the two individual members of the Governor's staff.[3]  And Governor McMaster's

---

[3] Notably, Plaintiffs took this same approach to obtaining deposition discovery from DSS Director Michael Leach, but with a different result.  Recognizing that DSS itself is not named as a party to this suit, Director Leach's counsel requested that Plaintiffs serve Rule 45 subpoenas on DSS and the two individual witnesses Plaintiffs sought to depose.  (Barbur Decl., Ex. 2.)  Once those subpoenas were served, Director Leach's counsel did not object to producing Rule 30(b)(6) designees to testify on behalf of DSS, or to producing the two DSS employees for individual depositions, and the parties have been working diligently to schedule the depositions.  And while Plaintiffs reserve their right to notice the deposition of Director Leach, they have not done so and do not intend to do so until the other DSS depositions are complete and they can assess whether his testimony is necessary.

counsel objected to the deposition of Governor McMaster as "impermissible under the apex doctrine and/or the privilege that surrounds the deliberations and decisional process of high-ranking executive officials".  (ECF No. 138-9.)

The cumulative impact of the positions taken by Governor McMaster and the Office of the Governor is that Plaintiffs have been precluded from taking any depositions of Governor McMaster, his Office or his staff.  Plaintiffs cannot tolerate that outcome, nor does the law permit it.  *See Taylor v. Oak Forest Health & Rehab., LLC*, 302 F.R.D. 390, 394 (M.D.N.C. 2014) (finding that the defendants suffered "significant prejudice" as a result of the plaintiff's "failure to give non-argumentative and full deposition testimony", which "stonewall[ed]" efforts to obtain information about facts relevant to the case), *aff'd*, 590 F. App'x 254 (4th Cir. 2015). The Court should not reward such gamesmanship.

### B.    Other discovery methods are inadequate replacements for deposition discovery here.

Governor McMaster repeatedly touts his 843-page production as adequate substitute discovery.  (Mot. at 4, 13.)  As discussed above, that production only came after Plaintiffs worked for months to resolve disputes with Governor McMaster over their requests for production and ultimately filed a motion to compel.  (*See* ECF No. 107.)  And even then, the Governor's production was hardly elucidating and contained many documents that were already part of the record in the case.  By contrast, Miracle Hill, a non-party, produced 13,000 pages in response to a subpoena from Plaintiffs after engaging in good-faith negotiations over Plaintiffs' requests.[4]

---

[4] The Governor's attempt to bolster the sufficiency of his own document production by comparison to the number of pages Plaintiffs produced (Mot. at 13) is unavailing.  Plaintiffs are prospective foster parents who were turned away by Miracle Hill.  The Governor is the chief

Indeed, there are numerous obvious holes in the Governor's production. It lacks any documents that adequately explain why, after DSS made plain its intent to require Miracle Hill to comply with relevant policies and regulations, less than a month later, DSS about faced, and instead began working with the Governor's Office to obtain a waiver from HSS. (*See* Barbur Decl., Ex. 3.) And the documents Governor McMaster has produced shed little light on other communications Governor McMaster or his staff may have had with HHS regarding the non-discrimination regulations at issue, or whether and why special treatment was provided to Miracle Hill that may not have been provided to other CPAs, among other topics. The documents similarly do not shed light on the sincerity of Governor McMaster's proffered justifications for his actions—*i.e.*, whether the waiver request truly was in the best interests of children in foster care or the South Carolina foster care system in general—which is a critical piece of Plaintiffs' case. Plaintiffs are entitled to explore these issues at deposition.

Moreover, Governor McMaster's argument that Plaintiffs have already canvassed all the non-privileged materials within the Governor's custody related to the case (Mot. at 18-19) is self-serving and circular. It assumes that the Governor in fact produced all non-privileged documents responsive to Plaintiffs' RFPs—an assumption that Plaintiffs are entitled to probe at deposition. *See Burnett v. Ford Motor Co.*, No. 3:13-cv-14207, 2015 WL 4137847, at *9 (S.D.W. Va. July 8, 2015) (denying defendant's motion for a protective order over information about its document search procedures).

