# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## GREENVILLE DIVISION

EDEN ROGERS and

BRANDY WELCH,

                              Plaintiffs,

               -against-

UNITED STATES DEPARTMENT OF HEALTH
AND HUMAN SERVICES;

ALEX AZAR, in his official capacity as Secretary
of the UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES;

ADMINISTRATION FOR CHILDREN AND
FAMILIES;

LYNN JOHNSON, in her official capacity as
Assistant Secretary of the ADMINISTRATION
FOR CHILDREN AND FAMILIES;

SCOTT LEKAN, in his official capacity as
Principal Deputy Assistant Secretary of the
ADMINISTRATION FOR CHILDREN AND
FAMILIES;

HENRY MCMASTER, in his official capacity as
Governor of the STATE OF SOUTH CAROLINA;
and

MICHAEL LEACH, in his official capacity as State
Director of the SOUTH CAROLINA
DEPARTMENT OF SOCIAL SERVICES,

                              Defendants.

Case No. 6:19-cv-01567-JD

**MEMORANDUM OF LAW IN
SUPPORT OF PLAINTIFFS'
OPPOSITION TO THE OFFICE
OF THE GOVERNOR'S
CONSOLIDATED MOTION
FOR PROTECTIVE ORDER
AND TO QUASH SUBPOENAS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ........................................................................................... 1

LEGAL STANDARD ...................................................................................... 3

ARGUMENT ................................................................................................. 4

I.     STATE SOVEREIGN IMMUNITY DOES NOT PRECLUDE THE THIRD-PARTY SUBPOENAS AT ISSUE. ............................................................. 4

II.    IN ANY EVENT, THE OFFICE OF THE GOVERNOR HAS WAIVED ANY CLAIM TO STATE SOVEREIGN IMMUNITY ............................................ 10

III.   THE APEX DOCTRINE DOES NOT PRECLUDE THE DEPOSITIONS PLAINTIFFS SEEK. ................................................................................ 12

     A.     Leigh Lemoine and Brian Symmes are not apex witnesses. ................................ 14

     B.     Plaintiffs have established that Leigh Lemoine and Brian Symmes have unique or special knowledge relevant to this litigation. ....................................... 15

     C.     Other less burdensome avenues for obtaining the information sought from Leigh Lemoine and Brian Symmes have been exhausted. ................................... 17

IV.   THE SUBPOENAS WOULD NOT IMPOSE AN UNDUE BURDEN ON THE OFFICE ................................................................................................... 18

     A.     The Office's arguments that the depositions Plaintiffs seek represent an undue burden are unavailing ........................................................................ 18

     B.     Plaintiffs do not seek to burden the Office and its staff unnecessarily. ............... 20

V.    THE SUBPOENAS WERE VALIDLY SERVED ON MS. LEMOINE AND MR. SYMMES UNDER RULE 45 ....................................................................... 21

VI.   SANCTIONS ARE NOT APPROPRIATE HERE. ......................................... 22

CONCLUSION .............................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alden v. Maine*, 527 U.S. 706 (1999)..............................................................................6

*Ali v. Carnegie Inst. of Wash.*, 306 F.R.D. 20 (D.D.C. 2014), *aff'd*, 684 F. App'x
    985 (Fed. Cir. 2017) ....................................................................................................5

*All. for Glob. Just. v. District of Columbia*, No. CIV.A.01-00811PLFJMF, 2005
    WL 1799553 (D.D.C. July 29, 2005) ......................................................................15

*Allen v. Woodford*, 544 F. Supp. 2d 1074 (E.D. Cal. 2008)......................................5, 6, 7

*Alltel Commc'ns, LLC v. DeJordy*, 675 F.3d 1100 (8th Cir. 2012)..................................8

*Arista Records LLC v. Does 1-14*, No. 7:08cv00205, 2008 WL 5350246 (W.D.
    Va. Dec. 22, 2008) ..............................................................................................5, 6, 7

*Barnes v. Black*, 544 F.3d 807 (7th Cir. 2008) ..........................................................4, 5, 9

*Baron Fin. Corp. v. Natanzon*, 240 F.R.D. 200 (D. Md. 2006)......................................3

*Bd. of Trustees Sabis Int'l Sch. v. Montgomery*, 205 F. Supp. 2d 835 (S.D. Ohio
    2002)..........................................................................................................................10

*Bland v. Fairfax Cnty., Va.*, 275 F.R.D. 466 (E.D. Va. 2011) ......................................21

*Bodi v. Shingle Springs Band of Miwok Indians*, 832 F.3d 1011 (9th Cir. 2016) .....7, 8

*Boron Oil Co. v. Downie*, 873 F.2d 67 (4th Cir. 1989)....................................................8

*CareToLive v. von Eschenbach*, No. 2:07-cv-729, 2008 WL 552431 (S.D. Ohio
    Feb. 26, 2008) ..........................................................................................................24

*Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC*, No.
    1:12CV27, 2014 WL 2559285 (M.D.N.C. June 6, 2014) .......................................4

*Charleston Waterkeeper v. Frontier Logistics, LP*, 488 F. Supp. 3d 240 (D.S.C.
    2020)...................................................................................................................4, 5, 8

*City of Huntington v. AmerisourceBergen Drug Corp.*, No. 3:17-01362, 2020 WL
    3520314 (S.D.W. Va. June 29, 2020) .................................................................4, 13

*CresCom Bank v. Terry*, 269 F. Supp. 3d 708 (D.S.C. 2017) ......................................22

*Cunagin ex rel. J.C. v. Cabell Huntington, Hospital, Inc.*, No. 3:19-cv-00250,
    2021 WL 1518877 (S.D.W. Va. April 16, 2021)..............................................12, 14

*DNT, LLC v. Sprint Spectrum, LP*, 750 F. Supp. 2d 616 (E.D. Va. 2010)....................................23

*Dugan v. Rank*, 372 U.S. 609 (1963) ...........................................................................................9

*Est. of Gonzales ex rel. Gonzales v. Hickman*, No. ED CV 05-660 MMM, 2007
    WL 3231956 (C.D. Cal. Apr. 18, 2007) ..................................................................... 10, 11, 12

*Est. of Gonzalez v. Hickman*, 466 F. Supp. 2d 1226 (E.D. Cal. 2006) .........................................10

*Estate of Latoya Nicole Valentine v. State of South Carolina*, No. 3:18-00895-
    JFA, ECF No. 196 (D.S.C. Dec. 23, 2020)..............................................................................14

*Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743 (2002) .........................................7, 9

*Fla. Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670 (1982)................................................9

*Hallamore Corp. v. Capco Steel Corp.*, 259 F.R.D. 76 (D. Del. 2009).......................................24

*HDSherer LLC v. Nat. Molecular Testing Corp.*, 292 F.R.D. 305 (D.S.C. 2013) ........................3

*Huntair, Inc. v. Climatecraft, Inc.*, 254 F.R.D. 677 (N.D. Okla. 2008).....................................24

*Hutto v. Finney*, 437 U.S. 678 (1978) ...........................................................................................9

*In re Am. Kidney Fund, Inc.*, No. CV TDC-17-1787, 2019 WL 1894248 (D. Md.
    Apr. 29, 2019) .........................................................................................................................23

*In re C. R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, MDL No. 2187, 2014
    WL 12703776 (S.D.W. Va. June 30, 2014)........................................................................4, 12

*In re Greektown Holdings, LLC*, 917 F.3d 451 (6th Cir. 2019), *cert. dismissed sub
    nom. Buchwald Cap. Advisors LLC v. Sault Ste. Marie Tribe*, 140 S. Ct. 2638
    (2020) .......................................................................................................................................8

*In re Lipitor (Atorvastatin Calcium) Marketing, Sales Practices & Prods. Liab.
    Litig.*, MDL No. 2:14-mn-02502-RMG, 2014 WL 12621613 (D.S.C. Nov. 13,
    2014)................................................................................................................................. 13, 14

*In re Missouri Dep't of Nat. Res.*, 105 F.3d 434 (8th Cir. 1997)..............................................5, 8

