# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# GREENVILLE DIVISION

| | |
|---|---|
| Eden Rogers et al., )<br>)<br>               Plaintiffs, )<br>)<br>   v. )<br>)<br>United States Department of Health and )<br>Human Services, et al., )<br>)<br>               Defendants. ) | Civil Action No. 6:19-cv-01567-JD<br><br>**GOVERNOR HENRY MCMASTER'S REPLY TO PLAINTIFFS' OPPOSITION TO THE GOVERNOR'S MOTION FOR A PROTECTIVE ORDER** |

Governor McMaster, in his official capacity as Governor of South Carolina, submits this Reply to Plaintiffs' Memorandum Opposing Governor McMaster's Motion for a Protective Order (ECF No. 149) (cited herein as Pls.' Resp. Mem.). In addition to the arguments and authorities set forth in Governor McMaster's Motion, Plaintiffs' Response fails for four reasons:

1) Plaintiffs fail to identify or even allege any unique, relevant, personal knowledge that Governor McMaster might have that could be obtained solely by deposing him, and thus they have not carried their burden under the apex doctrine to show they are entitled to subject him to the burden of preparing for and sitting for a deposition.

2) Plaintiffs' Response expressly admits that, in any deposition of the Governor, Plaintiffs intend to explore the policy rationales and processes behind the Governor's Executive Order and waiver request—an exploration that is clearly prohibited by the deliberative-process privilege.

3) As noted in the Governor's Motion, even apart from the protections of the apex and deliberative-process doctrines, the information that Plaintiffs say they would seek in a deposition would not advance their theories of relief under the Equal Protection Clause and Establishment Clause.

4) Plaintiffs are also precluded from conflating Governor McMaster and the Office of the Governor because they are distinct legal entities.

Therefore, Governor McMaster asks this Court to grant his Motion for a Protective Order, prohibiting Plaintiffs from attempting to subject him to the burdens of an unnecessary and improper deposition in connection with this suit.

I. **Governor McMaster does not possess any unique, relevant, personal knowledge that can be obtained solely from his deposition.**

Plaintiffs' Response fails to identify any relevant information that can be ascertained solely by deposing Governor McMaster. Therefore, the apex doctrine protects Governor McMaster from being deposed in this case. *See* Gov. McMaster's Mot. for a Protective Order at 7–17 (ECF No. 138). Indeed, Plaintiffs admit in their Response that most of the topics and questions about which they wish to ask the Governor could be answered by discovery on other parties or on third parties— discovery that Plaintiffs acknowledge they plan to conduct. *See* Pls.' Resp. Mem. at 9 (ECF No. 149). For example, Plaintiffs can discover the facts involving Governor McMaster's involvement and communications with the South Carolina Department of Social Services ("SCDSS"), *see id.*, through discovery served on SCDSS and deposing a representative from SCDSS and employees of SCDSS, which Plaintiffs admit they plan to do. *Id.* at 12 n.3; *see also id.* at 20 (noting that "no other fact depositions have yet occurred in this case").

Likewise, Plaintiffs say they seek information on "why, after DSS made plain its intent to require Miracle Hill to comply with relevant policies and regulations, less than a month later, DSS about faced, and instead began working with the Governor's Office to obtain a waiver from HHS." *Id.* at 14. Again, this question relates to a supposed change in SCDSS's position, and thus it would be better posed to a Rule 30(b)(6) witness testifying on behalf of SCDSS. Furthermore, SCDSS's compliance with the Executive Order and its cooperation with the Governor is hardly a mystery that requires a deposition to resolve. SCDSS is a Cabinet-level agency whose Director is appointed by the Governor. It is unsurprising that the agency took action to comply with and align itself with an Executive Order.

