# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# GREENVILLE DIVISION

| | |
|---|---|
| EDEN ROGERS, and BRANDY WELCH,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, ALEX AZAR, in his official capacity as Secretary of United States Department of Health and Human Services, ADMINISTRATION FOR CHILDREN AND FAMILIES, LYNN JOHNSON, in her official capacity as Assistant Secretary of Administration for Children and Families, HENRY MCMASTER, in his official capacity as Governor of the State of South Carolina, MICHAEL LEACH, in his official capacity as State Director of the South Carolina Department of Social Services, and SCOTT LEKAN, in his official capacity as Principal Deputy Assistant Secretary of Administration for Children and Families,<br><br>*Defendants*. | Civil Action No.: 6:19-cv-01567-JD |

## THE OFFICE OF THE GOVERNOR'S REPLY IN SUPPORT OF CONSOLIDATED MOTION FOR PROTECTIVE ORDER AND TO QUASH SUBPOENAS

Thomas A. Limehouse, Jr. (Fed. Bar No. 12148)
*Chief Legal Counsel*
Wm. Grayson Lambert (Fed. Bar. No. 11761)
*Senior Legal Counsel*
OFFICE OF THE GOVERNOR
South Carolina State House
1100 Gervais Street
Columbia, South Carolina  29201
(803) 734-2100
Email: tlimehouse@governor.sc.gov
Email: glambert@governor.sc.gov

Christopher Mills (Fed. Bar No. 13432)
SPERO LAW LLC
1050 Johnnie Dodds Blvd. #83
Mt. Pleasant, South Carolina  29465
(843) 606-0640
Email: cmills@spero.law

**TABLE OF CONTENTS**

Non-Waiver of Sovereign Immunity ................................................................................................ 1
Introduction ..................................................................................................................................... 1
Argument ........................................................................................................................................ 3
    I.    The subpoenas are barred by state sovereign immunity. .................................................. 3
    II.    The Office has not waived the protection of sovereign immunity .................................. 9
    III.    Plaintiffs have not shown the extraordinary circumstances necessary to depose high-ranking executive officials. ........................................................................................... 11
    IV.    The demanded depositions are an undue burden. ........................................................... 13
    V.    The subpoenas were not validly served on the named person under Rule 45. .............. 14
    VI.    Sanctions are warranted. .................................................................................................. 15
Conclusion .................................................................................................................................... 15

**NON-WAIVER OF SOVEREIGN IMMUNITY**

The Office of the Governor–Executive Control of State ("Office" or "Office of the Governor") makes this special, limited appearance solely for purposes of moving to quash Plaintiffs' subpoenas and to obtain a protective order related to additional subpoenas.

**INTRODUCTION**

Plaintiffs concede that "the Office and the two members of Governor McMaster's staff are not named as defendants in this lawsuit" and "could not have been" "under state sovereign immunity principles." ECF No. 153 (Opp.), at 18. That concession should end Plaintiffs' efforts to subpoena non-party testimony from the Office and its employees. Fourth Circuit precedent treats a non-party subpoena proceeding as akin to a lawsuit for sovereign immunity purposes, so if Plaintiffs cannot sue the Office directly, they cannot compel it to act via subpoenas on pain of contempt. Plaintiffs provide no explanation as to why non-party subpoenas would "interfere[] with the public administration" of federal agencies but not state agencies. *Boron Oil Co. v. Downie*, 873 F.2d 67, 71 (4th Cir. 1989). And Plaintiffs' suggestion of waiver cannot be squared with the repeated objections by the Office and Governor McMaster to any discovery pertaining to the Office itself. Even where a party itself directly engages in discovery, sovereign immunity objections are not waived; thus, any staff assistance provided to the Governor with his discovery responses here falls far short of the clear declaration required to find waiver.

The Court need not reach the significant constitutional issue raised by Plaintiffs' third-party discovery efforts, however, because the subpoenas should be quashed and a protective order granted for other reasons. Plaintiffs still cannot articulate what relevant testimony they could even theoretically obtain from the Office and its employees, much less show the extraordinary circumstances necessary to compel testimony from either a state entity or high-ranking

government officials. And there is no question that the Governor's Deputy Chief of Staff and Communications Director—both of whom serve in critical capacities with the Office and supervise multiple staff members—qualify as apex officials. Plaintiffs have no substantive response to analogous cases, and ultimately, they "do not dispute that [the deponents] have many important duties and many demands on their time." Opp. 20.

