*Rogers et al. v. U.S. Dept. of Health and Human Servs., et al.*
Civil Action No. 6:19-cv-1567-JD

# Exhibit C

**to Governor Henry McMaster's and Director Michael Leach's
Motion for Judgment on the Pleadings**

Letter from Steven Wagner, Principal Deputy Assistant Sec'y, U.S. Dep't of
Health & Human Servs., to Governor Henry McMaster (Jan. 23, 2019)



January 23, 2019

Governor Henry McMaster
State House
1100 Gervais Street
Columbia, SC 29201

Re: Request for Deviation or Exception from HHS Regulations 45 CFR § 75.300(c)

Dear Governor McMaster:

This correspondence responds to your letter of February 27, 2018, to the Acting Assistant Secretary for Children and Families, written "on behalf of South Carolina and faith-based organizations" operating under South Carolina's Title IV-E Foster Care Program ("the SC Foster Care Program"). As clarified through follow-up telephone calls, your letter requested that the SC Foster Care Program be granted an exception from U.S. Department of Health and Human Services' ("HHS" or the "Department") regulations at 45 CFR § 75.300(c), prohibiting subgrantees from selecting among prospective foster parents on the basis of religion, to the extent that such prohibition conflicts with a subgrantee's religious exercise. We understand that one such faith-based subgrantee, Miracle Hill Ministries ("Miracle Hill"), exclusively recruits foster parents of a particular religion and accounts for up to 15% of your total foster care placements. We also understand that you believe that there are other participating faith-based organizations with similar religious exercise concerns and that other entities in the SC Foster Care Program do not have the same conflicts with § 75.300(c) and would work with prospective foster parents of different faiths or no faith.

Section 75.300(c) says:

> (c) It is a public policy requirement of HHS that no person otherwise eligible will be excluded from participation in, denied the benefits of, or subjected to discrimination in the administration of HHS programs and services based on non-merit factors such as age, disability, sex, race, color, national origin, religion, gender identity, or sexual orientation. Recipients must comply with this public policy requirement in the administration of programs supported by HHS awards.

These requirements are broader than the nondiscrimination requirements specified in the Foster Care Program Statute, 42 U.S.C. § 671(a)(18), which says:

> (a) Requisite features of State plan. In order for a State to be eligible for payments under this part, it shall have a plan approved by the Secretary which—(18) not later than January 1, 1997, provides that neither the State nor any other entity in the State that receives funds from the Federal Government and is involved in adoption or

Governor Henry McMaster
Page 2

foster care placements may—(A) deny to any person the opportunity to become an adoptive or a foster parent, on the basis of the race, color, or national origin of the person, or of the child, involved; or (B) delay or deny the placement of a child for adoption or into foster care, on the basis of the race, color, or national origin of the adoptive or foster parent, or the child, involved.

The statutory requirements of § 671(a)(18) are incorporated into the grant for the SC Foster Care Program through 45 CFR § 75.300(a), which requires "that Federal funding is expended and associated programs are implemented in full accordance with U.S. statutory and public policy requirements." Other federal civil rights statutes may likewise apply to the SC Foster Care Program directly, as a recipient of federal financial assistance, or through 45 CFR § 75.300(a). Your letter did not request an exception from § 75.300(a).

In support of your exception request, you state that South Carolina has more than 4,000 children in foster care, that South Carolina needs more child placing agencies, and that faith-based organizations "are essential" to recruiting more families for child placement. You specifically cite Miracle Hill, a faith-based organization that recruits 15% of the foster care families in the SC Foster Care Program, and you state that, without the participation of such faith-based organizations, South Carolina would have difficulty continuing to place all children in need of foster care. You make the case that, if the SC Foster Care Program is not provided an exception from § 75.300(c) in this regard, certain faith-based organizations operating under your grant would have to abandon their religious beliefs or forego licensure and funding. You contend this would cause hardship to faith-based organizations and to the SC Foster Care Program. Your letter seeking the exception argued that certain requirements in § 75.300(c) and (d) exceed any nondiscrimination requirements or authority imposed by statute, and that § 75.300(c) and (d) limit the free exercise of religion of faith-based organizations in violation of the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, *et seq.* ("RFRA"). In follow-up telephone conversations with your chief legal counsel, the request for an exception was narrowed to the religious nondiscrimination provision in § 75.300(c).

On December 18, 2018, Miracle Hill wrote to HHS stating that, in prohibiting Miracle Hill's use of religious criteria in selecting prospective foster parents under the SC Foster Care Program, HHS's regulations substantially burden Miracle Hill's free exercise of religion (including under RFRA), and are also *ultra vires* because they exceed the scope of the relevant statutes. Miracle Hill notes that the South Carolina Department of Social Services, pursuant to the requirements imposed on it through its grants from HHS, declined to renew Miracle Hill's license to provide foster services and "instead granted [Miracle Hill] a provisional license that would be revoked if [Miracle Hill] continued [its] ministry consistent with [its] religious beliefs." It is HHS's understanding that this provisional license will be revoked in January 2019 unless Miracle Hill agrees to partner with foster parents in accordance with § 75.300(c), which Miracle Hill cannot do, because Miracle Hill "believe[s] those who hold certain positions of spiritual influence and leadership—including foster parents—should share [Miracle Hill's] religious mission and beliefs."

