## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## GREENVILLE DIVISION

EDEN ROGERS and BRANDY WELCH,

                              Plaintiffs,

            -against-

UNITED STATES DEPARTMENT OF HEALTH
AND HUMAN SERVICES;

ALEX AZAR, in his official capacity as Secretary
of the UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES;

ADMINISTRATION FOR CHILDREN AND
FAMILIES;

LYNN JOHNSON, in her official capacity as
Assistant Secretary of the ADMINISTRATION
FOR CHILDREN AND FAMILIES;

SCOTT LEKAN, in his official capacity as
Principal Deputy Assistant Secretary of the
ADMINISTRATION FOR CHILDREN AND
FAMILIES;

HENRY MCMASTER, in his official capacity as
Governor of the STATE OF SOUTH CAROLINA;
and

MICHAEL LEACH, in his official capacity as State
Director of the SOUTH CAROLINA
DEPARTMENT OF SOCIAL SERVICES,

                            Defendants.

Case No. 6:19-cv-1567-JD

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS HENRY
McMASTER'S AND MICHAEL
LEACH'S MOTION FOR
JUDGMENT ON THE
PLEADINGS**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ......................................................................... 1

STATEMENT OF FACTS ................................................................................. 4

LEGAL STANDARD ....................................................................................... 7

ARGUMENT ................................................................................................... 7

    I.    THE CONSTITUTIONALITY OF THE RELEVANT NON-
        DISCRIMINATION POLICIES IS NOT RIPE FOR
        ADJUDICATION ON THIS RULE 12(C) MOTION.............................. 7

    II.   *FULTON* SAYS NOTHING ABOUT THE ESTABLISHMENT
        CLAUSE CLAIM THAT IS ACTUALLY AT ISSUE IN THIS
        CASE ..................................................................................................... 11

    III.  *FULTON* IS A FACT-SPECIFIC DECISION AND DOES NOT
        ESTABLISH A GENERAL RULE THAT GOVERNMENTS
        MUST ALWAYS ALLOW FOSTER CARE AGENCIES TO
        DISCRIMINATE ................................................................................... 14

    IV.  *FULTON* ALSO SAYS NOTHING ABOUT PLAINTIFFS'
        EQUAL PROTECTION CLAIM, AND THE COURT SHOULD
        REJECT STATE DEFENDANTS' ATTEMPTS TO REHASH
        ARGUMENTS THAT HAVE ALREADY BEEN REJECTED BY
        THIS COURT ........................................................................................ 18

CONCLUSION ................................................................................................. 19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*303 Creative LLC v. Elenis*,
No. 19-1413, 2021 WL 3157635 (10th Cir. July 26, 2021)..........................................15

*A. S. Abell Co. v. Baltimore Typographical Union No. 12*,
338 F.2d 190 (4th Cir. 1964) ...................................................................7

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967).............................................................................8

*Alexander v. City of Greensboro*,
No. 1:09-CV-293, 2011 WL 3360644 (M.D.N.C. Aug. 3, 2011)................................18

*Board of Educ. of Kiryas Joel Village Sch. Dist. v. Grumet*,
512 U.S. 687 (1994).......................................................................12, 13

*Brewer v. Jefferson-Pilot Standard Life Ins. Co.*,
333 F. Supp. 2d 433 (M.D.N.C. 2004) ...............................................7, 17

*Charter Fed. Sav. Bank v. Office of Thrift Supervision*,
976 F.2d 203 (4th Cir. 1992) ...................................................................10

*Crawford v. Senex L., P.C.*,
No. 3:16-CV-00073, 2017 WL 5162821 (W.D. Va. Nov. 7, 2017) ...........................18

*Doe v. Va. Dep't of State Police*,
713 F.3d 745 (4th Cir. 2013) ...............................................................8, 10

*Edwards v. City of Goldsboro*,
178 F.3d 231 (4th Cir. 1999) ...................................................................7

*Employment Div. v. Smith*,
494 U.S. 872 (1990).............................................................................9

*Estate of Thornton v. Caldor, Inc.*,
472 U.S. 703 (1985).............................................................................12

*Forest Hills Early Learning Center, Inc. v. Lukhard*,
728 F.2d 230 (4th Cir. 1984) ...............................................................9, 10

*Fulton v. City of Philadelphia*,
141 S. Ct 1868 (2021)........................................................................ passim

ii

*Lefkoe v. Jos. A. Bank Clothiers*,
  No. WMN-06-1892, 2008 WL 7275126 (D. Md. May 13, 2008) ..............................19

*Lemon v. Kurtzman*,
  403 U.S. 602 (1971) ............................................................................................9

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
  674 F.3d 369 (4th Cir. 2012) ...........................................................................7

*Miller v. Brown*,
  462 F.3d 312 (4th Cir. 2006) .......................................................................8, 10

