IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Eden Rogers et al., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) Civil Action No. 6:19-cv-01567-JD |
| United States Department of Health and Human Services et al., | ) ) ) ) |
| Defendants. | ) ) |

**DEFENDANTS HENRY MCMASTER'S AND MICHAEL LEACH'S REPLY IN SUPPORT OF THE MOTION FOR JUDGMENT ON THE PLEADINGS**

OFFICE OF THE ATTORNEY GENERAL

 Robert D. Cook
 South Carolina Solicitor General
 Post Office Box 11549
 Columbia, SC  29211
 (803) 734-3970

DAVIDSON, WREN & DEMASTERS, P.A.

 Kenneth P. Woodington
 William H. Davidson, II
 1611 Devonshire Drive, 2nd Floor
 Post Office Box 8568
 Columbia, SC 29202-8568
 (803) 806-8222

NELSON MULLINS RILEY & SCARBOROUGH LLP

 Miles E. Coleman
 2 W. Washington St. / Fourth Floor
 Greenville, SC 29201
 (864) 373-2352

 Jay T. Thompson
 1320 Main Street / 17th Floor
 Post Office Box 11070 (29211-1070)
 Columbia, SC  29201
 (803) 799-2000

*Attorneys for Governor Henry McMaster
and Director Michael Leach*

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................3

    I.      *Fulton*'s effect on this suit is ripe for the Court's consideration .............................3

    II.     *Fulton*'s holding is dispositive here..........................................................................6

    III.    The facts, reasoning, and holding of *Fulton* are sufficiently parallel to this suit to be controlling ......................................................................................................8

    IV.    Plaintiffs' Equal Protection claim based on alleged sexual-orientation discrimination fails to state a claim on which relief can be granted......................10

CONCLUSION....................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Legion v. Am. Humanist Ass'n*,
  139 S. Ct. 2067 (2019) ................................................................................................7

*Drager v. PLIVA USA, Inc.*,
  741 F.3d 470 (4th Cir. 2014) .......................................................................................3

*Forest Hills Early Learning Center, Inc. v. Lukhard*,
  728 F.2d 230 (4th Cir. 1984) ............................................................................4, 5, 6, 8

*Forest Hills Early Learning Ctr., Inc. v. Grace Baptist Church*,
  846 F.2d 260 (4th Cir. 1988) ...................................................................................5, 8

*Fulton v. City of Philadelphia*,
  141 S. Ct. 1868 (2021) ........................................................................................ passim

*Good News Club v. Milford Cent. Sch.*,
  533 U.S. 98 (2001) .......................................................................................................7

*Hobbie v. Unemployment Appeals Comm'n*,
  480 U.S. 136 (1987) ............................................................................................2, 6, 8

*Hosana-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*,
  565 U.S. 171 (2012) ....................................................................................................7

*Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*,
  508 U.S. 384 (1993) ....................................................................................................7

*McCall v. Finley*,
  362 S.E.2d 26 (S.C. Ct. App. 1987) ..........................................................................10

*Pulte Home Corp. v. Montgomery Cnty., Md.*,
  909 F.3d 685 (4th Cir. 2018) .......................................................................................3

*Sherbert v. Verner*,
  374 U.S. 398 (1963) ............................................................................................2, 6, 8

*Town of Greece v. Galloway*,
  572 U.S. 565 (2014) ....................................................................................................7

*Utah Highway Patrol Ass'n v. Am. Atheists, Inc.*,
  132 S. Ct. 12 (2011) ....................................................................................................7

*Van Orden v. Perry*,
    545 U.S. 677 (2005) ......................................................................................................... 7

*Zelman v. Simmons-Harris*,
    536 U.S. 639 (2002) ......................................................................................................... 7

**Statutes**

42 U.S.C. § 2000bb-1 *et seq.* ..................................................................................................... 9

S.C. Code Ann. § 1-32-40 ........................................................................................................... 9

**Rules**

FRCP Rule 12(c) .................................................................................................................... 1, 3

