IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| EDEN ROGERS and BRANDY WELCH, | Case No.: 6:19-cv-01567-JD |
| Plaintiffs, | |
| vs. | |
| | **ORDER** |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; ALEX AZAR, in his official capacity as Secretary of the UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; ADMINISTRATION FOR CHILDREN AND FAMILIES; LYNN JOHNSON, in her official capacity as Assistant Secretary of the ADMINISTRATION FOR CHILDREN AND FAMILIES; SCOTT LEKAN, in his official capacity as Principal Deputy Assistant Secretary of the ADMINISTRATION FOR CHILDREN AND FAMILIES; HENRY MCMASTER, in his official capacity as Governor of the STATE OF SOUTH CAROLINA; AND MICHAEL LEACH, in his official capacity as State Director of the SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES, | |
| Defendants. | |

This matter is before the Court on several motions. First, Plaintiffs Eden Rogers and Brandy Welch ("Plaintiffs") have filed a Motion to Compel Production of Amended Privilege Logs from Defendants Henry McMaster, in his official capacity as Governor of the State of South Carolina ("Governor McMaster" or "Governor") and Michael Leach in his official capacity as State Director of the South Carolina Department of Social Services ("Leach"). (DE 137.) Second, Governor McMaster has filed a Motion for Protective Order under Rule 26(c)(1), Fed. R. Civ. P.,

1

asserting the apex doctrine and the deliberative and decision making privilege as a bar to Plaintiffs' attempts to compel his deposition in this case. (DE 138.) Third, the Office of the Governor–Executive Control of State ("Office" or "Office of the Governor") has made a special, limited appearance solely for purposes of moving to quash Plaintiffs' subpoenas and to obtain a protective order related to additional subpoenas alleging several grounds for relief, to include sovereign immunity and the apex doctrine.[1] (DE 142.)

The parties have submitted responses and replies to the motions; therefore, the motions are ripe for review and decision. After reviewing the motions and memoranda submitted, the Court denies Plaintiffs' Motion to Compel Production of Amended Privilege Logs[2], grants the Office's Motion to Quash, and grants the Governor and the Office of the Governor's Motions for a Protective Order for the reasons set forth herein.

## BACKGROUND

Plaintiffs, a married couple and Greenville-area residents, filed this lawsuit seeking declaratory and injunctive relief against Defendants for unlawfully authorizing state-contracted, government-funded foster care agencies to use religious eligibility criteria to exclude qualified families from fostering children in the public child welfare system. Plaintiffs contend this practice violates the Establishment, Equal Protection and Due Process Clauses of the United States

---

[1] The Office of the Governor is not a party to this case. Nevertheless, Plaintiffs seek to depose Ms. Leigh Lemoine ("Lemoine") who is the Office's Deputy Chief of Staff, Mr. Brian Symmes ("Symmes") the Office's Communications Director, and the Office's Rule 30(b)(6) witness. (DE 153, pp. 20-21.) The Court declines to address the Office's sovereign immunity defense because the matter will be disposed of on other grounds.

[2] The Court denies Plaintiffs' Motion to Compel Production of Amended Privilege Logs from Defendants Governor McMaster and Leach because Local Rule 37.01(A) requires that "motions to compel discovery must be filed within twenty-one (21) days after receipt of the discovery response to which the motion to compel is directed." Here, Plaintiffs waited more than twenty-one days before filing the instant motion, and it is, therefore, untimely.

Constitution and harms vulnerable children by denying them access to the loving families they desperately need and limits opportunities for would-be foster parents to participate in the public child welfare system on the basis of religion and sexual orientation.

Title IV-E of the Social Security Act authorizes the United States Department of Health and Human Services ("HHS") to provide States with funding to assist in caring for children placed in foster care.  (DE 1, ¶ 33.)  In South Carolina, the South Carolina Department of Social Services ("SCDSS") receives federal funds from HHS. Id. SCDSS, in turn, directs such funds, along with state funds, to reimburse private government contractors (known in the industry as "child-placing agencies" or "CPAs") for the services they provide relating to foster care. Id. SCDSS is also responsible for issuing and renewing licenses to CPAs, which allow them to perform services related to foster care.  (DE 1, ¶¶ 27–29.)

Miracle Hill Ministries ("Miracle Hill") is a private charitable nonprofit operating as a CPA in Greenville, South Carolina, and it receives government funding to reimburse some of its services relating to foster care.  (DE 1, ¶¶ 41, 46.)  It is a Christian organization.  (DE 1, ¶¶ 42, 47.)