Governor McMaster also claims that Plaintiffs could obtain the information they seek by serving on him interrogatories or requests for admissions. (Mot. at 13-15.) However,

_____

executive of the State of South Carolina. It should come as no surprise that the Governor would have more relevant documents in his possession, custody or control.

responses to interrogatories and RFAs are crafted by attorneys and are no substitute for deposition testimony. *See Szego v. Comm'r*, No. 91-2153, 1993 WL 211655, at *1-2 (4th Cir. June 17, 1993) (per curiam) (concluding that interrogatory answers were not properly in the summary judgment record because they were filed by the defendant's attorney and not based on the defendant's personal knowledge ).

And Governor McMaster's prior responses to Plaintiffs' RFAs and interrogatories give Plaintiffs no reason to believe they would receive satisfactory responses if they employed these same discovery methods again. In response to Plaintiffs' RFAs, Governor McMaster provided Plaintiffs with a series of argumentative denials that were not remotely elucidating. Multiple responses incorporated irrelevant details, none of which went beyond publicly available information.[5] Governor McMaster's interrogatory responses were no more enlightening. In many cases, Governor McMaster intentionally misconstrued questions and failed to provide discoverable information about underlying facts, to which Plaintiffs are entitled.[6] For example,

---

[5] For example, in response to RFA 1 ("Admit that Miracle Hill discriminates against prospective foster families on the basis of religion."), Governor McMaster responded: "Denied. Miracle Hill is a private entity and a third party, but, based on the Governor's understanding of the facts known to him regarding Miracle Hill's practices, he has no basis to believe that Miracle Hill engages in invidious discrimination in its treatment of prospective foster parents on the basis of their religion. To the best of the Governor's knowledge, Miracle Hill serves needy children and adults and works with volunteers without regard to their religious beliefs, but requires that employees and the foster parents with whom Miracle Hill works share its religious beliefs pursuant to its Free Exercise and associational rights." (Barbur Decl., Ex. 4, at 4.)

[6] For example, in response to Interrogatory No. 2 ("Identify the individuals involved in the McMaster Executive Order."), Governor McMaster's counsel wrote: "Governor McMaster does not and cannot know the entire, potentially expansive, list of people in the state and federal government, the press, and the public who received, read, and inquired about Executive Order 2018-12, including those who wrote, called, or emailed his office in advance of or in reaction to the issuance of the Executive Order to opine or inquire about the need, permissibility, scope, meaning, and interpretation of the Order." (Barbur Decl., Ex. 5, at 3-4.) Governor McMaster could not possibly have believed that Plaintiffs sought to capture information about members of "the public who received, read, and inquired about Executive Order 2018-12, including those

15

as noted above, Governor McMaster initially failed to name any individual involved in the preparations and/or drafting of his March 13, 2018 Executive Order, arguing that the deliberative process privilege shielded even the identities of those people (which it does not). *See Prop. of the People, Inc. v. Off. of Mgmt. & Budget*, 330 F. Supp. 3d 373, 382 (D.D.C. 2018) (rejecting federal agency's assertion that the identity of meeting attendees would intrude on the agency's deliberative process). Governor McMaster only finally provided this basic, factual information after extensive communications with Plaintiffs.

Given this history, there is no reason for Plaintiffs to believe they would have more success employing these discovery methods a second time and certainly no basis for Plaintiffs to conclude that those methods would be more probative than live deposition testimony.

### C.    Plaintiffs do not seek to burden Governor McMaster unnecessarily.

Plaintiffs do not dispute that, as South Carolina's chief executive, Governor McMaster has a myriad of important duties and many demands on his time, outlined in detail in the Governor's motion. (Mot. at 15-16.) Plaintiffs are willing—and have always been willing—to meet and confer with Governor McMaster's and the Office's counsel to discuss how Plaintiffs can obtain the deposition discovery they need in the least burdensome way. Should the Court deny the Office's motion for a protective order and to quash the subpoenas, Plaintiffs intend to begin by taking the Rule 30(b)(6) deposition of the Office of the Governor and then the depositions of the two individuals. Assuming those witnesses provide meaningful testimony on the topics at issue, Plaintiffs may not need to pursue Governor McMaster's deposition. But

---

who wrote, called, or emailed [McMaster's] office". This reading of Interrogatory No. 2 was intentionally obtuse.

Plaintiffs nonetheless must reserve their rights to seek Governor McMaster's deposition until they have had an opportunity to depose the other witnesses and assess the sufficiency of that testimony. And if Governor McMaster's deposition does prove necessary, Plaintiffs' counsel will work cooperatively with Governor McMaster's counsel to select a deposition date that works best for the Governor's schedule and causes the least interruption to his duties, and will consider a reasonable proposal to limit the length of the deposition.