*In re TQ Delta*, No. CV 17-MC-328-RGA, 2018 WL 5033756 (D. Del. Oct. 17,
    2018)........................................................................................................................................23

*Intelligent Verification Sys., LLC v. Microsoft Corp.*, No. 2:12CV525, 2014 WL
    12544827 (E.D. Va. Jan. 9, 2014)..........................................................................................12

*Jackson v. AFSCME Loc. 196*, No. 3:07CV0471(JCH), 2008 WL 1848900 (D.
    Conn. Apr. 25, 2008)................................................................................................................5

*Jackson-Lipscomb v. City of New York*, No. 17-CV-10093 (ALC) (KNF), 2019
  WL 6139443 (S.D.N.Y. Oct. 7, 2019) ...................................................................15

*Jett v. Penner*, No. S02-2036 GEBJFMP, 2007 WL 127790 (E.D. Cal. Jan. 12,
  2007)....................................................................................................................12

*JTH Tax, Inc. v. Aime*, No 2:16cv279, 2016 WL 9223926 (E.D. Va. Dec. 13,
  2016)...............................................................................................................13, 18

*Kentucky v. Graham*, 473 U.S. 159 (1985) ...................................................................19

*Kimberlin v. Frey*, No. GJH-13-3059, 2015 WL 13203619 (D. Md. July 27, 2015) ..................18

*Knox v. U.S. Dep't of the Interior*, No. 4:09-CV-162-BLW, 2012 WL 465585 (D.
  Idaho Feb. 13, 2012).............................................................................................11

*Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613 (2002)...............................6, 10, 12

*Laxalt v.McClatchy,* 109 F.R.D. 632 (D. Nev. 1986) ....................................................5

*Low v. Whitman*, 207 F.R.D. 9 (D.D.C. 2002) ..............................................................15

*McNamee v. Massachusetts*, No. 12-40050-FDS, 2012 WL 1665873 (D.Mass.
  May 10, 2012).......................................................................................................14

*Medlin v. Andrew*, 113 F.R.D. 650 (M.D.N.C. 1987)...................................................4

*Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118 (D. Md. 2009).................................4

*Molefi v. Oppenheimer Tr.*, No. 03 CV 5631(FB)(VVP), 2007 WL 538547
  (E.D.N.Y. Feb. 15, 2007) ......................................................................................24

*Motsinger v. Flynt*, 119 F.R.D. 373 (M.D.N.C.1988)...................................................4

*Paice, LLC v. Hyundai Motor Co.*, No. CIV. WDQ-12-0499, 2014 WL 3613394
  (D. Md. June 27, 2014).........................................................................................12

*Performance Sales & Mktg. LLC v. Lowe's Cos., Inc.*, No. 5:07-CV-00140-RLV,
  2012 WL 4061680 (W.D.N.C. Sept. 14, 2012) .....................................................12

*S.C. State Ports Auth. v. Fed. Mar. Comm'n*, 243 F.3d 165 (4th Cir. 2001) ................7

*Sarkar v. McCallin*, No. 07-cv-02704, 2009 WL 2762731 (D. Colo. Aug. 26,
  2009)....................................................................................................................10

*Sec. & Exchange Comm'n v. Comm. on Ways & Means of the U.S. House of
  Reps.*, 161 F. Supp. 3d 199 (S.D.N.Y. 2015).......................................................14

*Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996) ...............................................9

iv

*Smithfield Bus. Park, LLC*, No. 5:12-CV-282-F, 2014 WL 547078 (E.D.N.C. Feb. 10, 2014) ....................................................................................................................... 14

*Smithfield Bus. Park, LLC v. SLR Int'l Corp.*, No. 5:12-CV-282-F, 2014 WL 547078 (E.D.N.C. Feb. 10, 2014) ........................................................................... 13

*Three Affiliated Tribes of Fort Berthold Rsrv. v. Wold Eng'g*, 476 U.S. 877 (1986) .................... 8

*Timpson ex rel. Timpson v. Haley*, No. 6:16-cv-1174-DCC, ECF 170 (D.S.C. Mar. 21, 2018) ....................................................................................................................... 14

*United States v. Newman*, No. 19-1868 (RJL), 2021 WL 1026019 (D.D.C. Mar. 17, 2021) ....................................................................................................................... 15

*United States v. Univ. of Mass., Worcester ("UMass")*, 167 F. Supp. 3d 221 (D. Mass. 2016) ........................................................................................................... 5, 6, 9

*Va. Dep't of Corr. v. Jordan*, 921 F.3d 180 (4th Cir.), *cert. denied*, 140 S. Ct. 672 (2019) ...................................................................................................................... 3, 4

*Washauer v. Chao*, No. 4:06-CV-0103-HLM, 2007 WL 9724338 (N.D. Ga. Oct. 22, 2007) ....................................................................................................................... 15

*Weckesser v. Knight Enters. S.E., LLC*, No. 2:16-cv-2053-RMG, 2019 WL 2090098 (D.S.C. May 13, 2019) ............................................................................... 21

*Wood v. Harshbarger*, No. 3:13-CV-21079, 2014 WL 3056855 (S.D.W. Va. July 7, 2014) ....................................................................................................................... 3, 4

**Statutes & Rules**

42 U.S.C. § 1983 ........................................................................................................................ 5

Fed. R. Civ. P. 26 ................................................................................................................ 3, 18

Fed. R. Civ. P. 26(c)(1) ............................................................................................................ 3

Fed. R. Civ. P. 30(b)(6) ................................................................................................... passim

Fed. R. Civ. P. 45 ........................................................................................................ 21, 22, 23

Fed. R. Civ. P. 45(b)(1) .......................................................................................................... 21

Fed. R. Civ. P. 45(c) ................................................................................................................. 3

Fed. R. Civ. P. 45(d)(3)(A) ....................................................................................................... 3

**Other Authorities**

8A Charles Alan Wright et al., *Federal Practice and Procedure* § 2037 (3d ed. 2012)..................................................................................................................12

U.S. Const., amend. XI...............................................................................passim

9A Wright & Miller, *Federal Practice and Procedure* § 2454 (3d ed. 2020) ...........................22

Plaintiffs Eden Rogers and Brandy Welch ("Plaintiffs") respectfully submit this memorandum of law in support of their Opposition to the Office of the Governor's Consolidated Motion for Protective Order and to Quash Subpoenas (ECF No. 142). Plaintiffs' counsel has conferred with counsel for the Office of the Governor in a good faith attempt to resolve the matter herein, but they have reached an impasse.

## INTRODUCTION

The Office of the Governor (the "Office") has been closely involved in this lawsuit since the early stages of discovery, at least. When Plaintiffs first served discovery requests on Governor McMaster nearly a year ago, the Office and the Governor worked hand-in-hand to respond to Plaintiffs' requests—a fact Governor McMaster's counsel made clear to Plaintiffs' counsel in the correspondence submitted herewith. (Barbur Decl., Exs. 1, 2.) Recently, however, Governor McMaster and the Office, through their now ostensibly separate counsel, have manufactured a distinction between them for the sole purpose of stymieing Plaintiffs' ability to depose *any* witness related to the Governor or his Office in this litigation. For the reasons already discussed in Plaintiffs' opposition to Governor McMaster's motion for a protective order (ECF No. 149),[1] Governor McMaster played a critical role in the events and actions giving rise to Plaintiffs' claims, and taking depositions of the Governor and/or his staff is essential to Plaintiffs' case. Governor McMaster's and his Office's procedural gamesmanship is inappropriate and unbecoming of an elected official meant to serve his constituents, including Plaintiffs here. It bears noting that the South Carolina Department of Social Services ("DSS")

---

[1] Because the issues in the present motion and the Governor's motion for a protective order (ECF No. 138) are similar and intertwined, Plaintiffs respectfully request that the Court consolidate these motions and consider them together once briefing is complete on both.

1

has agreed to Plaintiffs' request for depositions, even though DSS, like the Governor's Office, was not named as a defendant in this case.