In addition to discovery from other parties that can answer these questions, Governor McMaster has already provided ample document production and written responses relating to these

2

topics. Plaintiffs complain there are "numerous obvious holes" in Governor McMaster's production, *see id.*, but this is just hyperbole disguised as a reason for deposing the Governor. For example, Plaintiffs complain about a lack of documents regarding Governor McMaster's communications with federal HHS. *See id.* But all communications (and documents memorializing such communications) between the Governor and HHS can be found both in Governor McMaster's document production and in the Administrative Record produced by the Federal Defendants. If Plaintiffs are really so concerned that Governor McMaster has not produced responsive documents, it is odd that they have not cited documents that they received from other parties and nonparties, through discovery, which they would also expect to receive from Governor McMaster. This confirms that Governor McMaster has responded faithfully in accord with his duties under the Federal Rules of Civil Procedure.[1]

Plaintiffs claim they need to depose the Governor to explore his "awareness of Miracle Hill's history of discriminating," and they argue that other methods of discovery (*e.g.*, interrogatories) are incapable of discovering this information. *Id.* at 9, 15. These claims ring hollow, however, because Plaintiffs never even attempted to ask that question in an interrogatory. Had they done so—as did the Plaintiff in a related action—they could have (and still can) learn the information they seek. *See* Gov. McMaster's Resp. to Pl.'s Interrogatories (Jan. 21, 2021) in

---

[1] Plaintiffs' implication to the contrary rests on an erroneous factual premise. *See* Pls.' Resp. Mem. at 3 (ECF No. 149) (stating incorrectly that the Governor's initial document production was mostly "duplicative of materials Plaintiffs had already received through FOIA requests"); *see also id.* at 13–14. Incorrect. Before this lawsuit was filed, Plaintiffs' counsel submitted two FOIA requests to the Governor. The first, submitted on May 1, 2018, yielded 15 pages of responsive materials, and the second, submitted on July 24, 2018, yielded 14 pages. *See* letter from M. Coleman to P. Barbur at 1–2 (Sept. 22, 2020) (ECF No. 107-11). In total, then, the Governor produced 29 pages in response to FOIA requests from Plaintiffs' counsel. In contrast, the Governor's initial document production in discovery was more than *thirteen times* that amount, and his completed document production was more than *twenty-nine times* larger.

*Maddonna v. HHS et al.*, C/A No. 6:19-cv-03551-JD (D.S.C.) at 4 (responding to the plaintiff's interrogatories number 5 and 6 seeking information regarding the Governor's knowledge of any CPA alleged to engage in religious discrimination or having a policy or practice of "turning away" prospective foster parents on the basis of their religious beliefs or practices), attached as **Exhibit A**.

Similarly, Plaintiffs in this suit claim they need to depose the Governor to inquire about the justifications for his challenged actions and whether he "considered the impact of the waiver." Pls.' Resp. Mem. at 10, 21–22 (ECF No. 149). And, yet again, they claim that they cannot do so by pursuing less intrusive means of discovery such as interrogatories. *Id*. at 15. In fact, however, they could ask those questions in interrogatory form—as did the Plaintiff in *Maddonna*—and learn the information they seek. *See* Gov. McMaster's Resp. to Pl.'s Interrogatories (Jan. 21, 2021) in *Maddonna v. HHS et al.*, C/A No. 6:19-cv-03551-JD (D.S.C.) at 5–9 (listing twenty secular governmental purposes advanced by the Governor's actions and specifically identifying the reasons and bases supporting the Governor's belief that forcing faith-based CPA's to violate their sincerely held religious beliefs would ultimately result in fewer foster-care placements and would otherwise harm children in foster care, CPAs, and the State's foster-care system), attached as **Exhibit A**.

Plaintiffs' other arguments on this point fare no better. For example, in a footnote they criticize Governor McMaster's reliance on "out-of-circuit cases" in his Motion. *See* Pls.' Resp. Mot. at 18 n.8 (ECF No. 149). But Governor McMaster's citation to those—in addition to cases from within the Fourth Circuit—is warranted, since those cases applied the apex doctrine in the context of deposing a governor or other high-ranking government official, whereas most of the cases in the Fourth Circuit focus on the apex doctrine as it applies to high-level corporate executives. Plaintiffs, in contrast, do not want the Court to consider the most on-point case law

because it does not support their position. Of course, as Governor McMaster made clear in his Motion, the Fourth Circuit has consistently recognized that high-ranking government officials are also protected by the doctrine, even if it has yet to set out a formulaic test for applying the doctrine to government officials. *See* Gov. McMaster's Mot. for a Protective Order at 7–8 (ECF No. 138).