Relatedly, complying with the third-party subpoenas, under threat of contempt, would impose further significant, undue burdens on the Office, especially given that Plaintiffs must show that any benefit of requiring non-party appearances substantially outweighs such burdens. Yet Plaintiffs never specifically identify any potential benefit, while conceding that their depositions will take time away from the Office's "important duties." Opp. 20. Plaintiffs attempt to excuse their failure to justify their demand by casting the Office as the same as the Governor, but the distinction between state officials and agencies is the crucial distinction that allows official-capacity suits to proceed in the first place. Plaintiffs concede as much by agreeing that they could not have sued the Office, so their effort is nothing more than an attempt to do indirectly what they admit they cannot do directly. The Court should not "judicially admit at the back door that which has been [constitutionally] turned away at the front." *Laird v. Nelms*, 406 U.S. 797, 802 (1972).

Next, Plaintiffs do not dispute that they ask this Court to depart from the plain text of Rule 45 and the position of most courts regarding the Rule's requirement of personal service. This Court should decline that invitation.

Finally, Rule 45 sanctions do not require any showing of bad faith. Thus, if the Court grants the Office's Motion, it has the authority and discretion to fashion appropriate sanctions, both to account for the significant burdens and expenses Plaintiffs have imposed on the Office and to discourage similar intrusions onto the State's sovereign immunity in this and other § 1983 cases.

# ARGUMENT

**I.     The subpoenas are barred by state sovereign immunity.**

Plaintiffs concede that "under state sovereign immunity principles," the Office and its employees "could not have been" "named as defendants in this lawsuit." Opp. 18. And under Fourth Circuit law—which Plaintiffs do not even *cite*—a government agency that could not have been a defendant cannot be compelled to respond to a third-party subpoena: "if the non-party recipient of a subpoena is a government agency, principles of sovereign immunity apply." *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 278 (4th Cir. 1999). Plaintiffs further concede that these "'basic principles of sovereign immunity'" protect the States. Opp. 5. Again, under these "basic principles of sovereign immunity," as explained by the Fourth Circuit, a "subpoena proceeding against a [government] employee to compel him to testify about information obtained in his official capacity is inherently that of an action against the [government]." *Boron Oil*, 873 F.2d at 70–71. "[S]uch a proceeding interferes with the public administration and compels the [government] agency to act in a manner different from that in which the agency would ordinarily choose to exercise its public function." *Id.* at 71.

These precedents squarely govern here *unless* Plaintiffs can prove some fundamental difference between the "basic principles" of federal sovereign immunity—directly at issue in Fourth Circuit precedent—and "basic principles" of state sovereign immunity. Plaintiffs do not come close to doing so. They never bother to address the central principle undergirding sovereign immunity: that "'no suit or action can be brought against the king, even in civil matters, because no court can have jurisdiction over him.'" ECF No. 142-1 (Memo.), at 8–9 (quoting *Franchise Tax Bd. of California v. Hyatt*, 139 S. Ct. 1485, 1493 (2019), in turn quoting Blackstone). If a subpoena against a federal agency violates this principle, so does a subpoena against a state agency. Both subject the government to the same "coercive process of judicial tribunals at the instance of

3

private parties" and are therefore barred by sovereign immunity. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). Plaintiffs have no response.

Instead, citing a motley assortment of thinly reasoned, out-of-circuit cases, Plaintiffs argue that a subpoena proceeding is not a "suit" and that state sovereign immunity exists only as a matter of federalism. The Office already anticipated and addressed these arguments, and they fare no better now. On the question of "suit," Plaintiffs admit that "courts have applied the Eleventh Amendment beyond the strict confines of its text," Opp. 6, but even that admission underscores that Plaintiffs do not understand state sovereign immunity. As the Office explained, "sovereign immunity derives not from the Eleventh Amendment," and "it follows that the scope of the States' immunity from suit is demarcated not by the text of the Amendment alone but by fundamental postulates implicit in the constitutional design." *Alden v. Maine*, 527 U.S. 706, 728–29 (1999); *see also Hyatt*, 139 S. Ct. at 1493 (observing that the states, as independent sovereigns, enjoyed the immunity of all sovereign states under international law at the Founding and continue to enjoy that sovereignty except as limited by federal law). Thus, the use of the word "suit" in the Eleventh Amendment is not determinative. As Fourth Circuit precedent shows, what matters is whether the proceeding "interferes with the public administration and compels the [government] agency to act." *Boron Oil*, 873 F.2d at 71. Subpoenas on pain of contempt do just that. *See id.*