The HHS Office for Civil Rights ("OCR") is the HHS component with delegated authority to ensure compliance with RFRA by the Department, its programs, and the recipients of HHS

Governor Henry McMaster
Page 3

federal financial assistance. OCR has reviewed Miracle Hill's letter as part of an ongoing investigation and has determined that subjecting Miracle Hill to the religious nondiscrimination requirement in § 75.300(c) (by requiring South Carolina to require Miracle Hill to comply with § 75.300(c) as a condition of receiving funding) would be inconsistent with RFRA.

OCR specifically found that Miracle Hill's sincere religious exercise would be substantially burdened by application of the religious nondiscrimination requirement of § 75.300(c), and that subjecting Miracle Hill to that requirement, by denying South Carolina's exception request, is not the least restrictive means of advancing a compelling government interest on the part of HHS. Relevant to this determination is the fact that the religious nondiscrimination provision in § 75.300(c) exceeds the scope of the nondiscrimination provisions found in the federal statutes applicable to the SC Foster Care Program, and provides no exceptions for religious organizations as are found in other statutes prohibiting religious discrimination. *See, e.g.*, 42 U.S.C. § 2000e-1(a) (Title VII); 42 U.S.C. § 3607(a) (Fair Housing Act). In addition, the interest of allowing potential foster parents into the SC Foster Care Program appears capable of being served by other providers in the program, since at least nine other foster care providers in Miracle Hill's area appear available to assist potential foster parents in the event Miracle Hill is unable to partner with certain potential foster parents because of Miracle Hill's religious beliefs. Of additional relevance is the fact that the OMB Uniform Administrative Requirements, located at 2 CFR § 200.300, do not contain provisions analogous to the broad religious nondiscrimination provision in 45 CFR § 75.300(c). As the Supreme Court recognized in *Holt v. Hobbs*, 135 S. Ct. 853, 866 (2015), consideration of analogous programs operated by other governmental entities is relevant in determining whether the government has a compelling interest "of the highest order" in requiring such a burden on religious exercise. Finally, 45 CFR Part 75 provides a mechanism for granting an exception from requirements of that part, including § 75.300(c): namely, as applicable here, case-by-case exceptions available under 45 CFR § 75.102(b). The Supreme Court has emphasized that, where exceptions are available, the government has a difficult burden to meet before refusing an exception under RFRA. *See, e.g., Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 434 (2006). Accordingly, OCR concluded that Miracle Hill (and any other similarly situated religious organization in the SC Foster Care Program) is entitled under RFRA to an exception from the religious nondiscrimination requirements of 45 CFR § 75.300.

Section 75.102(b) of 45 CFR states that "[e]xceptions on a case-by-case basis for individual non-Federal entities may be authorized by the HHS awarding agency or cognizant agency for indirect costs, except where otherwise required by law or where OMB or other approval is expressly required by this part." This provision permits the HHS awarding agency (or the "cognizant agency for indirect costs") to grant exceptions on a case-by-case basis.

After reviewing all of the information you have provided, we have determined that requiring your subgrantee Miracle Hill to comply with the religious non-discrimination provision of 45 CFR § 75.300(c) would cause a burden to religious beliefs that is unacceptable under RFRA. While this determination is sufficient to require the granting of your request for an exception from such provision of the regulation, we also note that the application of the regulatory requirement would also cause a significant programmatic burden for the SC Foster Care Program by impeding the placement of children into foster care.

Governor Henry McMaster<br>Page 4

For these reasons, under 45 CFR § 75.102(b), HHS is hereby conditionally granting the requested exception from the religious non-discrimination requirement of 45 CFR § 75.300(c). The exception applies with respect to Miracle Hill or any other subgrantee in the SC Foster Care Program that uses similar religious criteria in selecting among prospective foster care parents. The exception applies on the condition that Miracle Hill, or any other subgrantee making use of this exception, be required to refer potential foster parents that do not adhere to the subgrantee's religious beliefs to other subgrantees in the SC Foster Care Program, or to refer them to the SC Foster Care Program staff themselves, if the SC Foster Care Program staff is equipped to refer those persons to other willing subgrantees. This condition is added on the understanding that Miracle Hill, and any other subgrantee making use of this exception, does not object on religious grounds to making such referrals and, therefore, the condition does not implicate additional RFRA concerns.

Please note that this exception does not relieve the SC Foster Care Program of its obligation to comply with any other requirements of 45 CFR Part 75.300(c), of other paragraphs of 45 CFR Part 75.300, of 42 U.S.C. § 671(a)(18), or of any provisions of civil rights statutes, including Title VI of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, and section 504 of the Rehabilitation Act of 1973 that may apply.[1]

If you require any additional information, please contact me at 202.205.7747.

Sincerely,

Steven Wagner
Principal Deputy Assistant Secretary
Administration for Children and Families

---

[1] 42 U.S.C. § 2000d *et seq.*, 20 U.S.C. § 1681 *et seq.*, 42 U.S.C. § 6101 *et seq.*, and 29 U.S.C. § 794, respectively.