*Ostergren v. Cuccinelli*,
  615 F.3d 263 (4th Cir. 2010) .......................................................................8, 10

*Otten v. Baltimore & Ohio R. Co.*,
  205 F.2d 58 (2d Cir. 1953).............................................................................12

*Priority Auto Grp., Inc. v. Ford Motor Co.*,
  757 F.3d 137 (4th Cir. 2014) ...........................................................................7

*Pulte Home Corp. v. Montgomery Cnty., Maryland*,
  909 F.3d 685 (4th Cir. 2018) ...........................................................................7

**Statutes & Rules**

Fed. R. Civ. P. 12(b)(6)....................................................................................7, 19

Fed. R. Civ. P. 12(c) ...........................................................................7, 17, 18, 19

Plaintiffs Eden Rogers and Brandy Welch ("Plaintiffs") respectfully submit this memorandum of law in opposition to Defendant Henry McMaster's and Defendant Michael Leach's (together, "State Defendants") Motion for Judgment on the Pleadings.

## PRELIMINARY STATEMENT

State Defendants' Motion for Judgment on the Pleadings fails because it fundamentally confuses a claim arising under the Free Exercise Clause of the First Amendment with claims arising under the Establishment Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. Relying exclusively on *Fulton v. City of Philadelphia*, 141 S. Ct 1868 (2021), State Defendants' motion asks the Court to ignore the harms experienced by Plaintiffs Eden Rogers and Brandy Welch when State Defendants authorized a government-funded foster care agency to apply religious criteria to exclude Plaintiffs. But *Fulton*, which involved only a free exercise claim, in no way forecloses or predetermines this Court's assessment of State Defendants' infringement of Plaintiffs' rights under the Establishment Clause or Equal Protection Clause. In *Fulton*, plaintiffs asserted that the actual application of a non-discrimination clause in a government contract improperly restricted their religious exercise. This case is exactly the opposite. No party claims—nor could they—that a non-discrimination policy has been unconstitutionally applied to them, or applied at all. To the contrary, State Defendants, working with the Federal Defendants, provided a broad exemption from the applicable non-discrimination regulations for all child placing agencies in South Carolina that asserted a sincerely held religious objection to complying.

1

Here, Plaintiffs have brought Establishment Clause and Equal Protection Clause claims. They assert that the exemption provided by State Defendants violates the Establishment Clause by funding and enabling religious discrimination in a government program and improperly favoring religion at Plaintiffs' expense. They further assert that State Defendants' actions subjected them to different and unfavorable treatment because of their sexual orientation. At the motion to dismiss stage, State Defendants made the same arguments concerning accommodation of religion that they make now and those arguments were considered and rejected by Judge Cain. State Defendants now suggest that *Fulton* somehow undermines Judge Cain's analysis but the decision in *Fulton* did not even mention either the Establishment Clause or the Equal Protection Clause, much less purport to change their applicable jurisprudence.

State Defendants' motion should be denied for at least four reasons.

*First*, the issues State Defendants raise in their Motion for Judgment on the Pleadings are not ripe for adjudication by this Court. State Defendants posit the free exercise rights of some hypothetical plaintiff who might challenge the relevant non-discrimination policies in a future litigation. But here, unlike in *Fulton*, there has been no actual application of any non-discrimination policy in a manner that allegedly infringes religious liberty. There is no plaintiff before the Court who has allegedly been harmed by the application of any non-discrimination policy; there is no state defendant asserting justifications for the application of the policy; and there is no record upon which this Court could adjudicate this hypothetical free exercise case. This Court should abstain from deciding the weighty, yet undeveloped and speculative constitutional issues raised by State Defendants.

2

*Second*, State Defendants simply misread *Fulton*.  State Defendants focus on the fact that this case and *Fulton* share the same subject matter—non-discrimination policies and faith-based government-funded foster care agencies—but that is essentially where the similarities end.  As noted, the First Amendment claim in *Fulton* involved a free exercise challenge to the application of a non-discrimination provision in a contract, whereas this case's First Amendment claim is an Establishment Clause challenge to a broad exemption from non-discrimination regulations.  *Fulton* simply does not address the Establishment Clause issues involved here.

*Third*, there are significant factual differences between the allegations in the Complaint in this case and the record upon which the Supreme Court decided *Fulton*. Even beyond the fact that *Fulton* concerned an entirely different foster care system and arose in a completely different procedural posture involving a different claim, the critical facts in *Fulton* were that no same-sex couple had ever applied to work with (much less been turned down by) the agency at issue and there were more than 20 alternatives available to same-sex couples within the City if they were to have applied and been turned down.  And Philadelphia's foster care contract contained a provision permitting purely discretionary exemptions from the non-discrimination requirement.  Here, by contrast, the Complaint alleges that (a) Plaintiffs applied to and were rejected by Miracle Hill and (b) there are few alternatives to Miracle Hill in the same part of the state and those that do exist are not comparable.  *Fulton* simply did not hold that every assertion of religious freedom entitles a child placing agency to be exempted from all non-discrimination policies under all circumstances.  The holding in *Fulton* is limited to the facts in *Fulton* and similar facts are not at issue here.