Defendant Henry McMaster ("Governor McMaster" or "the Governor"), in his official capacity as Governor of the State of South Carolina, and Defendant Michael Leach ("Director Leach"), in his official capacity as the Director of the South Carolina Department of Social Services ("SCDSS") (collectively the "State Defendants"), moved for judgment on the pleadings in light of recent, controlling Supreme Court precedent. (*See* ECF No. 173.) Plaintiffs' Opposition attempts to confuse the analysis with several novel, but unsupported, arguments and by deploying more than a few straw men. (*See* ECF No. 180.) Plaintiffs' counsel previously cautioned the Supreme Court in an *amicus* brief filed in *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021), that a ruling in favor of the faith-based CPA in that case would erect an insurmountable obstacle to the claims raised in this case. The Supreme Court ruled unanimously in favor of the faith-based CPA, and Plaintiffs now ask this Court to pretend it never happened. Their efforts are unavailing. The Court should enter judgment on the pleadings and dismiss the suit with prejudice.

## INTRODUCTION AND SUMMARY

Plaintiffs' Opposition rests on fundamental misapprehensions of constitutional law. They argue, for example, that the Supreme Court's recent, unanimous judgment in *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021), is not ripe for the Court's consideration in this suit. Their argument is contrary to Fourth Circuit precedent, which holds (1) that a timely Rule 12(c) motion is the appropriate manner in which to raise recent, dispositive case law, and (2) that District Courts should consider and grant such motions when the relief sought by the plaintiff is unobtainable or the plaintiff is incapable of prevailing on her claims. A court may (indeed, must) consider what effect intervening, binding precedent has on the cases before it. Plaintiffs' argument that this Court should ignore binding Supreme Court precedent in ruling on this Motion is contrary to law and logic and simply highlights their understandable but desperate efforts to avoid the very outcome *Fulton* commands.

1

Plaintiffs further seek to distinguish *Fulton* by pretending that constitutional cases and clauses exist in silos, isolated from and unaffected by each other. Specifically, Plaintiffs admit that *Fulton* and the Free Exercise Clause require the government to accommodate faith-based foster care providers when possible, but they argue that *Fulton* and the Free Exercise Clause are irrelevant here because this is an Establishment Clause and Equal Protection case. Their argument ignores the settled principle that what is required by one provision of the Constitution cannot be forbidden by another. Because the State Defendants' accommodation of faith-based CPAs is consistent with and required by *Fulton* and the Free Exercise Clause, it therefore cannot violate the Establishment or Equal Protection Clauses. *See*, *e.g.*, *Hobbie v. Unemployment Appeals Comm'n*, 480 U.S. 136, 144–45 (1987); *Sherbert v. Verner*, 374 U.S. 398, 409 (1963).

Notably, Plaintiffs fail to respond to the State Defendants' argument that judgment is warranted because the Court cannot award the relief sought in Plaintiffs' Complaint. Accordingly, Plaintiffs tacitly concede this point—a point that independently warrants the entry of judgment and dismissal of their claims. Plaintiffs likewise fail to respond to the merits of the State Defendants' argument that the challenged actions were rationally related to legitimate government interests, and, therefore, the remainder of the Equal Protection claim should be dismissed. Rather, Plaintiffs argue merely that Judge Cain already rejected this argument—a position that is demonstrably incorrect, as noted in Judge Cain's prior ruling, which expressly stated that this argument had *not* been raised at that time.

Finally, Plaintiffs argue in a footnote that they didn't *really* mean what they said in the *amicus* briefs they filed in *Fulton*, and, despite what they said in those briefs, the ruling in *Fulton* isn't *really* relevant to this case. If victory has a thousand fathers, defeat is apparently an orphan. Having clearly staked out their positions in their *amicus* briefs in *Fulton*, Plaintiffs and their counsel may not so easily abandon them.

2

**ARGUMENT**

**I.     *Fulton*'s effect on this suit is ripe for the Court's consideration.**

The State Defendants' Motion explained that *Fulton* teaches that the accommodations sought and granted by the State Defendants were constitutionally permissible and required. (*See* ECF No. 173 at 13–22.) Plaintiffs' primary response is an astonishing one, namely that *Fulton*'s effect on this lawsuit is not ripe for the Court's consideration. (*See* ECF No. 180 at 7–11.) Plaintiffs' assertion is incorrect for at least four reasons.