On January 27, 2018, SCDSS requested Miracle Hill address SCDSS's concerns regarding Miracle Hill's practice of partnering only with foster parents who share Miracle Hill's religious beliefs.  (DE 1, ¶¶ 54–55, 57.)  At the same time, SCDSS declined to reissue Miracle Hill a standard CPA license and instead issued it a temporary CPA license valid for six months.  (DE 1, ¶ 56.)  This decision was prompted by HHS's issuance of new regulations in the final weeks of the Obama administration.  Specifically, in January 2017, HHS amended federal regulations pertaining to a State's receipt of federal funds under Title IV-E to require that the funds be expended in a way that does not discriminate on the basis of religion, sexual orientation, or a number of other classifications.

As it relates to this discovery dispute and for the sake of brevity as to the pertinent factual allegations of the issues here, Plaintiffs challenge the Governor's actions authorizing state-contracted, government-funded CPAs to use religious eligibility criteria when screening potential foster parents for children in state custody. Plaintiffs contend that the Governor's actions intentionally discriminates against prospective foster parents on the basis of religion and sexual orientation. Specifically, the complaint alleges that Governor McMaster interfered with SCDSS's revocation of the permanent CPA license held by Miracle Hill; sought a waiver from HHS for all faith-based CPAs in South Carolina, relieving them of certain federal non-discrimination requirements (the "waiver request"); and issued an Executive Order requiring SCDSS to revise its own non-discrimination policies to allow faith-based CPAs to continue discriminating against potential foster parents. (DE 1, ¶¶ 54-67.)

As part of discovery, which has been ongoing for more than a year, Plaintiffs' counsel informed counsel for Governor McMaster that they intended to notice the deposition of a Rule 30(b)(6) witness from the Office of the Governor as well as the depositions of two employees from that Office. (DE 138, p. 4.) Plaintiffs' counsel likewise informed counsel for SCDSS Director Michael Leach that they intended to depose a Rule 30(b)(6) witness from SCDSS and two separate SCDSS employees, which was not opposed or objected to. Counsel for Governor McMaster responded and informed Plaintiffs' counsel that Governor McMaster could not produce witnesses from the Office of the Governor because neither the Office of the Governor nor its employees were named as defendants in this suit. Id. at 5. Plaintiffs' counsel responded to Governor McMaster's counsel, stating that if the Governor was unable to produce a 30(b)(6) witness and individual witnesses from the Office of the Governor, Plaintiffs intended to subpoena the Office and the two individual witnesses and also intended to notice the deposition of the Governor himself. Id.

4

Thereafter, Plaintiffs' counsel sent subpoenas via certified mail to the Office of the Governor seeking deposition testimony from two individual employees, and on April 19, 2021, Plaintiffs' counsel wrote to in-house counsel in the Office of the Governor regarding the proposed 30(b)(6) deposition. Id.

Governor McMaster's counsel responded to the planned notice stating that "the Governor objected to any intent to depose him, as such a deposition is impermissible under the apex doctrine as well as the privilege that surrounds the deliberations and decisional process of high-ranking executive officials." (DE 138, p. 6.) Equally, the Office's counsel responded to Plaintiffs' counsel objecting to the subpoenas being served via certified mail, directed to the "Office of the Governor of the State of South Carolina," and asserting sovereign immunity and the apex doctrine. (DE 142.) The parties were unable to come to an agreement regarding the deposition of the Governor or the Office of the Governor, and therefore, the Governor and the Office filed these Motions seeking *inter alia* a protective Order.

## II.     Legal Standard

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). To determine whether discovery is proportional to the needs of the case, a court should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id.

"[A] district court has wide latitude in controlling discovery and [its] rulings will not be overturned absent a showing of clear abuse of discretion." Ardrey v. United Parcel Serv., 798

F.2d 679, 682 (4th Cir. 1986) (citations omitted). "The latitude given the district court extends as well to the manner in which it orders the course and scope of discovery." Id. (citations omitted). To that end, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c).

The court has discretion in fashioning this relief, and Federal Rule of Civil Procedure 26(c)(1)(C) specifically authorizes the court to "prescrib[e] a discovery method other than the one selected by the party seeking discovery" or "forbid[] inquiry into certain matters, or limit[] the scope of disclosure or discovery to certain matters."