For the foregoing reasons, the Court should deny without prejudice Governor McMaster's motion for a protective order.

## II.    GOVERNOR MCMASTER'S DEPOSITION IS NOT BARRED BY THE APEX DOCTRINE OR THE DELIBERATIVE PROCESS PRIVILEGE.

Governor McMaster argues that his deposition is prohibited in its entirety by both the apex doctrine and the deliberative process privilege. (Mot. at 7-19.) Neither argument holds water, and neither justifies granting his motion for a protective order.

### A.    Governor McMaster's deposition is not prohibited by the apex doctrine.

The Fourth Circuit has never discussed, much less adopted, the so-called "apex doctrine". *Cunagin ex rel. J.C. v. Cabell Huntington, Hospital, Inc.*, No. 3:19-cv-00250, 2021 WL 1518877, at *4 (S.D.W. Va. April 16, 2021). But cases from district courts in this Circuit applying the apex doctrine have "establish[ed] that the apex deposition rule is bottomed on the apex executive lacking any knowledge of the relevant facts". *Paice, LLC v. Hyundai Motor Co.*, No. CIV. WDQ-12-0499, 2014 WL 3613394, at *1 (D. Md. June 27, 2014); *Intelligent Verification Sys., LLC v. Microsoft Corp.*, No. 2:12CV525, 2014 WL 12544827, at *2 (E.D. Va.

Jan. 9, 2014) (purpose of the apex doctrine is to protect high-ranking officials from discovery abuses when they have "no particular direct knowledge of the facts pertaining to the lawsuit").[7]

Courts within the Fourth Circuit typically require a deposing party to establish that "(1) the [high-ranking official] has unique or special knowledge of the facts at issue and (2) other less burdensome avenues for obtaining the information sought have been exhausted" before allowing the deposition of a high-ranking government official. *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*, MDL No. 2:14-mn-02502-RMG, 2014 WL 12621613, at *2 (D.S.C. Nov. 13, 2014) (quoting *Smithfield Bus. Park, LLC*, No. 5:12-CV-282-F, 2014 WL 547078, at *2 (E.D.N.C. Feb. 10, 2014)); *see also JTH Tax, Inc. v. Aime*, No 2:16cv279, 2016 WL 9223926, at *4 (E.D. Va. Dec. 13, 2016) (allowing the deposition of the CEO of a corporation because the plaintiffs alleged that he "may have unique direct knowledge of an alleged conversation" concerning events that gave rise to the complaint).[8]

---

[7] "A witness ordinarily cannot escape examination by denying knowledge of any relevant facts, since the party seeking to take the deposition is entitled to test the witness's lack of knowledge." *Performance Sales & Mktg. LLC v. Lowe's Cos., Inc.*, No. 5:07-CV-00140-RLV, 2012 WL 4061680, at *4 (W.D.N.C. Sept. 14, 2012). For this reason, courts usually require the apex deponent to "submit an affidavit . . . stating that he or she lacks superior or unique knowledge of the relevant facts". *In re C. R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, MDL No. 2187, 2014 WL 12703776, at *4 (S.D.W. Va. June 30, 2014). Notably, Governor McMaster has provided no such affidavit. *See City of Huntington*, 2020 WL 3520314, at *3 (noting that deponent failed to provide affidavit disclaiming unique personal knowledge of the facts of the case).

[8] Governor McMaster inexplicably cites predominantly out-of-circuit cases, including a District of New Mexico case for the standard that he applies. (*See* Mot. at 8 (citing *Tierra Blanca High Country Youth Program v. Gonzales*, 329 F.R.D. 694, 696 (D.N.M. 2019).) The Court should instead follow the standard of the District of South Carolina and other courts in the Fourth Circuit when applying the apex doctrine.