As Plaintiffs have already responded to Governor McMaster's motion for a protective order, this brief addresses the arguments made by the Office in its motion seeking to preclude depositions of a Rule 30(b)(6) representative and two members of the Governor's staff. To start, sovereign immunity does not protect the Office from complying with Plaintiffs' third-party subpoenas, as nearly every court to decide the issue has concluded. And in any event, the Office has waived any sovereign immunity it may have had by working in tandem with the Governor to respond to the document requests that Plaintiffs served on him earlier in discovery, which concern the same or related issues as Plaintiffs aim to cover in their depositions of Office staff.

As to the Office's arguments regarding the apex doctrine, that doctrine does not apply because neither of the individuals whom Plaintiffs have subpoenaed is a high-ranking government official, and there is no reason to think that any Rule 30(b)(6) representative of the Office would be either (particularly because the Office can choose who represents it in a Rule 30(b)(6) deposition). Moreover, the individuals whom Plaintiffs seek to depose have personal knowledge of the actions challenged in Plaintiffs' complaint, and Plaintiffs have already exhausted less burdensome avenues to discover this information.

The Office's assertions of undue burden similarly fail, as they rest on the fiction that the Office and the Governor are distinct legal entities, with the Governor named as a defendant and the Office operating as a "stranger to this litigation". The Governor and his Office developed this theory only at the tail-end of fact discovery, and only to undermine Plaintiffs' ability to gather the evidence they need to prove their case.

2

Finally, the Office's procedural arguments to quash the subpoenas and its request

for sanctions are meritless. Plaintiffs' method of service was proper, and the Office's arguments

for sanctions are ludicrous. The subpoenas seek relevant information and were issued in good

faith. The Office has not even come close to showing that the subpoenas should be quashed,

much less that they were so improper as to warrant sanctions.

## LEGAL STANDARD

The Federal Rules of Civil Procedure authorize parties to secure depositions from

non-parties in a lawsuit. *See* Fed. R. Civ. P. 45(c). A court is required to quash or modify a

subpoena issued against a nonparty only if it "fails to allow a reasonable time to comply",

"requires a person to comply beyond the geographical limits specified in Rule 45(c)", "requires

disclosure of privileged or other protected matter, if no exception or waiver applies", or "subjects

a person to undue burden". Fed. R. Civ. P. 45(d)(3)(A). With respect to undue burden, "[a]s

under Rule 26, the ultimate question is whether the benefits of discovery to the requesting party

outweigh the burdens on the recipient." *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th

Cir.), *cert. denied*, 140 S. Ct. 672 (2019). "[T]he burden of proof is with the party objecting to

the discovery to establish that the challenged production should not be permitted." *HDSherer*

*LLC v. Nat. Molecular Testing Corp.*, 292 F.R.D. 305, 308 (D.S.C. 2013); *see also Jordan*, 921

F. 3d at 189 n.2.

A court may also, "for good cause, issue an order to protect a party or person from

annoyance, embarrassment, oppression, or undue burden or expense". Fed. R. Civ. P. 26(c)(1).

Although courts have discretion to determine whether such protection is required, *Wood v.*

*Harshbarger*, No. 3:13-CV-21079, 2014 WL 3056855, at *3 (S.D.W. Va. July 7, 2014),

protective orders are nevertheless to be "sparingly used and cautiously granted", *Baron Fin.*

3

*Corp. v. Natanzon*, 240 F.R.D. 200, 202 (D. Md. 2006) (quoting *Medlin v. Andrew*, 113 F.R.D. 650, 652 (M.D.N.C. 1987)).  Courts are particularly reluctant to issue a protective order that would "constrain discovery" by "prevent[ing] the taking of a deposition".  *Wood*, 2014 WL 3056855, at *3 (citing *Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 125 (D. Md. 2009)). The "need for prospective relief" with respect to a deposition "is more difficult to establish than in other methods of discovery." *Id.*  Even in the context of a third-party subpoena, where "courts must give the recipient's nonparty status 'special weight'" and the requesting party must articulate its need for the information and its inability to obtain the information from alternative sources, *Jordan*, 921 F.3d at 189 & n.2, "a court should not prohibit altogether the taking of a deposition" without "a strong showing of good cause and extraordinary circumstances", *Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC*, No. 1:12CV27, 2014 WL 2559285, at *2 (M.D.N.C. June 6, 2014) (quoting *Motsinger v. Flynt*, 119 F.R.D. 373, 378 (M.D.N.C.1988)). [2]

## ARGUMENT

## I.     STATE SOVEREIGN IMMUNITY DOES NOT PRECLUDE THE THIRD-PARTY SUBPOENAS AT ISSUE.

As nearly every court to have considered this issue has concluded—including a court in this district—a state agency does not enjoy sovereign immunity from compliance with a third-party subpoena in federal court. *See Charleston Waterkeeper v. Frontier Logistics, LP*, 488 F. Supp. 3d 240, 248 (D.S.C. 2020); *see also Barnes v. Black*, 544 F.3d 807, 812 (7th Cir. 2008);

---

[2] By invoking the apex doctrine, the Office seeks to "reallocate[] the burden that accompanies a motion for a protective order". *In re C. R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, MDL No. 2187, 2014 WL 12703776, at *4 (S.D.W. Va. June 30, 2014).  As explained below, depositions of Office staff should be allowed even if the Office's proffered burden shifting framework is correct. *See City of Huntington v. AmerisourceBergen Drug Corp.*, No. 3:17-01362, 2020 WL 3520314, at *3-4 (S.D.W. Va. June 29, 2020).

*In re Missouri Dep't of Nat. Res.*, 105 F.3d 434, 436 (8th Cir. 1997); *United States v. Univ. of Mass., Worcester ("UMass")*, 167 F. Supp. 3d 221, 223-4 (D. Mass. 2016); *Ali v. Carnegie Inst. of Wash.*, 306 F.R.D. 20, 30 n.8 (D.D.C. 2014), *aff'd*, 684 F. App'x 985 (Fed. Cir. 2017); *Arista Records LLC v. Does 1-14*, No. 7:08cv00205, 2008 WL 5350246, at *4-5 (W.D. Va. Dec. 22, 2008); *Allen v. Woodford*, 544 F. Supp. 2d 1074, 1079-80 (E.D. Cal. 2008); *Jackson v. AFSCME Loc. 196*, No. 3:07CV0471(JCH), 2008 WL 1848900, at *2-3 (D. Conn. Apr. 25, 2008); *Laxalt v.McClatchy,* 109 F.R.D. 632, 634-35 (D. Nev. 1986).

The logic of these cases is clear:  the Eleventh Amendment, which "encapsulates the basic principles of sovereign immunity", precludes citizens from maintaining a "suit" against a state or state agency, and the mere issuance of a third-party subpoena for witnesses or documents is not a "suit" within the meaning of the Eleventh Amendment.  *Charleston*, 488 F. Supp. 3d at 248-49; *see also Allen*, 544 F. Supp. 2d at 1078-79 (noting there is no legal authority for the proposition "that a discovery request under the Federal Rules of Civil Procedure in a federal civil rights action in which the state is not sued, constitutes 'a suit' or 'suing' the state within the meaning of the Eleventh Amendment").  Unlike lawsuits, third-party subpoenas do not seek "any relief in law or equity . . . against [State employees] or the State", and no judgment can be issued against the state "that could have any conceivable effect on the State treasury".  *Allen*, 544 F. Supp. 2d at 1079.  As a result, such process "do[es] not compromise state sovereignty to a significant degree".  *Barnes*, 544 F.3d at 812.