Similarly, Plaintiffs chide the Governor—again in a footnote—for not submitting his affidavit in support of his Motion. *See* Pls.' Resp. Mem. at 18 n.7 (ECF No. 149). This is inconsequential. Governor McMaster explained his lack of knowledge in his Motion, *see* Mot. for Protective Order at 9–12 (ECF No. 138), and thus did not need to provide an affidavit stating the same. The two cases cited by Plaintiffs in support of a supposedly contrary position, *see* Pls.' Resp. Mem. at 18 n.7 (ECF No. 149), do not require an affidavit. Rather, they merely note that one of the ways an apex official could show that a deposition would place an undue burden on him is by submitting an affidavit. Further, those cases were in the context of a deposition of a corporate official, not the chief executive of a State. Corporations vary widely in size, scope, structure, and organization, and it makes sense that a corporate official might provide additional detail through an affidavit regarding the burden of a deposition. In the instant proceeding, however, it is unnecessary for Governor McMaster to expound upon the demands and burdens of his position more so than he did already in his Motion. Here, although Plaintiffs' arguments set aside common knowledge and common sense, the apex doctrine does not require an affidavit stating the obvious.

In sum, Plaintiffs have failed to bear their burden under the apex doctrine to show they are entitled to depose the Governor. The information they allegedly seek is not unique and personal to the Governor. Rather, it is available from other parties to this case, from third parties, or through less intrusive and burdensome means of discovery, which Plaintiffs repeatedly acknowledge they

5

have either not pursued or not exhausted. Accordingly, Governor McMaster requests that this Court grant his Motion for a Protective Order.

**II.    The information Plaintiffs seek from Governor McMaster is protected as it relates to his mental processes underlying his decision to issue his Executive Order and request a waiver.**

Even if Governor McMaster had unique, personal knowledge of his deliberations and rationales behind the Executive Order and his waiver request, the deliberative-process privilege protects that knowledge from discovery. Plaintiffs admit as much, but they claim the deposition they seek would not invade the deliberative process but, rather, would explore only "factual information" and not any "mental processes." Pls.' Resp. Mem. at 23–24 (ECF No. 149). Plaintiffs' assurances, however, are expressly contradicted elsewhere in their Response, which argues the Governor's deposition is needed to explore the "process" behind the Executive Order and waiver request, the policy rationales he "considered" in relation to those documents, and the "sincerity" of the his motivations. *Id*. at 10, 14. These are precisely the deliberative decision-making information that is shielded from discovery by the deliberative-process privilege.

Plaintiffs seek, for example, to inquire about "the sincerity of Governor McMaster's proffered justifications for his actions," *i.e.*, what Governor McMaster's supposedly *real* purpose was behind issuing his Executive Order and request for a waiver. *See* Pls.' Resp. Mem. at 14 (ECF No. 149). However, Governor McMaster's purposes underlying his actions necessarily involves "matters [Governor McMaster] considered before making up [his] mind[.]" *City of Virginia Beach, Va. v. U.S. Dep't of Commerce*, 995 F.2d 1247, 1252–53 (4th Cir. 1993) (citation omitted). Plaintiffs' enumerated topics that they supposedly need to explore fall precisely within that category. *See* Pls.' Resp. Mem. at 9–10 (bullet point list) (ECF No. 149). The deposition they seek

is exactly what the privilege is intended to "insulate[] against." *City of Virginia Beach*, 995 F.2d at 1253. The topics Plaintiffs claim they are entitled to explore include the following:

- Governor McMaster's process in drafting and submitting/issuing his Executive Order and waiver request;

- What possible effects and policy rationales Governor McMaster considered when issuing his Executive Order and requesting the waiver;

- Governor McMaster's awareness of Miracle Hill's history of providing foster-care services and its policy to refer certain couples to other child-placing agencies;

- Communications between the Governor and a cabinet agency regarding Miracle Hill's license and the Governor's intent to request a waiver; and

- Communications between the Governor and federal HHS regarding the application of the federal nondiscrimination requirements to faith-based CPAs in South Carolina as part of the analysis leading to the Executive Order and waiver request.