For this reason, Plaintiffs' "'walk-talk-and-squawk' test" (Opp. 7) does not determine whether a particular private party's intrusion, under the color of federal judicial authority, violates state sovereign immunity. The Supreme Court's use of that phrase was limited to quoting the Fourth Circuit, *see Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 757 (2002), and Plaintiffs omit that the Fourth Circuit also said that "sovereign immunity bars not just lawsuits filed in courts of law, but rather *all proceedings against a non-consenting sovereign*." *S.C. State*

4

*Ports Auth. v. Fed. Mar. Comm'n*, 243 F.3d 165, 170 (4th Cir. 2001) (emphasis added). Indeed, the Supreme Court in *Federal Maritime Commission* extended state sovereign immunity to *bar* an agency from adjudicating a private party's complaint regarding a state-run port. The Court *rejected* the same "fundamental misunderstanding" that Plaintiffs here have: "While state sovereign immunity serves the important function of shielding state treasuries," "the doctrine's central purpose is to accord the States the respect owed them as joint sovereigns." *Id.* at 765 (cleaned up); *compare* Opp. 5 (arguing that sovereign immunity does not apply here because there would be no effect on "the State treasury"); Opp. 9 (same). Sovereign immunity broadly "prevent[s] States from being amenable to *process*." *Hyatt*, 139 S. Ct. at 1493 (emphasis added).

Accordingly, the doctrine has been applied in many other types of proceedings that do not "squawk," as "courts interpret the term 'suit' broadly to include more than just an actual suit instituted against the" sovereign. *United States v. Murdock Mach. & Eng'g Co. of Utah*, 81 F.3d 922, 931 (10th Cir. 1996); *see, e.g.*, *Buchanan v. Alexander*, 45 U.S. (4 How.) 20, 21 (1846) (disbursing agent of government not subject to writ of attachment sought by creditors of seaman serving on the frigate Constitution); *Hyatt*, 139 S. Ct. at 1494 (similar application of state sovereign immunity). Once again, Plaintiffs ignore these historical examples.

Any suggestion that "the intrusion [here] is simply not significant enough to 'compromise state sovereignty to a significant degree'" (Opp. 9) is inconsistent with Fourth Circuit precedent, which holds that a subpoena proceeding regarding a government employee "interferes with the public administration." *Boron Oil*, 873 F.2d at 71. That is especially true since one of "the central benefits of" governmental immunities is "avoiding the costs and general consequences of subjecting public officials to the risks of *discovery* and trial." *Puerto Rico*, 506 U.S. at 143–44 (emphasis added) (internal quotation marks omitted). Plaintiffs provide no reason that identical

5

subpoena proceedings would impose different levels of intrusion depending on whether the government agency is federal or state. *See generally EPA v. Gen. Elec. Co.*, 197 F.3d 592, 597 (2d Cir. 1999) (holding that "the enforcement of this subpoena duces tecum issued" to a federal agency "would compel the [agency] to act and therefore is barred by sovereign immunity").[1]

Plaintiffs next attempt to brush away Fourth Circuit precedent by saying that "state sovereign immunity protects principles of federalism, and federal sovereign immunity protects separation-of-powers principles." Opp. 8 (quoting *Charleston Waterkeeper v. Frontier Logistics, LP*, 488 F. Supp. 3d 240, 249 (D.S.C. 2020)). With all respect to other courts in this District, the fact that state sovereign immunity may serve federalism goals does not mean it is somehow limited to that single purpose. State sovereign immunity predated the federal government, and the States "entered the Union 'with their sovereignty intact.'" *Fed. Mar. Comm'n*, 535 U.S. at 751. Both federal and state sovereign immunity stem from the same common-law root—protecting the dignity of sovereign governments—and state sovereign immunity applications are not limited to "federalism" issues. After all, as Plaintiffs concede, they could not sue the Office directly in federal court, so "federalism" and "principles of federal supremacy" (Opp. 8) are red herrings. (It is telling that Plaintiffs cannot muster a single other case to quote for their newfound "federalism" limitation.) And Plaintiffs' claim that *Boron Oil* "rest[ed] on 'principle[s] of federal supremacy'" (Opp. 8) misrepresents that decision, which first concluded that the agency was immune because the subpoena "compels [it] to act" and then said in a coda that "federal supremacy" merely "reinforces the protection of sovereign immunity in the case at bar." 873 F.2d at 71.