3

*Fourth*, State Defendants' assertion that *Fulton* mandates dismissal of Plaintiffs' equal protection claim is also baseless. *Fulton* said absolutely nothing about the Equal Protection Clause and State Defendants do not suggest otherwise. State Defendants' argument is nothing more than a thinly veiled, untimely and improper request for reconsideration of Judge Cain's motion to dismiss ruling. It should be rejected.

## STATEMENT OF FACTS

This case involves government-sanctioned and -enabled discrimination against prospective foster parents, like Plaintiffs, who wish to provide a home for children in need and help alleviate South Carolina's severe shortage of foster families. (*See* ECF No. 1, Compl. ¶ 6.) Although providing foster care services is a government function, South Carolina contracts out foster care services to private organizations, called child placing agencies ("CPAs"), and pays them with state and federal tax dollars. (Compl. ¶¶ 15, 24.) Miracle Hill Ministries ("Miracle Hill") is the largest state-contracted, government-funded CPA in South Carolina. (Compl. ¶¶ 2, 4, 43.) However, it refuses to accept families who do not subscribe to its religious beliefs, and therefore will not work with any couple that does not share its Christian beliefs or with same-sex couples regardless of their faith. (Compl. ¶¶ 2, 47-53.) For families in the Greenville area, like Plaintiffs, who are interested in providing traditional foster care—as opposed to therapeutic foster care for children with significant medical and emotional needs—there are few other agency options. (Compl. ¶ 45.) And those agencies that do exist, and are willing to work with couples like Plaintiffs, do not offer the same level or breadth of services and support to foster parents as Miracle Hill does. (Compl. ¶¶ 45-46.)

4

In 2018, the South Carolina Department of Social Services ("DSS") became aware that Miracle Hill discriminates against prospective foster parents on the basis of religion and sexual orientation, thereby violating state law, DSS policy and federal law. (Compl. ¶¶ 2, 53.) As a result, DSS declined to reissue Miracle Hill's standard CPA license and issued a temporary license. (Compl. ¶¶ 28, 56.) The temporary license required Miracle Hill to adopt a written plan to correct the areas of noncompliance within a six-month probationary period. (Compl. ¶¶ 56-57.) However, instead of enforcing state law and policy and federal law and mandating that Miracle Hill amend its practices, State Defendants worked proactively to ensure that Miracle Hill could continue to discriminate against prospective foster parents while maintaining its government funding. (Compl. ¶¶ 24, 33-40; S.C. Code Regs. § 114-4930(F)(2)-(8).) Thus, the applicable non-discrimination regulations were never actually enforced against Miracle Hill, which continued to operate as a CPA while maintaining its discriminatory policies. (Compl. ¶¶ 68-72.)

In February 2018, Defendant McMaster requested a waiver from the U.S. Department of Health and Human Services ("HHS") to allow South Carolina to continue receiving federal funding for its public child welfare system despite violating a federal regulation barring discrimination based on non-merit factors, including religion and sexual orientation. (Compl. ¶¶ 3, 14, 62.)

While the waiver request was pending, Defendant McMaster issued Executive Order 2018-12, which ordered that "DSS shall not deny licensure to faith-based CPAs solely on account of their religious identity or sincerely held religious beliefs." (Compl. ¶ 64.) In January 2019, HHS granted the waiver requested by

Governor McMaster as to religion (Compl. ¶ 68), and thereafter, DSS issued Miracle Hill

a standard CPA license to continue its public foster care work while allowing it to

discriminate (Compl. ¶¶ 3, 70-72).

       As a result, when Plaintiffs Eden Rogers and Brandy Welch applied to

work with Miracle Hill as prospective foster parents, they were summarily rejected on the

basis of their religion and sexual orientation.  (Compl. ¶¶ 8, 80-81, 83.)  Plaintiffs filed

their Complaint in May 2019.  State Defendants then filed a motion to dismiss the

Complaint, asserting that the Constitution required the state to accommodate CPAs'

religious objections to complying with non-discrimination requirements.  (ECF No. 57.)

In its May 8, 2020 decision, this Court denied the motion almost in its entirety and

specifically rejected State Defendants' argument that a requirement to accommodate

sincerely held religious beliefs held by CPAs necessarily defeated Plaintiffs'

Establishment Clause claim.  (ECF No. 81 at 35-38 & n.7.)  The Court also denied State

Defendants' motion to dismiss Plaintiffs' equal protection claim on the basis of their

sexual orientation.  The case proceeded to discovery, and there are still a number of

depositions outstanding and several discovery motions pending before the Court.  (*See,*

*e.g.*, ECF Nos. 137, 138, 142.)