*First*, it is contrary to binding case law, which holds that District Courts may consider and rule on Rule 12(c) motions arguing that intervening, controlling precedent makes the relief sought in the suit unobtainable or indicates the plaintiff is incapable of prevailing on the claims she has asserted. *See*, *e.g.*, *Pulte Home Corp. v. Montgomery Cnty., Md.*, 909 F.3d 685, 691, 695–96 (4th Cir. 2018); *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474–76 (4th Cir. 2014). That is precisely the argument the State Defendants have asserted in their pending Motion for Judgment on the Pleadings. If such arguments were ripe for consideration in *Pulte* and *Drager*, so too they are ripe for the Court's consideration here.

*Second*, *Fulton*'s applicability does not, as Plaintiffs claim, require the Court to imagine a "purely hypothetical" future scenario. (*See* ECF No. 180 at 8–10.) Plaintiffs have alleged a concrete and particularized set of regulatory, statutory, administrative, executive, and contextual facts that, accepted as true for purposes of this Motion, are neither hypothetical nor still imminent. Accordingly, *Fulton*'s applicability is not, as Plaintiffs argue, merely an abstract and conjectural thought experiment. Rather, the question of whether the State Defendants' actions to accommodate faith-based CPAs were constitutionally permissible and required can be decided in this suit on the actual facts alleged in Plaintiffs' Complaint. This analysis does not require the Court to speculate

3

what Miracle Hill might one day do in the face of enforcement. (*Contra* ECF No. 180 at 8.) Rather, it merely requires the Court to analyze what Governor McMaster and Director Leach actually did do: request and provide an accommodation that is coextensive with the principles and holding of *Fulton*.

*Third*, the case on which Plaintiffs rest their argument—*Forest Hills Early Learning Center, Inc. v. Lukhard*, 728 F.2d 230 (4th Cir. 1984)—provides no support for their argument. Plaintiffs argue that *Lukhard* is "highly analogous" to this case, but they are seemingly unaware of passages from *Lukhard* that undercut its instructiveness here. To start, the *Lukhard* court was reticent to grapple with the free exercise issue in that case for two reasons: (1) the sweeping breadth of the exemption and (2) the court's skepticism that some of the requirements—*e.g.*, the spacing of cots and cribs and the minimum area of space per child—implicated religious exercise. *See Lukhard*, 728 F.2d at 241 n.10, 244. Neither of these factors is present here. The narrow exemption challenged by Plaintiffs in this suit relates merely to faith-based CPAs' right to partner with coreligionist foster parents (*see* ECF No. 1 ¶¶ 3–5, 60, 64, 69, 71, 84, 100–01, 103, 129–30), which is a right the Supreme Court recently held has a "plain" nexus to religious exercise. *Fulton*, 141 S. Ct. at 1876.

Furthermore, when (as here) the free exercise right at issue has been established by controlling precedent, the *Lukhard* court specifically stated that it *would* be appropriate for a court to analyze a government defendant's argument that its action was intended to protect free exercise rights when the exception involved a right that *was* established by controlling precedent:

> In the setting of this case[,] the persons whose free exercise rights are centrally in issue are not parties to the litigation and *those rights have not been authoritatively established in any other constitutional adjudication*.

\* \* \*

4

> Where free exercise rights . . . exist, the state is constitutionally obligated to accommodate them, even if this entails some degree of disparate treatment of religious activity; by definition, constitutionally compelled accommodation of free exercise rights cannot abridge the establishment clause. . . . Where those limits of permissible accommodation lie in a particular case involves a "value judgment" guided only by historical inquiry *and prior authoritative judicial decisions*.
>
> All this being so, we cannot question the appropriateness of the state's seeking to defend the challenged exemption here on the basis that the accommodation it makes to the activities of "religious institutions" was constitutionally compelled or at least constitutionally permitted by reason of the existence of free exercise rights in those institutions, and that this provided a saving "secular purpose" for the exemption under establishment clause challenge. Protection of constitutional rights can properly be advanced by government as justification for governmental action that is under challenge for violation of other constitutional rights. [] *We do not suppose that a court in which such a justification issue is raised is without power to adjudicate it notwithstanding the absence as parties of those persons in behalf of whose free exercise rights the legislative accommodation was allegedly made.*

*Lukhard*, 728 F.2d at 241 (emphasis added). In sum, *Lukhard* stands merely for the proposition that in the unique fact pattern of that case, it seemed prudent to defer examination of the free exercise argument.[1] It does not stand for the proposition that a court may never consider a government accommodation of free exercise rights unless the plaintiffs either name the religious observants as defendants or the government refuses to accommodate the religious observants' free exercise rights and they are forced to file suit themselves. The effect of *Fulton* on this suit has been properly raised to the Court and the question is ripe for this Court's analysis and adjudication.