Moreover, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1), Fed. R. Civ. P. Rule 45(d)(3)(A)(iv) of the Federal Rules of Civil Procedure provides that a district court must, on timely motion, quash a subpoena that "subjects a person to undue burden." The determination of undue burden is within the discretion of the district court. See Cook v. Howard, 484 Fed. Appx. 805, 812 n.7 (4th Cir. 2012). A subpoena that seeks information irrelevant to the case is a *per se* undue burden. See Cook, 484 Fed. Appx. at 812 n.7; HDSherer LLC v. Nat'l Molecular Testing Corp., 292 F.R.D. 305, 308 (D.S.C. 2013).

## III. DISCUSSION

### A. Governor McMaster's Request for a Protective Order

Governor McMaster asks this Court to enter a protective order prohibiting Plaintiffs from forcing him to be deposed in this case under the apex doctrine[3] and the deliberative and decision making privilege.[4] This Court agrees given the convergence of the apex doctrine and the deliberative and decision making privilege in this case. "It is well established that high-ranking government officials may not be deposed or called to testify about their reasons for taking official actions absent "extraordinary circumstances." In re McCarthy, 636 F. App'x 142, 143 (4th Cir. 2015). "Only where there is a clear showing of misconduct or wrongdoing is any departure from this rule [that the judiciary may not probe the mental processes of an executive or administrative officer] permitted." Id at 144. "[F]ederal courts have consistently held that, absent 'extraordinary circumstances,' a government decision-maker will not be compelled to testify about his mental processes in reaching a decision, 'including the manner and extent of his study of the record and

---

[3]     The apex doctrine recognizes a limitation on a party's right to notice a deposition demanding the appearance of high-level executives or high-ranking government officials. "The doctrine is based on Fed. R. Civ. P. 26(c), which allows the Court to enter protective orders to protect a party or person from 'annoyance' and 'undue burden or expense,' as well as Fed. R. Civ. P. 26(b)(2)(C), which requires the Court to limit discovery that is 'unreasonably duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.'" In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig., No. MDL No. 2:14-mn-02502-RMG, 2014 U.S. Dist. LEXIS 194852, at *6 (D.S.C. Nov. 13, 2014).

[4]     "The deliberative process privilege, sometimes called the executive privilege, is an evidentiary privilege sometimes accorded to the government to protect documents from discovery that are involved in the government's deliberative decision-making functions." Crosby v. United States, No. CV 3:07-3668-JFA, 2009 WL 10678825, at *2 (D.S.C. Mar. 24, 2009); see also, N.L.R.B. v. Sears, Roebuck & Co., 421 U.S. 132, 149–50 (1975). "The purpose of the deliberative process privilege is to encourage open and candid discussions of legal and policy matters 'within the government by insulating government employees from the chilling effect likely to occur were the process to be opened up to public scrutiny and to protect against public confusion resulting from disclosure of reasons and rationales that were not ultimately the bases for the agency's action.'" Crosby supra.

7

his consultations with subordinates.'" Franklin Sav. Ass'n v. Ryan, 922 F.2d 209, 211 (4th Cir. 1991).

Governor McMaster is a government decision maker since he is the "Chief Magistrate" in the State, and the "supreme executive authority" of the State of South Carolina is vested in him. See S.C. Const. art. IV, § 1. "[A]lthough the apex doctrine is often presented as a stand-alone maxim used to prevent a party from deposing a high-level official, it is more accurately described as a tailored application of the rules regulating discovery in specific instances involving high-level or 'apex' officials." Courts in this District ". . . applying the doctrine have required that, before deposing a corporate defendant's high ranking officer, 'the plaintiff must show (1) the executive has unique or special knowledge of the facts at issue and (2) other less burdensome avenues for obtaining the information sought have been exhausted.'" In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig., No. MDL No. 2:14-mn-02502-RMG, 2014 U.S. Dist. LEXIS 194852, at *6 (D.S.C. Nov. 13, 2014)

Plaintiffs contend that the Governor has special knowledge of the facts at issue, and they have identified several "topics and issues that can only adequately be explored through depositions of Governor McMaster, his Office or his staff." (DE 149, p. 14.) For instance, Plaintiffs seek to explore:

> Communications between the Governor's Office and DSS regarding the Miracle Hill licensing issue, and what happened to cause DSS to change its position and start to work with the Governor's Office on the waiver request; . . .
>
> The process followed by Governor McMaster in drafting and submitting the waiver request, and in drafting and issuing the Executive Order, including the involvement of members of his staff;
>
> Whether anyone at the Governor's Office considered the impact the waiver granted by HHS to faith-based South Carolina CPAs or the Executive Order would have on the availability of foster parents in South Carolina;

> The involvement of Governor McMaster, or any person in Governor McMaster's Office, if any, in HHS's 2019 decision not to enforce its own non-discrimination requirements and to ultimately eliminate certain protections that previously applied to HHS-grant-funded service providers; . . . .