18

1.    *The apex doctrine does not prohibit Plaintiffs from taking Governor McMaster's deposition if he has "unique or special knowledge of the facts at issue".*

Plaintiffs do not deny that Governor McMaster qualifies as a high-ranking government official.[9]  However, in light of Governor McMaster's central role in key events of this case, Plaintiffs have good reason to believe that Governor McMaster may himself possess unique or special knowledge that would warrant his deposition.[10]  "At some point, the involvement of a high-ranking executive 'becomes less supervisory and directory and more hands-on and personal, that it is considered so intertwined with the issues in controversy that fundamental fairness requires the discovery of factual information held by the official by way of deposition.'"  *In re C. R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 2014 WL 12703776, at *5 (quoting *United States v. Wal-mart Stores*, No. PJM-01-cv-152, 2002 WL 562301 (D. Md. Mar. 29, 2002)).  Even where others might share the same "knowledge on some subjects" as a high-ranking official, deposing a high-ranking official is appropriate where "there is no assertion

---

[9] The Governor's Office also claims that the apex doctrine bars the depositions of the two members of Governor McMaster's staff, as well as any witness designated as the Office's Rule 30(b)(6) representative. (ECF. No. 142, at 1-2.)  "To invoke the protection of the apex doctrine, the party resisting discovery must first demonstrate he or she is a high-ranking official." *Cunagin ex rel. J.C.*, 2021 WL 1518877, at *3.  Brian Symmes is the Communications Director for the Governor's Office, and Leigh Lemoine is a Deputy Chief of Staff.  As Plaintiffs will explain more fully in opposition to the Office's motion, the Governor's Office cannot demonstrate that Mr. Symmes and Ms. Lemoine are "high-ranking officials" such that the apex doctrine should apply.  And the Office of the Governor's argument that the apex doctrine precludes the deposition of a Rule 30(b)(6) witness is highly illogical—it is entirely in the Office's hands to decide whom to educate on the Rule 30(b)(6) topics and put forward as its Rule 30(b)(6) witness. Not every single employee of the Governor's Office is a high-ranking government official to whom the apex doctrine would apply, and the Governor's Office could certainly designate an employee who is lower on the chain of command.

[10] Plaintiffs cannot adequately assess whether the Governor does possess such knowledge without the other depositions they subpoenaed and intend to subpoena from the Governor's Office, which counsels further in favor of the Court's denying the Office's motion for a protective order and to quash the subpoenas.

that this deposition is unreasonably cumulative or duplicative." *Minter v. Wells Fargo Bank, N.A*., 258 F.R.D. 118, 127 (D. Md. 2009).

As established above, Governor McMaster (or, at the very least, officials in his Office) has been intimately involved in the issues of the case, and Plaintiffs have identified multiple subjects on which they are entitled to deposition testimony and about which he likely has personal knowledge. And his testimony cannot be duplicative—no other fact depositions have yet occurred in this case, and Plaintiffs do not plan to pursue Governor McMaster's deposition if the Court denies the Office of the Governor's motion and the other witnesses from the Office provide meaningful testimony on the topics at issue.

For these reasons, Governor McMaster's repeated citations to unpublished orders in *Estate of Latoya Nicole Valentine v. State of South Carolina*, C/A No. 3:18-00895-JFA (D.S.C.), which granted a protective order prohibiting Governor McMaster's deposition, are inapposite. In that case, "Plaintiffs[] fail[ed] to show how [Governor McMaster] ha[d] any knowledge relevant to Plaintiffs' claims at all." *Estate of Latoya Nicole Valentine v. State of South Carolina*, C/A No. 3:18-00895-JFA, at *7 (D.S.C. July 9, 2020) (ECF No. 153). Moreover, Governor McMaster conveniently fails to mention that, before reconsidering and quashing the subpoena, the court in that case initially ordered a limited deposition of him after he submitted "evasive and non-responsive answers" to interrogatories the court had ordered in lieu of a deposition.[11] *Estate of Latoya Nicole Valentine v. State of South Carolina*, C/A No. 3:18-00895-JFA, at *5 (D.S.C. July 9, 2020) (ECF No. 187).

_____

[11] The Court only granted Governor McMaster's motion to reconsider and quashed the subpoena after the plaintiffs issued discovery requests that clearly violated the spirit of the order allowing Governor McMaster's deposition. *Estate of Latoya Nicole Valentine v. State of South Carolina*, C/A No. 3:18-00895-JFA, at *6 (D.S.C. July 9, 2020) (ECF No. 196).