As several of the above courts have noted, a contrary determination—whereby state agencies are immune from compliance with third-party subpoenas—would be fundamentally incompatible with Supreme Court case law authorizing suits under 42 U.S.C. § 1983 against state employees or officials because a plaintiff would "never be able to prove his

5

or her case, if any required proof is in the hands of the State's custodian[s]".  *Allen*, 544 F. Supp. at 1079; *see also UMass*, 167 F. Supp. at 225; *Arista*, 2008 WL 5350246, at *5.  "Such a result is ludicrous", *Allen*, 554 F. Supp. at 1079—and it is precisely what the Office and Governor McMaster aim to accomplish here.  With the Governor claiming his own deposition is prohibited by the apex doctrine and the deliberative process privilege (ECF No. 138, at 7-19) and the Office arguing that the subpoenaed deposition testimony of any employees of the Office is prohibited by principles of sovereign immunity (ECF 142-1 ("Office Br."), at 7-16), among other arguments, the Governor and his Office intend for Plaintiffs to litigate their case without any deposition testimony whatsoever from any witness associated with Governor McMaster's Office concerning the Governor's alleged conduct at the heart of this case.  This is not how state sovereign immunity is meant to operate.  *Cf. Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 620 (2002) (explaining that the Eleventh Amendment recognizes "the judicial need to avoid inconsistency, anomaly, and unfairness" and does not protect "a State's actual preference or desire" to engage in the "selective use of 'immunity' to achieve litigation advantages").

The Office raises a host of objections to this long line of adverse authority, none of which holds water.  The Office argues, for instance, that the opinions denying states immunity from third-party subpoenas have unduly "fixate[d] on the Eleventh Amendment's text, particularly its use of the word 'suit'" (Office Br. at 10), without adequately appreciating that state sovereign immunity extends beyond "the text of the Amendment alone" (*id.* (quoting *Alden v. Maine*, 527 U.S. 706, 728-29 (1999)).  But while courts have applied the Eleventh Amendment beyond the strict confines of its text,[3] the key inquiry still remains whether the

---

[3] *See Alden*, 527 U.S. at 757 (holding that states are immune from suit by private parties in state courts, even though the Amendment by its plain terms only applies to federal court); *see*

proceeding "walks, talks, and squawks very much like a lawsuit". *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 757 (2002) (quoting *S.C. State Ports Auth. v. Fed. Mar. Comm'n*, 243 F.3d 165, 174 (4th Cir. 2001)) (holding that states cannot be named as defendants in federal administrative agency proceedings that "bear a remarkably strong resemblance to civil litigation in federal courts" and involve the filing of a complaint, an answer and motions practice). A third-party subpoena, like Plaintiffs served on two members of the Governor's staff and planned to serve on the Office here, seeking only limited discovery during a limited phase of a case, does not walk, talk or squawk like a federal lawsuit. *See, e.g.*, *Allen*, 544 F. Supp. 2d at 1078-79. It does not require extensive time or involvement in the case; it does not involve claims, counterclaims, answers and motions practice; and it does not subject the state to an adverse judgment in equity or in law. It is thus not barred by state sovereign immunity.[4]

The Office ignores the "walk-talk-and-squawk" test and instead focuses on legally distinct tribal and federal sovereign immunity cases involving third-party subpoenas. If those entities are immune from third-party subpoenas, the Office insists "the rule must be the same" for states. (Office Br. at 8.) But courts have rejected this argument with respect to tribal immunity before, *see, e.g.*, *Arista*, 2008 WL 5350246, at *5 n.12; *Allen*, 544 F. Supp. 2d at 1079-80, and for good reason: "Tribal immunity is not synonymous with a State's Eleventh Amendment immunity, and parallels between the two are of limited utility." *Bodi v. Shingle*

---

*also* U.S. Const., amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.")

[4] For this reason, the Office is wrong to insist that a district court lacking jurisdiction over a suit against the state also lacks jurisdiction to issue a third-party subpoena to the state. (Office Br. at 12.) Because state agencies are not immune from third-party subpoenas, the district court is not jurisdictionally barred from issuing them.

*Springs Band of Miwok Indians*, 832 F.3d 1011, 1020 (9th Cir. 2016); *see also Three Affiliated Tribes of Fort Berthold Rsrv. v. Wold Eng'g*, 476 U.S. 877, 890 (1986) (noting tribal immunity "is not congruent with that which the Federal Government, or the States, enjoy").[5]

Similarly, "courts interpret [sovereign immunity] differently as it applies to state governments and the federal government, according to the distinct principles that undergird the doctrine of sovereign immunity with respect to each". *Charleston*, 488 F. Supp. 3d at 249. "Generally, state sovereign immunity protects principles of federalism, and federal sovereign immunity protects separation-of-powers principles as well as the concept of federal supremacy." *Id.* Thus, the Office's reliance on Fourth Circuit cases like *Boron Oil Co. v. Downie*, 873 F.2d 67, 68 (4th Cir. 1989), which held that federal agencies are immune from third-party subpoenas issued by state courts, is entirely misplaced. (*See* Office Br. at 8, 15.) That case and others like it rest on "principle[s] of federal supremacy" that are inapposite here. *See Boron*, 873 F.2d at 71; *Charleston*, 488 F. Supp 3d at 249-50.

The Office, however, criticizes courts' purported undue "focus[] on the federalism aspect of state sovereign immunity" (Office Br. at 14), reasoning that the true purpose of state sovereign immunity is to protect states' "dignity that is consistent with their status as sovereign

---

[5] The Office suggests that to the extent there are differences between tribal and state sovereign immunity, "tribal sovereign immunity may be weaker". (Office Br. at 10 n.2.) But this is wrong. If anything, tribal sovereign immunity is stronger than state sovereign immunity. For example, "States can waive their Eleventh Amendment immunity through litigation conduct that would not effect a waiver of tribal sovereign immunity", including by filing a proof of claim in a bankruptcy proceeding. *Bodi*, 832 F.3d at 1020. And "*[s]tates* that remove cases against them waive their sovereign immunity, while *tribes* that remove cases against them likely do not." *In re Greektown Holdings, LLC*, 917 F.3d 451, 465-66 (6th Cir. 2019), *cert. dismissed sub nom. Buchwald Cap. Advisors LLC v. Sault Ste. Marie Tribe*, 140 S. Ct. 2638 (2020). Indeed, in the Eight Circuit, tribes are immune from compliance with third-party subpoenas in federal court, but state agencies are not. *See Alltel Commc'ns, LLC v. DeJordy*, 675 F.3d 1100, 1104 (8th Cir. 2012); *In re Missouri Dep't of Nat. Res.*, 105 F.3d at 436.

entities" (*id.* (quoting *Fed. Mar. Comm'n*, 535 U.S. at 760)).  This argument misses the mark.

As the very Supreme Court case that the Office cites makes clear, the "dignity" interests that

sovereign immunity is meant to protect *are* the federalist principles that treat states as "sovereign

entities".  *Fed. Mar. Comm'n*, 535 U.S. at 760.  And in any event, courts have repeatedly held

that merely responding to a third-party subpoena does not unduly infringe on states' dignity or

their sovereign interests because the intrusion is simply not significant enough to "compromise

state sovereignty to a significant degree".  *Barnes*, 544 F.3d at 812; *see also UMass*, 167 F.

Supp. 3d at 225 (holding "nonparty discovery subpoenas" did not violate the Eleventh

Amendment because they would "not result in a judgment or relief of any kind requiring

financial payment from the state").[6]

       At bottom, in the nearly ten pages that the Office devotes to this issue, it identifies

only a single case holding that state sovereign immunity bars enforcement of a third-party

---

[6] This is not to suggest that state sovereign immunity "exist[s] solely in order to prevent federal-court judgments that must be paid out of a State's treasury".  (*See* Office Br. at 15 (quoting, with modifications, *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 58 (1996)).)  But even though the Eleventh Amendment protects against more than adverse financial judgments, there is simply no support for the proposition that any act by a federal court that "would 'compel' the state to act in certain ways" violates state sovereign immunity.  (*See id.* (quoting *Dugan v. Rank*, 372 U.S. 609, 620 (1963).)  Indeed, the Supreme Court has long recognized that certain compulsory process by federal courts against the state does not infringe on state sovereignty, where such process is "ancillary" to permissible proceedings or reflects only a limited intrusion into states' sovereign rights.  *See Hutto v. Finney*, 437 U.S. 678, 690 (1978) (requiring state to pay attorneys' fees for failure to abide by court-issued injunction does not violate sovereign immunity, notwithstanding Eleventh Amendment ban on damages, because "[t]he cost of compliance is 'ancillary' to the prospective order enforcing federal law"); *Fla. Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 698, 700 (1982) (plurality) (seizing property in state possession for purposes of admiralty suit does not violate Eleventh Amendment because the warrant did "not finally adjudicate the State's right to the artifacts" and "did not seek any attachment of state funds and would impose no burden on the state treasury"). Similarly, ordering the Office to produce a limited set of deponents in response to Plaintiffs' third-party subpoenas here is precisely the type of ancillary proceeding that does not violate state sovereign immunity.