*Id*. Each of these topics is clearly aimed at probing what Governor McMaster considered before issuing his Executive Order and requesting a waiver from HHS—in a word, his deliberations.

The only topic that would not examine Governor McMaster's mental processes underlying his Executive Order and waiver request relates to his efforts to search for, collect, and produce documents and communications in response to Plaintiffs' requests for production and interrogatories. *See id*. at 10. That topic, however, has already been extensively discussed and described in the Governor's prior filings and in correspondence between counsel. *See* Gov. McMaster's Resp. to the Mot. to Compel at 4–5 (Oct. 19, 2020) (ECF No. 108); Letter from M. Coleman to P. Barbur (Dec. 18, 2020), attached as **Exhibit B**; Letter from M. Coleman to P. Barbur (Nov. 20, 2020) (ECF No. 153-3); Letter from M. Coleman to P. Barbur (Nov. 9, 2020) (ECF No. 153-2). The Governor has no unique, personal knowledge of this topic to add.

Because Plaintiffs concede that the deposition they seek would invade and explore the mental processes, deliberations, and considerations underlying the Executive Order and waiver

request, the deposition is forbidden by the deliberative-process privilege. Accordingly, Governor McMaster requests that this Court grant his Motion for a Protective Order.

**III.     The testimony Plaintiffs seek from Governor McMaster is not relevant to their Equal Protection or Establishment Clause claims.**

Even if Governor McMaster and his mental processes behind his actions in this suit were not protected by the deliberate-process privilege and apex doctrine, the testimony that Plaintiffs claim they would seek from him would not further their claims. Plaintiffs contend that Governor McMaster "intentionally . . . discriminated and continue[s] to discriminate against prospective foster parents, like [Plaintiffs], who are same-sex couples." Compl. ¶ 130 (ECF. No. 1) (May 30, 2019). In an effort to prove their Equal Protection claim, Plaintiffs seek to demonstrate that Governor McMaster acted with a discriminatory intent or purpose. Contrary to Plaintiffs' claims, the intent and purpose behind Governor McMaster's actions were legitimate governmental purposes unrelated to sexual orientation or the establishment of a State religion. Rather, Governor McMaster sought to uphold the United States and South Carolina Constitutions, the best interests of children in foster care, the interests of current and prospective foster parents, and the State's foster care system by protecting the exercise of sincerely held religious beliefs and by ensuring that critically necessary CPAs could continue providing needed services to children in foster care in South Carolina while *also* ensuring avenues were available for *any* qualified foster parent to serve. *See* Letter from McMaster to Wagner (ECF No. 138-1); Executive Order 2018-12 (ECF No. 138-2); Def. Henry McMaster's Mot. to Dismiss at 26 (ECF No. 57) (August 30, 2019). Again, the intent and purpose of the Governor's actions are obvious from, and expressly stated in, the very documents with which Plaintiffs take issue.

Plaintiffs seek to depose Governor McMaster because they have failed to discover any documents or other evidence that would even suggest that Governor McMaster acted with

invidious discriminatory intent. Such supposed subjective intentions, however, are not relevant to the claims in this case. *See* Gov. McMaster's Mot. for Protective Order at 9–12 (ECF No. 138).[2]