---

[1] Whether unrelated types of proceedings—regarding attorneys' fees or certain admiralty attachments—might "compel the state to act in certain ways" (Opp. 9 n.6) has nothing to do with the question of whether non-party subpoena proceedings do. The Fourth Circuit has already answered that question: Yes. *Boron Oil*, 873 F.2d at 71.

6

In any event, Plaintiffs' subpoenas *do* affect "federalism," just as surely as a (prohibited) lawsuit against the State would. Those subpoenas result in "the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." *Puerto Rico*, 506 U.S. at 146. Allowing a federal court to intrude on state sovereignty in this manner—holding state employees in contempt of federal court if they do not follow the demands of private litigants— would be an exceedingly odd way to vindicate federalism principles. *See Alltel Commc'ns, LLC v. DeJordy*, 675 F.3d 1100, 1103 (8th Cir. 2012) (third-party subpoenas "command a government unit to appear in federal court and obey [any] judicial discovery commands," and therefore "[t]he potential for severe interference with government functions is apparent").

Finally, Plaintiffs also fail to distinguish tribal sovereign immunity, which repeatedly has been held to bar non-party subpoenas. Memo. 9 (collecting cases). Plaintiffs vaguely say that tribal immunity "is not synonymous" with state immunity, Opp. 7, but that is not the question. The question is why, as to the specific issue of non-party subpoenas, state immunity would be treated differently, given that both States and Indian tribes generally "possess[] the common-law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978).[2] The reasons that courts apply tribal immunity to bar such subpoenas apply equally here. For instance: "tribes are immune from 'suit,'" "'suit' includes 'judicial process,'" and "a subpoena duces tecum is a form of judicial process." *Bonnet v. Harvest (U.S.) Holdings, Inc.*, 741 F.3d 1155, 1160 (10th Cir. 2014). The same is true for states. Likewise, the

---

[2] Plaintiffs irrelevantly note that certain waiver rules are relaxed as to tribes. Opp. 8 n.5. In other areas, state sovereign immunity is *stronger* than tribal immunity. For instance, as Plaintiffs' own case explains, tribal sovereignty is "subject to plenary federal control." *Three Affiliated Tribes of Fort Berthold Rsrv. v. Wold Eng'g*, 476 U.S. 877, 891 (1986); *see Fed. Mar. Comm'n*, 535 U.S. at 767 ("[S]tate sovereign immunity . . . is not so ephemeral as to dissipate when the subject of the suit is an area that is under the exclusive control of the Federal Government." (cleaned up)).

7

Eighth Circuit reasoned from the fundamental "purposes underlying sovereign immunity," as "emphasized in *Boron Oil*" and Supreme Court precedent: that a court may not "exercise its compulsive powers to restrain the Government from acting, or to compel it to act. There are the strongest reasons of public policy for the rule that such relief cannot be had against the sovereign." *Alltel*, 675 F.3d at 1103. The same principle applies here.[3]

In the end, Plaintiffs retreat to a policy argument based on their own convenience and supposed "fairness," arguing that state sovereign immunity would impede their efforts to obtain deposition testimony from state employees and is therefore "ludicrous" "procedural gamesmanship." Opp. 1, 6, 10. But "policy, no matter how compelling, is insufficient" "to waive sovereign immunity," *Booth v. Maryland*, 112 F.3d 139, 146 (4th Cir. 1997) (cleaned up), and "convenience" "is not [the] purpose" of state sovereign immunity, *Fed. Mar. Comm'n*, 535 U.S. at 769. "[E]ven if denying [Plaintiffs] the discovery [they] seek[] in this case works some inconvenience, or even injustice, it is too late in the day, and certainly beyond the competence of th[e] court[s], to take issue with a doctrine so well-established." *Alltel*, 675 F.3d at 1106. Plaintiffs would undoubtedly prefer to be able to directly sue governments and obtain damages, too. But state sovereign immunity does not bow to the wishes of private litigants; that is the entire point. Nor does state sovereign immunity dissipate simply because Plaintiffs are frustrated that they might not depose others. Opp. 6. In all events, contrary to Plaintiffs' suggestion that they could never prove their case if sovereign immunity were properly applied, federal courts routinely