       On July 15, 2021, State Defendants filed this Motion for Judgment on the

Pleadings (ECF No. 173) based on the Supreme Court's decision in *Fulton v. City of*

*Philadelphia*, which Plaintiffs now oppose.[1]

---

[1] At the same time, State Defendants filed a Motion to Stay Discovery and Hold Pending
Discovery Motions in Abeyance (ECF No. 174), in response to which Plaintiffs have
filed a separate brief in opposition.

## LEGAL STANDARD

The standard for granting a Rule 12(c) motion for judgment on the pleadings is the same as the standard for granting a Rule 12(b)(6) motion to dismiss. *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 375 (4th Cir. 2012). "A motion for judgment on the pleadings is properly granted if 'it appears certain that the plaintiff cannot prove any set of facts in support of [its] claim entitling [it] to relief.'" *Pulte Home Corp. v. Montgomery Cnty., Maryland*, 909 F.3d 685, 691 (4th Cir. 2018) (quoting *Priority Auto Grp., Inc. v. Ford Motor Co.*, 757 F.3d 137, 139 (4th Cir. 2014)) (alterations in original). "On a motion for judgment on the pleadings made pursuant to Rule 12(c), only the pleadings are considered . . . ." *A. S. Abell Co. v. Baltimore Typographical Union No. 12*, 338 F.2d 190, 193 (4th Cir. 1964). "In considering a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), facts presented in the pleadings and the inferences drawn therefrom must be viewed in the light most favorable to the non-moving party." *Brewer v. Jefferson-Pilot Standard Life Ins. Co.*, 333 F. Supp. 2d 433, 436 (M.D.N.C. 2004) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 248 (4th Cir. 1999)).

## ARGUMENT

I.    **THE CONSTITUTIONALITY OF THE RELEVANT NON-DISCRIMINATION POLICIES IS NOT RIPE FOR ADJUDICATION ON THIS RULE 12(C) MOTION**

The Court should deny State Defendants' motion because State Defendants' *Fulton*-related arguments are not ripe for consideration. The "basic rationale" of the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements".

7

*Ostergren v. Cuccinelli*, 615 F.3d 263, 288 (4th Cir. 2010) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)).  "Because the doctrine of ripeness prevents judicial consideration of issues until a controversy is presented in clean-cut and concrete form, problems such as the inadequacy of the record or ambiguity in the record will make a case unfit for adjudication on the merits."  *Id.* (internal quotation marks, citations and alterations omitted).  The court determines whether an issue is ripe for adjudication by "balanc[ing] the fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration".  *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006).

   State Defendants' arguments concerning Miracle Hill's free exercise rights are not ripe since there has been no action taken against Miracle Hill that supposedly interfered with Miracle Hill's exercise of its religious liberties.  Although DSS originally suggested that it might enforce the state non-discrimination policies against Miracle Hill, that never happened.  (Compl. ¶¶ 3, 71-72.)  Indeed, Miracle Hill successfully sought Governor McMaster's intervention and received (for itself and for all other South Carolina CPAs with religious objections to complying) a blanket exemption from application of those regulations.  (Compl. ¶ 64.)  Neither Miracle Hill nor any other CPA has ever challenged—or could challenge—the constitutionality of applying those non-discrimination regulations because they have not been applied, and thus there is no concrete dispute about when and how they might be applied.  Instead, through their current motion, State Defendants are arguing about the purely hypothetical application of *their own non-discrimination policies. See Doe v. Va. Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013) ("Where an injury is contingent upon a decision to be made by a

third party that has not yet acted, it is not ripe as the subject of decision in a federal court.").

State Defendants' arguments raise weighty constitutional issues and yet there is no plaintiff before the Court actually asserting such rights and no record before the Court upon which to evaluate whether application of the non-discrimination regulations comports with the requirements of the Free Exercise Clause. This Court should decline to engage in the hypothetical debate posited by State Defendants' motion. *Accord Employment Div. v. Smith*, 494 U.S. 872, 899 (1990) (O'Connor, J., concurring) ("[T]he First Amendment at least requires a case-by-case determination of the question, sensitive to the facts of each particular claim.").