---

[1] Interestingly enough, the Fourth Circuit subsequently upheld the governmental exception challenged in *Lukhard*, holding the government's accommodation of free exercise was a legitimate purpose and the accommodation did not violate the Establishment Clause. *See Forest Hills Early Learning Ctr., Inc. v. Grace Baptist Church*, 846 F.2d 260 (4th Cir. 1988).

5

## II.     *Fulton*'s holding is dispositive here.

The State Defendants' Motion explained the dispositive effect of *Fulton* on the claims asserted in this suit. (*See* ECF No. 173 at 13–25.) Plaintiffs' Opposition seeks to distinguish *Fulton* primarily on the basis that *Fulton* involved a claim under the Free Exercise Clause, while this suit involves claims under the Establishment and Equal Protection Clauses. (*See* ECF No. 180 at 11–13.) Plaintiffs cite no authority in support of their remarkable argument that a Supreme Court opinion interpreting one of the First Amendment's religion clauses is irrelevant in cases involving other of the First Amendment's religion clauses. In fact, the opposite is true. It is well settled that the clauses should be construed in harmony with one another and that accommodations required by the Free Exercise Clause cannot be forbidden by the Establishment or Equal Protection Clauses. *See*, *e.g.*, *Hobbie*, 480 U.S. at 144–45 (discussing situations in which the government "must accommodate religious practices and that it may do so without violating the Establishment Clause" (cleaned up)); *Sherbert*, 374 U.S. at 409 (noting the Court was not "fostering an 'establishment' of the Seventh-Day Adventist religion" by requiring a state unemployment benefits program to accommodate Sabbatarians who refused Saturday work). Indeed, one of the cases that Plaintiffs argue is "highly analogous" to this one (*see* ECF No. 180 at 9) holds that "by definition, constitutionally compelled accommodation of free exercise rights cannot abridge the establishment clause." *Lukhard*, 728 F.2d at 241.

Plaintiffs further seek to distinguish this suit from *Fulton* by arguing that their Establishment Clause claim implicates different and broader concerns than those raised in *Fulton*. (*See* ECF No. 180 at 12.) But each of the alleged violations Plaintiffs point to—*e.g.*, "using government funds for religious purposes and activities," "preferring certain religious beliefs over others," and "privileging religion to the detriment of third parties"—all relate directly to CPAs'

6

selection of foster parents compatible with the CPAs' religious beliefs and the State Defendants' accommodation of the same. That is the entire thrust of the supposedly unconstitutional actions alleged in the Complaint (*see* ECF No. 1 ¶¶ 3–5, 60, 64, 69, 71, 84, 100–01, 103, 129–30), and it is the same conduct underlying the analysis in *Fulton*.[2]

Plaintiffs further fault the State Defendants for failing to discuss the *Lemon* test in their Motion. (*See* ECF No. 180 at 13.) Even assuming *Lemon* has ongoing vitality,[3] its three-part test is needless here in light of the more fundamental truth that an accommodation of religion that is constitutionally required cannot, by definition, violate the Establishment Clause. *See Hobbie*, 480 U.S. at 144–45; *Sherbert*, 374 U.S. at 409 (1963); *Lukhard*, 728 F.2d at 241. Whether one attempts to run it through *Lemon*'s rubric or not, the result is the same. *See Grace Baptist Church*, 846 F.2d at 262–64 (applying the *Lemon* test and concluding the state government did not violate the

---

[2] Allegations that such recruiting and screening practices somehow amount to religious coercion of prospective foster parents or foster children are incorrect. The *Fulton* Court noted that a CPA "does not seek to impose [its] beliefs on anyone else" merely by screening prospective foster parents on the basis of its religious beliefs. *Fulton*, 141 S. Ct. at 1882. Further, Plaintiffs already conceded— and Judge Cain already ruled—that they lack standing to assert claims for supposed harms to third parties such as children in foster care. *See* ECF No. 61 at 10 n.5; ECF No. 81 at 19–21.