(DE 149, p. 15.) These examples illustrate that the Governor does not have any unique, relevant, personal knowledge that could be obtained solely by deposing him because they include communications with other agencies. Therefore, the examples do not show that they are entitled to subject him to the burden of preparing for and sitting for a deposition. Equally, these topics suggest that in any deposition of the Governor, Plaintiffs intend to explore the policy rationales and processes behind the Governor's Executive Order and waiver request—an exploration that is clearly prohibited by the deliberative process privilege. Furthermore, the Court is not convinced that other less burdensome avenues for obtaining the information sought have been fully exhausted.[5] Governor McMaster points out in his reply that although "Plaintiffs claim they need to depose the Governor to explore his 'awareness of Miracle Hill's history of discriminating,' and they argue that other methods of discovery (e.g., interrogatories) are incapable of discovering this information . . . Plaintiffs never even attempted to ask that question in an interrogatory." (DE 160, p. 3.) The Governor contends that a plaintiff in a related action has done so to discover the information they seek. Id.

Accordingly, since Plaintiffs intend to probe what Governor McMaster considered before issuing his Executive Order and requesting a waiver from HHS and since there has been no showing of an extraordinary circumstance or wrongdoing on the part of the Governor, the deliberative and decision making privilege coupled with the apex doctrine warrant the issuance of a protective order in this case. Furthermore, since the Court finds that other less burdensome

---

[5] The Court notes that Plaintiffs have other avenues to explore non privileged communications regarding their desired topics through SCDSS, which has not been objected to and have not been fully exhausted.

avenues for obtaining the information sought have not been exhausted, the Governor should not have to submit to a deposition in this case.

### B. The Office of the Governor's Consolidated Motion for Protective Order and to Quash Subpoenas

The Office of the Governor seeks an order quashing Plaintiffs' subpoenas and a protective Order along with sanctions. The Court agrees, however, the Court declines to impose sanctions. Given that this Court has determined that the apex doctrine coupled with the deliberative and decision making privilege applies to the Governor in this case, which precludes his deposition regarding the issues Plaintiffs desire to explore, the Court equally finds that Plaintiffs' subpoena should be quashed for similar reasons. Here, Plaintiffs seek to depose the Office's Deputy Chief of Staff, Lemoine, and its Communications Director, Symmes. Plaintiffs assert that Ms. Lemoine and Mr. Symmes have knowledge relevant to this case and:

> that the two individuals were involved in the events leading up to Plaintiffs' complaint—[the Governor] identified them in response to Plaintiffs' interrogatory seeking the identity of individuals involved in communications with Miracle Hill Ministries, the U.S. Department of Health and Human Services ("HHS"), DSS, the public or the press regarding Governor McMaster's request for a waiver for South Carolina's faith-based child placing agencies from certain federal non-discrimination requirements, the Governor's March 13, 2018 Executive Order and certain related HHS rulemaking actions.

(DE 153, p. 23.) "[F]ederal courts have consistently held that absent 'extraordinary circumstances,' a government decision-maker will not be compelled to testify about his mental processes in reaching a decision, 'including the manner and extent of his study of the record *and his consultations with subordinates.*'" Franklin Sav. Ass'n v. Ryan, 922 F.2d 209, 211 (4th Cir. 1991) (emphasis added). Since there is no dispute that they were involved in the Governor's decision making process, it stands to reason that the protections afforded the Governor must extend to these subordinates to include a 30(b)(6) witness because Plaintiffs intend to explore the Governor's decision making process by doing indirectly what they cannot do directly.

10

## **CONCLUSION**

For the foregoing reasons, it is Ordered that Plaintiffs' Motion to Compel Production of Amended Privilege Logs from Defendants Governor McMaster and Leach (DE 137) is denied. Governor McMaster's Motion for Protective Order (DE 138) precluding his deposition is granted. In addition, the Office of the Governor's Motion for a Protective Order and to Quash the subpoenas (DE 142) is granted.  Plaintiffs may not direct any additional subpoenas to the Office of the Governor or its employees without leave of the Court.

**AND IT IS SO ORDERED.**

_____
Joseph Dawson, III
United States District Judge

Greenville, South Carolina
November 4, 2021

11