Governor McMaster further argues that his deposition is irrelevant to Plaintiffs' Establishment Clause claim because, under the *Lemon* test,[12] the secular purpose of his actions is clear from the face of the waiver request and his Executive Order. (Mot. at 10-12.) "But the proffered secular purpose must be 'sincere and not a sham.'" *Glassman v. Arlington Cty., Va.*, 628 F.3d 140, 146-47 (4th Cir. 2010) (quoting *Edwards v. Aguillard*, 482 U.S. 578, 587 (1987)); *see Mellen v. Bunting*, 327 F.3d 355, 372-73 (4th Cir. 2003) (quoting *Santa Fe Independent School District v. Doe*, 530 U.S. 290, 308 (2000)) ("[A] state may disingenuously profess a secular purpose for what is, in fact, a religious practice. While the state's characterization of its purpose is entitled to deference, it is our obligation to distinguish 'a sham secular purpose from a sincere one.'"). The waiver request and the Executive Order repeatedly cite the need to provide homes for children in foster care as the purpose behind ensuring that Miracle Hill and other faith-based South Carolina CPAs are allowed to continue to discriminate against potential foster parents. (*See* ECF No. 138-1, at 2 ("Faith-based CPAs should be allowed to hold their sincerely held religious beliefs and be licensed to recruit foster parents for our foster children."); (ECF No. 138-2, at 2 ("CPAs may be secular or non-secular and are separate private, non-governmental entities that recruit, retain, and support current and prospective foster-care families in South Carolina, thereby fulfilling a crucial need for the State and providing a critical service to the children of South Carolina.").) But Plaintiffs intend to put forth expert and other evidence that discrimination against potential foster parents on the basis of their religion or sexual orientation

---

[12] Governor McMaster's distaste for the *Lemon* test aside (Mot. at 10 n.5), the Supreme Court has not overruled *Lemon* and its test continues to guide Establishment Clause claims. *See Buxton v. Kurtinitis*, 862 F.3d 423, 431-32 (4th Cir. 2017) ("Framed as an Establishment Clause violation, the appropriate test for this claim is found in *Lemon v. Kurtzman*, 403 U.S. 602 (1971).").

*decreases* the pool of willing and able foster families available to care for children, thereby *harming* children in care. Whether Governor McMaster was aware of or conducted any studies or investigations on this topic, for example, could establish that the proffered justifications for his actions are merely a "sham". Plaintiffs are entitled to explore that topic, and others on which Governor McMaster has "unique or special knowledge", at deposition.

Governor McMaster also argues that his deposition is unnecessary to support Plaintiffs' Equal Protection claims based on religious discrimination. (Mot. at 9-10.) This line of argument and all of the cases the Governor cites in support are totally irrelevant—the Court dismissed Plaintiffs' Equal Protection claims based on religious discrimination, which Governor McMaster acknowledges. (*See* ECF No. 81, at 44-45; Mot. at 9 n.3.) In upholding Plaintiffs' Equal Protection claims based on sexual-orientation discrimination—the Equal Protection claims that actually still exist in this case—the Court held that Governor McMaster failed to make any arguments about either the standard that applied to those claims or any legitimate state purpose for the Governor's actions. (ECF No. 81, at 45-46.) To the extent Governor McMaster is attempting to present these merits-based arguments to the Court in a discovery motion—which arguments Governor McMaster failed to present at the motion to dismiss stage—the Court should reject those attempts and allow Plaintiffs deposition discovery into the process around the issuance of the relevant documents. *Cf. Willis v. Town of Marshall, N.C.*, 426 F.3d 251, 263-64 (4th Cir. 2005) (reversing district court's premature denial of discovery into claim to be analyzed under rational basis review); *Clayland Farm Enters. v. Talbot Cnty., Md.*, No. GLR-14-03412, 2018 WL 1609623, at *2-3 (D. Md. Apr. 3, 2018) (rejecting defendant's argument that "discovery should effectively be precluded" because it had provided an alleged rational basis under the substantive Due Process Clause for the challenged conduct).