subpoena against a state entity.  (Office Br. at 10 (citing *Est. of Gonzalez v. Hickman*, 466 F. Supp. 2d 1226, 1229 (E.D. Cal. 2006).)  And a later opinion issued by a different judge in that same case questioned the earlier ruling, calling the proposition "that the State enjoys subpoena immunity under the Eleventh Amendment . . . tenuous at best".  *Est. of Gonzales ex rel. Gonzales v. Hickman*, No. ED CV 05-660 MMM (RCx), 2007 WL 3231956, at *1 n.5 (C.D. Cal. Apr. 18, 2007).  The Office is thus left relying on inapposite federal and tribal sovereignty case law and making misleading references to distinguishable cases.[7]  As the great weight of authority recognizes, the third-party subpoenas would not violate the Office's sovereign immunity, and a contrary holding would undermine basic principles of fairness that undergird both the Federal Rules of Civil Procedure governing discovery and Eleventh Amendment jurisprudence.

## II.    IN ANY EVENT, THE OFFICE OF THE GOVERNOR HAS WAIVED ANY CLAIM TO STATE SOVEREIGN IMMUNITY.

Ultimately, this Court need not decide whether the Office enjoys immunity from third-party subpoenas because it waived any such immunity with respect to the depositions at issue by working hand-in-hand with Governor McMaster to identify documents within the state's custody and control for the Governor to produce in this case.  A state may not "selectively [] hide behind the cloak of sovereign immunity when doing so would serve its litigation objectives".  *Bd. of Trustees Sabis Int'l Sch. v. Montgomery*, 205 F. Supp. 2d 835, 846 (S.D. Ohio 2002).  Such maneuvering constitutes a "'clear declaration[]' of a State's intent to waive Eleventh Amendment immunity".  *Id.* (citing *Lapides*, 535 U.S. at 620).

---

[7] (*See, e.g.*, Office Br. at 16 (citing *Sarkar v. McCallin*, No. 07-cv-02704, 2009 WL 2762731, at *11 (D. Colo. Aug. 26, 2009), for the proposition that sovereign immunity protects the Office against "any subpoena for a Rule 30(b)(6) deposition issued by Plaintiffs", even though the *Sarkar* decision expressly left open "whether Plaintiff could have obtained the same information by way of a non-party subpoena", *id*. at *11 n.7).)

Plaintiffs served document requests on Governor McMaster on June 4, 2020. (ECF No. 107 at 1.)  After protracted discovery disputes, Governor McMaster ultimately explained that the materials he produced were gathered by coordinating with in-house counsel for the Office, who "advised the Governors' staff of the RFPs and requested staff members collect and provide such information to counsel" and "reviewed the network folders where responsive electronic documents would most likely be found and where known, potentially-responsive documents were housed".  (Barbur Decl., Ex. 1 at 1-2.)  In agreeing to supplement Governor McMaster's document production, counsel for the Governor explained that "*we* will run the search term combinations that we previously provided to you", "*we* will search for materials from January 1, 2017 through the date of the RFPs" and "*we* will undertake to search for, review, and produce potentially responsive materials . . . as soon as practicable".  (Barbur Decl., Ex. 2 at 2 (emphasis added).)  Notably, the materials that Governor McMaster searched for and produced included documents held by "current and former staff" of the Office of the Governor—not Governor McMaster alone.  (Barbur Decl., Ex. 1 at 1.)  The Office thus worked as a unit with Governor McMaster to respond to Plaintiffs' requests for production, and the Governor's counsel held them out as such.

By participating in Governor McMaster's responses to Plaintiffs' document requests, the Office "waive[d] the right . . . to resist a deposition limited to the topics covered" in those requests. *Knox v. U.S. Dep't of the Interior*, No. 4:09-CV-162-BLW, 2012 WL 465585, at *1 (D. Idaho Feb. 13, 2012).  A state cannot provide defendants in an action with access to documents and information and then claim sovereign immunity when plaintiffs seek access to the same or related information. *See Est. of Gonzales*, 2007 WL 3231956, at *5 ("[A] non-party sovereign that voluntarily makes documents available to one party to an action waives its claim

11

to immunity from a subpoena by the opposing party that seeks the same (or different but related) documents.") (citation omitted); *Jett v. Penner*, No. S02-2036 GEBJFMP, 2007 WL 127790, at *2 (E.D. Cal. Jan. 12, 2007) (same).  Thus, to the extent the Office enjoys any immunity from compliance with Plaintiffs' third-party subpoenas—which it does not—that immunity has been waived by the Office's own actions in this case and would not apply to Plaintiffs' request for depositions related to the topics covered by Plaintiffs' earlier document requests.[8]

## III. THE APEX DOCTRINE DOES NOT PRECLUDE THE DEPOSITIONS PLAINTIFFS SEEK.

The Fourth Circuit has never discussed, much less adopted, the so-called "apex doctrine".  *Cunagin ex rel. J.C. v. Cabell Huntington, Hospital, Inc.*, No. 3:19-cv-00250, 2021 WL 1518877, at *4 (S.D.W. Va. April 16, 2021).  But cases from district courts in this Circuit applying the apex doctrine have "establish[ed] that the apex deposition rule is bottomed on the apex executive lacking any knowledge of the relevant facts".  *Paice, LLC v. Hyundai Motor Co.*, No. CIV. WDQ-12-0499, 2014 WL 3613394, at *1 (D. Md. June 27, 2014) (citation omitted); *Intelligent Verification Sys., LLC v. Microsoft Corp.*, No. 2:12CV525, 2014 WL 12544827, at *2 (E.D. Va. Jan. 9, 2014).[9]

---

[8] The Office's insistence that it has not waived sovereign immunity in this suit does not change the analysis.  (Office Br. at 1.)  A state waives sovereign immunity where, as here, it engages in litigation conduct that is inconsistent with its asserted immunity, *see Est. of Gonzales*, 2007 WL 3231956, at *5, even if the state would "favor selective use of 'immunity' to achieve litigation advantages", *Lapides*, 535 U.S. at 620 (citation omitted).

[9] "A witness ordinarily cannot escape examination by denying knowledge of any relevant facts, since the party seeking to take the deposition is entitled to test the witness's lack of knowledge."  *Performance Sales & Mktg. LLC v. Lowe's Cos., Inc.*, No. 5:07-CV-00140-RLV, 2012 WL 4061680, at *4 (W.D.N.C. Sept. 14, 2012) (quoting 8A Charles Alan Wright et al., *Federal Practice and Procedure* § 2037 (3d ed. 2012)).  For this reason, courts usually require the apex deponent to "submit an affidavit . . . stating that he or she lacks superior or unique knowledge of the relevant facts".  *In re C. R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, MDL No. 2187, 2014 WL 12703776, at *4 (S.D.W. Va. June 30, 2014).  Notably, neither of the

Courts within the Fourth Circuit typically require a deposing party to establish that "(1) the [high-ranking official] has unique or special knowledge of the facts at issue and (2) other less burdensome avenues for obtaining the information sought have been exhausted" before allowing the deposition of a high-ranking government official. *In re Lipitor (Atorvastatin Calcium) Marketing, Sales Practices & Prods. Liab. Litig.*, MDL No. 2:14-mn-02502-RMG, 2014 WL 12621613, at *2 (D.S.C. Nov. 13, 2014) (citing *Smithfield Bus. Park, LLC v. SLR Int'l Corp.*, No. 5:12-CV-282-F, 2014 WL 547078, at *2 (E.D.N.C. Feb. 10, 2014)); *see also JTH Tax, Inc. v. Aime*, No 2:16cv279, 2016 WL 9223926, at *4 (E.D. Va. Dec. 13, 2016) (allowing the deposition of the CEO of a corporation because the plaintiffs alleged that he "may have unique direct knowledge of an alleged conversation" concerning events that gave rise to the complaint).[10]