The cases Plaintiffs cite for the contrary proposition—implying that discovery into the subjective motivations for the Governor's actions is relevant to Plaintiffs' remaining Equal Protection claim—do not support that position. In *Willis v. Town of Marshall, N.C.*, 426 F.3d 251 (4th Cir. 2005), for example, the Fourth Circuit merely held that it was premature to grant summary judgment on an Equal Protection claim before "*any* discovery" had occurred. *Willis*, 426 F.3d at 263–64 ("Because the district court granted summary judgment before allowing *any discovery*, Willis had no opportunity to demonstrate that others situated similarly in this regard were not treated similarly.") (citation omitted) (emphasis added). The procedural posture of *Willis* is, therefore, clearly distinguishable from the posture of the instant lawsuit. Further, the holding in *Willis* had nothing to do with discerning the "sincerity" or legitimacy of the proffered public purpose underlying the challenged governmental action. *Willis* is thus irrelevant to the question of whether Plaintiffs should be allowed to depose Governor McMaster in this suit.

Likewise, the case of *Clayland Farm Enters. v. Talbot Cnty., Md.*, No. GLR-14-03412, 2018 WL 1609623, at *2-3 (D. Md. Apr. 3, 2018), fails to support Plaintiffs' position. In fact, it bolster's Governor McMaster's position by noting that a court must analyze a discovery dispute with an eye toward the substantive law and must consider whether the information sought is

---

[2] Plaintiffs erroneously state that the Governor's argument on this point is relevant only to the dismissed Equal Protection claim relating to alleged *religious* discrimination and not to the alleged Equal Protection claim relating to *sexual orientation* discrimination. *See* Pls.' Resp. Mem. at 22 (ECF No. 149). Not so. This Court has already ruled that Plaintiffs' Equal Protection claim relating to alleged sexual orientation discrimination "is governed by rational basis review and will be presumed valid and sustained if it is rationally related to a legitimate state interest." Order at 46 (ECF No. 81). Under that standard and controlling case law, the Governor's subjective motivations are irrelevant. *See* Gov. Henry McMaster's Mot. for Protective Order at 9–12 (ECF No. 138) (collecting cases).

relevant to advance a party's claim. *Id*. at *2. In fact, the magistrate judge in *Clayland Farm* noted that discovery is *not* always needed to support a claim (or to rule on a claim) brought under the rational basis standard. *Id*. at n.3. Further, the magistrate judge noted that, in *Clayland Farm*, no written discovery had occurred. *Id*. at *2. Accordingly, the court ordered the parties to engage in written discovery, not deposition testimony. *Id*. at *2–4 (ordering only that defendant respond to specific interrogatories and document requests). The instant suit is distinguishable from *Clayland Farm* because, unlike the local government defendant in *Clayland Farm*, Governor McMaster *has* responded to discovery requests, *has* produced documents, and *has* responded to Plaintiffs' interrogatories. *Clayland Farm* provides no support for the deposition Plaintiffs seek. If Plaintiffs now view their interrogatories as insufficient, that is on them, and they are free to pursue additional written discovery in accordance with the Court's Scheduling Order. Needlessly subjecting the Governor to a deposition would not advance Plaintiffs' claims, and, accordingly, the Motion for a Protective Order should be granted.

**IV.    Adhering to the rules of official-capacity suits is not "gamesmanship."**

Plaintiffs spend several pages complaining that Governor McMaster's consistent, longstanding assertion that the Office of the Governor is not a proper defendant or subject of discovery in this lawsuit is somehow "gamesmanship." Pls.' Resp. Mem. at 11–13 (ECF No. 149). As an initial matter, it is unclear how this argument relates to their effort to depose Governor McMaster. Plaintiffs inexplicably allege "surprise[]" and "stonewalling," *id*. at 11–12, even though Governor McMaster has repeatedly distinguished himself, sued in his official capacity, from the Office of the Governor. For example:

- Governor McMaster's Responses to Plaintiffs' Requests for the Production of Documents at 4–5 (Aug. 4, 2020) (ECF No. 107-7) ("The Governor further objects . . . to the extent [Plaintiffs' instructions] impl[y] that the Office of the Governor of South

10

    Carolina is a party in interest to this proceeding or is susceptible to discovery requests or demands.");