---

[3] Indeed, for this reason, the Eighth Circuit cast doubt on the precedent relied on by Plaintiffs, Opp. 4, 8 n.5, explaining that its previous decision in *In re Missouri Department of Natural Resources*, 105 F.3d 434 (8th Cir. 1997) was inconsistent with "the reasoning in cases such as *Boron Oil*" and that the Supreme Court could "well conclude" that state sovereign immunity bars "disruptive third-party subpoenas . . . served on a state agency in private federal court civil litigation." *Alltel*, 675 F.3d at 1104–05.

8

adjudicate claims against federal officers, even though "[a] subpoena served on a nonparty federal agency is considered an action against the United States and subject to sovereign immunity." 9A Wright & Miller, *Federal Practice & Procedure* § 2463.2 (3d ed. 2020).

In sum, Fourth Circuit precedent and fundamental principles of sovereign immunity bar federal subpoenas directed to non-party state agencies and state employees. Therefore, the subpoenas here must be quashed and a protective order issued to preserve the State's and the Office's sovereign immunity.

**II.     The Office has not waived the protection of sovereign immunity.**

Plaintiffs argue that the Office somehow waived sovereign immunity because certain "staff members" assisted in "collect[ing] and provid[ing]" documents pertaining to discovery demands on the Governor. Opp. 11. But any waiver argument "must focus on the litigation act the [Office] takes that creates the [alleged] waiver." *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 620 (2002). And the "test for determining whether a State [agency] has waived its immunity . . . is a stringent one." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999) (internal quotation marks omitted). A waiver will only be found "if the [agency] voluntarily invokes our jurisdiction" or "makes a clear declaration that it intends to submit itself to our jurisdiction." *Id.* at 675–76; *see also Freeman v. Pate*, 2013 WL 5410775, at *10 (D.S.C. Sept. 26, 2013) (Norton, J.) ("The central inquiry in determining a waiver of Eleventh Amendment immunity is whether the State's litigation conduct constituted a voluntary invocation of federal jurisdiction." (cleaned up)). "[T]he State's consent" must "be unequivocally expressed." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984).

Here, including in the two exhibits submitted by Plaintiffs on this point, the Office has repeatedly made clear that it does *not* consent to federal jurisdiction and does *not* waive its sovereign immunity. In Plaintiffs' Exhibit 1, the Governor's counsel made clear that the Governor

9

is "the named Defendant" and that efforts to "encompass staff actions are both inappropriate and implicate broader sovereign immunity issues." ECF No. 153-2, at 1. Contrary to Plaintiffs' claim that these objections surfaced "only at the tail-end of fact discovery," Opp. 2, numerous correspondences and responses make clear that the Office at no point voluntarily invoked federal jurisdiction or waived its sovereign immunity; instead, such immunity was repeatedly asserted.[4]

As to Plaintiffs' second exhibit, their reliance on a letter saying that "we" will undertake various actions (Opp. 11) is misplaced. First, "we" obviously refers to Governor McMaster and his counsel. *See* ECF No. 153-3, at 1 ("Governor McMaster will provide . . . ."). Second, Plaintiffs cite nothing suggesting that staff members are unable to assist a party in document preparation without waiving their or their agency's own sovereign immunity. To the contrary, even where a state entity *itself* directly "engag[es] in very extensive discovery" before asserting a sovereign immunity argument, courts refuse to find "an unequivocal waiver of such a fundamental defense." *Herron v. Va. Com. Univ.*, 366 F. Supp. 2d 355, 362 (E.D. Va.), *aff'd*, 116 F. App'x 467 (4th Cir. 2004); *see DeCecco v. Univ. of S.C.*, 918 F. Supp. 2d 471, 498–99 (D.S.C. 2013) (same).