In fact, this case is highly analogous to *Forest Hills Early Learning Center, Inc. v. Lukhard*, 728 F.2d 230 (4th Cir. 1984). There, "nonsectarian operators of child care centers" alleged that Virginia's statutory scheme exempting religiously affiliated child care centers from certain licensing requirements violated the Establishment Clause. *Id.* at 233. In order to justify the exemption scheme, the state attempted to argue that it had a "secular purpose" under the test articulated in *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971), because the state was either constitutionally compelled or permitted to accommodate the free exercise rights of the religious child care center operators. *Id.* at 238. But the Fourth Circuit refused to adjudicate that dispute because

> the persons whose free exercise rights are centrally in issue are not parties
> to the litigation and those rights have not been authoritatively established
> in any other constitutional adjudication. Rather, the rights of those
> persons are being indirectly asserted in this litigation by the state, which
> more commonly in free exercise litigation finds itself on the other side,
> defending or seeking to enforce legislation challenged by such persons as

9

> violate of free exercise rights. The result of a successful defense by the
> state in this case would therefore be a confirmation by judicial review of a
> prior legislative accommodation of free exercise rights of persons whose
> entitlement thereto will never have been put to test in an adversarial
> adjudicative process in which they were parties with the normal burdens
> of production and persuasion on disputed factual and legal issues.

*Id.* at 239.

Although the court in *Lukhard* did not phrase its concerns in terms of ripeness, the reasons the Fourth Circuit refused to adjudicate the dispute at that stage are equally applicable to the ripeness doctrine. In *Lukhard*, the party on whose behalf the state asserted free exercise rights was absent from the litigation and, for that reason, the case presented "a disturbingly meager record upon which to apply Free Exercise doctrine as shaped by authoritative Supreme Court interpretations". *Id.* at 240. In other words, the case did not place the controversy and the state's justification "in clean-cut and concrete form" suitable for adjudication on the merits. *Ostergren*, 615 F.3d at 288. As the court explained, a "fair and complete disposition of the difficult religion clause issues raised in this case would have been greatly aided by the presence of" a plaintiff who actually claimed that its free exercise rights were violated. *Lukhard*, 718 F.2d at 241. But here, there could be no CPA claiming a violation of its free exercise rights.

On the other hand, "the hardship to the parties of withholding court consideration" of State Defendants' *Fulton* arguments is minimal. *Miller*, 462 F.3d at 319. For ripeness purposes, hardship is "measured by the immediacy of the threat and the burden imposed on the petitioner who would be compelled to act under threat of enforcement of the challenged law". *Doe*, 713 F.3d at 759 (quoting *Charter Fed. Sav. Bank v. Office of Thrift Supervision*, 976 F.2d 203, 208-09 (4th Cir. 1992)). Because State Defendants assert the free exercise rights of some hypothetical future plaintiff

10

should the state enforce its non-discrimination requirement, there is no immediate threat to State Defendants in withholding adjudication of the free exercise question.  And abstaining from a definitive ruling as to whether enforcement of South Carolina's non-discrimination policies would infringe upon the free exercise rights of a hypothetical plaintiff places no burden on State Defendants because doing so would not compel them to act at all.

The proper course here is for the Court to allow this case to proceed through to the completion of discovery and toward an adjudication of the claims actually presented by this lawsuit—whether State Defendants' actions violated the Establishment Clause and Plaintiffs' equal protection rights.  If Plaintiffs prevail and obtain the relief they request, and State Defendants thereafter actually enforce the non-discrimination regulations in some way that Miracle Hill or another CPA believes interferes with its exercise of religion, then that CPA would be free to bring a free exercise challenge and a future court would be able to decide these important constitutional issues on a record presented by a plaintiff who has actually claimed injury.

Because State Defendants' arguments are not ripe for adjudication, the Court should deny State Defendants' motion and allow this case to proceed.

## II.    *FULTON* SAYS NOTHING ABOUT THE ESTABLISHMENT CLAUSE CLAIM THAT IS ACTUALLY AT ISSUE IN THIS CASE

State Defendants' motion glosses over fundamental distinctions between the kind of claim at issue in *Fulton* and the claims at issue here.  *Fulton* is a free exercise case and, as the Supreme Court held in *Fulton*, under the Free Exercise Clause, a court's task "is to decide whether [a] burden the [government] has placed on [a claimant's] religious exercise . . . is constitutionally permissible."  141 S. Ct. at 1876.  That focus on

11

the extent and justifications for government-imposed burdens is an entirely distinct inquiry from the central Establishment Clause question in cases like this. Indeed, as the Supreme Court has emphasized, religious "accommodation is not a principle without limits", *Board of Educ. of Kiryas Joel Village Sch. Dist. v. Grumet*, 512 U.S. 687, 706 (1994), and the Establishment Clause guards against government action that favors religious exercise to such an extent that it "impermissibly advances a particular religious practice", or religion generally. *Estate of Thornton v. Caldor, Inc.*, 472 U.S. 703, 710 (1985). Unlike in free exercise cases like *Fulton*, courts weighing Establishment Clause claims should ask, for example, whether the government has impermissibly conferred on anyone "a right to insist that in pursuit of their own interests others must conform their conduct to his own religious necessities". *Id.* (quoting *Otten v. Baltimore & Ohio R. Co.*, 205 F.2d 58, 61 (2d Cir. 1953)). *Fulton* simply did not speak to those issues.