[3] The Supreme Court's Establishment Clause precedent has consistently and repeatedly relied on a historically informed analysis rather than the test set forth in *Lemon*. *See Am. Legion v. Am. Humanist Ass'n*, 139 S. Ct. 2067 (2019) (declining to apply *Lemon* and, instead, relying on historical approach); *Town of Greece v. Galloway*, 572 U.S. 565 (2014) (same); *Hosana-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171 (2012) (ignoring *Lemon*); *Zelman v. Simmons-Harris*, 536 U.S. 639 (2002) (same); *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 112 (2001) (same).

In addition, members of the Supreme Court have repeatedly criticized *Lemon*. *See Am. Legion*, 139 S. Ct. at 2079–85 (plurality op.); *id.* at 2092–93 (Kavanaugh, J., concurring); *id.* at 2101–03 (Gorsuch, J., concurring); *Utah Highway Patrol Ass'n v. Am. Atheists, Inc.*, 132 S. Ct. 12, 12–23 (2011) (Thomas, J., dissenting); *Van Orden v. Perry*, 545 U.S. 677, 686 (2005) (plurality op.); *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 398 (1993) (Scalia, J., concurring).

7

Establishment Clause by granting exemptions to religious entities in an effort to protect their free exercise rights).

In addition, Plaintiffs complain that the State Defendants' Motion fails to explain how *Fulton* alters the analysis of Judge Cain's prior ruling declining to dismiss the Establishment Clause claim. (*See* ECF No. 180 at 13.) The State Defendants are not sure how they could explain this more plainly than they have already done by submitting a 28-page Motion arguing from the first page to the last that a recent, intervening, unanimous judgment by the Supreme Court in this exact factual context compels an entry of judgment and dismissal of Plaintiffs' claims. Any potential or perceived uncertainties or ambiguities in First Amendment case law that may previously have left Judge Cain unwilling to dismiss Plaintiffs' claims have now been put to rest by an intervening, unanimous judgment of the Supreme Court, holding that the accommodations sought and granted by the State Defendants were constitutionally permissible and required.

**III.    The facts, reasoning, and holding of *Fulton* are sufficiently parallel to this suit to be controlling.**

The State Defendants' Motion explained the factual and analytical parallels between *Fulton* and this suit that render *e*'s holding dispositive here. (*See* ECF No. 173 at 13–25.) Plaintiffs' attempts to distinguish *Fulton* or limit it to its facts are not persuasive.

Plaintiffs argue first that this suit is distinguishable from *Fulton* because here there is "no dispute between a CPA and the State." (ECF No. 180 at 15.) Plaintiffs apparently forget that the accommodations they challenge in this suit grew out of exactly such a dispute, and the allegations of their Complaint make clear how that dispute would have ended in the absence of the State Defendants' accommodation—by Miracle Hill abandoning either its religious convictions or its ability to serve children in the foster-care system.

8

Plaintiffs next argue that supposed factual distinctions between the facts of this case and the facts of Fulton make it uncertain whether strict scrutiny should apply here. (ECF No. 180 at 15–16.) The State Defendants already explained the factual parallels between the two suits. (*See* ECF No. 173 at 13–22.) But even assuming there were some meaningful factual distinctions between this case and *Fulton* (and thus strict scrutiny is not triggered by the presence of a discretionary exemption mechanism), the government's actions in this suit must nevertheless be strictly scrutinized because statutes require it, namely the federal Religious Freedom Restoration Act and the South Carolina Religious Freedom Act. *See* 42 U.S.C. § 2000bb-1 *et seq*.; S.C. Code Ann. § 1-32-40. Under a strict scrutiny analysis, when (as here) the government *can* accommodate religious exercise, it *must*. (*See* ECF No. 173 at 17–22.)

Lastly, Plaintiffs argue that in *Fulton*, same-sex couples had more than 20 other agencies to choose from, whereas in this suit Plaintiffs allegedly had fewer options. Even assuming that to be true,[4] it is irrelevant. In *Fulton*, every qualified prospective foster parent had the ability to apply and serve; and in this suit, every qualified prospective foster parent has the ability to apply and serve, either directly with SCDSS or with a multitude of local private CPAs. The fact that Philadelphia (a much larger city than Greenville) is home to more private CPAs than Greenville is unsurprising but irrelevant to the analysis. The constitutional analysis is not dependent on population or whether a prospective foster parent has five, ten, or fifteen CPAs to choose from. Nor is Plaintiffs' subjective belief that some CPAs are "better" than others relevant to the constitutional analysis. These vague and desperate attempts to distinguish this case from *Fulton*

---

[4] While the court must assume the truth of the allegations of the Complaint for purposes of this Motion, discovery has shown that Plaintiffs' numeric allegations on this point are incorrect by multiple orders of magnitude.

are distinctions that make no difference, and "whatever doesn't make any difference doesn't matter" in the law. *McCall v. Finley*, 362 S.E.2d 26, 28 (S.C. Ct. App. 1987).