22

2.      *Plaintiffs have exhausted other less burdensome avenues for obtaining the information they seek, and other discovery devices cannot substitute for deposition testimony.*

As discussed above, other discovery methods—document requests, interrogatories and RFAs—have not sufficed in this case.  Governor McMaster's document production does not shed light on a number of issues witnesses could speak to, the Governor's responses to RFAs contained nothing but argumentative denials, and his interrogatory responses provided little useful information.  *See JTH Tax, Inc.*, 2016 WL 9223926, at *5 (holding that plaintiffs had exhausted less burdensome avenues for obtaining discovery when the defendant provided evasive and nonresponsive answers to other discovery devices such as interrogatories and requests for production of documents).  Additionally, Plaintiffs have attempted to take a Rule 30(b)(6) deposition of the Office of the Governor and the depositions of two of Governor McMaster's staff members—all of which would be less burdensome than compelling the Governor himself to sit for deposition—but have been precluded from doing so.  If permitted to take the depositions of the Office and the two staff members, Plaintiffs would only pursue Governor McMaster's deposition once those avenues had been exhausted.  Thus, the apex doctrine does not bar Governor McMaster's deposition, and the Court should deny his motion for a protective order.

## B.      Plaintiffs do not intend to invade the deliberative process privilege.

Plaintiffs have no intention of invading the deliberative process privilege. Plaintiffs, however, are entitled to explore the facts underlying the Governor's efforts to ensure that South Carolina's CPAs would not be required to comply with the non-discrimination requirements established by federal and state law.  *Church v. Montgomery Cnty., Md.*, 335 F. Supp. 3d 758, 771 (D. Md. 2018) ("This [deliberative process] privilege does not protect the

23

essential facts used in the process, but how said facts are considered, reviewed, handled or interpreted by decision makers is out of bounds.").

Indeed, Governor McMaster's concern about Plaintiffs probing his mental processes (Mot. at 17-19) are unfounded.  Plaintiffs intend only to question the Governor about factual information related to the events and topics that Judge Cain has already determined are relevant to this case.  (*See supra*, at 9.)  And if Governor McMaster is concerned that questioning on even this basic information will open the floodgates to questioning about *all* of his policy positions (Mot. at 18), he could instead offer members of his staff to be deposed about these issues, as Plaintiffs requested from the beginning.

Finally, even if the Governor's concerns were warranted (and they are not), the deliberative process privilege should not be used as a basis to block the deposition as a whole. The Court could limit Governor McMaster's deposition by instructing Plaintiffs' counsel not to intrude into Governor McMaster's deliberations about policymaking, and Governor McMaster's counsel will, of course, remain free to object at the deposition to questions he feels are prohibited by the privilege.  *See Greenoe v. United States*, No. 5:10-CR-277-FL, 2015 WL 437560, at *4 (E.D.N.C. Feb. 3, 2015) (finding general assertion of deliberative process privilege (among others) "[in]sufficient . . . to quash the deposition in its entirety", especially where the deposition may be limited to avoid intrusions into the deliberative process).

24

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Governor McMaster's motion for a protective order without prejudice until such time as the parties can determine whether his deposition is necessary.

May 10, 2021

*/s/ Susan K. Dunn*

Susan K. Dunn (Federal Bar No. 647)
AMERICAN CIVIL LIBERTIES UNION
OF SOUTH CAROLINA FOUNDATION
P.O. Box 20998
Charleston, SC 29413
(843) 282-7953
sdunn@aclusc.org

South Carolina Equality Coalition, Inc.
M. Malissa Burnette (Federal Bar No. 1616)
Nekki Shutt (Federal Bar No. 6530)
BURNETTE SHUTT & MCDANIEL, PA
912 Lady Street, 2nd floor
P.O. Box 1929
Columbia, SC 29202
(803) 850-0912
mburnette@burnetteshutt.law
nshutt@burnetteshutt.law

Peter T. Barbur (admitted *pro hac vice*)
Katherine D. Janson (admitted *pro hac vice*)
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
pbarbur@cravath.com
kjanson@cravath.com

Leslie Cooper (admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
   125 Broad Street, 18th Floor
   New York, NY 10004
     (212) 549-2633
     lcooper@aclu.org

Daniel Mach (admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
   915 15th Street NW
     Washington, DC 20005
     (202) 675-2330
     dmach@aclu.org

M. Currey Cook (admitted *pro hac vice*)
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
   120 Wall Street, 19th Floor
   New York, NY 10005
     (212) 809-8585
     ccook@lambdalegal.org

Karen L. Loewy (admitted *pro hac vice*)
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
1776 K Street NW, 8th Floor
   Washington, DC 20006-2304
     (202) 804-6245
     kloewy@lambdalegal.org

*Attorneys for Plaintiffs*

26