Governor McMaster took the position in his motion for a protective order that he is protected from deposition by the apex doctrine. (ECF No. 138, at 7-17.) Here, the Office of the Governor argues that the two individuals on which Plaintiffs served subpoenas—Leigh Lemoine and Brian Symmes—as well as "some other unidentified but presumably high-ranking official in the Office of the Governor" who would serve as a Rule 30(b)(6) witness also are protected by the apex doctrine. (Office Br. at 16-19.) As explained below, Ms. Lemoine, Mr. Symmes and the Office's Rule 30(b)(6) witness do not qualify as high-ranking government officials for purposes of the apex doctrine, and even if they did, the apex doctrine would not

---

two individuals Plaintiffs subpoenaed has provided any such affidavit. *See City of Huntington*, 2020 WL 3520314, at *3 (noting that deponent failed to provide affidavit disclaiming unique personal knowledge of the facts of the case).

[10] The Office inexplicably cites numerous out-of-Circuit cases in discussing the apex doctrine. (*See* Office Br. at 16-19.) The Court should instead follow the decisions of the District of South Carolina and other courts in the Fourth Circuit.

preclude their depositions because they have "unique or special knowledge of the facts at issue and (2) other less burdensome avenues for obtaining the information sought have been exhausted." *See In re Lipitor*, 2014 WL 12621613, at *2 (quoting *Smithfield Bus. Park, LLC*, 2014 WL 547078, at *2).

### A.    Leigh Lemoine and Brian Symmes are not apex witnesses.

*First*, neither Leigh Lemoine nor Brian Symmes qualifies as a high-ranking government official subject to the apex doctrine.  "Whether an official is a high ranking government officer . . . is determined on a case-by-case basis."  *Sec. & Exchange Comm'n v. Comm. on Ways & Means of the U.S. House of Reps.*, 161 F. Supp. 3d 199, 250 (S.D.N.Y. 2015) (internal quotation marks and citation omitted) (quoting *McNamee v. Massachusetts*, No. 12-40050-FDS, 2012 WL 1665873, at *2 (D.Mass. May 10, 2012)).  "Typically, 'apex' deponents have included officials at the highest level of a corporation or government; such as, governors, cabinet members, chief executive officers, chief financial officers, and members of a corporation's board of directors."  *Cunagin ex rel. J.C.,* 2021 WL 1518877*, at *4.  Ms. Lemoine is the Office's Deputy Chief of Staff, and Mr. Symmes is the Office's Communications Director.  Both are several steps removed from being " government officials who are at the apex of their organization".  *See Sec. & Exchange Comm'n*, 161 F. Supp. 3d at 250 (internal quotation marks and citation omitted) (collecting cases).[11]

---

[11] For this reason, the Office's citations to *Timpson ex rel. Timpson v. Haley*, No. 6:16-cv-1174-DCC, ECF 170 (D.S.C. Mar. 21, 2018), and *Estate of Latoya Nicole Valentine v. State of South Carolina*, No. 3:18-00895-JFA, ECF No. 196 (D.S.C. Dec. 23, 2020), miss the mark. (*See* Office Br. at 18.)  In those cases, Ambassador Haley and Governor McMaster were government officials at the apex of their organizations.  Moreover, in *Estate of Latoya Nicole Valentine*, the court actually originally ordered the depositions of Governor McMaster and Ambassador Haley after they provided evasive and nonresponsive answers to preliminary discovery requests.  *See* No. 3:18-00895-JFA, ECF No. 196, at 5-6.  The court only reconsidered and granted protective orders after "Plaintiffs' counsel . . . failed to engage in good faith discovery practices".  *Id.* at 14.

*Second*, the Governor's Office has not provided any evidence whatsoever concerning Ms. Lemoine's or Mr. Symmes's job descriptions, official duties or responsibilities. Instead, the Office merely makes generalized assertions about the inconvenience of the depositions and the fact of the current legislative session and COVID-19 pandemic. (*See* Office Br. at 18-19.) But "[a] party seeking a protective order prohibiting deposition testimony must establish a specific need for protection, as opposed to simply making conclusory or speculative statements". *All. for Glob. Just. v. District of Columbia*, No. CIV.A.01-00811PLFJMF, 2005 WL 1799553, at *1 (D.D.C. July 29, 2005). Notably, in the cases the Office cites in support (Office Br. at 18-19), the movant provided affidavits or other evidence establishing that the deponent was a high-ranking government official. *See Washauer v. Chao*, No. 4:06-CV-0103-HLM, 2007 WL 9724338, at *1 (N.D. Ga. Oct. 22, 2007) (pointing to record evidence demonstrating deponents were high-ranking officials); *Low v. Whitman*, 207 F.R.D. 9, 12 (D.D.C. 2002) (pointing to deponent's statement submitted in support of the motion).[12]

**B.    Plaintiffs have established that Leigh Lemoine and Brian Symmes have unique or special knowledge relevant to this litigation.**

It is obvious that Ms. Lemoine and Mr. Symmes have knowledge relevant to this case, and the Office's arguments to the contrary completely ignore the record here. Indeed,

---

[12] Other cases the Office cites contain little to no analysis or support for the courts' findings that the deponents qualified for apex protection. (See Office Br. at 18-19.) The entirety of the analysis in *United States v. Newman* was contained in one sentence after identification of the deponent's title: "Given his senior position at the White House, the apex doctrine's concerns about the integrity and independence of the government's decision-making processes, as well as the concerns over encouraging public service, apply to Dhillon, too." No. 19-1868 (RJL), 2021 WL 1026019, at *5 (D.D.C. Mar. 17, 2021). And the Magistrate Judge in *Jackson-Lipscomb v. City of New York* provided no reason whatsoever for holding that two of the deponents were high-ranking officials. *See* No. 17-CV-10093 (ALC) (KNF), 2019 WL 6139443, at *4 (S.D.N.Y. Oct. 7, 2019). These cases shed no light on the fact-specific issue before the Court and should be disregarded.

Governor McMaster himself recognizes that the two individuals were involved in the events leading up to Plaintiffs' complaint—he identified them in response to Plaintiffs' interrogatory seeking the identity of individuals involved in communications with Miracle Hill Ministries, the U.S. Department of Health and Human Services ("HHS"), DSS, the public or the press regarding Governor McMaster's request for a waiver for South Carolina's faith-based child placing agencies from certain federal non-discrimination requirements, the Governor's March 13, 2018 Executive Order and certain related HHS rulemaking actions.  (ECF No. 149-6, at 4.)  And documents produced in this litigation reflect their involvement.  To note just a few examples, Mr. Symmes was in direct contact with an official from HHS regarding Governor McMaster's waiver request, and the HHS official provided Mr. Symmes with an individual update regarding when the letter granting the waiver was expected to receive final clearance.  (*See* Barbur Decl. Ex. 3.)  Further highlighting his central role in efforts to secure the waiver, Mr. Symmes identified himself in communications with HHS as one of the three people from the Governor's Office who "need[ed] to be a part of [a] call" regarding the waiver request.  (*Id*.)  For her part, Leigh Lemoine was personally involved in arranging phone calls between HHS Secretary Alex Azar and Governor McMaster regarding Miracle Hill.  (*See* Barbur Decl. Ex. 4.)  In addition, Ms. Lemoine had telephone conversations with a Utah state senator who helped to enact Utah's "landmark religious freedom[] nondiscrimination law" and a law professor who advised members of Congress in their efforts to "keep religious adoption agencies open and operating according to faith in a very difficult legal and cultural climate".  (*See* Barbur Decl. Ex. 5.)  All of

these topics are relevant to understanding the circumstances giving rise to the events at issue in this case.[13]

### C.     Other less burdensome avenues for obtaining the information sought from Leigh Lemoine and Brian Symmes have been exhausted.