- Letter from M. Coleman to P. Barbur at 3 (Sept. 22, 2020) (ECF No. 107-11) (noting that "the Governor simply objects to a definition in your Request for Documents to the extent that the definition implies that the Office of the Governor—a department of the State—is a party to this suit");

- Governor McMaster's Responses to Plaintiffs' Interrogatories at 3 (Oct. 15, 2020) (ECF No. 149-6) ("The Governor further objects . . . that the Office of the Governor of South Carolina is a party in interest to this proceeding or is itself susceptible to discovery requests or demands. The Office of the Governor of South Carolina is an agency or department of the State and is not a party to this Case."); *id*. at 4 (objecting to Interrogatory number 3 "to the extent it implies the Office of the Governor is a party to this litigation or is susceptible to discovery requests in this litigation");

- Governor McMaster's Responses to Plaintiffs' Requests for Admission at 3 (Oct. 15, 2020) (ECF No. 149-5) (objecting to the suggestion "that the Office of the Governor of South Carolina is a party in interest to this proceeding or is itself susceptible to discovery requests or demands");

- Governor McMaster's Resp. to Plaintiffs' Motion to Compel Discovery at 2 (Oct. 19, 2020) (ECF No. 108) (noting Governor McMaster's persistent objections to Plaintiffs' implications that the Office of the Governor is a party to this suit);

Indeed, Plaintiffs acknowledge that they "could not have named the Office of the Governor as a defendant in this case under well-established principles of sovereign immunity." Pls.' Resp. Mem. at 11 n.2 (ECF No. 149). In other words, for purposes of official capacity lawsuits like this one, the Governor and the Office *are* "separate and distinct entities," *id.* at 11, for that is the very reason such lawsuits are justiciable in federal court. *See, e.g.*, *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) ("[W]hen a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes."); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984) (holding that a

suit challenging the constitutionality of a state official's action is not one against the State).[3] Plaintiffs' argument is both irrelevant and meritless.

## V.     Conclusion

Because Governor McMaster is protected from being deposed by the apex doctrine and the deliberative-process privilege, and because the testimony Plaintiffs seek from Governor McMaster is not relevant to their claims, Governor McMaster requests that this Court grant his Motion for a Protective Order, thereby preventing him from being deposed.

Respectfully submitted

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: s/ Miles E. Coleman
    Miles E. Coleman
    Federal Bar No. 11594
    E-Mail: miles.coleman@nelsonmullins.com
    2 W. Washington St. / Fourth Floor
    Greenville, SC 29201
    (864) 373-2352

    Jay T. Thompson
    Federal Bar No. 09846
    E-Mail: jay.thompson@nelsonmullins.com
    1320 Main Street / 17th Floor
    Post Office Box 11070 (29211-1070)
    Columbia, SC 29201
    (803) 799-2000

---

[3] Plaintiffs' reliance on *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) is misplaced since that case referred to "an [government] entity of which an *officer is an agent*." Governor McMaster is not an agent of the Office of the Governor of the State of South Carolina. Rather, as the "Chief Magistrate," he is vested with the "supreme executive authority of [the State of South Carolina]." S.C. Const. art. IV, § 1. As the Chief Magistrate, no such agency relationship arises because Governor McMaster is not an agent "subject to [any] principal's control." Restatement (Third) of Agency § 1.01 (2006). This distinction explains both why Governor McMaster could not produce a 30(b)(6) witness from the Office of the Governor and why, in contrast, SCDSS (which is not itself a party to the suit, but whose Director, Michael Leach, is a Defendant and an agent of the Department) was willing to comply with the subpoenas served on SCDSS and its employees. *See* Pls.' Resp. Mem. at 12 n.3 (ECF No. 149).

OFFICE OF THE ATTORNEY GENERAL

Robert D. Cook, South Carolina Solicitor General
Federal Bar No. 285
E-Mail: bcook@scag.gov
Post Office Box 11549
Columbia, SC  29211
(803) 734-3970

*Attorneys for Governor Henry McMaster*

Greenville, South Carolina
May 20, 2021

13