The few cases cited by Plaintiffs are irrelevant. Their lead case, a twenty-year-old Southern District of Ohio decision, holds "that the State's pre-litigation act of inserting a binding arbitration provision into the contract constitutes a waiver." *Bd. of Trustees Sabis Int'l Sch. v. Montgomery*, 205 F. Supp. 2d 835, 846 (S.D. Ohio 2002). The court was concerned that a contrary holding

---

[4] *See, e.g.*, ECF No. 107-7, at 4–5 (Aug. 4, 2020 Production of Documents Responses) ("The Governor further objects to the definition of the terms 'You' and 'Your' . . . to the extent it implies that the Office of the Governor of South Carolina is a party in interest to this proceeding or is susceptible to discovery requests or demands. The Office of the Governor of South Carolina is an agency or department of the State and is not a party to this Case."); ECF No. 149-6, at 3 (Oct. 15, 2020 Interrogatory Responses) (same); ECF No. 149-5, at 3 (Oct. 15, 2020 Admission Responses) (same); ECF No. 107-11, at 3 (Sept. 22, 2020) (noting again that "the Office of the Governor—a department of the State" is not "a party to this suit"); ECF No. 138-6, at 1 (Mar. 23, 2021) ("[O]nly an individual, Governor McMaster in his official capacity, has been named in the Complaint.").

would "encourage[] forum shopping by the State." *Id.*  Nothing of the kind is presented here.  Next, the only reason the District of Idaho in *Knox v. Department of the Interior* agreed to compel deposition testimony from several tribal officials is that they filed formal declarations in support of formal briefs from the tribes—and even that action only "waive[d] the right of [the officials] to resist a deposition limited to the topics covered in their Declarations." 2012 WL 465585, at *1 (D. Idaho Feb. 13, 2012).  This case does not involve any remotely similar conduct.

Finally, Plaintiffs' analogy to cases where a sovereign entity "voluntarily ma[de] documents available to one party" but not "the opposing party" (Opp. 11–12) is inapt.  The Office has consistently asserted its sovereign immunity, and the gravamen of Plaintiffs' argument is that the Office waived its immunity by staff assisting the Governor in providing some documents *to Plaintiffs*.  Plaintiffs make no suggestion of any documents provided to the Governor but not them, so their suggestion about unequal "access" (Opp. 11) is meritless.  In short, Plaintiffs fail to show that the Office's prior conduct, to facilitate discovery, represents anything remotely resembling a clear declaration waiving sovereign immunity.[5]

### III. Plaintiffs have not shown the extraordinary circumstances necessary to depose high-ranking executive officials.

Plaintiffs first argue that "neither Leigh Le[M]oine nor Brian Symmes qualifies as a high-ranking government official subject to the apex doctrine," even though they concede that these individuals are, respectively, the Governor's Deputy Chief of Staff and the Communications Director.  Opp. 14.  No one would pretend that the White House Deputy Chief of Staff and Press Secretary are not high-ranking officials, and these are the analogous state positions.  Plaintiffs'

---

[5] That other state agencies might have "agreed to Plaintiffs' request for depositions" says nothing about the Office's own litigation conduct.  Opp. 2.  Instead, it actually cuts against Plaintiffs' unadorned assertions in connection with the apex doctrine that there are no other readily available, less burdensome, and unexhausted avenues or means of discovery through which they could obtain relevant information.

11

suggestion that only the single individual at "the apex" of an organization qualifies is unsupported by any caselaw, Opp. 14, and refuted by many decisions, which apply the doctrine to, among other positions, city deputy commissioners and federal deputy assistant secretaries, Memo. 18–19.

Plaintiffs' feigned confusion about "Ms. Le[M]oine's or Mr. Symmes's job descriptions, official duties or responsibilities" (Opp. 15) is puzzling, both because they issued subpoenas on these supposed mystery witnesses and because they acknowledge elsewhere that they are "senior staff." Opp. 18 n.14; *see also* Opp. 20 (agreeing that they "have many important duties and many demands on their time"). Their demand for "evidence" on this point (Opp. 15) ignores the fact that the Office is presently before the Court seeking protection from the demands associated with participating in litigation to which it is not a party. The Office is obligated neither to assume a burden it does not bear nor to produce evidence to prove the obvious. Regardless, to eliminate any confusion, both Ms. LeMoine and Mr. Symmes are senior members of the Office's staff, as their titles indicate, and they supervise multiple state employees. Ms. LeMoine manages the administrative and operational functions of the Office, and Mr. Symmes is the Office's primary point of contact for members of the media as well as for state agencies regarding media functions.