Plaintiffs allege in their Complaint that State Defendants' actions described above violated the Establishment Clause by "using government funds for religious purposes and activities", "preferring certain religious beliefs over others and over nonreligion" and "privileging religion to the detriment of third parties—both prospective foster families and children in foster care". (Compl. ¶¶ 104-06.) Taking those allegations as true (as the Court also must do on this motion), the Court previously denied State Defendants' motion to dismiss Plaintiffs' Establishment Clause claims. Applying Fourth Circuit law and thus using the *Lemon* test, this Court found that the Complaint adequately alleges that State Defendants' actions here—requesting and obtaining the waiver from HHS and issuing the Executive Order—had the primary effect

12

of advancing Miracle Hill's religious preferences and excessively entangling government and religion in violation of the Establishment Clause.  (ECF No. 81 at 30-35.)

State Defendants cannot and do not point to anything in *Fulton* that undermines this Court's conclusions.  None of the opinions in *Fulton* even mentions the Establishment Clause, much less purports to change the well-established Establishment Clause precedents and analysis applied by this Court in ruling on Defendants' motions to dismiss.  Indeed, State Defendants' motion never discusses the substance of this Court's prior ruling at all.  They simply cite *Fulton* and ignore the Establishment Clause issues that this case raises and how this Court previously addressed them.

State Defendants make the exact same arguments now that they unsuccessfully made in their motion to dismiss—that there cannot be an Establishment Clause violation because their actions merely accommodated the religious beliefs of Miracle Hill and other CPAs.  The Court previously addressed those arguments head on and rejected them, noting that "accommodation is not a principle without limits" (ECF No. 81 at 35-36 (citing *Grumet*, 512 U.S. at 706)) and that State Defendants' arguments were "based solely on speculation regarding what Miracle Hill, a non-party to this action, would have done if its license had been revoked" (*id.* at 38 n.7).  State Defendants now seek to have this Court reconsider its prior rulings in light of *Fulton* yet fail even to address this Court's application of the *Lemon* test or its prior rejection of their accommodation arguments.  On this motion, it is State Defendants' burden to show how *Fulton* supposedly undermines this Court's prior analysis and they have not even attempted to do so.

III.    *FULTON* IS A FACT-SPECIFIC DECISION AND DOES NOT
        ESTABLISH A GENERAL RULE THAT GOVERNMENTS MUST
        ALWAYS ALLOW FOSTER CARE AGENCIES TO DISCRIMINATE

Even if *Fulton*'s free exercise analysis were relevant here—and it is not,

for the reasons discussed above—*Fulton* did not establish a general rule that the Free

Exercise Clause requires governments to permit foster care agencies to discriminate

whenever they believe compliance with non-discrimination requirements conflicts with

their faith.  *Fulton* was a narrow, fact-specific decision that depended on the peculiarity

of the language in Philadelphia's contracts with its foster care agencies, which allowed

for discretionary exceptions to the non-discrimination requirement, and on the specific

factual circumstances of that case.[2]

*Fulton* held that, because the City's contract with foster care agencies

allowed for discretionary exemptions to the non-discrimination requirement, it was not

---

[2] For this reason, the Court should reject State Defendants' assertion that *Fulton*
"disposed of" Plaintiffs' arguments that State Defendants' actions coerce prospective
foster parents to support Miracle Hill's religious beliefs.  (Mot. at 22.)  *Fulton* merely
commented in dicta in the opinion's conclusion that petitioners *in that case* did not seek
to impose their beliefs on anyone.  141 S. Ct. at 1882.  That says nothing about what
State Defendants' actions here do to families and individuals seeking to become foster
parents in South Carolina.

Relatedly, the Court should also dismiss State Defendants' contention that anything
Plaintiffs' counsel said in *amicus* briefs they submitted on behalf of other organizations
and individuals in *Fulton* has any bearing on this case.  Those briefs raised concerns
about potential consequences of overruling *Employment Division v. Smith* as the
petitioners in *Fulton* proposed, which the Court declined to do, but they never suggested
that the type of narrow ruling actually issued by the Court would have the significance
the State Defendants claim.  (*See* Brief of Members of Congress as *Amici Curiae* in
Support of Respondents 16-17, *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021)
(No. 19-123); Brief of Prospective Foster Parents Subjected to Religiously Motivated
Discrimination by Child-Placement Agencies as *Amici Curiae* in Support of Respondents
31, *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021) (No. 19-123).)

generally applicable and, thus, strict scrutiny applied to the City's actions. *Fulton*, 141 S. Ct. at 1878. Then, applying strict scrutiny, the Court held that, given the specific facts of that case, the government did not meet that burden. *Id.* at 1881-82. Because there is no actual application of any specific non-discrimination policy at issue before this Court and no dispute between a CPA and the State, the Court cannot possibly determine (a) if strict scrutiny would apply to this hypothetical dispute, and if so, (b) whether the state would meet that burden in this hypothetical dispute. However, there is no question that, even if the State's non-discrimination requirement were deemed not generally applicable[3] and, thus, that enforcement would be evaluated under strict scrutiny, the facts in *Fulton* are very different from the allegations in the Plaintiffs' Complaint. Those differences go to the heart of the *Fulton* strict scrutiny application and make it inapposite here.