### IV.    Plaintiffs' Equal Protection claim based on alleged sexual-orientation discrimination fails to state a claim on which relief can be granted.

In their Motion for Judgment on the Pleadings, the State Defendants explained why the remnants of Plaintiffs' Equal Protection claim should be dismissed, as numerous legitimate government interests were rationally related to the State Defendants' challenged actions. (*See* ECF No. 173 at 25–28.) In response, Plaintiffs argue that the State Defendants are merely attempting to "rehash" arguments already "rejected by" the Court. (*See* ECF No. 180 at 18.) Plaintiffs' argument is demonstrably incorrect. As explained in the Motion for Judgment on the Pleadings, and as explicitly recognized by Judge Cain in his Order Granting in Part the Motions to Dismiss, the State Defendants have *not* previously made these arguments in relation to the portion of the Equal Protection claim that still stands, and Judge Cain expressly did *not* rule on or "reject" them. (*See* ECF No. 173 at 25–26; *see also* ECF No. 81 at 46 (noting that "neither the State nor Federal Defendants presented any arguments as to how their actions rationally related to a legitimate State purpose," but indicating that if and when the State Defendants presented such arguments, the remainder of the Equal Protection claim would be dismissed)).

Notably, Plaintiffs make no response to merits of the State Defendants' argument for dismissal of what remains of their Equal Protection claim and they cite no case law purporting to counter the State Defendants' argument. Accordingly, they tacitly concede dismissal of the Equal Protection claim is warranted.

### CONCLUSION

The Supreme Court's unanimous judgment in *Fulton* makes clear and confirms that the State Defendants' actions challenged in this suit were not only constitutionally permissible but

10

also constitutionally required.  Accordingly, the State Defendants' constitutionally compelled and appropriate accommodation of CPAs' rights under the Free Exercise Clause cannot constitute violations of the Establishment and Equal Protection Clauses, and the Court cannot award the relief sought against Governor McMaster and Director Leach in this suit. Further, the State Defendants' actions that purportedly led a private party to deprive Plaintiffs of Equal Protection on the basis of sexual orientation were supported by legitimate government purposes.

For these reasons, Plaintiffs have failed to state any claim upon which relief can be granted, and the relief they have requested cannot be awarded by this Court as a matter of law. Accordingly, Governor McMaster and Director Leach, in their official capacities, respectfully request the Court enter judgment on the pleadings and dismiss Plaintiffs' claims against them with prejudice.

    Respectfully submitted
    NELSON MULLINS RILEY & SCARBOROUGH LLP

    By: s/ Miles E. Coleman
        Miles E. Coleman
        Federal Bar No. 11594
        E-Mail: miles.coleman@nelsonmullins.com
        2 W. Washington St. / Fourth Floor
        Greenville, SC 29201
        (864) 373-2352

        Jay T. Thompson
        Federal Bar No. 09846
        E-Mail: jay.thompson@nelsonmullins.com
        1320 Main Street / 17th Floor
        Columbia, SC  29201
        (803) 799-2000

    OFFICE OF THE ATTORNEY GENERAL
        Robert D. Cook, South Carolina Solicitor General
        Federal Bar No. 285
        E-Mail: bcook@scag.gov
        Post Office Box 11549
        Columbia, SC  29211
        (803) 734-3970

DAVIDSON, WREN & DEMASTERS, P.A.

Kenneth P. Woodington, #4741
E-Mail: kwoodington@dml-law.com
William H. Davidson, II #425
E-Mail: wdavidson@dml-law.com
1611 Devonshire Drive, 2nd Floor
Post Office Box 8568
Columbia, SC 29202-8568
(803) 806-8222

*Attorneys for Governor Henry McMaster and Director Michael Leach*

August 26, 2021
Greenville, South Carolina