Plaintiffs have pursued discovery from Governor McMaster through requests for production of documents, interrogatories and requests for admission ("RFAs"), but these avenues have not sufficed.  Governor McMaster produced a total of 843 pages of documents in response to Plaintiffs' requests for production, and that production only came after Plaintiffs worked for months to resolve disputes with Governor McMaster and ultimately filed a motion to compel. (*See* ECF No. 107.)  And even then, the Governor's production was hardly elucidating and contained many documents that were already part of the record in the case.  As explained in Plaintiffs' opposition to Governor McMaster's motion for a protective order (ECF No. 149), the Governor's responses to Plaintiffs' RFAs and interrogatories give Plaintiffs no reason to believe they would receive satisfactory responses if they employed these same discovery methods again. Finally, Plaintiffs initially sought to conduct a Rule 30(b)(6) deposition of the Office, which arguably would be less burdensome than the depositions of Ms. Lemoine and Mr. Symmes.  But instead of engaging with Plaintiffs in good faith, the Office filed this motion for a protective order and to quash the subpoenas served on the individuals.  Because Plaintiffs have exhausted

---

[13] The Office claims that Plaintiffs "have not explained what matters they need further discovery on as to these deponents".  (Office Br. at 19.)  But Plaintiffs provided their proposed Rule 30(b)(6) topics to Governor McMaster's counsel on March 4, 2021, and to the Office's counsel as soon as Plaintiffs were informed that Governor McMaster's counsel did not represent the Office.  Those topics reflect the issues Plaintiffs plan to, and need to, explore via depositions of the Governor, his Office and/or his staff.  The Office also contends that "most of the relevant information appears to be readily obtainable (or has already been obtained elsewhere)" (Office Br. at 19), but offers no explanation for that statement, which is plainly contradicted by the discovery history here, as discussed above.

less burdensome avenues for obtaining the discovery they need from Governor McMaster, the

Court should deny the Office's motion.  *See JTH Tax, Inc.*, 2016 WL 9223926, at \*5 (holding

that plaintiffs had exhausted less burdensome avenues for obtaining discovery when the

defendant provided evasive and nonresponsive answers to other discovery devices such as

interrogatories and requests for production of documents); *Kimberlin v. Frey*, No. GJH-13-3059,

2015 WL 13203619, at \*3 (D. Md. July 27, 2015).[14]

## IV.    THE SUBPOENAS WOULD NOT IMPOSE AN UNDUE BURDEN ON THE OFFICE.

### A.    The Office's arguments that the depositions Plaintiffs seek represent an undue burden are unavailing.

The Office puts forth a hodge-podge of arguments for why the depositions

Plaintiffs seek would be unduly burdensome on the Office and the two individuals.  None of

these arguments holds water.

Initially, the Office emphasizes that the permitted scope of discovery under Rule

26 is even more limited when discovery is sought from non-parties.  (Office Br. at 21.)  Granted,

the Office and the two members of Governor McMaster's staff are not named as defendants in

this lawsuit (and, under state sovereign immunity principles, the Office could not have been, as

discussed above).  But Governor McMaster is.  It is a fiction to maintain that the Office, Ms.

Lemoine and Mr. Symmes should be treated as "strangers to the litigation" with "no dog in the

---

[14] The Office's argument that the deposition of a Rule 30(b)(6) representative—"some other unidentified but presumably high-ranking official"—also would be barred by the apex doctrine (Office Br. at 18) makes no sense.  It is up to the Office to decide whom to educate and put forward as its Rule 30(b)(6) witness on the topics Plaintiffs have provided, and it can certainly choose someone lower in the chain of command.  If it is the Office's position that only members of Governor McMaster's senior staff have the knowledge to testify as the Office's Rule 30(b)(6) witness, that in itself would preclude application of the apex doctrine because it would mean those people have "unique or special knowledge" that could not be imparted to someone else.

fight" (Office Br. at 21) when the executive who heads that Office and employs those staff members is perhaps the most important defendant in the case. "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citation omitted). And in any event, the record reflects that many staffers in the Office were intimately involved in the key issues and events relevant to this case. Ms. Lemoine and Mr. Symmes, as well as any Rule 30(b)(6) representative of the Office, are not distinct third parties with no involvement in this litigation. Thus, the rationale behind a stricter standard for non-party discovery simply does not apply here.

The Office also faults Plaintiffs for not explaining "why the Office, a non-party, 'is a better source of information than' the actual parties" and accuses Plaintiffs of seeking "freewheeling non-party discovery". (Office Br. at 21.) Again, the Office relies on the artificial distinction between the Governor and his Office, in an effort to impede Plaintiffs' legitimate attempts to obtain deposition discovery. Plaintiffs initially sought a Rule 30(b)(6) deposition of the Office and the depositions of the two individuals in an effort not to burden Governor McMaster himself with a deposition. Now, Governor McMaster's own Office argues that the Governor is "naturally in a better position than the Office to provide evidence regarding the legitimate purposes of his actions". (Office Br. at 22.) The Office's and the Governor's combined convoluted litigation tactics are clearly designed to prevent Plaintiffs from obtaining *any* deposition testimony whatsoever from any witness associated with Governor McMaster's Office. The Court should not countenance such a result.[15]

---

[15] The Office also argues that no testimonial evidence would be relevant under *Lemon* and that any questioning of any employee of the Office would invade the deliberative process

19

**B.    Plaintiffs do not seek to burden the Office and its staff unnecessarily.**

By seeking deposition discovery related to key issues and topics in this case, Plaintiffs are not trying to unduly burden the Office and its personnel.  Plaintiffs agree that Governor McMaster himself surely has discoverable information, and Plaintiffs wanted to take his deposition.  But his counsel objected to the deposition and filed a motion for a protective order (ECF No. 138), to which Plaintiffs have separately responded.  Further, Plaintiffs do not dispute that Ms. Lemoine, Mr. Symmes and whoever the Office designates as a Rule 30(b)(6) representative have many important duties and many demands on their time.  However, Plaintiffs do take issue with the Office's characterization of the subpoenas as a "fishing expedition" that would force Office staff to "stop their public services and instead prepare for a pointless deposition" (Office Br. at 23).  The depositions Plaintiffs seek are not pointless.  As explained in Plaintiffs' opposition to Governor McMaster's motion for a protective order (ECF No. 149), Plaintiffs are entitled to explore through deposition the key events and issues in the case.

Plaintiffs' counsel have always been willing, and remain willing, to meet and confer with Governor McMaster's and the Office's counsel to discuss how Plaintiffs can obtain the deposition discovery they need in the least burdensome way.  Should the Court deny the Office's motion, Plaintiffs would begin by taking the Rule 30(b)(6) deposition of the Office and then the depositions of Ms. Lemoine and Mr. Symmes.  Assuming those witnesses provided meaningful testimony on the topics at issue, Plaintiffs likely would not need to pursue Governor McMaster's deposition.  But Plaintiffs nonetheless have reserved their rights to seek Governor McMaster's deposition until they have had an opportunity to depose the other witnesses and

---

privilege.  (*See* Office Br. at 22-25.)  Plaintiffs have already responded to these arguments in their opposition to Governor McMaster's motion for a protective order and incorporate their responses here by reference.  (*See* ECF No. 149, at 21-22, 23-24.)

assess the sufficiency of that testimony. Alternately, if the Court denies Governor McMaster's motion (ECF No. 138) and Governor McMaster and the Office can agree on a different sequencing of the depositions, Plaintiffs would be amenable to that discussion. Either way, Plaintiffs' counsel will work cooperatively with counsel for Governor McMaster and the Office to select deposition dates that work best for the witnesses' schedules and cause the least disruption to their duties. But Plaintiffs should not be precluded from taking any depositions at all from Governor McMaster, his Office or his staff.