Once it is recognized that the deponents are high-ranking officials, Plaintiffs concede that they have the burden "to establish that '(1) the high-ranking official has unique or special knowledge of the facts at issue *and* (2) other less burdensome avenues for obtaining the information sought have been exhausted.'" Opp. 13 (emphasis added). Only "extraordinary circumstances" warrant such a deposition. *In re McCarthy*, 636 F. App'x 142, 143 (4th Cir. 2015). Plaintiffs do not come close to satisfying their burden of showing such circumstances here.

Plaintiffs note that the individuals "were involved in communications," as shown by Ms. LeMoine's "arranging phone calls" involving others and Mr. Symmes's participation on a phone

12

call with HHS. Opp. 16; Opp. Exs. 3–5. But Plaintiffs never tie any of these "communications" to any fact possibly relevant to any of their legal claims against Governor McMaster, much less show that these individuals' knowledge of certain calls—all of which involved others—is somehow "unique" or "special." The most Plaintiffs venture is that this information might be "relevant to understanding the circumstances giving rise to the events at issue." Opp. 17. But that is a far cry from showing that the deponents have unique knowledge of critical relevant facts. If anything, it suggests that Plaintiffs are attempting to circumvent, and intend to violate, the deliberative process privilege, which protects the "process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (cleaned up); *see also Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209, 211 (4th Cir. 1991).[6]

Likewise, on the availability of other discovery, Plaintiffs baldly assert that other "avenues have not sufficed." Opp. 17. But Plaintiffs never explain why not, or even explain what they are looking to obtain. It necessarily follows that they have not met their burden of showing why they cannot obtain this information elsewhere, much less already exhausted their efforts to do so.[7]

## IV.     The demanded depositions are an undue burden.

Relatedly, Plaintiffs fail to satisfy the "demanding and sensitive inquiry" that is required before a non-party is forced to provide testimony. *Virginia Dep't of Corr. v. Jordan*, 921 F.3d

---

[6] Plaintiffs have no substantive response about this privilege, and in their cross-referenced filing, say that they wanted "from the beginning" to depose staff members "about *all* of [the Governor's] policy positions." ECF No. 149, at 24. A more burdensome, irrelevant invasion of the privilege is hard to imagine. Moreover, the Governor fully explains why Plaintiffs' broader response about the deliberative process privilege lacks plausibility. *See* ECF No. 160, at 6–8.

[7] Plaintiffs say that a Rule 30(b)(6) deposition cannot be barred because if only senior staff members have knowledge, then that "would mean those people have 'unique . . . knowledge.'" Opp. 18 n.14. But the apex doctrine requires Plaintiffs to show unique, *relevant* knowledge that cannot be obtained *elsewhere* and is not *privileged*. As the example of a phone call involving government decision-makers perfectly illustrates, (1) other individuals outside the Office would have knowledge; (2) the information would be available elsewhere; (3) the information is irrelevant to Plaintiffs' legal claims; and, (4) the decision-making process is privileged.

13

180, 189 (4th Cir. 2019). Perhaps aware of their failure to specifically "explain why [they] cannot obtain the same information, or comparable information that would also satisfy its needs, from one of the parties to the litigation," *id.*, Plaintiffs assert that "a stricter standard . . . does not apply here" because the deponents "are not distinct third parties." Opp. 19. That assertion is difficult to comprehend. Just a few sentences earlier, Plaintiffs conceded that the Office and its employees "are not" and "could not have been" "named as defendants." Opp. 18. Plaintiffs point to no case supporting such an end-run around sovereign immunity, to say nothing of basic pleading rules.[8]