In *Fulton*, Philadelphia asserted that its non-discrimination policies serve the compelling interests of "maximizing the number of foster parents" and "ensuring equal treatment of prospective foster parents and foster children".[4] *Id.* at 1881. The Court found that the goal of maximizing the pool of foster parents was important "but the City fail[ed] to show that granting CSS an exception w[ould] put th[at] goal[] at risk". *Id.*

---

[3] The Tenth Circuit recently made it clear that, under *Fulton*, the mere existence of an exception to a non-discrimination policy does not automatically render that policy not generally applicable under *Smith* and therefore trigger strict scrutiny. *See 303 Creative LLC v. Elenis*, No. 19-1413, 2021 WL 3157635, at *17 (10th Cir. July 26, 2021) (finding that a state non-discrimination law was generally applicable despite having a "bona fide relationship exemption" because the term was "facially unlike the 'entirely discretionary' exemption addressed in *Fulton*" and because the plaintiffs "have not shown the exemption will be applied in an impermissible manner").

[4] Philadelphia also argued that the non-discrimination provisions served a third compelling interest, to protect the city from liability, which is not relevant here.

15

at 1881-82.  And the Court recognized the goal of ensuring equal treatment as a "weighty" government interest, but ultimately concluded that "*[o]n the facts of this case*, . . . this interest cannot justify denying CSS an exception for its religious exercise."  *Id*. at 1882 (emphasis added).

It is not clear what government interests the State would offer in the hypothetical free exercise lawsuit they ask this Court to adjudicate.  But even assuming they are the same interests asserted by Philadelphia in *Fulton*, the facts alleged in the Complaint differ materially from those in *Fulton* and, thus, the Court's analysis in *Fulton* says nothing about how the strict scrutiny assessment would come out here.  The facts that the *Fulton* Court emphasized in the opinion were that (1) "[n]o same-sex couple has ever sought certification from CSS" and (2) "[i]f one did, CSS would direct the couple to one of the more than 20 other agencies in [Philadelphia], all of which currently certify same-sex couples."  *Id.* at 1875.  In this case, by contrast, Plaintiffs allege that they, as well as other prospective foster parents, sought to work with Miracle Hill but were turned away based on either their religion or sexual orientation.  (Compl. ¶¶ 45, 51, 81, 83.)  Plaintiffs also allege that there are only a handful of other agencies in the Greenville area, where they reside, and that those few that exist do not offer a comparable level of services and support to foster parents and experience providing foster care services as Miracle Hill.  (Compl. ¶¶ 45-46.)  Plaintiffs specifically allege that there are four other agencies in the Greenville area and of those, one does not work with same-sex couples; one is located an hour away from Greenville; one had no licensed foster homes as of April 2019; and one is new to the field, only offering foster services since 2017.  (Compl. ¶ 45.)  Plaintiffs further alleged that Miracle Hill is the largest and best-resourced CPA in

16

the state and is thus able to provide comprehensive support to families throughout the licensing process and beyond. (Compl. ¶¶ 46, 89.) These facts bear no resemblance to those in *Fulton*, with over 20 other agencies all within the city limits of Philadelphia that accepted same-sex couples and no evidence of disparities in services and experience offered.

And whereas in *Fulton* the Court commented that "including CSS in the program seems likely to increase, not reduce, the number of available foster parents", *Fulton*, 141 S. Ct. at 1882, Plaintiffs here allege that allowing agencies like Miracle Hill to discriminate based on religion and sexual orientation reduces the number of potential foster families. Indeed, there are over 4,000 children in the foster care system in South Carolina and not enough families to care for them. (Compl. ¶ 86.) Same-sex couples are more likely to foster children than different-sex couples. (Compl. ¶ 85.) Rejection by the largest and best-resourced foster care agency in the area, especially when there are no other agencies that provide a comparable level of services and support and have comparable experience providing foster care services, may result in families deciding not to move forward in their pursuit of fostering, thus reducing the number of available homes for children. (Compl. ¶¶ 89, 95-96.) State Defendants dispute that allowing Miracle Hill to discriminate reduces the pool of available foster homes (Mot. at 16 n.10); however, the facts Plaintiffs allege in their Complaint must be taken as true for purposes of a Rule 12(c) motion. *See Brewer*, 333 F. Supp. 2d at 436.