## V. THE SUBPOENAS WERE VALIDLY SERVED ON MS. LEMOINE AND MR. SYMMES UNDER RULE 45.

Under the Federal Rules of Civil Procedure, "[s]erving a subpoena requires delivering a copy to the named person". Fed. R. Civ. P. 45(b)(1). "District courts in the Fourth Circuit have confirmed that service is effective under Rule 45 once a Party uses means 'reasonably sure to complete delivery. . . .'" *Weckesser v. Knight Enters. S.E., LLC*, No. 2:16-cv-2053-RMG, 2019 WL 2090098, at *2 (D.S.C. May 13, 2019) (quoting *Bland v. Fairfax Cnty., Va.*, 275 F.R.D. 466, 471 (E.D. Va. 2011)). Courts in the Fourth Circuit recognize that service under "Rule 45(b) encompasses sending via FedEx or certified mail". *Bland v. Fairfax Cnty., Va.*, 275 F.R.D. 466, 469 (E.D. Va. 2011).

Here, Plaintiffs served the subpoenas on Leigh Lemoine and Brian Symmes via certified mail to their business addresses at the Office of the Governor, where a mailroom employee presumably delivered the subpoenas to Ms. Lemoine and Mr. Symmes. Indeed, the Office never claims that Ms. Lemoine and Mr. Symmes never received their subpoenas, nor does it provide evidence such as an affidavit to support that claim. Instead, the Office seems to suggest that service is improper because the subpoenas were first delivered to a mailroom employee before they made their way to Ms. Lemoine and Mr. Symmes. (*See* Office Br. at 26-

21

27.)  But this District has already recognized that the presence of an intermediary does not

constitute ineffective service if the intended recipient actually receives the subpoena.  *See*

*CresCom Bank v. Terry*, 269 F. Supp. 3d 708, 711 (D.S.C. 2017) (rejecting argument that service

of subpoena was ineffective because it was first delivered to intended recipient's husband before

it was received by the intended recipient).  Because courts in this Circuit recognize that delivery

by certified mail constitutes effective service, and because there has been no suggestion that Ms.

Lemoine and Mr. Symmes did not actually receive the subpoenas, the Court should deny the

motion to quash on this basis.

The Office of the Governor ignores these principles, however, which have been

well settled in this Circuit for a decade.  Instead, the Office relies entirely on out-of-Circuit cases

for its contention that personal service is the only effective form of service under Rule 45.  (*See*

Office Br. at 26 (citing cases from the Fifth Circuit and federal courts in Vermont, New Jersey

and Georgia).)  The Office also cites Wright & Miller's *Federal Practice and Procedure* to argue

that personal service is required under Rule 45.  But in the very same section of the treatise that

the Office cites, the authors state, "In recent years a growing number of cases have departed from

the view that personal service is required and alternatively have found service of a subpoena

under Rule 45 proper absent personal service."  9A Wright & Miller, *Federal Practice and*

*Procedure* § 2454 (3d ed. 2020).  The Court should thus reject the Office's arguments that the

subpoenas to Ms. Lemoine and Mr. Symmes were not validly served.

## VI.    SANCTIONS ARE NOT APPROPRIATE HERE.

The Office argues that, if the Court grants its motion, it should also assess

sanctions against Plaintiffs' counsel under Rule 45 for their "baseless demands on the Office, a

non-party to the litigation".  (Office Br. at 27-28.)  But the Office has not come close to

demonstrating that the subpoenas should be quashed, let alone that they were so improper as to warrant sanctions.

Plaintiffs seek to depose a Rule 30(b)(6) representative of the Office and two members of Governor McMaster's staff to explore the issues and events giving rise to Plaintiffs' claims in this suit. As explained above, the Office, Ms. Lemoine and Mr. Symmes are not distinct third parties with no involvement in, or knowledge of, this litigation. Sanctions are improper where, as here, the information sought is highly relevant to the litigation. *See DNT, LLC v. Sprint Spectrum, LP*, 750 F. Supp. 2d 616, 627-28 (E.D. Va. 2010) (finding that a party pursuing a subpoena did not act in bad faith where "the information sought . . . was highly relevant to the litigation").

Moreover, there is no indication of bad faith on the part of Plaintiffs here. *See In re Am. Kidney Fund, Inc*., No. CV TDC-17-1787, 2019 WL 1894248, at *5 (D. Md. Apr. 29, 2019) (citing *In re TQ Delta*, No. CV 17-MC-328-RGA, 2018 WL 5033756, at *2 (D. Del. Oct. 17, 2018)). In fact, Plaintiffs sought these depositions in a good faith attempt to avoid burdening Governor McMaster himself with a deposition and attempted in good faith to resolve this dispute with the Office's counsel. Indeed, "[w]here a serving party engages in good faith negotiations to resolve a conflict over its subpoena and to avoid imposing an undue burden, courts have declined to impose Rule 45 sanctions absent a showing that the subpoena was issued in bad faith, for an improper purpose, or in a manner inconsistent with existing law." *In re Am. Kidney Fund, Inc*., 2019 WL 1894248, at *6. It is absurd to suggest that Plaintiffs' counsel should be sanctioned when it is the Office's (and Governor McMaster's) counsel who have engaged in delay and stonewalling to impede Plaintiffs' legitimate attempts to pursue deposition discovery of perhaps

the most important defendant in this case, as explained further above and in Plaintiffs' opposition

to Governor McMaster's motion for a protective order (ECF No. 149).[16]

---

[16] The out-of-Circuit cases cited by the Office in support of its argument for sanctions involved extenuating circumstances not present here.  *See Hallamore Corp. v. Capco Steel Corp.*, 259 F.R.D. 76, 79 (D. Del. 2009) (concluding that a subpoena issued from the District of Delaware was "defective and unenforceable" where it sought to compel attendance at a deposition in the Eastern District of Pennsylvania); *see also Molefi v. Oppenheimer Tr.*, No. 03 CV 5631(FB)(VVP), 2007 WL 538547, at *7-8 (E.D.N.Y. Feb. 15, 2007) (imposing a reduction in attorneys' fees where a subpoena suffered from "glaring procedural and substantive deficiencies" where counsel failed to serve the defendants with copies of the subpoena); *CareToLive v. von Eschenbach*, No. 2:07-cv-729, 2008 WL 552431, at *3-4 (S.D. Ohio Feb. 26, 2008) (finding that the challenged subpoenas were defective where the subpoenas had not been issued by the correct court and were issued before the discovery period began, and where the court determined that the plaintiff's behavior was "meant to harass"); *Huntair, Inc. v. Climatecraft, Inc.*, 254 F.R.D. 677, 680 (N.D. Okla. 2008) (determining that subpoenas imposed an undue burden where they sought "an extremely broad range of sensitive information" and trade secrets, and where the estimated cost of complying with the subpoenas was $150,000).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the

Office's Consolidated Motion for Protective Order and to Quash Subpoenas.

May 13, 2021

*/s/ Susan K. Dunn*

Susan K. Dunn (Federal Bar No. 647)
AMERICAN CIVIL LIBERTIES UNION
OF SOUTH CAROLINA FOUNDATION
P.O. Box 20998
Charleston, SC 29413
(843) 282-7953
sdunn@aclusc.org

South Carolina Equality Coalition, Inc.
Nekki Shutt (Federal Bar No. 6530)
BURNETTE SHUTT & MCDANIEL, PA
912 Lady Street, 2nd floor
P.O. Box 1929
Columbia, SC 29202
(803) 850-0912
nshutt@burnetteshutt.law

Peter T. Barbur (admitted *pro hac vice*)
Katherine D. Janson (admitted *pro hac vice*)
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
pbarbur@cravath.com
kjanson@cravath.com

Leslie Cooper (admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2633
lcooper@aclu.org

25

Daniel Mach (admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street NW
Washington, DC 20005
(202) 675-2330
dmach@aclu.org

M. Currey Cook (admitted *pro hac vice*)
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005
(212) 809-8585
ccook@lambdalegal.org

Karen L. Loewy (admitted *pro hac vice*)
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
1776 K Street NW, 8th Floor
Washington, DC 20006-2304
(202) 804-6245
kloewy@lambdalegal.org

*Attorneys for Plaintiffs*