Nor do Plaintiffs contest that the deponents "have many important duties and many demands on their time," or that the demanded depositions would take time away from fulfilling these public duties. Opp. 20. Yet they offer no specific justification for imposing these burdens, vaguely gesturing toward potential testimony about "the key events and issues." Opp. 20. But the "undue-burden analysis must be conducted based on the concrete facts and issues in the litigation, not on vague generalities or speculation." *Jordan*, 921 F.3d at 194. Plaintiffs have not met their burden of proving any "genuine need" for their demanded depositions, much less one that "outweigh[s] the burdens involved." *Id.*

**V.      The subpoenas were not validly served on the named person under Rule 45.**

Plaintiffs concede that they did not follow the text of Rule 45(b)(1) and "deliver[] a copy [of the subpoena] to the named person." Instead, they argue that the Court should adopt what they fail to mention is a "minority position" that does not require personal service—an interpretation

---

[8] The entire premise of official-capacity suits like this is "that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is *not the State* for sovereign-immunity purposes." *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (emphasis added). Thus, it makes no sense to suggest that the Governor and the Office are one and the same for purposes of this suit. *See* Opp. 18–19. Plaintiffs omit that *Kentucky v. Graham* referred to "an [government] entity *of which an officer is an agent*," 473 U.S. 159, 165– 66 (1985) (emphasis added), and Governor McMaster is not an agent of the Office.

14

that would "cause confusion" given its conflict with most courts and the rule's text. 9A Wright & Miller, *Federal Practice & Procedure* § 2454 (3d ed. 2020). The Court should not depart from the plain text of the rule or the longstanding majority position. Though Plaintiffs claim that "courts in this Circuit recognize that delivery by certified mail constitutes effective service," Opp. 22, none of their cases is on-point, much less binding here.[9]

## VI.   Sanctions are warranted.

Other than the merits, Plaintiffs' only argument against sanctions is that they allegedly did not act in "bad faith." Opp. 23. But as Plaintiffs' own case explains, under Rule 45(d)(1), "it is not necessary to prove that a subpoena was served in bad faith." *In re Am. Kidney Fund, Inc.*, 2019 WL 1894248, at *5 (D. Md. Apr. 29, 2019); *see* Memo. 27 (other cases). Plaintiffs have no response to the law that "'[w]hen a subpoena should not have been issued, literally everything done in response to it constitutes 'undue burden or expense' within the meaning'" of Rule 45(d)(1), regardless of a party's bad faith. Memo. 27–28 (collecting cases). Thus, if the Court quashes these subpoenas, sanctions are warranted in the form of reasonable attorneys' fees and costs due to the time and expense imposed on the Office by Plaintiffs' meritless demands. Such sanctions would protect and vindicate the Office's and the State's sovereign immunity.

## CONCLUSION

For the foregoing reasons, the Court should grant the Consolidated Motion for a Protective Order and to Quash Subpoenas.

---

[9] *See Weckesser v. Knight Enterprises S.E.*, 2019 WL 2090098, at *2 (D.S.C. May 13, 2019) (addressing the issue of whether the defendant received "notice before the subpoenas were served on the non-parties"); *Bland v. Fairfax Cty.*, 275 F.R.D. 466, 469 (E.D. Va. 2011) (stating that "the statute does not speak with clarity to the issue of what constitutes a proper method of 'delivery,'" but "here, the witness have [already] agreed to testify"); *CresCom Bank v. Terry*, 269 F. Supp. 3d 708, 711 (D.S.C. 2017) (involving a process server making personal delivery to a spouse).

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | s/ Christopher Mills |
| Thomas A. Limehouse, Jr. (Fed. Bar No. 12148) | Christopher E. Mills (Fed. Bar No. 13432) |
| *Chief Legal Counsel* | SPERO LAW LLC |
| Wm. Grayson Lambert (Fed. Bar. No. 11761) | 1050 Johnnie Dodds Blvd. #83 |
| *Senior Legal Counsel* | Mt. Pleasant, South Carolina  29465 |
| OFFICE OF THE GOVERNOR | (843) 606-0640 |
| South Carolina State House | Email: cmills@spero.law |
| 1100 Gervais Street |  |
| Columbia, South Carolina  29201 |  |
| (803) 734-2100 |  |
| Email: tlimehouse@governor.sc.gov |  |
| Email: glambert@governor.sc.gov |  |

*Counsel for The Office of the Governor*

May 20, 2021
Columbia, South Carolina