Because of the significant factual distinctions between *Fulton* and this case, even in the hypothetical free exercise dispute posited by the State Defendants, *Fulton* would not be dispositive.

17

**IV.** ***FULTON* ALSO SAYS NOTHING ABOUT PLAINTIFFS' EQUAL PROTECTION CLAIM, AND THE COURT SHOULD REJECT STATE DEFENDANTS' ATTEMPTS TO REHASH ARGUMENTS THAT HAVE ALREADY BEEN REJECTED BY THIS COURT**

State Defendants' argument concerning Plaintiffs' equal protection claim is even further disconnected from the decision in *Fulton*. *Fulton* involved only Free Exercise Clause claims asserted under the First Amendment. It says absolutely nothing about how to apply the Equal Protection Clause of the Fourteenth Amendment. Indeed, State Defendants do not argue that *Fulton* changed the law in any way with respect to equal protection claims that would merit revisiting this Court's prior denial of State Defendants' motion to dismiss the equal protection claim. The only mention of *Fulton* in the entire section of State Defendants' motion concerning the equal protection claim consists of a single "*see*" cite to *Fulton* for the general proposition that a purpose of the State Defendants' challenged actions might have been to avoid having application of a non-discrimination law conflict with a CPA's free exercise rights. (Mot. at 27.) But State Defendants have been arguing from day one that the challenged exemption was motivated by a desire to accommodate religious liberty. *Fulton* changed nothing about that.

Accordingly, State Defendants' arguments concerning the equal protection claim are an untimely and improper attempt to relitigate the motion to dismiss. However, it is well-established that "a motion for judgment on the pleadings is not an opportunity to *relitigate* issues raised and decided in a motion to dismiss". C*rawford v. Senex L., P.C.*, No. 3:16-CV-00073, 2017 WL 5162821, at *3 (W.D. Va. Nov. 7, 2017); *see also Alexander v. City of Greensboro*, No. 1:09-CV-293, 2011 WL 3360644, at *4 (M.D.N.C. Aug. 3, 2011) (explaining that, in resolving a Rule 12(c) motion, "the court will not

18

reconsider issues that it addressed fully at the Rule 12(b)(6) stage"); *Lefkoe v. Jos. A. Bank Clothiers*, No. WMN-06-1892, 2008 WL 7275126, at *6 (D. Md. May 13, 2008) (declining "to reconsider its determinations" where "Defendants simply assert the same arguments [in their Rule 12(c) motion] as were raised on the motion to dismiss").[5]

Because *Fulton* does not address the Equal Protection Clause and because State Defendants merely repeat the same arguments they made unsuccessfully in their motion to dismiss, the Court should deny the instant motion and allow this case to proceed through discovery.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court deny State Defendants' Motion for Judgment on the Pleadings.

August 12, 2021

Respectfully submitted,

<u>/s/ Nekki Shutt</u>

South Carolina Equality Coalition, Inc.
Nekki Shutt (Federal Bar No. 6530)
BURNETTE SHUTT & MCDANIEL, PA
912 Lady Street, 2nd Floor
P.O. Box 1929
Columbia, SC 29202
(803) 850-0912
nshutt@burnetteshutt.law

---

[5] For the same reasons, the Court should reject State Defendants' arguments about Plaintiffs' allegations related to Miracle Hill's use of public funds to proselytize to children in their care. (*See* Mot. at 22-24.) These arguments were squarely before the Court on State Defendants' Rule 12(b)(6) motion (*see* ECF No. 57 at 12), and State Defendants inappropriately seek to relitigate these same issues on their motion for judgment on the pleadings.

19

Peter T. Barbur (admitted *pro hac vice*)
Katherine D. Janson (admitted *pro hac vice*)
CRAVATH, SWAINE & MOORE LLP
   Worldwide Plaza
     825 Eighth Avenue
      New York, NY 10019
        (212) 474-1000
        pbarbur@cravath.com
        kjanson@cravath.com

Leslie Cooper (admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
   125 Broad Street, 18th Floor
     New York, NY 10004
        (212) 549-2633
        lcooper@aclu.org

Daniel Mach (admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
   915 15th Street NW
     Washington, DC 20005
        (202) 675-2330
        dmach@aclu.org
M. Currey Cook (admitted *pro hac vice*)
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
   120 Wall Street, 19th Floor
     New York, NY 10005
        (212) 809-8585
        ccook@lambdalegal.org

Karen L. Loewy (admitted *pro hac vice*)
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
   1776 K Street NW, 8th Floor
     Washington, DC 20006
        (202) 804-6245
        kloewy@lambdalegal.org

*Attorneys for Plaintiffs Eden Rogers and
Brandy Welch*

20