# EXHIBIT 4

**South Carolina Department of Social Services Human Services Policy and Procedure Manual**

**CHAPTER 7, Foster Family Licensing & Support**
Revision Number: 16-01
Review Date: 07-21-2016                    Effective Date: 07-21-2016

---

## Table of Contents

700. Introduction ........................................................................................................... 2
710. Non-Discrimination .............................................................................................. 4
720. Standards of Care ................................................................................................. 8
730. Recruitment .......................................................................................................... 15
740. Intake & Background Checks ............................................................................... 21
741.    Foster Family Initial Licensing Assessment ..................................................... 28
   741.1 Licensure of Kinship Foster Families ............................................................ 41
   741.2 Licensure of Agency Staff ............................................................................. 44
742. Application Determination ................................................................................... 47
750.    License Management ......................................................................................... 52
   750.1 Out of Home Abuse and Neglect (OHAN) .................................................... 53
   750.2 License Renewals ........................................................................................... 56
   750.3 License Waivers ............................................................................................. 63
   750.4 License Amendments ..................................................................................... 68
   750.5 Reopening Closed Licenses ........................................................................... 72
   750.6 Transfer of a License to Another Agency ........................ **Error! Bookmark not defined.**
760.    Family Support ................................................................................................... 76
   760.1 Home Visits & Foster Family Contacts .......................................................... 77
   760.2 Foster Parent Training .................................................................................... 87
   760.3 Reasonable and Prudent Parenting ............................................................... 92
   760.4 Foster Parent Insurance & Liability ............................................................... 99
   760.5 Foster Parent Records & Confidentiality ....................................................... 102
   760.7 Disaster Preparedness Plans ......................................................................... 108
770. The Interstate Compact on the Placement of Children: The Receiving State ................... 112
780. Appeal of an Adverse Agency Decision ............................................................... 125

**Exhibit
0015**

6/3/2021
Jacueline Lowe

**South Carolina Department of Social Services**

**Human Services Policy and Procedure Manual**

**CHAPTER 7, Foster Family Licensing & Support** Revision
Number:
Review Date:                                    Effective Date:

---

## 700. Introduction

The South Carolina Department of Social Services is committed to providing placement environments for children in foster care that promote their safety, stability, and wellbeing. The Foster Family Licensing and Support Unit within the agency is responsible for contributing to this objective through the recruitment, licensing, monitoring, and support of foster families.

This process begins with the setting of **Standards of Care** for foster family homes (see Section 720). These standards address a number of aspects regarding a child's life in care, including matters like safety requirements, discipline practices, and parenting principles.

The process continues with the comprehensive, effective, and diverse **recruitment** of foster family applicants (see Section 730: Recruitment). The agency will, from statewide to local levels, conduct strategic planning for individual and widespread recruitment of families. The goal of such activities is ultimately the formation of an effective partnership between the agency and a wide array of competent, well-supported, and diverse families who can provide care for the state's most vulnerable children

Once a family is successfully recruited, they must complete the **intake** process through initial contact with the South Carolina Foster Parent Association or Heartfelt Calling (see Section 740: Intake & Background Checks). At this phone interview, initial information is collected, referrals for training and inspections are made, and preliminary background checks are begun to confirm that applicants are suitable for further assessment. The family is then contacted by the State Initial Licensing Unit for **assessment** and, ultimately, a fair and timely determination regarding their application (see Section 741: Foster Family Initial Licensing Assessment and Section 742: Application Determination).

After a family is issued their original license, the family will be assigned a Regional Foster Family and Licensing Support Coordinator (FSC). This individual will **manage** the family's license (see Section 750 et seq.) and **support** the family (see Section 760 et seq.) on an

ongoing basis through periodic contact, administrative assistance regarding the family's license, and guidance regarding the care of the children in each family's home. The FSC shall also be responsible for assisting Foster Care and IFCCS Workers with the **placement of foster children** in DSS-managed placements (see Section 510.2) while continuing to support the families who provide such homes.

At all points in the agency's partnership with foster families, staff personnel shall treat families and children with respect and fairness. As part of this mission, staff personnel shall avoid any and all forms of **discrimination**, with consideration of a child or family's race, color, national origin, religion, state of residence, age, disability, political belief, sex, or sexual orientation only occurring when, after a thorough and individualized assessment, such consideration is the only manner of serving a child's best interests (see Section 710). In the event that a foster family disagrees with an adverse decision made by the agency regarding their application, license, or placement status, the agency shall provide **appeal procedures** that guarantee fairness and accuracy (see Section 780).

**REVISION COMMENTS:**

**South Carolina Department of Social Services Human Services Policy and Procedure Manual**

**CHAPTER 7, Foster Family Licensing & Support**
Revision Number: 16-01
Review Date: 07-21-2016                                          Effective Date: 07-21-2016

---

### 710. Non-Discrimination

### PURPOSE STATEMENT:

The unnecessary consideration of race, color, national origin, religion, state of residence, age, disability, political belief, sex, or sexual orientation when making decisions regarding a child's placement can result in unfair outcomes for prospective families and substantial delays in permanency for foster children. The agency is committed to the exercise of nondiscriminatory practice, and shall provide equal opportunities to all families and children, without regard to their race, color, and national origin, and religion, state of residence, age, disability, political belief, sex, or sexual orientation. The following policies and procedures describe the processes through which the agency will prevent discriminatory practices and promote individualized assessments of each child and family.

### POLICY:

1. No child shall be denied the opportunity to have a permanent family on the basis of race, color, national origin, religion, state of residence, age, disability, political belief, sex, or sexual orientation. Further, no individual shall be denied the opportunity to become a foster or adoptive parent on the basis of race, color, national origin, religion, state of residence, age, disability, political belief, sex, or sexual orientation. Neither of these opportunities shall be delayed on the above basis. Licensing decisions will not be made on the above basis except in rare cases in which such consideration is in the best interests of the child. If so considered, the resulting decision will be properly supported and documented. Further, the culture of a child and/or prospective adoptive family shall not be used as a proxy for race, color, or national origin in making placement decisions.

2. The agency shall diligently recruit foster and adoptive families that reflect the ethnic and racial diversity of children for whom foster and adoptive homes are needed.

3. All prospective foster parents with disabilities shall be given full and equal opportunities to become foster parents and shall be entitled to individualized treatment. If necessary

to facilitate a full and equal opportunity, foster parents with disabilities shall be entitled to auxiliary aids and services.

4. Staff will not solicit, record, or use information on potential caregiver preferences based on race, color, or national origin. Further, staff shall not require additional training or competency for transracial placements.

**PROCEDURES:**

1. **Non-Discrimination in the Licensing Process**

   a. During the intake for foster home licensing, the Intake Worker shall record the applicant's race and ethnicity on the intake form. The worker shall redact the information after creating a CAPSS record and prior to obtaining the applicants' signatures on the form.

   b. If accommodations are needed to complete the licensing application process, the Intake Worker shall notify the State Office Initial Licensing Unit at the time the intake form is submitted.

   c. The State Office Initial Licensing Unit will make a referral for a service aid/interpreter based on the particular needs of the family and as follows:

      i. If one or both applicants speak English as a second language and requires assistance through an interpreter, one will be provided.

      ii. If one or both applicants require services related to visual or auditory impairment, one will be provided.

      In no instance can an applicant, household member, or child act as an interpreter.

   d. If an applicant or current foster family requires aids or services to fulfill the Standards of Care required of all foster homes due solely to their disability status, the Initial Licensing Unit and Regional Foster Family and Licensing Support Unit staff shall assist the family in obtaining the necessary supports.

2. **Non-Discrimination in Ongoing Management & Support**

   a. If, at any point during ongoing management of the family or during fair hearing proceedings, the family requires additional aids or services due solely to the family's disability status, the unit managing the family shall assist the family in obtaining the necessary supports.

3. **For diligent recruitment of diverse families, see Section 730: Recruitment.**

**Special Considerations:**

1. **For individualized placement decisions in which consideration of race is in the child's best interests, see Section 510.2: Placement of a Child.**

2. **Violations of Non-Discrimination Laws & Policies**
   a. Violations of non-discrimination laws and policies by DSS staff could result in disciplinary actions.
   b. Violations of non-discrimination laws and policies by licensed foster homes could result in the revocation or denial of a license.

**DOCUMENTATION:**
- Contacts with prospective or licensed families
- Accommodations provided to disabled families or household members

**COLLABORATION:**
- Intake Worker (SCFPA/Heartfelt Calling)
- Initial Licensing Coordinator
- Initial Licensing Supervisor
- Foster Family and Licensing Support Coordinator
- Foster Family and Licensing Support Supervisor
- Private Providers of Aids and/or Services

**REFERENCES:**

**Legal Citations:**
Multi-Ethnic Placement Act & Interethnic Adoption Provisions
- 42 U.S.C.A. § 671(a)(18): general mandates
- 42 U.S.C.A. § 622(b)(7): diligent recruitment
- 42 U.S.C.A. § 674 & 45 C.F.R. § 1355.38: enforcement
- 42 U.S.C.A. § 1996b: Title VI violations
- 42 U.S.C.A. § 2000a et seq.: Title VI of the Civil Rights Act The Americans with Disabilities Act
- 29 U.S.C.A. § 794: Section 504 of the Rehabilitation Act of 1973
- 29 U.S.C.A. § 705(20)-(21): Section 504 definition of disability
- 42 U.S.C.A. § 12102: ADA definition of disability

- 42 U.S.C.A. § 12103: ADA definition of auxiliary aids and services
- 42 U.S.C.A. §§ 12131-12134: ADA Title II, Public Services
- 42 U.S.C.A. §§ 12181-12189: ADA Title III, Public Accommodations
- 28 C.F.R. § 35.101 et seq.: ADA Title II regulations
- 28 C.F.R. § 36.101 et seq.: ADA Title IV regulations
- 28 C.F.R. § 42.501 et seq.: Section 504 DOJ regulations
- 45 C.F.R. § 84.1 et seq.: Section 504 DHHS regulations

**Tools:**

**Forms:**

**Practice Guidance:**

**REVISION COMMENTS:**

**South Carolina Department of Social Services Human Services Policy and Procedure Manual**

**CHAPTER 7, Foster Family Licensing & Support**
Revision Number: 16-01
Review Date: 07-21-2016            Effective Date: 07-21-2016            Revised: 06-06-2019

---

### 720. Standards of Care

**PURPOSE STATEMENT:**

Through setting clear, uniform, and comprehensive expectations for foster families, the agency seeks to place all children in its care in homes where they will thrive and be safe. This section describes the standards to be followed by all foster families and provides guidance for the staff in charge of monitoring whether these standards are implemented and maintained.

**POLICY:**

1. The following standards of care are to be maintained by all foster families:
    a. The **child's daily routine** shall be planned to promote the development of good health habits.
    b. Each child shall be provided with adequate **health and hygiene** aids.
    c. **Space for each child's possessions** shall be provided.
    d. The foster family home (defined as house, mobile home, housing unit or apartment) shall be able to **comfortably accommodate** a foster child as well as the foster family's own family, including the provision of proper **sleeping arrangements** for the foster child and foster family.
        i. Each child in care shall be provided with his or her own bed and storage space; however, same sex siblings may be allowed to share a bed or storage.
        ii. No child may routinely share a bed with an adult and, except for a child up to twelve months of age,, no child may share a bedroom with an adult unless SCDSS or the child placing agency staff document that extenuating circumstances exist.

      iii.    Children of the opposite sex sleeping in the same bed must be limited to siblings under the age of four years.

      iv.    Children of the opposite sex sleeping in the same room must be limited to children under the age of four years.

      v.    Children shall sleep within calling distance of an adult member of the family, with no child sleeping in a detached building, unfinished attic or basement, stairway, hall, or room commonly used for anything other than bedroom purposes.

      vi.    No biological children of the foster family shall be displaced and made to occupy sleeping quarters prohibited in (ii), (iii) and (iv) above because of a foster child being placed in the home.

      vii.    The top level of bunk beds shall not be used for children under the age of six years of age.

      viii.    Co-sleeping or bed-sharing, when a parent and infant share a sleeping surface (such as a bed, sofa or chair) is prohibited.

      ix.    Home has adequate lighting, ventilation, and proper trash and recycling disposal, if recycling is available;

      x.    Home is free from rodents and insect infestation.

      xi.    Home has proper water heater temperature;

e. If deemed appropriate by SCDSS or the child placing agency, the foster family will cooperate in assuring that foster children are able to **maintain regular contact** with their birth parents, siblings, and other significant relatives.

f. Unless advised otherwise by SCDSS, the foster family should confirm that they, their families, and all foster children understand the **temporary nature of foster care** and should work with the agency to establish permanency for the children through reunification with the birth family, adoption, or legal guardianship.

g. Foster parents shall follow instructions and suggestions of providers of **medical and health related services**. If receiving medication, a child's prescription shall be filled on a timely basis and medications will be administered as prescribed, and otherwise be kept secured.

h. Foster parents shall obtain **emergency medical treatment** immediately as need arises, and shall notify SCDSS and child placing agency staff, no later than 24 hours of receiving such care.

     i.    If the primary source of payment for medical care is Medicaid, foster parents must confirm that the child's card is accessible at all times.

        ii.    Foster parents shall contact SCDSS for coordination of any elective or nonemergency surgical procedures as far in advance of the procedure(s) as possible.

        iii.    Any injuries sustained by a foster child must be reported as they occur and no later than 24 hours of incident.

     i.    Foster parents are responsible for notifying SCDSS and/or the child placing agency staff as soon as possible when a **critical incident** has occurred such as:

        i.    the death of any child in the home;

        ii.    an attempted suicide by the child;

        iii.    the child being caught with a weapon or illegal substance;

        iv.    the child being charged with a juvenile or adult offense;

        v.    the child being placed on homebound schooling or being suspended or expelled from school;

        vi.    the child leaving the home without permission and not returning.

     j.    **Religious education** is to be in accordance with the expressed wishes (if any) of the birth parents.

     k.    **School attendance** shall be in accordance with State law requirements and shall be in accordance with the ability and in the best interests of the child.

        i.    The foster parents will assure that each foster child has access to education, educational opportunities, and related services. Foster parents must emphasize the value of education and encourage and support children in their care to fully participate in educational activities.

        ii.    SCDSS will choose which school the foster child attends.

        iii.    SCDSS will not pay for costs associated with private tuition.

        iv.    Unless extenuating circumstances exist, foster parents shall not home school foster children. SCDSS must approve any such plan.

     l.    All **discipline** must be reasonable in manner, moderate in degree, and responsibly related to the child's understanding and need.

        i.    Discipline should be constructive or educational in nature (e.g. withdrawal of privileges).

        ii.    Cruel, inhumane, and/or inappropriate discipline is prohibited. This would include but not necessarily be limited to the following: head shaving or any other dehumanizing or degrading act;

prolonged/frequent deprival of food or serving foster children meals which are not as nutritionally adequate as those served to other family members or requiring children to be isolated from other family members when eating; deprival of mail; slapping or shaking; a pattern of threats of removal from the home as punishment; disciplining a child for a medical or psychological problem over which he/she has no control (e.g. bedwetting, stuttering, etc.).

 iii. All foster homes are subject to South Carolina laws relating to child abuse and neglect.

 iv. The use of corporal punishment as a form of discipline (or in any other circumstance) is prohibited.

m. **Household chores and tasks** assigned to foster children shall be appropriate for the ability of the child, similar to responsibilities assigned to other children, and geared toward teaching personal responsibility.

n. Foster parents must assist older foster adolescents in their care in learning skills that are necessary for successful **independent living.**

o. When determining whether to allow a foster child to participate in **extracurricular, enrichment, cultural, and social activities**, foster parents shall use the **reasonable and prudent parent standard** and shall make careful and sensible parental decisions that maintain the health, safety, and best interests of a child while at the same time encouraging the emotional and developmental growth of the child (see Section 760.3: Reasonable and Prudent Parenting for policies, procedures, and guidance related to this standard).

p. Infants and children shall not be left without **competent supervision.**

q. Foster parents, in conjunction with SCDSS, shall keep a **life book/scrapbook** of each foster child placed in their home. Children's records and reports shall be kept confidential and shall be returned to SCDSS when a foster child leaves the foster home.

r. **Firearms and any ammunition** must be separately stored, locked, unloaded, and inaccessible to children when:

 i. being legally carried upon the foster parent's person;

 ii. being used for educational, recreational, or defense of self or property purposes by the foster parent; or

 iii. being cleaned by the foster parent.

s. Foster parents must be able to secure/supervise access to in-ground or above-ground **swimming pools** over which the foster family has a right

of control and shall maintain adequate supervision during periods of swimming.

i. Swimming pools, hot tubs, and spas must meet the following to ensure they are safe and hazard free (and additionally must meet all state, tribal and/or local safety requirements):

1. Swimming pools must have a barrier on all sides.

2. Swimming pools must have their methods of access through the barrier equipped with a safety device, such as a bolt lock.

3. Swimming pools must be equipped with a life saving device, such as a ring buoy.

4. If the swimming pool cannot be emptied after each use, the pool must have a working pump and filtering system.

5. Hot tubs and spas must have safety covers that are locked when not in use.

t. **Fire escape** plans must be developed, posted, and routine drills conducted.

u. A plan for how the family will respond and travel in the event of a **disaster** (e.g., a hurricane evacuation) must be developed and shared with SCDSS or child placing agency.

v. All **pets** must be kept current with rabies vaccinations and proof of such vaccination must be provided. Pets must not pose a safety concern. SCDSS or the child placing agency will determine what constitutes a safety concern.

w. Applicants and current licensed families must make themselves **reasonably available** on an ongoing basis to SCDSS or the child placing agency for statutorily required contacts or other contacts SCDSS or the child placing agency deems necessary. SCDSS or the child placing agency has the right to make unannounced visits, and to talk to any foster child on an as-needed basis.

x. **Board payments** shall be utilized but not limited to reimbursement for a foster child's board, school expenses, food, clothing, incidentals, minor medical needs, and other expenses.

y. A foster home shall not provide full time care for more than **five foster children**, with the total number of children residing in the household not to exceed eight, including the foster parent's own children, children of other household members, and other children residing in the household, except when keeping a sibling group together, keeping a child in his or her home community, returning a child to a home in which he or she was previously

placed, complying with a court order, or when a court has determined that such placement is in the children's best interests.

    i.    No more than two of the five foster children referenced above may be classified as therapeutic foster care placements unless one of the exceptions applies. If one of the exceptions applies, no more than three of the five foster children may be classified as therapeutic foster care placements.

    ii.    No more than two (2) infants (age birth to one year) shall be placed in the same foster home without prior approval from SCDSS or child placing agency management staff.

    iii.    No foster home shall exceed the number of children stipulated on its issued license without permission from SCDSS or child placing agency staff.

    iv.    No foster home shall accept children referred by another public or private source without obtaining the permission of SCDSS or child placing agency staff prior to the actual placement.

z.    When a home is licensed to provide care for a **pregnant youth**, a plan for medical and hospital care, as well as appropriate protection from community stresses associated with pregnancy, must be made.

aa.  A foster family is required to notify SCDSS or child placing agency staff of any **significant change** in the family/home including, but not limited to:

    i.    any structural changes in the home;

    ii.    plans involving a change of residence;

    iii.    any major changes in the health of anyone living in the home;  iv. change in marital status and the addition of any occupants to the home;

    v.    significant changes in finances; and/or

    vi.    criminal and/or child abuse allegation charges and/or investigations.

bb.  No unrelated **lodger or boarder** shall be allowed to move into a foster home without the agency's concurrence. Foster children may be placed or remain in a foster home where there is an unrelated lodger or boarder or roommate after necessary safety checks have been made and a written concurrence obtained from SCDSS or the child placing agency. Anyone over the age of eighteen years and living in the home must undergo a fingerprinting, SLED, Sex Offender, and CPS check. If children are already in placement, an affidavit must be submitted by the household member

confirming there is no such record. The license must be amended to a Standard with Temporary Waiver until the results of the submitted checks have been received.

cc. Applicants or current foster families must advise SCDSS or the child placing agency staff prior to opening a commercial child care service (**day care)** or other **business in the home**.

dd. Foster parents shall **transport** children in accordance with state public safety and vehicle restraint laws.

ee. Foster parents will not use any illegal substances, abuse alcohol by consuming it in excess amounts, or abuse legal prescription and/or nonprescription drugs by consuming them in excess amounts or using them contrary to as indicated.

ff. Foster parents, household members, and their guests will not smoke in the foster family home, in any vehicle used to transport the child, or in the presence of the child in foster care.

2. Failure to comply with one or more of these standards may result in removal of a foster child or revocation of a foster family license.

3. DSS shall apply the above Standards of Care, including the requirement to exercise the reasonable and prudent parent standard, to all foster family homes (including those managed by private child placing agencies) and group homes in which children are placed. DSS shall further ensure that the exercise of this standard is required as a condition in each contract entered into between the state and any private entities that provide placement for foster children...

**PROCEDURES:**

1. Each applicant shall be assessed for compliance with the Standards of Care. For detailed information on each, see Section 741: Foster Family Initial Licensing Assessment.

Upon receiving a family's license, the Foster Family Licensing Support Coordinator (FSC) shall provide the family with a copy of the Standards of Care as part of the family's information and welcome packet.

**COLLABORATION:**

- Initial Licensing Coordinator and Supervisor
- Foster Family and Licensing Support Coordinator (FSC) and Supervisor
- Foster Care/IFCCS Worker

**REFERENCES:**

**Legal Citations:**

42 U.S.C.A. § 622(b)(16): disaster preparedness

42 U.S.C.A. § 671(a)(10): licensing standards, non-safety relative waivers, RPP requirements

42 U.S.C.A. § 671(a)(11): periodic review of standards and payments

42 U.S.C.A. § 675(10)-(11): RPP definitions

45 C.F.R. § 1356.21(m): periodic review of standards and payments

S.C. Code Ann. § 63-7-20: definitions

S.C. Code Ann. § 63-7-25: reasonable and prudent parenting

S.C. Code Ann. § 63-7-2310: protecting & nurturing children in foster care

S.C. Code Ann. § 63-7-2400: number of children in a foster home

S.C. Code Reg. § 114-550: licensing regulations

Medical Consent ○ Parents: S.C. Code Ann. § 63-5-

30 ○ Children: S.C. Code Ann. § 63-5-330 thru

370 ○ Abortions: S.C. Code Ann. § 44-41-10 et

seq.

○ Legal custody, major nonemergency: S.C. Code Ann. § 63-7-20(13)

**Forms:**

**REVISION COMMENTS:**

**South Carolina Department of Social Services Human Services Policy and Procedure Manual**

**CHAPTER 7, Foster Family Licensing & Support**

Revision Number: 16-01

Review Date: 07-21-2016                            Effective Date: 07-21-2016

---

**730. Recruitment**

**PURPOSE STATEMENT:**

In order for children to thrive while in foster care, families must be available to meet their specific needs. To promote the availability and diversity of foster family homes, this section lays out the policies and procedures related to the recruitment of foster families.

**POLICY:**

1.  No individual shall be denied the opportunity to become a foster or adoptive parent on the basis of race, color, national origin, religion, state of residence, age, disability, political belief, sex, or sexual orientation. Neither of these opportunities shall be delayed on the above basis. All recruitment materials must inform potential foster or adoptive applicants that DSS is prohibited from delaying or denying such opportunities.

2.  The agency shall diligently recruit foster and adoptive families that reflect the ethnic and racial diversity of children in need of foster and adoptive homes.

3.  All prospective foster parents with disabilities shall be given full and equal opportunities to become foster parents and shall be entitled to individualized treatment. If necessary to facilitate a full and equal opportunity, foster parents with disabilities shall be entitled to auxiliary aids and services.

4.  County Directors and Regional Foster Family and Licensing Support staff, in consultation with Regional Directors, shall develop an annual plan to increase the number of foster homes available for placement of children within each county.

5.  Recruitment efforts will emphasize the need for additional homes in order to reduce the number of placement moves of foster children, preserve family relationships and connections, increase the number of siblings placed together, move children from group care into foster homes, and increase the number of homes that reflect the ethnic and racial diversity of the state's foster children.

6.  The agency shall target certain recruitment efforts to provide appropriate families to those groups of children who have the least availability of foster families, such as older youth and large sibling groups.

7.  The agency shall utilize statewide and local data to target specific locations, populations, and communities for effective and efficient recruitment activities.

8.  The agency shall, in furtherance of the completion of its diligent recruitment plan, set annual goals for recruitment and retention of foster families. Further, the agency will develop innovative recruitment strategies and partnerships to meet these goals and shall periodically reassess the efficacy of these efforts.

9.  The agency shall confirm that those families who respond to recruitment efforts receive a uniform, positive, realistic, and trauma-informed message regarding the realities of becoming a foster parent. At the same time, however, the agency will confirm that all inquiries are met with a welcoming and customer-focused approach.

**PROCEDURES:**

1. **Needs Assessment & Development of Recruitment Plan**

   a. Needs assessments are the foundation for recruitment and shall inform decisions made regarding campaigns and events.  Reports are available from CAPSS using "real time" data (Online Reports) or monthly aggregate data (Batch Reports).  Statistical and demographic information for individual counties is also available at the US Census Bureau website (www.census.gov).  In order to determine where resources and time should be spent, recruitment efforts for each county should be based (minimally) upon the following information (note – because recruitment needs and efforts are different, each of the data points should be specified as regular or therapeutic children and homes):

      i. number of children in foster care;

      ii. ages of children in foster care;

      iii. size of sibling groups in foster care;  iv.      ZIP Codes of children's family homes from which they were removed;

      v. number of licensed foster homes;

      vi. ZIP Codes of licensed foster homes;

      vii. number of foster children allowed by each home's license;

      viii. preferred ages for placement in each home;

      ix. number of children placed in their county of case management;

      x. placement of each child within a sibling group; and xi.      foster homes without placement or with available capacity.

   b. County Directors and Regional Foster Family and Licensing Support staff shall meet (by phone or in person) annually to develop the annual local recruitment plan.

      i. County Directors and Regional Foster Family and Licensing Support staff shall establish recruitment priorities based on the greatest need within each county, e.g. older youth needing placement or children in need of bilingual placement.

      ii. The recruitment plan should take into consideration the availability of community resources such as volunteers, current foster parents, Foster Parent Association, venues, media, service groups, non-profit organizations, churches, schools, professional associations, etc.

2. **Engaging with Community Resources**

a. The County Director or designee shall meet routinely with groups within the community to share information and make the foster care placement needs known.

b. The County Director shall inform all local agencies and stakeholders interested in promoting the well-being of children about the need for foster parents and/or volunteers in recruiting foster parents. The information should be based on current data trends within the county.

**3. Recruitment Strategies, Activities, and Events**

a. Each County Director should be aware of the needs of the foster children in his/her county. Recruitment events and planning are primarily managed by the Regional Foster Family and Licensing Support unit but in conjunction with and on the advice of the County Director. County DSS staff should be made available to volunteer at recruitment events.

b. Recruitment initiatives must be developed with the goal of placing children in homes within their communities and neighborhoods to facilitate continuity in the children's lives as well as to promote family and sibling connections while the biological family works toward reunification with removed children (if appropriate).

c. SCDSS regulations support diligent recruitment of potential foster parents that reflect the ethnic and racial diversity of the children within each county for whom foster homes are needed. The use of diligent recruitment does not imply that race, color, national origin, or disability can be used to deny or delay licensing or placement.

d. Recruitment strategies used by the **county staff** should include at least the following:

    i. acknowledging the contributions of foster families ;

    ii. using the media toolkit and branding images supplied by SCDSS Office of Communications and Media Relations for posters, brochures, and media promotions;

    iii. engaging local government entities to support recruitment efforts; iv. identifying and preparing SCDSS county staff to speak at community meetings on behalf of the County Director;

    v. meeting with local religious leaders to enlist support within congregations;

      vi.      communicating with foster parents regularly and developing an understanding of why some homes have fewer placements than others; and

      vii.    attending county Foster Parent Association meetings on a regular basis.

e. Recruitment strategies used by the **Regional Foster Family and Licensing Support staff** should include at least the following:

      i.       acknowledging the contributions of foster families by correspondence and through publications such as newsletters and media awareness;

      ii.      planning and attending local recruitment events;

      iii.    coordinating events with local community partners who are child/familyfocused;

      iv.    regularly speaking to service and civic organizations, school associations, church groups, etc.;

      v.      initiating recruitment strategies on a planned, ongoing basis, including booths at local fairs and festivals, signs and brochures placed in appropriate child-friendly businesses, broadcast media interviews, etc.; and

      vi.     ensuring staff representation at all county Foster Parent Association meetings within the region.

f. Recruitment strategies used by the **DSS State Office** and management should include at least the following:

      i.       initiating dialogue between the agency and child welfare partners regarding efforts to jointly recruit quality foster homes;

      ii.      holding regular meetings of stakeholders to address concerns and observations regarding foster home recruitment;

      iii.    seeking partnerships from agencies and businesses not directly involved with child welfare;

      iv.    entering into and maintaining contracts with entities to support recruitment efforts and events;

      v.      coordinating all media and public awareness campaigns;

      vi.     aligning all recruitment to the mission of the agency and ongoing compliance with federal guidelines;

      vii.    ensuring staff are trained to perform all recruitment activities; and

      viii.   providing budget oversight and financial support for recruitment activities.

g. When foster parents are needed to assist the agency with recruitment efforts, the FSC shall discuss with the family their willingness and availability to participate in recruitment events, media promotions, and/or interviews for a variety of media sources.

  i. Foster children shall not be identified or used in any such recruitment efforts.

  ii. Biological and/or adopted children of a foster family will only be used in recruitment efforts with the parents' knowledge and consent.

**DOCUMENTATION:**
- Copy of recruitment plan
- Contacts with families, community members, and recruitment partners
- Inquiries from prospective foster families
- Referrals from Foster Parent Association and internet services

**COLLABORATION:**
- Regional Foster Family and Licensing Support Staff
- Regional Directors
- County Directors
- State Director and State Office Designees
- State Leadership of Non-Profit Organizations
- Community Stakeholders
- SC Foster Parent Association/local affiliates

**REFERENCES:**

**Legal Citations:**
Multi-Ethnic Placement Act & Interethnic Adoption Provisions
- 42 U.S.C.A. § 671(a)(18): general mandates
- 42 U.S.C.A. § 622(b)(7): diligent recruitment
- 42 U.S.C.A. § 674 & 45 C.F.R. § 1355.38: enforcement
- 42 U.S.C.A. § 1996b: Title VI violations
- 42 U.S.C.A. § 2000a et seq.: Title VI of the Civil Rights Act The Americans with Disabilities Act
- 29 U.S.C.A. § 794: Section 504 of the Rehabilitation Act of 1973
- 29 U.S.C.A. § 705(20)-(21): Section 504 definition of disability

- 42 U.S.C.A. § 12102: ADA definition of disability
- 42 U.S.C.A. § 12103: ADA definition of auxiliary aids and services
- 42 U.S.C.A. §§ 12131-12134: ADA Title II, Public Services
- 42 U.S.C.A. §§ 12181-12189: ADA Title III, Public Accommodations
- 28 C.F.R. § 35.101 et seq.: ADA Title II regulations
- 28 C.F.R. § 36.101 et seq.: ADA Title IV regulations
- 28 C.F.R. § 42.501 et seq.: Section 504 DOJ regulations
- 45 C.F.R. § 84.1 et seq.: Section 504 DHHS regulations

**Tools:**

**Forms:**

**Practice Guidance:**

**REVISION COMMENTS:**

**South Carolina Department of Social Services Human Services Policy and Procedure Manual**

**CHAPTER 7, Foster Family Licensing & Support**
Revision Number: 16-01
Review Date: 07-21-2016            Effective Date: 07-21-2016            Revised: 06-06-2019

---

**740. Intake & Background Checks**

**PURPOSE STATEMENT:**

The agency is committed to providing a thorough but efficient licensing process that promotes both the wellbeing of foster children and the retention of prospective foster families. This section lays out the policies and procedures by which the South Carolina Foster Parent Association/ Heartfelt Calling and the State Office Initial Licensing Unit begin this process with preliminary assessments and background checks.

**POLICY:**

1. No individual shall be denied the opportunity to become a foster or adoptive parent on the basis of race, color, national origin, religion, state of residence, age, disability,

political belief, sex, or sexual orientation. Neither of these opportunities shall be delayed on the above bases. All recruitment materials must inform potential foster or adoptive applicants that DSS is prohibited from delaying or denying such opportunities on the above bases.

2.  All prospective foster parents with disabilities shall be given full and equal opportunities to become foster parents and shall be entitled to individualized treatment. If necessary to facilitate a full and equal opportunity, foster parents with disabilities shall be entitled to auxiliary aids and services.

3.  Applicants may choose to be licensed for regular foster care, Level 1 therapeutic foster care, or to be approved as an adoptive resource.  Regular foster home initial license assessments are completed by SCDSS Regional Initial Licensing Coordinators.  If the prospective family is interested in being approved to adopt or to foster and adopt, a SCDSS Regional Adoptions Specialist will conduct the process (see Chapter 6: Adoption & Birth Parent Services).  Third-party providers contracted by SCDSS shall recruit, assess, train, and manage licensed homes to provide Level 1 therapeutic foster care.

4.  Dual licensing (i.e., a home is licensed by more than one agency) for the placement of children from more than one agency or the placement of adults in addition to children is dependent upon state level approval based on the circumstances.

5.  Criminal history checks through fingerprinting and law enforcement records (both FBI and SLED) are required for applicants and all household members age 18 or older.

6.  The Department will check SC Central Registry of Abuse and Neglect and any child abuse and neglect registry maintained by a state or tribe for information on any applicant and on any other adult living in the prospective foster family home,

7.  The Department is t to request a check of any other child abuse or neglect registry in a state or tribe in which any such applicant or other household adult has resided in the preceding five years.
    Persons found listed on such a registry are not eligible for licensure or to share a residence with a foster child.  (Inquiries by other states regarding SC Central Registry checks should be referred to the SCDSS State Office for fulfillment.)

8.  SC Central Registry checks are required for non-licensed childcare providers and babysitters who provide regular and/or full-time care for foster children.  Persons found listed on the Central Registry may not provide care for a foster child.

9.  Each foster parent applicant and household member age 12 and older shall require a search of the National Sex Offender Registry.  Inclusion on the registry of anyone in the home prohibits licensure.

10. Individuals who provide informal routine care or unlicensed child care must be screened against the National Sex Offender Registry. Child care cannot be provided by an individual listed on the registry.

**PROCEDURES:**

1. Families or individuals interested in fostering shall contact South Carolina Foster Parent Association/Heartfelt Calling (SCFPA/HC) in order to begin the application process.

2. The SCFPA/HC staff shall begin assessing the family during this phone call.  At a minimum, the following information will be collected:
   a. names, address, employment of applicants;
   b. contact phone numbers of applicants;
   c. basic demographics of applicants, to include:
      i.   age;
      ii.  gender;
      iii. marital status; iv.        birthplace;
      v.   education; and
      vi.  race (to be used only for internal recordkeeping and does not become part of the applicant's file);
   d. social security numbers of adult applicants (necessary for fingerprinting);
   e. names of all household members;
   f. children living outside of the home;
   g. age/gender of children preferred for placement;
   h. if application is for a specific child;
   i. pets in the home;
   j. names and addresses of three personal references and one relative reference;
   k. states/countries of residence during previous five years; and
   l. criminal history checks, including all household members 18 and over.

3. The FPA/HC staff shall share the following information with the applicant:
   a. licensing process and timeline;
   b. intent of foster care (to temporarily protect children in a healthy and stable environment while children cannot remain safely in their family home) and adoption (to find lifelong permanency for children whose parents' rights have been terminated because of abuse and/or neglect);

    c.  fingerprinting and criminal history checks for all household members age 18 and older, sex offender registry checks for all household members age 18 and older);

    d.  training requirements.

    e.  Automatic disqualifiers

4.  SCFPA/HC shall schedule fingerprinting with an FBI-approved agency   convenient to the applicant's address as well as a SLED check.  If an applicant refuses to provide information needed to schedule fingerprinting (e.g. social security numbers), SCFPA/HC will advise the applicant of the contact information to schedule fingerprinting on his or her own.  Within 24 hours of the phone call, applicants are to schedule an appointment and notify SCFPA/HC of the date and time for fingerprinting.  Applicants are advised that their intake application will be held open for 24 hours.  If the fingerprinting appointment is not scheduled, the intake will close and the licensing process will stop.  SCFPA/HC shall arrange for rolled fingerprints to be completed for any adult in the household who may be medically unable to have digital fingerprinting done.

5.  SCFPA/HC shall schedule orientation or pre-service training with the applicants at a date and time convenient for their schedule and location.  Training should be scheduled to begin at least 30 days from the date of application.

6.  SCFPA/HC shall mail (by postal service or electronically) the initial packet to the family for information and/or completion. The packet shall include:

    a.  letters/templates to request 3 personal references;

    b.  babysitter form;

    c.  financial information form;

    d.  DSS Form 1574: Medical Report for Prospective Foster/Adoptive Parents;

    e.  DSS Form 30202: Medical Statement for Child;

    f.  DSS Form 30102: Medical Statement for Household Members;

    g.  Fire Marshal regulations;

    h.  Preparing for your DHEC Inspection brochure; and

    i.  FPA Brochure and Welcome DVD (or video if mailed electronically).

7.  SCFPA/HC shall electronically submit the application to the State Office Initial Licensing Unit for the family assessment and home study.

8. State Office Initial Licensing Unit staff shall create Provider and License records in CAPSS and shall shred the page of the application that contains the race and ethnicity of the applicants.

9. State Office Initial Licensing Unit staff shall conduct a thorough search of the SCDSS Child and Adult Protective Services System (CAPSS) and the National Sex Offender Public Website Sex Offender Registry (NSOPW) for applicants and household members age 18 and older.

   a. If an indicated case is found in CAPSS with an applicant as a perpetrator, the application must be denied.

   b. If the indicated case closed at least seven years prior to the application, the case is considered purged and must not be considered as a condition for licensing or denial.

   c. If an applicant is named on the Central Registry, the application is denied. There is no time limitation for a listing on the Central Registry. Once named to this list, persons can only be removed via court ordered expunction.

   d. The Initial Licensing staff who searches CAPSS shall indicate on the bottom of the DSS Form 3072 whether or not the applicant was found to be included on the Central Registry and shall place the form in the applicant's file.

   e. If an applicant appears on the NSOPW, the application must be denied.

   f. The Initial Licensing staff who searches the NSOPW will print the results pages from the website and place them in the applicant's file.

   g. The results from CAPSS and NSOPW searches are documented in the CAPSS using the action codes Paperwork and Collateral Contact.

10. If an applicant or household member age 18 or older resided outside of South Carolina during the five years preceding the application, each state, country, or territory of residence must be contacted for a search of their Central Registry. The Adam Walsh State (and US Territories) Contacts for Child Abuse Registries is available online at http://www.ccld.ca.gov/res/pdf/Revised_AW_Contact_List.pdf. When a request is made for an out of state Central Registry check, the request is documented in the CAPSS License screen using the action codes Correspondence and Collateral Contact.

11. The State Office Initial Licensing Supervisor shall receive the criminal background report from Office of Investigations and shall include the results in the application file.

   a. If an applicant has been convicted, pled guilty, or pled nolo contendere to an offense listed in S.C. Code Ann. § 63-7-2350 the application must be denied. The

applicant will be provided an opportunity to withdraw the application before a denial letter is mailed.

b. If criminal offenses other than those listed in S.C. Code Ann. § 63-7-2350 are listed on background checks for an applicant or household member, the Initial Foster Home Licensing Program Manager for the applicant's county of residence must be consulted and give approval to continue the application process.

   i. The Regional Director will consider on a case-by-case basis the suitability of the home for fostering.  The decision will be made based in part on these situations:

      1. the nature of the offense and what the offense suggests about whether or not the individual should be providing services/care to foster children;

      2. the length of time that has elapsed since the conviction;

      3. the individual's life experiences indicating reform or rehabilitation during the ensuing period of time; and

      4. the potential impact which the behavior that resulted in the conviction might have on the individual's fitness and ability to serve as a foster parent.

   ii. The Initial Foster Home Licensing Program manager will provide the Initial Licensing Coordinator and Supervisor his/her decision in writing.

c. The State Office Initial Licensing Supervisor shall document the results in the CAPSS.

**DOCUMENTATION:**
- Copy of initial application
- Contacts with applicants
- Results of background checks & registry searches
- Correspondence with out-of-state agencies regarding registry checks (if applicable)

**COLLABORATION:**
- SC Foster Parent Association/Heartfelt Calling
- Initial Licensing Coordinator/Supervisor
- Human Services Regional Director
- Office of General Counsel
- Office of Investigations
- FBI/SLED

- SCDSS Division of Human Services, Central Registry of Abuse and Neglect □ Fingerprinting Agency

**REFERENCES:**

**Legal Citations:**

Multi-Ethnic Placement Act & Interethnic Adoption Provisions

- 42 U.S.C.A. § 671(a)(18): general mandates
- 42 U.S.C.A. § 622(b)(7): diligent recruitment
- 42 U.S.C.A. § 674 & 45 C.F.R. § 1355.38: enforcement
- 42 U.S.C.A. § 1996b: Title VI violation
- 42 U.S.C.A. § 2000a et seq.: Title VI of the Civil Rights Act The Americans with Disabilities Act
- 29 U.S.C.A. § 794: Section 504 of the Rehabilitation Act of 1973
- 29 U.S.C.A. § 705(20)-(21): Section 504 definition of disability
- 42 U.S.C.A. § 12102: ADA definition of disability
- 42 U.S.C.A. § 12103: ADA definition of auxiliary aids and services
- 42 U.S.C.A. §§ 12131-12134: ADA Title II, Public Services
- 42 U.S.C.A. §§ 12181-12189: ADA Title III, Public Accommodations
- 28 C.F.R. § 35.101 et seq.: ADA Title II regulations
- 28 C.F.R. § 36.101 et seq.: ADA Title IV regulations
- 28 C.F.R. § 42.501 et seq.: Section 504 DOJ regulations
- 45 C.F.R. § 84.1 et seq.: Section 504 DHHS regulations

42 U.S.C.A. § 671(a)(20): background check requirements, databases, and registries

45 C.F.R. § 1356.30: background check requirements

S.C. Code Ann. § 63-7-2340: fingerprinting

S.C. Code Ann. § 63-7-2345: payment of FBI fingerprinting

S.C. Code Ann. § 63-7-2350: restrictions (child abuse, certain crimes)

S.C. Code Ann. § 63-7-2360: minor sex offenders in the home

S.C. Code Ann. § 63-11-70: background checks, pardons

**Forms:**

DSS Form 1574: Medical Report for Prospective Foster/Adoptive Parents

DSS Form 3072: Consent to Release Information

DSS Form 30102: Medical Statement for Household Members

DSS Form 30202: Medical Statement for Child

Preparing for your DHEC Inspection

**Practice Guidance:**

**REVISION COMMENTS:**

**South Carolina Department of Social Services Human Services Policy and Procedure Manual**

**CHAPTER 7, Foster Family Licensing & Support**
Revision Number: 16-01
Review Date: 07-21-2016                   Effective Date: 07-21-2106              Revised: 06-06-2019

---

### 741. Foster Family Initial Licensing Assessment

**PURPOSE STATEMENT:**

The agency is committed to providing a thorough but efficient licensing process that promotes both the wellbeing of foster children and the retention of prospective families. This section sets forth the policies and procedures governing the contacts and assessments by which Regional Initial Licensing Coordinators evaluate prospective families.

**POLICY:**

No individual shall be denied the opportunity to become a foster or adoptive parent on the basis of race, color, national origin, religion, state of residence, age, disability, political belief, sex, or sexual orientation. Neither of these opportunities shall be delayed on the above bases. All recruitment materials must inform potential foster or adoptive applicants that DSS is prohibited from delaying or denying such opportunities on the above bases. Further, applicants will not be required or requested to complete family assessments related to or based on the race, color, or national origin of the foster parent applicant or any potential foster children.

1. All prospective foster parents with disabilities shall be given full and equal opportunities to become foster parents and shall be entitled to individualized treatment. If necessary to facilitate a full and equal opportunity, foster parents with disabilities shall be entitled to auxiliary aids and services.

2. A decision regarding each application for a license will be made within 120 days of the date an application is signed by the applicant family.  If SCDSS or the child placing agency has requested information that has not been received within 120 days, then the decision is delayed pending receipt of all information.

3. Applicants may choose to be licensed for regular foster care, therapeutic foster care, or to be approved as an adoptive resource.  Regular foster home initial licensing assessments are completed by SCDSS Regional Initial Licensing Coordinators.  If the prospective family is interested in being approved to adopt or to foster and adopt, a SCDSS Regional Adoptions Specialist will conduct the process (see Chapter 6: Adoption

& Birth Parent Services). Third-party providers contracted by SCDSS shall recruit, assess, train, and manage licensed homes to provide therapeutic foster care.

4. Requests accepted from non-DSS agencies should be limited to other agencies that do not have their own licensing staff. Requests from other state agencies with licensing capabilities and from licensed child placing agencies should not be accepted.

5. Each foster parent applicant and household member age 18 or older require a search of the SC Central Registry of Child Abuse and Neglect and the equivalent registry system in each state of residence for the 5 years preceding application for licensure.  Persons found listed on such a registry are not eligible for licensure or to share a residence with a foster child.  Inquiries by other states regarding SC Central Registry checks should be referred to the SCDSS State Office for fulfillment.

6. SC Central Registry checks are required for non-licensed childcare providers and babysitters who provide regular and/or full time care for foster children.  Persons found listed on the Central Registry may not provide care for a foster child.

7. Each foster parent applicant and household member age 18 and older require a search of the National Sex Offender Registry.  Inclusion on the registry of anyone in the home prohibits licensure.

8. Individuals who provide informal routine care or unlicensed child care must be screened against the National Sex Offender Registry. Care for foster children cannot be provided by an individual listed on the registry.

9. Fire and Safety, as well as Health and Sanitation, Inspections by appropriate state agencies are required to confirm that a home environment is suitable and safe for the placement of children.

10. Each foster parent applicant is required to participate in a pre-service training approved by the Department.

11. Foster families shall have a disaster preparedness plan in place as a prerequisite to initial licensure and for all renewals thereafter. Such a plan shall include the following topics:

    a. flexible and appropriate responses to various scenarios and locations in which to seek emergency shelter;

    b. additional considerations for medically fragile children;

    c. plans for compliance with mandatory evacuation orders; and

    d. identification of an approved local shelter or, if plan is to evacuate to a residence, steps for ensuring child safety and continued communication with DSS.

12. All foster family applicants shall be required to demonstrate values and standards conducive to the well-being and development of a child. These standards shall include

the use of the reasonable and prudent parent standard (see Section 760.3: Reasonable and Prudent Parenting).

13. For the Standards of Care expected of foster families, see Section 720: Standards of Care.

**PROCEDURES:**

1. After all background checks on applicants and household members have been received and show no history that would prevent licensing, the State Office Initial Licensing Supervisor (ILS) assigns the case to an Initial Licensing Coordinator (ILC) for processing.

2. The ILC will conduct a minimum of two in-home visits to adequately assess and interview the family. The ILC should expect to conduct additional visits and numerous phone calls with the family in order to collect the information necessary to determine the suitability and quality of the home prior to recommendation of licensure. Each contact with the family is an opportunity to observe behaviors, situations, and environments that will lend to the decision to license.

3. All contacts with the applicant family and other persons relative to the application should be documented in the CAPSS License screen using dictation action codes appropriate for the contact.

4. **The Initial Phone Call/ Contact**

   a. The ILC shall contact the family upon assignment to schedule the first home visit, which shall occur within 10 days of the receipt of the intake form by the State Office Initial Licensing Unit.

      i. The preferred method of contact is a telephone call. If there is no answer, a message should be left on the applicant's voice mail and an email and/or text message should be sent.

      ii. If there is no response within 2 business days, the ILC should follow the same protocol in trying to reach the applicant.

      iii. The ILC will staff with his or her supervisor if there is no response to any of the above contact attempts or if some or all of the means of reaching the applicant are not available.

      iv. If, after 10 days, there has been no response, the ILC will mail a letter to the applicant stating there has been no contact and that the intake is being suspended.

      v. Efforts to reach an applicant should be documented in the CAPSS.

b. During the initial phone call with the applicant, the ILC shall confirm that the family received information and forms from SCFPA/Heartfelt Calling (Babysitter Form, DSS 1573, DSS 1574, DSS 30102, DSS 30202, Fire Marshal Regulations, and DHEC Inspection information).

    i. Details of the information packet should be iterated and clarified.

    ii. If no packet was received, the ILC shall email a packet prior to the Initial Home Visit (IHV) if there will be sufficient time for the family to review the documents.  If the IHV will take place the same day of the telephone contact, the ILC will hand deliver and review the documents during the visit.

    iii. The IHV appointment to include all household members shall be set to occur within 10 days of the receipt of the application at State Office.

    iv. The applicant shall be made aware that a minimum of one family interview and one interview per household member age 6 and older is required during the licensing process.

    v. The visit must be scheduled to meet the needs and availability of the family.

    vi. If the visit cannot be accomplished within the 10-day time frame, the ILC should consult with his or her supervisor and document the reasons in CAPSS.

c. The initial phone call serves as a preliminary assessment of the motivation and interest of the prospective foster family.  It is appropriate to remind the applicant of the licensing process and what can be expected post-placement of a foster child.

d. The name and mailing addresses of three references for the family shall be obtained during the initial phone call. References should be familiar with the family's suitability for fostering but should not be a family member of the applicants.

e. The phone call shall be documented in the CAPSS.

f. Requests for letters of reference shall be mailed to the individuals whose names and addresses were given by the applicant.  The mailing should be documented in the CAPSS.

**5. The Initial Home Visit**

a. The ILC shall perform the initial home visit, which shall include at least the following actions:

i.    explaining to the family the licensing process (including 14-hour preservice training requirement), expectations of providing foster care, and the Standards of Care found in the S.C. Code of Regulations;

ii.    assessing the family's suitability for fostering through observing (or reviewing evidence of) and making note of these positive parenting characteristics:

1. ability to care about others and be responsible for them;

2. ability to appropriately express affection;

3. enjoyment in the parental role;

4. ability to care for a child, including use of appropriate discipline, and meet that child's needs without expecting immediate appreciation and response from the child;

5. a satisfactory and stable marriage or committed relationship (for applicant couples);

6. maintenance of appropriate relationships with other family members and with the community;

7. stability, maturity, and functioning;

8. ability to be flexible in expectations and attitudes in helping meet a child's needs and in addressing a child's problems;

9. ability to request and use assistance when needed to deal with problems in the family;

10. ability to accept and support the child's relationship and reunification with biological family;

11. ability to cooperate and appropriately work with the department and staff on behalf of the child and the child's best interest and willingness to accommodate the monthly contacts or interviews from department staff as required by statute;

12. ability to accept the concepts of family preservation and reunification as the goals of most foster care placements;

13. demonstration of values and standards (including reasonable and prudent parenting as defined in Section 733.2) conducive to the well-being and development of a child;

14. knowledge of the needs of children;

15. capability to meet the needs of foster children and provide adequate foster care services;

16. capability to handle an emergency situation;

17. ability to provide all relevant and factual information to the agency in a timely manner;

18. willingness to learn more about caring for foster children through participation in training;

19. ability to accept moving a child into an adoptive home if appropriate;  and

20. ability to work with other professionals working with the child and the child's parents/family;

iii.  assessing the family's suitability for fostering by observing (or reviewing evidence of) and making note of these questionable or problematic traits:

1. instability with personal relationships (may be demonstrated through multiple marriages/divorces or multiple short-term partners);

2. background on applicant's family of origin includes report of child or adult abuse/neglect, parental substance abuse, etc.;

3. lack of involvement with the local community;

4. evidence of possible substance abuse, including alcohol or drugs and/or history of treatment for an addictive disease;

   a. If this is indicated, applicants may be licensed only after consultation with the appropriate therapist or physician to obtain a history of rehabilitation and to assess potential effects on the ability to care for children.

   b. Applicants shall be required to execute the necessary releases.

5. lack of support by any family member for the placement of a foster child;

6. statements or other indications that the applicant is primarily seeking to meet his/her own needs rather than the foster child's (e.g., "I've always wanted a girl", "My child needs a playmate", or "Our children are grown and we're lonely");

7. reluctance to share pertinent information;

8. biological children from a former marriage live with ex-spouse and non-custodial parent has limited/no contact with them or provides no support for them or there is visitation between the non-custodial parent and his/her children which may present a

problem concerning sleeping arrangements when the biological children visit overnight or for an extended period;

9. income is not sufficient enough to confirm that a board payment would not be the primary source of income or is needed for meeting routine household expenses

10. previous or current placement of biological child(ren) in substitute care, with relative, or for adoption;

11. residence is in a subsidized housing project which may be jeopardized by an increase in household members;

12. family demonstrates ongoing lack of understanding about the purpose of the foster care program, developmental skills and needs of children, dynamics of child abuse and neglect, etc. (e.g., continues to express a desire to "save" the children from their parents, does not express a desire to adopt but wants to keep children only on a long-term or permanent basis);

13. applicant or household member has a history of mental illness or other health concerns that may have an adverse impact on their ability to provide care for children;

14. applicant or household member has been pardoned for a crime listed in S.C. Code Ann. § 63-7-2350;

15. applicant or household member has convictions other than those listed in S.C. Code Ann. § 63-7-2350;

16. references are all from out-of-state sources (even though the applicant has lived in South Carolina three years or more) or the references have a limited view of the applicant and family;

17. evidence of estranged relationships with adult children or other family members;

18. applicant uses corporal punishment to correct his or her own children and is unwilling to consider alternative forms of discipline for foster children;

iv.    securing applicant signatures on the following forms (assisting/ clarifying as needed to complete):   1. Intake and Application for Services;

2. Consent to Release Information;

3. Babysitter Information;

4. Family Disaster Preparedness Plan; and

5. Family History;

v.    obtaining copies of the following documents:

1.  Certified Birth Certificates of all household members (original must have been issued by the state/territory/country of birth);

2.  Social Security cards of household members;

3.  marriage license of applicants (if applicable);

4.  Divorce Decree and Complaint for Divorce (as applicable)(if no decree or complaint is available from the state/ territory/ country issuing the divorce, a statement on letterhead from the issuing authority must be submitted with the reason for the lack of record);

5.  Military Discharge (if applicable);

6.  Driver's Licenses of all drivers in the household; and

7.  pet vaccination records (only required for dogs, cats, and ferrets);

vi.    reviewing the medical forms and recording dates and with whom the assessments are scheduled; tuberculosis testing is required for all adults in the household);

1.    All applicants must have recent (conducted within the prior 12 months) physical exams from a licensed health care professional that indicate that the applicants are capable of caring for an additional child or children.

2.    All household members must disclose current mental health and/or substance abuse issues.

3.    All household members must provide information on their physical and mental health history, including any history of drug or alcohol abuse or treatment.

4.    The Department may require further documentation and/or evaluation to determine the suitability of the home.

5.    All children who are household members must be up to date on immunizations consistent with the recommendations of the American Academy of Pediatrics (AAP), the Advisory Committee on Immunization Practices of the Centers for Disease Control and Prevention (ACIP), and the American Academy of Family Physicians (AAFP), unless the immunization is contrary to the child's health as documented by a licensed health care professional.

6.    All household members who will be caregivers of infants must have an up-to-date pertussis (whooping cough) vaccine consistent with the recommendations of the ACIP, unless the immunization is contrary

to the individual's health as documented by a licensed health care professional.

7. All household members who will be caregivers of infants and children with special medical needs must have an up-to-date annual influenza vaccine consistent with the recommendations of the ACIP, unless the immunization is contrary to the individual's health as documented by a licensed health care professional.

vii. reviewing the financial form, resolving any "blank" spaces or discrepancies, and calculating the totals by using the income verification documents provided by the family (if providing bank deposit statements as verification, the statement must clearly show the source/origin of deposits to be counted as income);

viii. noting the date of pre-service training for which the applicants are enrolled;

ix. beginning the Foster Parent Autobiography;

x. beginning the interview process with household members and children to gauge commitment and understanding of fostering;

xi. taking pictures of the home (inside and out) and family;

xii. walking through the home to assess space available for family and foster children;

xiii. inspecting firearm and ammunition storage; xiv. observing potential barriers to successful fire/safety or health/sanitation inspections and making recommendations to amend prior to the inspection;

xv. verifying when the home was built and the source of water for the home;

xvi. creating with or providing instructions to the family on drawing a home floor plan; and

xvii. setting a date for the second home visit and possible dates for fire/safety health/sanitation inspections (second home visit will be within 45 days of the first).

b. The ILC shall document the visit details (including but not limited to who was present/interviewed, date/time of visit, as well as particular questions or concerns from the family) in the CAPSS.

6. **Requests for Inspections**

a. Within 3 business days of the IHV, the ILC will request inspections.

i. Fire and safety inspections are requested via the State Fire Marshal website, http://scfiremarshal.llronline.com/. To request an inspection, the ILC shall:

1. under the heading "Programs," choose Code Enforcement or Inspection Services;

2. from the list "Documents/Online Submissions," choose Inspection Requests;

3. in the login box provided, type America;

4. complete the form and submit (and note the entry is requested for initial license inspection);

5. print copy of referral for records;

6. confirm contact by a deputy marshal at a later date to schedule a date for the inspection;

7. document the request date in the CAPSS. ii. Health and sanitation inspections are requested via email to fosterhomes@dhec.sc.gov.

1. The Health Inspection report will include reference to the lead substance level in homes built prior to 1978 unless the applicant has specified that a child under the age of 6 will not be accepted for placement in the home.

2. The ILC shall document the request date in the CAPSS using the dictation codes Health Inspection and Correspondence.

**7. Intermediate Documentation & Review**

a. The ILC shall begin writing the Foster Family Assessment Summary and Outline (home study) as soon as possible and should not wait on all documents, references, and/or interviews to be finalized.  The home study can be amended or updated as new information is learned and prior to submission to supervisor. The ILC shall document the work done in writing the home study in the CAPSS.

b. Using the Licensing Requirement Checklist, the ILC shall review and note the receipt of collateral information, reports, or forms.  The ILC shall document the date of receipt/review in the CAPSS.

c. The ILC shall discuss the family and information gathered about the potential license as needed or requested with supervisor.  The ILC shall document formal and informal conversations with supervisor in CAPSS.

d. The ILC shall receive and review the notes from the pre-service training facilitator.  The ILC shall document the date of receipt/review in CAPSS.

8. **The Second Visit & Subsequent Follow-up Visits**

    a. Within 45 days of the initial home visit, the ILC will conduct a second visit with the family to accomplish the following:

        i. determining the status of the fire/safety/health/sanitation inspections, if deficiencies were found, the resolution to any deficiencies, and the dates, if any, of re-inspection;

        ii. verifying attendance at past or upcoming pre-service training and evaluating applicants' knowledge gained from training;

        iii. reminding about the licensing process and remaining steps toward completion;

        iv. gathering information/documentation that has not already been submitted;

        v. completing the Foster Parent Autobiography for each applicant and obtaining signatures;

        vi. asking follow-up questions to fully complete the Assessment (Home) Study Outline; vii. discussing the importance of appropriate discipline for children who've been abused or neglected and have applicant's sign Discipline Agreement; viii. reviewing the Child Factors Checklist with applicants and providing information as needed prior to obtaining their input and signatures;

        ix. verifying any plans for child care and noting the caregiver, explaining to the applicants that an unlicensed provider must be interviewed and have background checks completed;

        x. giving information about ABC vouchers and providing information about the process to have them issued;

        xi. explaining foster care board payments and reporting to SNAP/TANF (which may affect any current benefits received by family); xii. obtaining signatures on the request for Foster Home Licensing;

        xiii. advising the applicants that follow-up information may be requested from family or collateral contacts before license is denied or approved;

    b. The visit details (including but not limited to who was present/interviewed, date/time of visit, as well as particular questions or concerns from family) shall be documented in the CAPSS.

9. **Final Draft & Submission of Home Study**

a. Within 5 days of the final home visit, the complete and thorough home study (using the Assessment Study Outline) should be written, checked for accuracy, and prepared for submission. The ILC shall document the efforts to complete the home study in CAPSS.

b. The ILC shall review the packet for content and completeness using the Licensing Requirement Checklist and shall submit the packet to the ILC's supervisor for final review for licensure or denial.  The ILC shall document the submission of the packet in CAPSS.

c. Once the licensing packet has been submitted, the supervisor shall review it for accuracy, coherence, consistency and suitability for licensing.  See Section 742: Application Determination for application determination policy and procedures.

**10.** Throughout the licensing process, the Initial Licensing Supervisor should be consulted as necessary to clarify procedures and information received.

**Special Considerations:**

1. For the purposes of licensing interviews and assessment, an individual who spends significant amounts of time (as defined by SCDSS or the child placing agency) in an applicant's household can be considered a household member.

2. TB tests can be contra-indicated for individuals who have had the condition in the past.  In these situations, a chest x-ray may be recommended by the applicant's physician.

3. When an applicant appears in CAPSS but not as a Central Registry entry, the case must not be considered if seven or more years have elapsed between the closure of the case and the application for foster home licensing.

**DOCUMENTATION:**

- Contacts and attempted contacts with prospective foster family
- Detailed summaries of each visit
- Copies of requests for inspections
- Copy of completed home study
- Copies of all supporting documentation
- Work completed in writing home study
- Date of submission of home study

**COLLABORATION:**

- Initial Licensing Coordinator
- Initial Licensing Supervisor
- Office of General Counsel
- Office of Investigations
- FBI/SLED
- DHEC
- SCDSS Division of Human Services, Central Registry of Abuse and Neglect

**REFERENCES:**

**Legal Citations:**

Multi-Ethnic Placement Act & Interethnic Adoption Provisions

- 42 U.S.C.A. § 671(a)(18): general mandates
- 42 U.S.C.A. § 622(b)(7): diligent recruitment
- 42 U.S.C.A. § 674 & 45 C.F.R. § 1355.38: enforcement
- 42 U.S.C.A. § 1996b: Title VI violation
- 42 U.S.C.A. § 2000a et seq.: Title VI of the Civil Rights Act The Americans with Disabilities Act
- 29 U.S.C.A. § 794: Section 504 of the Rehabilitation Act of 1973
- 29 U.S.C.A. § 705(20)-(21): Section 504 definition of disability
- 42 U.S.C.A. § 12102: ADA definition of disability
- 42 U.S.C.A. § 12103: ADA definition of auxiliary aids and services
- 42 U.S.C.A. §§ 12131-12134: ADA Title II, Public Services
- 42 U.S.C.A. §§ 12181-12189: ADA Title III, Public Accommodations
- 28 C.F.R. § 35.101 et seq.: ADA Title II regulations
- 28 C.F.R. § 36.101 et seq.: ADA Title IV regulations
- 28 C.F.R. § 42.501 et seq.: Section 504 DOJ regulations
- 45 C.F.R. § 84.1 et seq.: Section 504 DHHS regulations

42 U.S.C.A. § 671(a)(10): licensing standards, RPP requirements

42 U.S.C.A. § 671(a)(20): background check requirements, databases, and registries

45 C.F.R. § 1356.30: background check requirements

S.C. Code Ann. § 63-7-2340: fingerprinting

S.C. Code Ann. § 63-7-2345: payment of FBI fingerprinting

S.C. Code Ann. § 63-7-2350: restrictions (child abuse, certain crimes)

S.C. Code Ann. § 63-7-2360: minor sex offenders in the home

S.C. Code Ann. § 63-11-70: background checks; pardons

S.C. Code Reg. § 114-550: licensing regulations

**Tools:**

SC DSS Foster Family Assessment Summary & Outline

Licensing Requirements Checklist

**Forms:**

DSS Form 30246: Foster/Adoptive Family Disaster Plan

**Practice Guidance:**

**REVISION COMMENTS:**

**South Carolina Department of Social Services Human Services Policy and Procedure Manual**

**CHAPTER 7, Foster Family Licensing & Support**
Revision Number: 16-01
Review Date: 07-21-2016                                    Effective Date: 07-21-2016

---

### 741.1 Licensure of Kinship Foster Families

**PURPOSE STATEMENT:**

Placement with a child's biological family members, adoptive family members, or other kin can provide a source of stability and security during the child's time in foster care and can minimize the trauma of removal. Such placement can occur (1) prior to foster care placement through safety planning, (2) during foster care placement through licensing of such homes, or (3) as a form of discharge from foster care through adoption or guardianship. This section sets forth the policies and procedures for licensing kinship caregivers as placements during a child's stay in foster care.

**POLICY:**

1. When a child has been removed from his or her home and is in the care, custody, or guardianship of the agency, the agency shall first attempt to identify kin who would be appropriate for placement before seeking other foster placement alternatives.

2. When placing a foster child with kin or when DSS is contacted by a person interested in becoming a kinship caregiver for a specific foster child, it is the responsibility of the agency to inform the prospective kinship caregiver that he or she may apply to become licensed as a foster parent and may be entitled to payments and services upon licensure.

3. The agency will assist kinship caregivers with the application for license process.

4. If the prospective kinship caregiver is licensed by the agency to provide foster care services and placement is made, he or she may receive payment of the full foster care rate for the care of the child and any other benefits that might be available to foster parents, whether in money or in services

5. The agency shall give preference to the kinship caregiver over a non-related placement.

6. An expedited assessment must be completed for those situations in which the court has ordered a child into an unlicensed relative's home.

7. The agency will continue to make efforts to finalize legal permanency for children placed in kinship foster families, and will educate kinship foster families on an ongoing basis regarding the mechanisms available to finalize legal permanency.

**PROCEDURES:**

1. For identification and engagement of kinship caregivers, see Section 510.3: Diligent Searches, Family Engagement, & Visitation.

2. For assessment and licensure of kinship caregivers, see Section 740 et seq. Kinship caregivers shall be licensed and managed in the same manner as are other foster families, with the exception of waivers of non-safety standards on a case-by-case basis.

3. If the Family Court orders that a child is to be placed in an unlicensed relative's home:
   a. the child's Foster Care/IFCCS Worker shall coordinate with the DSS Attorney to ensure that:
      i. the court is aware of DSS's policy requiring foster children to be in licensed placements;
      ii. the court order contains language giving the agency the authority to remove the child in the event that the agency finds that it is contrary to the welfare of the child to remain in the home;
      iii. the court order reflects that the agency objected to the child being placed in an unlicensed placement.
   b. the child's Foster Care/IFCCS Worker shall arrange for an expedited assessment to be completed.
   c. if a kinship caregiver does not wish to become licensed, CPS Staff shall complete assessments of the home as set forth in Chapter 2: Intake & Investigation.

**DOCUMENTATION:**
- Contacts with kinship foster family
- Correspondence with agency staff and other professionals
- Copy of home study
- If applicable, copy of court order placing child in unlicensed home

**COLLABORATION:**
- Initial Licensing Coordinator & Supervisor

- Foster Family and Licensing Support Coordinator & Supervisor
- Foster Care/IFCCS Worker & Supervisor
- DSS Attorney
- Family Court

**REFERENCES:**

**Legal Citations:**

42 U.S.C.A. § 671(a)(19): relative preference

S.C. Code Ann. § 63-7-730: expedited placement of a child with a relative

S.C. Code Ann. § 63-7-2320: kinship foster care

S.C. Code Ann. § 63-7-2330: relative foster care

**Tools:**

**Forms:**

**Practice Guidance:**

**REVISION COMMENTS:**

**South Carolina Department of Social Services Human Services Policy and Procedure Manual**

**CHAPTER 7, Foster Family Licensing & Support**
Revision Number: 16-01
Review Date: 07-21-2016                                      Effective Date: 07-21-2016

---

### 741.2 Licensure of Agency Staff

**PURPOSE STATEMENT:**

The agency is committed to providing agency personnel the opportunity to become foster families, but recognizes that extra precautions must be taken to avoid conflicts of interest and other ethical violations. Accordingly, this section sets forth the policies and procedures to be adhered to when licensing agency employees.

**POLICY:**

1. Agency employees are prohibited from engaging in activities considered to be a conflict of interest or exhibiting conduct unbecoming of a state employee by influencing or using pressure tactics during the licensure process. Regardless of whether a particular act is specifically prohibited, an employee has an obligation to avoid any act that is unethical or creates the appearance of impropriety.

2. Current or former DSS employees, including front line case workers, supervisors, program managers, administrators, and directors involved in direct services may not become a foster placement for a child who is or has been on their case load; nor may they become a foster placement for a child if they have ever had supervisory or oversight responsibility over an employee who has had a professional relationship with the child, except under such circumstances as are outlined below.

3. Current or former DSS employees in non-direct services may become a foster placement for a child with whom they have or have had a professional relationship, or whom they personally know or whom they become aware of as a result of their employment, except under such circumstances as are outlined below. Non-direct service employees who have access to information on children and families include members of the senior staff and all program managers, staff in the Division of Child Welfare Services, staff in the Division of Human Resources, and staff in the SCDSS Office of the General Counsel.

4. In rare circumstances where it has been determined that all efforts to place a child have been exhausted and it has been determined that a foster home is unlikely to be identified that is in the best interests of a child known to an employee, the employee who wants to become a foster placement for that specific child may apply for licensure as a foster parent with the approval of the State Director or their designee. An office not located in the employee's region shall handle the licensure process.

5. In the event an employee becomes licensed and is based in a county office, that county may not place a child in the employee's home.  For placement purposes, "county" includes Intensive Foster Care and Clinical Services staff if managing a child with/for the county of the licensed employee.

## PROCEDURES:

1. The intake and background checks for agency employees shall be conducted as set forth in Section 740.

2. The Initial Licensing Supervisor shall assign the application to regional staff who are not housed in the same county office or region as the applicant. Such staff shall not include any individuals who have a relationship with the employee, either personal or professional.

3. The Initial Licensing Supervisor shall inform the Regional and County Directors (when applicant is employed in a county) of the application and the Initial Licensing Coordinator assignment.  The ILS shall notify the appropriate manager or supervisor when the applicant is employed by a State Office program area.

4. Once the application has been appropriately signed, the process shall proceed as set forth in Section 741 et seq.

## DOCUMENTATION:

- Contacts with prospective foster family
- Correspondence with agency staff and other professionals
- Copy of home study and supporting documents
- If licensure is to be child-specific, determination that all efforts to place a child have been exhausted and it has been determined that a foster home is unlikely to be identified that is in the best interests of the child

**COLLABORATION:**

- Initial Licensing Worker & Supervisor
- Regional and/or County Director
- State Office Management
- State Director or Designee

**REFERENCES:**

**Legal Citations:**

Human Resources Policy and Procedure Manual Sections 108, 117, 402, and 408

**Tools:**

**Forms:**

**Practice Guidance:**

**REVISION COMMENTS:**

**South Carolina Department of Social Services Human Services Policy and Procedure Manual**

**CHAPTER 7, Foster Family Licensing & Support**
Revision Number: 16-01
Review Date: 07-21-2016                                     Effective Date: 07-21-2016

---

### 742. Application Determination

**PURPOSE STATEMENT:**

The final determination whether to license a prospective foster family should be made impartially and consistently, with sole and thorough attention being given to the family's ability to perform the responsibilities of foster parenting. Accordingly, this section lays out the policies and procedures that shall govern this decision-making process and, if applicable, the issuance of the license.

**POLICY:**

1. A license shall be issued to qualifying foster family applicants within 120 days of the receipt of the intake form.  If, despite all efforts by the SCDSS, the license determination has not been made, explicit documentation must be entered into the CAPSS record detailing the reasons.

2. A license will not be issued if, after notification of and assistance to resolve identified problems:

    a. licensing requirements are not met;

    b. standards of care are not or cannot be maintained; or

    c. the agency determines that it would be detrimental to place children in the home.

3. No individual shall be denied the opportunity to become a foster or adoptive parent solely on the basis of race, color, national origin, religion, state of residence, age, disability, political belief, sex, or sexual orientation. Neither of these opportunities shall be delayed on the above bases.

4. All prospective foster parents with disabilities shall be given full and equal opportunities to become foster parents and shall be entitled to individualized treatment. If necessary to facilitate a full and equal opportunity, foster parents with disabilities shall be entitled to auxiliary aids and services.

**PROCEDURES:**

1. **Determination & Approval**

   a. As soon as possible after the submission of the completed home study the ILC and ILS will staff the case and discuss the recommendations of the ILC.

   b. The ILC will recommend foster parent applicants:

      i. who meet licensing requirements;

      ii. who are able to meet and maintain the Standards of Care (see Section 720); iii.        who can undertake and effectively perform the responsibilities of foster parenting; and

      iv. who can work and advocate with the SCDSS and other agencies on behalf of foster children placed in their homes.

   c. The ILC will not recommend foster parent applicants:

      i. who have a substantiated history of child abuse or neglect;

      ii. who have a household member with a substantiated history of child abuse or neglect;

      iii. who have been convicted, pled guilty, or pled nolo contendere to an offense identified in SC Code Ann. § 60-7-2350;

      iv. who have a household member who has been convicted, pled guilty, or pled nolo contendere to an offense identified in SC Code Ann. § 60-7-2350;

      v. who have been pardoned for a crime listed in S.C. Code Ann. § 60-7-2350 and a review of the applicant's pardoned convictions, pleas, and circumstances lead to a determination that the applicant is unfit;

      vi. who have a household member who has been pardoned for a crime listed in S.C. Code Ann. § 60-7-2350 and a review of the individual's pardoned convictions, pleas, and circumstances lead to a determination that the individual is unfit;

      vii. who have been convicted in the previous five years of a felony involving physical assault, battery, or a drug-related offense;

      viii. who are listed on the National Sex Offender Public Website;

      ix. who have a household member (including minors) who are listed on the National Sex Offender Public Website;

      x. when fire inspection report contains deficiencies that have not been or cannot be corrected;

xi.    when the completed assessment indicates that the applicant lacks or fails to demonstrate one or more parenting characteristics;

xii.   when the medical report for an applicant or another household member does not recommend approval of the person to provide care for foster children. If the agency disagrees with a recommendation, then the agency may request a second opinion. DSS as the licensing agency has the authority to review recommendations and may disagree with conclusions regarding an ability to serve as a caretaker;

xiii.  when an applicant or household member has a criminal history that has been reviewed and the application subsequently denied by the Agency;

xiv.   when a completed assessment indicates the applicant(s) lacks or fails to maintain Standards of Care (see Section 720);

xv.    when the applicant is notified and assisted regarding identified problems, but fails to take action or meet licensing requirements.

**2.** .

a.   If the ILC cannot recommend the applicant to be licensed, the file and CAPSS record should contain documentation that the ILC discussed potential barriers with the family and (1) that discussion with the family resulted in a written confirmation of withdrawal or (2) if resolution was not possible and the family did not choose to voluntarily withdraw.

b.   The ILC shall explain the agency's decision to the applicant.  If the application is denied, the ILC shall prepare a letter denying the application that explains the right to appeal. Before sending the letter to the family, the ILC shall forward the letter to the Office of General Counsel for review prior to the State Director or designee signing the letter. If the applicant is interested in appealing the decision, the procedures listed in Section 780 are to be followed.

c.   If a license is to be issued, the ILC shall notify the Program Coordinator of the Regional Foster Family and Licensing Support unit who will have oversight of the licensed home for initiation of visits and support (see Section 760.1 for policies and procedures related to initial and ongoing contacts).

d.   All updates and documentation shall be made in CAPSS Licensing screen, including the status date and license expiration date.

3. **Withdrawal of an Application:** When an applicant requests that his or her request for licensing be withdrawn, the ILC shall:

    a. confirm that the applicant was not denied the opportunity to become a foster parent on the basis of race, color, national origin, religion, state of residence, age, disability, political belief, sex, or sexual orientation;

    b. discuss the reasons for the decision with the applicant and, if appropriate, attempt to resolve any identified problems or concerns;

    c. staff the withdrawal with the ILS;

    d. within 10 days of the request by the applicant, send a letter to the applicant stating the ILC's understanding of the reason for withdrawal;

    e. document in CAPSS all activities associated with the withdrawal.

**DOCUMENTATION:**
- Copies of assessment documentation
- Supporting information regarding application determination

**COLLABORATION:**
- Initial Licensing Coordinator
- Initial Licensing Supervisor
- Regional Director

**REFERENCES:**

**Legal Citations:**

Multi-Ethnic Placement Act & Interethnic Adoption Provisions
- 42 U.S.C.A. § 671(a)(18): general mandates
- 42 U.S.C.A. § 622(b)(7): diligent recruitment
- 42 U.S.C.A. § 674 & 45 C.F.R. § 1355.38: enforcement
- 42 U.S.C.A. § 1996b: Title VI violations
- 42 U.S.C.A. § 2000a et seq.: Title VI of the Civil Rights Act The Americans with Disabilities Act
- 29 U.S.C.A. § 794: Section 504 of the Rehabilitation Act of 1973
- 29 U.S.C.A. § 705(20)-(21): Section 504 definition of disability
- 42 U.S.C.A. § 12102: ADA definition of disability
- 42 U.S.C.A. § 12103: ADA definition of auxiliary aids and services
- 42 U.S.C.A. §§ 12131-12134: ADA Title II, Public Services

- 42 U.S.C.A. §§ 12181-12189: ADA Title III, Public Accommodations
- 28 C.F.R. § 35.101 et seq.: ADA Title II regulations
- 28 C.F.R. § 36.101 et seq.: ADA Title IV regulations
- 28 C.F.R. § 42.501 et seq.: Section 504 DOJ regulations
- 45 C.F.R. § 84.1 et seq.: Section 504 DHHS regulations

42 U.S.C.A. § 671(a)(10): licensing standards, RPP requirements

42 U.S.C.A. § 671(a)(20): background check requirements, databases, and registries

45 C.F.R. § 1356.30: background check requirements

S.C. Code Ann. § 63-7-2340: fingerprinting

S.C. Code Ann. § 63-7-2345: payment of FBI fingerprinting

S.C. Code Ann. § 63-7-2350: restrictions (child abuse, certain crimes)

S.C. Code Ann. § 63-7-2360: minor sex offenders in the home

S.C. Code Ann. § 63-11-70: background checks, pardons

**REVISION COMMENTS:**

**South Carolina Department of Social Services Human Services Policy and Procedure Manual**

**CHAPTER 7, Foster Family Licensing & Support**
Revision Number: 16-01
Review Date: 07-21-2016                                    Effective Date: 07-21-2016

---

**750. License Management**

**REVISION COMMENTS:**

**South Carolina Department of Social Services Human Services Policy and Procedure Manual**

**CHAPTER 7, Foster Family Licensing & Support**
Revision Number: 16-01
Review Date: 07-21-2016                                    Effective Date: 07-21-2016

---

## 750.1 Out of Home Abuse and Neglect (OHAN)

### PURPOSE STATEMENT:

The agency is committed to providing safe placements for children in foster care. This policy section seeks to further this goal through providing procedures for coordination between licensing, OHAN, and foster care personnel.

### POLICY:

1. If, at any time during which a child is in foster care, the agency receives an allegation that a child has been subjected to abuse or neglect by or in the child's current or former foster placement, the worker shall immediately make a report to the Out of Home Abuse and Neglect (OHAN) division.

2. If, at any time during which a child is in foster care, the agency receives an allegation of sexual abuse or other criminal violation involving the child, the agency shall notify local law enforcement within 24 hours.

3. The agency shall respond to all allegations made by a child while in foster care regarding abuse and neglect that occurred prior to the child's entry to foster care through the procedures described in Chapter 2: Intake and Investigations.

4. Licensing staff shall assist OHAN staff in all investigations and shall promptly revoke the license of any home against whom an allegation of abuse or neglect is indicated.

### PROCEDURES:

1. **Allegations of Abuse or Neglect**

   a. If, at any time during which a child is in foster care, the child or someone on the child's behalf discloses allegations of abuse or neglect occurring during a current or past placement, the Foster Family and Licensing Support Coordinator (FSC) shall immediately make a report to the OHAN division.

    b. If the report involves allegations of sexual abuse or other criminal violations involving the child, the worker shall notify, in writing, local law enforcement within 24 hours of the report.

**2. OHAN Investigations**

    a. The FSC assigned to the family shall participate with the investigation in the following ways:

        i. by cooperating with OHAN and CPS in implementing a safety plan, if necessary;

        ii. by cooperating with OHAN and CPS in the notification of the County Director, Foster Care/IFCCS Supervisor, and Foster Care/IFCCS Worker(s) for all children in the home of the allegation;

        iii. providing OHAN any information that is needed about the foster home or family, including any previous complaints or concerns;

        iv. allowing OHAN access to licensing files and records; and

        v. assisting OHAN with regulatory concerns that need to be addressed.

    b. If a child must be removed from the home at any point during the OHAN investigation, the FSC will coordinate with the Foster Care/IFCCS Worker to move the child to a safe and suitable placement.

**3. Follow-Up Procedures**

    a. If notification is received from OHAN that the allegations have been indicated, the FSC shall initiate procedures to revoke the foster home license.

    b. If the report is not indicated, the FSC shall follow up on any regulatory concerns identified during the investigation.

**DOCUMENTATION:**

- All contacts with child and family
- All correspondence with agency staff
- Copy of OHAN report or CPS Intake report

**COLLABORATION:**

- Foster Care/IFCCS Worker
- Foster Care/IFCCS Supervisor
- County Director or IFCCS Program Director
- Regional Director

- Regional Foster Family and Licensing Support Coordinator (FSC)
- OHAN Staff

**REFERENCES:**

**Legal Citations:**
S.C. Code Ann. § 63-7-310: mandated reporters
S.C. Code Ann. § 63-7-1210 thru 1230: OHAN investigation

**Tools:**

**Forms:**

**Practice Guidance:**

**REVISION COMMENTS:**

**South Carolina Department of Social Services Human Services Policy and Procedure Manual**

**CHAPTER 7, Foster Family Licensing & Support**
Revision Number: 16-01
Review Date: 07-21-2016                                    Effective Date: 07-21-2016

---

### 750.2 License Renewals

**PURPOSE STATEMENT:**

In order to monitor whether foster families are continuing to implement Standards of Care and whether such families have received adequate training, the agency shall require renewal procedures for all licensed homes on a biannual basis. This section sets forth the procedures for assessing a foster family home for renewal of their license.

**POLICY:**

1. Race, color, national origin, religion, state of residence, age, disability, political belief, sex, or sexual orientation shall not be considered in making a determination regarding the management of a foster family license. Further, culture may not be used as a proxy for these factors in making such a decision.

2. All activities associated with child specific recruitment, licensing, and placement for foster care must be in the best interest of the child. Routine consideration of race, color, or national origin can never be considered to be in the child's best interests.

3. All licenses issued to foster families shall be reassessed for renewal at least every two years.

4. The agency shall complete re-licensing studies of each foster home on a timely basis to assure that a foster child is not residing in an unlicensed placement and that foster care board payments are not jeopardized.

5. The re-licensing study shall not include impermissible references to race, color, national origin, religion, state of residence, age, disability, political belief, sex, or sexual orientation regarding children and/or foster parents.

6. The agency shall obtain updated background checks through fingerprinting in the following circumstances:

   a. a household member turns 18;

   b. a person 18 or older joins the household;

   c. current fingerprinting records on file are older than 10 years;

d.  agency staff deem such procedures to be necessary.

7.  Communications from or about foster families will be answered within 24 hours (or within the next business day) of receipt.

8.  For policies and procedures related to monitoring of homes through regular visits and contacts, see Section 760.1: Home Visits & Foster Family Contacts.

**PROCEDURES:**

1.  Over the course of the two years of licensure, the FSC shall accrue and document information related to training, household changes, moves, annual fire inspections, residents of the home, relationships with foster care workers, etc. which will be used at the review for renewal of the license.

2.  Fire inspections are to be conducted annually and the dates tracked in CAPSS.  At least 90 days prior to the annual inspection, a referral must be made as follows:

    a. The FSC shall request the Fire and Safety Inspection via the State Fire Marshal website (http://scfiremarshal.llronline.com/).

        i.     Under the heading "Programs," the FSC shall choose Code Enforcement or Inspection Services. ii.      From the list "Documents/Online Submissions," the FSC shall choose Inspection Requests.

        iii.    In the login box provided, the FSC shall type America.

        iv.    The FSC shall complete the form and submit (note the entry requested for license renewal) it online.

        v.     The FSC shall print a copy of the referral and place it in the licensing file.

    b. A deputy marshal shall contact the FSC to schedule a date for the inspection.

3.  At least ninety days prior to a license expiration, the FSC will inform the foster family of the impending date.  If the family voluntarily chooses to have the license expire, the FSC will determine the reason for the decision, staff the case with the FSC Supervisor, and complete the following actions, when applicable.

    a.  Families who express frustration or discontent with the Agency or who cannot cite a specific reason for their decision should be referred to the Director of Regional Foster Family and Licensing Support for an exit interview.

    b.  Parents who have not acquired sufficient training hours should be assisted in locating, registering, attending, and/or completing the required courses.

    c.  If a family has grown due to the adoption or birth of a child, they should be advised of possible waivers that may be available.  If the home lacks sufficient

space to accommodate foster children, the FSC shall inquire about the need for assistance to purchase furniture that would increase the availability of space, such as bunk beds.

d. Families who have not had any foster children in the home because of preference for pre-adoptive placements should be referred to the appropriate Regional Adoptions office.

e. In all instances of a license expiration with children placed in the home, the FSC shall notify the Foster Care/IFCCS Worker so that arrangements for placement can be made in advance of the expiration.

4. When the family and Agency are both in agreement that the license should be renewed, the FSC shall:

a. review quarterly visit notes and CAPSS to determine the number of training hours each parent has toward the relicensing requirement.  Parents who have not acquired sufficient training hours should be assisted in locating, registering, attending, and/or completing the required courses;

b. review quarterly visit notes and previous relicensing information to determine if collateral contacts with physicians, references, foster care workers, etc. should be made;

c. review CAPSS and the family's file to gather documentation from foster care workers, placement workers, transporters, and other DSS staff who have had contact with the family and evaluate the encounters and cooperation of foster family;

d. determine that the annual fire inspection has been completed or is scheduled;

e. schedule a home visit to take place with both foster parents at least 60 days prior to the license expiration date.  During the home visit, the FSC shall discuss issues included in the Foster Family Relicensing Assessment Summary and shall take appropriate notes;

f. request Central Registry, SLED, and Sex Offender Registry checks within 90 days of license expiration for all household members 18 and older, as well as Sex Offender Registry checks for household members 12 and older (all checks include any foster children in the home).  Household members who have turned 18 must also be scheduled for fingerprinting;

g. request updated medical reports for any household member who has been hospitalized during the previous licensing period or if the FSC has documented reasons for requesting a medical form, including biological children who turned

18 and require an adult medical form (adopted children may use medical reports obtained during the adoption proceedings);

   h. have the foster parents sign a new Disaster Preparedness Plan (in accordance with Section 760.7) and a new Discipline Agreement; and

   i. collect necessary documentation and notes and write a complete and thorough Foster Family Relicensing Assessment Summary.

5. The FSC shall staff the renewal packet with his or her supervisor at least 45 days before the license expiration date and obtain or amend documentation according to the resulting recommendations.

6. A license renewal must not be recommended in any of the following circumstances:

   a. a foster parent has a substantiated case of child abuse or neglect;

   b. a foster home has a household member with a substantiated history of child abuse or neglect;

   c. a foster parent has been convicted, pled guilty, or pled nolo contendere to an offense identified in S.C. Code Ann. § 60-7-2350;

   d. a foster home has a household member who has been convicted, pled guilty, or pled nolo contendere to an offense identified in S.C. Code Ann. § 60-7-2350;

   e. a foster parent has been pardoned for a crime listed in S.C. Code Ann. § 60-72350 and a review of the applicant's pardoned convictions, pleas, and the circumstances surrounding them determine the candidate is unfit;

   f. a foster home has a household member pardoned for a crime listed in S.C. Code Ann. § 60-7-2350 and a review of the applicant's pardoned convictions, pleas, and the circumstances surrounding them determine the candidate is unfit;

   g. a foster parent or household member has been convicted in the previous five years by a court of competent jurisdiction of a felony involving physical assault, battery, or a drug-related offense;

   h. a foster parent is listed on the National Sex Offender Public Website;

   i. a foster home has a household member (including minors) who is listed on the National Sex Offender Public Website;

   j. when the fire inspection report contains deficiencies that have not been or cannot be corrected;

   k. when the completed assessment indicates the applicant lacks or fails to demonstrate one or more parenting characteristics;

l.  when a medical report for a foster parent or other household member does not recommend approval of the person to provide care for foster children. If the agency disagrees with a recommendation, then the agency may request a second opinion. DSS as the licensing agency has the authority to review recommendations and may disagree with conclusions regarding an ability to serve as a caretaker;

m.  when foster parent or household member has a criminal history that has been reviewed and the application subsequently denied by the Regional Director;

n.  when a completed assessment indicates the foster parent lacks or fails to maintain the Standards of Care (see Section 720);

o.  when the foster parent has been notified and assisted to resolve identified problems, but fails to take action or meet licensing requirements.

7.  If the FSC cannot recommend the foster home license for renewal, the file and CAPSS record shall contain documentation that the FSC discussed potential barriers with the family and discussion with the family resulted in a written confirmation of withdrawal or if resolution was not possible and the family did not choose to voluntarily withdraw.

8.  The FSC shall explain the agency's decision to the applicant.  If the renewal is denied, the FSC shall prepare a letter denying the application that explains the right to appeal. Before sending the letter to the family, the FSC shall forward the letter to the Office of General Counsel for review prior to the State Director signing the letter. If the applicant is interested in appealing the decision, the procedures listed in Section 780 are to be followed.

9.  The FSC shall complete DSS 1513 and confirm that all documents required by the Licensing Requirement Checklist are contained in the packet prior to sending it to State Office Licensing staff.

10. All communications with or about families, including face-to-face encounters, correspondence via mail, e-mail, telephone, or text shall be documented in the CAPSS License screen using the dictation code appropriate for the activity.

**Special Considerations:**

1. When a licensed foster family moves, the FSC assigned to the family shall update the assessment study or, if the move is to another county, arrange for transfer of

licensing responsibility in a timely manner. The issued license is not transferable from either the address or foster family on the license. New homes must be compliant with licensing requirements.

**DOCUMENTATION:**
- Contacts with foster family and child
- Supporting information regarding license determinations

**COLLABORATION:**
- Foster Family and Licensing Support Coordinator (FSC) & Supervisor
- Foster Care/IFCCS Worker
- State Office Licensing Staff

**REFERENCES:**

**Legal Citations:**

Multi-Ethnic Placement Act & Interethnic Adoption Provisions
- 42 U.S.C.A. § 671(a)(18): general mandates
- 42 U.S.C.A. § 622(b)(7): diligent recruitment
- 42 U.S.C.A. § 674 & 45 C.F.R. § 1355.38: enforcement
- 42 U.S.C.A. § 1996b: Title VI violation
- 42 U.S.C.A. § 2000a et seq.: Title VI of the Civil Rights Act The Americans with Disabilities Act
- 29 U.S.C.A. § 794: Section 504 of the Rehabilitation Act of 1973
- 29 U.S.C.A. § 705(20)-(21): Section 504 definition of disability
- 42 U.S.C.A. § 12102: ADA definition of disability
- 42 U.S.C.A. § 12103: ADA definition of auxiliary aids and services
- 42 U.S.C.A. §§ 12131-12134: ADA Title II, Public Services
- 42 U.S.C.A. §§ 12181-12189: ADA Title III, Public Accommodations
- 28 C.F.R. § 35.101 et seq.: ADA Title II regulations
- 28 C.F.R. § 36.101 et seq.: ADA Title IV regulations
- 28 C.F.R. § 42.501 et seq.: Section 504 DOJ regulations
- 45 C.F.R. § 84.1 et seq.: Section 504 DHHS regulations

42 U.S.C.A. § 671(a)(10): licensing standards, RPP requirements
42 U.S.C.A. § 671(a)(20): background check requirements, databases, and registries
45 C.F.R. § 1356.30: background check requirements

S.C. Code Ann. § 63-7-2310: FP contact, other adult notification & contact, FP cooperation

S.C. Code Ann. § 63-7-2340: fingerprinting

S.C. Code Ann. § 63-7-2345: payment of FBI fingerprinting

S.C. Code Ann. § 63-7-2350: restrictions (child abuse, certain crimes)

S.C. Code Ann. § 63-7-2360: minor sex offenders in the home

S.C. Code Ann. § 63-7-2380: foster parent training

S.C. Code Ann. § 63-11-70: background checks; pardons

S.C. Code Reg. § 114-550: licensing regulations

**Tools:**

Re-Licensing Assessment Summary

Re-Licensing Assessment Guide

**Forms:**

DSS Form 1513: Original Licensing/Relicensing/Changes for Foster Home Licensing DSS Form 30246: Foster/Adoptive Family Disaster Plan

**Practice Guidance:**

**REVISION COMMENTS:**

**South Carolina Department of Social Services Human Services Policy and Procedure Manual**

**CHAPTER 7, Foster Family Licensing & Support** Revision
Number16-01:
Review Date: 07-21-2016                                   Effective Date: 07-21-2016

---

### 750.3 License Waivers

**PURPOSE STATEMENT:**

In certain limited circumstances, waivers must be granted to foster families for purposes of fairness and flexibility. This section details the circumstances in which such waivers may be granted and monitored.

**POLICY:**

1. The race, color, national origin, religion, state of residence, age, disability, political belief, sex, or sexual orientation of the applicant and/or the child involved may not be considered in making decisions about granting or denying a waiver. Culture may not be used as a proxy for race, color, or national origin in making such decisions.

2. Federal law mandates that when foster children are in placements that do not meet the state's full licensure requirements, such as during a waiver period, federal funding is not to be used for board payments.

3. There are several circumstances for which a temporary waiver may be issued to a licensed home (in all events, a child must already be placed in the home and it must be contrary to his or her best interests to leave the home while the deficiencies are corrected):

   a. the family moves into a new home without time to have the home inspected for fire/safety and health/sanitation requirements;

   b. a household member reaches the age of 18 and has not yet obtained background clearance from FBI fingerprinting;

   c. an adult has joined the household prior to the agency's receipt of background checks. No unrelated lodger or boarder shall be allowed to move into a foster home without the agency's approval. Foster children may remain in the home or be placed in the home where there is an unrelated boarder or lodger only after background checks have been returned clear.  If children are already in the home, an affidavit must be submitted confirming that the person has no record;

Waivers are granted for these situations for up to ninety days and no additional children may be placed in the home during this period.

4. Waivers may also be granted in certain circumstances when the number of children exceeds five. The number of children can exceed five only if:

   a. the department is attempting to keep siblings together;

   b. the foster children are in the process of being adopted by the foster family; or

   c. it has been court ordered.

   The foster home must have a current Standard license at the time the waiver is being requested. No additional children may be placed until the waiver circumstance is corrected. This license can be continued until the number of children satisfies licensing requirements.

5. Foster parents have a responsibility to inform the agency of situations that can impact licensing requirements, such as moving, a family member about to turn 18 (or 12 for purposes of searching the sex offender registry), and new persons joining the household. In general, there should be few instances in which a foster family does not have time to include the agency in planning for changes.

**PROCEDURES:**

1. Within two days of learning of the need for a waiver due to move or background checks, the FSC shall:

   a. visit any new residence to document ongoing compliance with sleeping arrangements;

   b. observe any new residence to document that safety hazards are not present and confirm that appropriate inspections have been scheduled;

   c. initiate requests for any needed background clearance checks;

   d. inform the family that no additional children can be placed until a further licensing decision is rendered; and

   e. inform the family that, until the situation is amended, board payments may be rescinded.

2. When there is a need for placement of one or more children into a home which will cause an excessive number of children in the home, the FSC shall, within two days of learning of the placement plan:

   a. visit the home to confirm that sleeping arrangements are in compliance the Standards of Care (see Section 720);

b. review the fire inspection report to determine if the additional children will be contrary to fire marshal safety recommendations. If approval is needed, FSC shall contact the State Fire Marshal the same day; and

c. inform the family that no other children will be placed while the temporary waiver is in effect.

3. The FSC shall staff the case with his or her supervisor and recommend approval or denial of the waiver.

4. If a waiver is granted, the FSC shall include specific language that reflects the expiration date and the reason for the temporary waiver.

5. The FSC shall document all contacts and staffing in CAPSS dictation.

6. The FSC shall notify placement staff of the waiver so the family will not be contacted for further placement while the waiver is in effect.

7. The FSC shall notify the Foster Care/IFCCS Worker(s) of all children in the home as soon as a waiver is requested and throughout the waiver process.

**Special Considerations:**

**1. Foster Families Who Refuse to Share Information or Cooperate**

a. The Foster Family and Licensing Support Coordinator (FSC) shall document that he or she has evaluated any foster home situation in which the family either chooses not to share information about changes, and/or has a pattern of unplanned moves. If a pattern or uncooperative attitude by the family is detected, the FSC shall staff the issue of continuance of the license with his or her supervisor.

**DOCUMENTATION:**
- All contacts with the child and family
- Correspondence with agency staff
- Copies of background checks and/or inspections
- Results of staffing(s)

**COLLABORATION:**

- Foster Family and Licensing Support Coordinator (FSC)
- Foster Family and Licensing Support Supervisor
- Foster Care/IFCCS Worker
- Fire Marshall
- SLED/FBI

## REFERENCES:

### Legal Citations:

Multi-Ethnic Placement Act & Interethnic Adoption Provisions

- 42 U.S.C.A. § 671(a)(18): general mandates
- 42 U.S.C.A. § 622(b)(7): diligent recruitment
- 42 U.S.C.A. § 674 & 45 C.F.R. § 1355.38: enforcement
- 42 U.S.C.A. § 1996b: Title VI violations
- 42 U.S.C.A. § 2000a et seq.: Title VI of the Civil Rights Act The Americans with

Disabilities Act

- 29 U.S.C.A. § 794: Section 504 of the Rehabilitation Act of 1973
- 29 U.S.C.A. § 705(20)-(21): Section 504 definition of disability
- 42 U.S.C.A. § 12102: ADA definition of disability
- 42 U.S.C.A. § 12103: ADA definition of auxiliary aids and services
- 42 U.S.C.A. §§ 12131-12134: ADA Title II, Public Services
- 42 U.S.C.A. §§ 12181-12189: ADA Title III, Public Accommodations
- 28 C.F.R. § 35.101 et seq.: ADA Title II regulations
- 28 C.F.R. § 36.101 et seq.: ADA Title IV regulations
- 28 C.F.R. § 42.501 et seq.: Section 504 DOJ regulations
- 45 C.F.R. § 84.1 et seq.: Section 504 DHHS regulations

42 U.S.C.A. § 671(a)(10): licensing standards, RPP requirements

42 U.S.C.A. § 671(a)(20): background check requirements, databases, and registries

45 C.F.R. § 1356.30: background check requirements

S.C. Code Ann. § 63-7-2310: FP contact, other adult notification & contact, FP cooperation

S.C. Code Ann. § 63-7-2340: fingerprinting

S.C. Code Ann. § 63-7-2345: payment of FBI fingerprinting

S.C. Code Ann. § 63-7-2350: restrictions (child abuse, certain crimes)

S.C. Code Ann. § 63-7-2360: minor sex offenders in the home

S.C. Code Ann. § 63-7-2380: foster parent training

S.C. Code Ann. § 63-11-70: background checks; pardons

S.C. Code Reg. § 114-550: licensing regulations

**Tools:**

**Forms:**

**Practice Guidance:**

**REVISION COMMENTS:**

**South Carolina Department of Social Services Human Services Policy and Procedure Manual**

**CHAPTER 7, Foster Family Licensing & Support**
Revision Number: 16-01
Review Date: 07-21-2016                                        Effective Date: 07-21-2016

---

### 750.4 License Amendments

**PURPOSE STATEMENT:**

As the life circumstances of foster families change, it is important that their licensing information remains up-to-date. This section sets forth the procedures to be followed when a license must be amended.

**POLICY:**

1. The race, color, national origin, religion, state of residence, age, disability, political belief, sex, or sexual orientation of the applicant and/or the child involved may not be considered in making decisions about managing a family's license. Culture may not be used as a proxy for race, color, or national origin in making such decisions.

**PROCEDURES:**

1. The Regional Foster Family and Licensing Support Coordinator (FSC) shall initiate a request for an amended license when changes occur within a foster home, including the following:

    a. marriage, separation or divorce of the foster parents;

    b. death of a foster parent;

    c. the number of children for which the home is licensed changes;

    d. the age range of children placed in the home changes;

    e. the gender(s) of children for which the home is licensed changes;

    f. a change of address for the foster family;

    g. the foster family requests that the home be closed; or

    h. The family's license is revoked.

2. The FSC shall complete Sections A and C on DSS Form 1513, indicating the necessary changes.

3. The FSC shall attach other documentation, as appropriate, including:

   a. a narrative statement summarizing the change(s) and an indication of the reason(s) why the license should be amended;

   b. if the family has moved to a new residence within the county, a written description of the new location and a copy of fire report of the new address with no deficiencies listed or the inclusion of the follow-up inspection report verifying the deficiencies have been corrected;

   c. a copy of a health report of the new address or documentation that an inspection has been requested or a written description of the new location and a copy of the health report of the new address with no deficiencies listed or the inclusion of the follow-up inspection report verifying deficiencies have been corrected;

   d. if the family has moved out of the region, a statement that the family wishes to remain licensed and documentation that actions to share appropriate information and transfer licensing responsibility to another region or state has been initiated in a timely manner;

   e. if the license is being revoked or the home closed, a written explanation of the action and documentation to support the decision and to verify required procedures have been followed; and/or

   f. the current license if available or a written explanation of why the license is not included.

4. The FSC shall confirm that the issuance date for the amended license is the effective date of the change and that the expiration date continues to be two years from the issuance date of the original/renewal license, not two years from the issuance date of the amended license (i.e. the expiration date does not change).

5. The FSC shall submit materials to the Foster Family and Licensing Support Supervisor (FSS) for review and follow the issuance procedures set forth in Section 742: Application Determination.

6. The FSC shall immediately notify the Foster Care/IFCCS Workers of each child in the home of any changes of address or other major changes which would impact the children in care or necessitate their removal.

**DOCUMENTATION:**
- Contacts with the foster family
- Amended DSS Form 1513
- Correspondence with agency staff

**COLLABORATION:**
- Regional Foster Family and Licensing Support Coordinator (FSC)
- Regional Foster Family and Licensing Support Supervisor (FSS)
- Foster Care/IFCCS Worker
- Fire Marshall
- DHEC

**REFERENCES:**

**Legal Citations:**

Multi-Ethnic Placement Act & Interethnic Adoption Provisions
- 42 U.S.C.A. § 671(a)(18): general mandates
- 42 U.S.C.A. § 622(b)(7): diligent recruitment
- 42 U.S.C.A. § 674 & 45 C.F.R. § 1355.38: enforcement
- 42 U.S.C.A. § 1996b: Title VI violation
- 42 U.S.C.A. § 2000a et seq.: Title VI of the Civil Rights Act The Americans with Disabilities Act
- 29 U.S.C.A. § 794: Section 504 of the Rehabilitation Act of 1973
- 29 U.S.C.A. § 705(20)-(21): Section 504 definition of disability
- 42 U.S.C.A. § 12102: ADA definition of disability
- 42 U.S.C.A. § 12103: ADA definition of auxiliary aids and services
- 42 U.S.C.A. §§ 12131-12134: ADA Title II, Public Services
- 42 U.S.C.A. §§ 12181-12189: ADA Title III, Public Accommodations
- 28 C.F.R. § 35.101 et seq.: ADA Title II regulations
- 28 C.F.R. § 36.101 et seq.: ADA Title IV regulations
- 28 C.F.R. § 42.501 et seq.: Section 504 DOJ regulations
- 45 C.F.R. § 84.1 et seq.: Section 504 DHHS regulations

42 U.S.C.A. § 671(a)(10): licensing standards, RPP requirements

S.C. Code Reg. § 114-550: licensing regulations

**Tools:**

**Forms:**

**Practice Guidance:**

**REVISION COMMENTS:**

**South Carolina Department of Social Services**

**CHAPTER 7, Foster Family Licensing & Support**
Revision Number: 16-01
**Human Services Policy and Procedure Manual**

Review Date: 07-21-2016                    Effective Date: 07-21-2016

---

### 750.5 Reopening Closed Licenses

**PURPOSE STATEMENT:**

Under certain circumstances, foster homes may be closed for a temporary period but may later request to be reopened. In order to promote efficiency in the licensing process, this section describes the procedures to be followed when reopening such a home.

**POLICY:**

1. The race, color, national origin, religion, state of residence, age, disability, political belief, sex, or sexual orientation of the applicant and/or the child involved may not be considered in making decisions about managing a foster home license. Culture may not be used as a proxy for race, color, or national origin in making such decisions.

2. Foster homes closed at the request of the family for reasons other than indicated abuse or neglect or violations of department policy may be reopened for placement through the reinstatement of the previous license after review and determination by State Office Foster Home Licensing staff.

**PROCEDURES:**

1. Former foster parents may request that their home be re-licensed by contacting the intake line, by telephone inquiry to DSS State Office, or via email or the internet.

2. Once the request has been made, the Initial Licensing Supervisor or designee will determine through CAPSS the length of time the home has been closed.

a.  If the home has been closed less than two years, the request for re-opening will be forwarded to the Foster Family and Licensing Support Coordinator (FSC) or Supervisor (FSS) for the region in which the family resides. The FFALS staff will follow through with license renewal as set forth in Section 750.2.

b.  If the home has been closed for more than two years, the Initial Licensing Supervisor will assign the home to an Initial Licensing Coordinator who will oversee the licensing process as if it were a new license and according to Sections 740 et seq.

**DOCUMENTATION:**

- Contacts with the family
- Correspondence with agency staff
- Copies of licensure documents

**COLLABORATION:**

- Initial Licensing Coordinator
- Initial Licensing Supervisor
- Foster Family and Licensing Support Coordinator (FSC)
- Foster Family and Licensing Support Supervisor (FSS)

**REFERENCES:**

**Legal Citations:**

**Tools:**

**Forms:**

**Practice Guidance:**

**REVISION COMMENTS:**

**Human Services Policy and Procedure Manual**

Review Date: 07-21-2016                          Effective Date: 07-21-2016

**South Carolina Department of Social Services**

**CHAPTER 7, Foster Family Licensing & Support**
Revision Number: 16-01

---

**PURPOSE STATEMENT:**

To promote coordination with private licensing agencies and to allow for flexibility according to foster family needs, the agency will consider transfer of a license to a private agency. This section describes the procedures to be followed when processing a transfer request.

**POLICY:**

1. The race, color, national origin, religion, state of residence, age, disability, political belief, sex, or sexual orientation of the applicant and/or the child involved may not be considered in making decisions about managing a foster home license. Culture may not be used as a proxy for race, color, or national origin in making such decisions.

2. Foster families who desire to have their home and license managed by a private Child Placing Agency (CPA) may request transfer of their license to another agency.

**PROCEDURES:**

1. Upon notification by a foster family that they request to have their home managed and supported by a private child placing agency the Regional Foster Family and Licensing Support Coordinator (FSC) assigned to the family shall:

   a. determine and document in CAPSS dictation the reason that the family requested the change;

   b. provide the foster parent with their licensing materials and other information in the licensing file except for criminal history record checks received from SLED or via FBI fingerprint review;

   c. provide the foster parents with a statement of the dates and types of criminal record checks.

2. Once the Child Placing Agency (CPA) has submitted a request to include the family among their licensed homes, the DSS record shall be closed and reopened under the license of the child placing agency.

**DOCUMENTATION:**
- Contacts with the family
- Copy of materials sent to the foster parents
- Reason for the transfer request

**COLLABORATION:**
- Regional Foster Family and Licensing Support Coordinator (FSC)
- Child Placing Agency (CPA)

**REFERENCES:**

**Legal Citations:**

**Tools:**

**Forms:**

**Practice Guidance:**

**REVISION COMMENTS:**

**Human Services Policy and Procedure Manual**

Review Date: 07-21-2016                    Effective Date: 07-21-2016

---

**760. Family Support**

**REVISION COMMENTS:**

**South Carolina Department of Social Services**


**CHAPTER 7, Foster Family Licensing & Support**
Revision Number: 16-01
  **South Carolina Department of Social Services Human Services Policy and Procedure Manual**

**CHAPTER 7, Foster Family Licensing & Support**
Revision Number: 16-01
Review Date: 07-21-2016                              Effective Date:  07-21-2016

---

### 760.1 Home Visits & Foster Family Contacts

**PURPOSE STATEMENT:**

Foster families are important partners in the agency's mission to provide for the safety and wellbeing for all children in its care. Accordingly, the agency is committed to supporting and monitoring foster families through regular contacts and assessments. This section sets forth the policies and procedures to be followed by licensing staff when making home visits and other contacts with foster families.

**POLICY:**

1. Race, color, national origin, religion, state of residence, age, disability, political belief, sex, or sexual orientation shall not be considered in making a determination regarding the management of a foster family license. Further, culture may not be used as a proxy for these factors in making such decisions.

2. Foster Family and Licensing Support staff shall make face-to-face contact with all foster families monthly for the first three months the home is licensed, and at least quarterly thereafter, to support the family and confirm ongoing compliance with standards of care.

3. The agency will recognize foster families as partners in the care of children who are separated from their own families because of abuse or neglect.

4. Foster families are required to exercise the reasonable and prudent parent standard when making decisions about foster child activities in order to facilitate age- and developmentally-appropriate opportunities for growth and development.

5. All licensing personnel are mandated reporters of suspected child abuse and neglect. Immediately upon receiving an allegation of abuse or neglect, agency staff shall make a report by telephone or in-person contact to the OHAN unit. Staff shall cooperate with the OHAN unit and shall take appropriate action based on the information obtained during the OHAN process (see Section 750.1 for further policies and procedures).

6. Communications from or about foster families will be answered within 24 hours (or within the next business day) of receipt.

**PROCEDURES:**

**1. Initial Visits After Licensure**

    a. The State Office Initial Licensing Unit shall notify the Regional Program Coordinator for Foster Family and Licensing Support (FFALS) on the date each new license is approved for the region.  The Program Coordinator (or Supervisor) will assign the family to a Family Support Coordinator (FSC) who serves the county in which the home is located.

    b. Within two business days of the license approval, the Initial Licensing Coordinator and the FSC shall make a joint visit to the home for introductions and presentation of the license to the family.  It is preferred, but not required, that all family and household members be present for this meeting.  The FSC shall provide the family with a "welcome packet" of information which will include, at a minimum:

        i.     the Standards of Care for fostering in South Carolina (see Section 720);

        ii.    the Foster Parent Bill of Rights;

        iii.   information and contacts for services provided by the SCDSS such as SC Voucher Program for Child Care, SNAP, and FI; iv.    a map of South Carolina's Health Service Regions with contacts' phone numbers;

        v.     contact phone numbers and email addresses of the region's county DSS offices to include the County Director, Program Coordinators for Economic Services and Human Services, and supervisors responsible for foster care;

        vi.    contact phone numbers and email addresses of the Regional FFALS unit;

        vii.   information about the SC Foster Parent Association;

        viii.  information about quarterly visits and what the family can expect during them;

        ix.    information about training opportunities;

        x.     registration information for Shared Parenting training occurring within the first 3 months of the licensure (the parents will be expected to attend);

        xi.     information and phone numbers about community resources such as WIC, BabyNet, Medicaid, Law Enforcement, Libraries, Mental Health offices, etc.; and

        xii.    court actions and definitions that occur during the life of a foster care case.

c. The initial visit with the family shall be used as an opportunity to answer questions and to establish a trusting relationship with the foster family. Each encounter a foster family has with the agency is to be met with a customer friendly and helpful attitude.

d. The FSC shall make two subsequent monthly home visits to continue to support any questions or concerns the foster family has regarding upcoming, past, or present placements of children in the home. The FSC shall identify training resources that will address deficiencies of knowledge or to enhance current skills, with the goal of enabling the family to offer excellent care to foster children.

e. The family shall be reminded at all visits of the need to immediately notify the FSC of any changes to the home or its residents, including, but not limited to:

        i.     significant changes in family income;

        ii.    plans to open a home-based business (including day care);

        iii.   any structural changes for their home;  iv. plans for changes of residence;

        v.     a change in marital status; and

        vi.    the addition of any resident in the home.

If any changes have been made since the license was issued, the FSC shall take appropriate action (note that foster children may be removed from a licensed home while it pends reassessment due to changes).

        i.     In all circumstances of significant change, the Foster Care/IFCCS Worker for a child placed in the home must be notified so a decision can be made whether or not to allow the child(ren) to remain in the home as new assessments are conducted.

        ii.    If a family moves to a different home, the license is not transferrable. Both fire/safety and health/sanitation inspections must be requested, conducted, and passed.

        iii.   If there are structural changes to a licensed home, both fire/safety and health/sanitation inspections must be requested, conducted, and passed.

      iv.     If a person over the age of 18 moves into the home, background checks must be obtained in accordance with Section 740.

      v.     If the foster parents separate or divorce, the impact on the home and financial supports shall be reviewed.  If the separation or divorce is the result of spousal abuse, additional information such as police reports will be required.

      vi.     If the family opens a home-based business, its nature and impact on the home's physical environment and residents must be evaluated.  If the business is a day care, the SCDSS Division of Early Care and Education shall be notified.

f. The third monthly home visit shall include a discussion of Shared Parenting and the expectations of the agency for foster families to participate in both the training and the practice.  If one or both parents have not scheduled to attend the training, they should be advised to complete it prior to the first quarterly visit.  The FSC shall provide a schedule of upcoming training dates, if needed.

g. All communications with or about families, including face-to-face encounters, correspondence via mail, e-mail, telephone, or text shall be documented in the CAPSS License screen using the dictation code appropriate for the activity.

**2. Initial Contacts After Placement or Removal**

a. Within 48 hours (or two business days) of a child's placement in a home, the family's FSC shall make contact to confirm that the child's transition into the home is smooth.  If the family requires services or assistance to maintain new (or any) placements, the FSC shall consult with his or her Supervisor and any designated foster care staff to determine specific availability and appropriateness of referrals.  Services to preserve placement may include, but shall not be limited to:

      i.     day care or afterschool care;

      ii.     counseling (for the child and/or the foster family);

      iii.     respite care; iv.     accelerated board rate;

      v.     a behavior modification/interventionist;

      vi.     Independent Living Program services (see Section 530);

      vii.     homemaker services; and/or

      viii.     foster family peer support.

b. The post-placement contact should be used to determine that the foster parent has all information needed (or available) about the newly-placed child. This includes (at a minimum) the following:

    i.   the name and contact information of the child's Foster Care/IFCCS Worker and his or her supervisor; ii. the child's Medical and Education Passport (the foster parent should be instructed on its use if not already familiar);

    iii.   a Family Team Meeting and/or Child Conference date/time (if the child has recently been brought into care);

    iv.   the child's Medicaid number/card and birth certificate (if available);

    v.   all doctor and dentist appointments (with transportation to and from established);

    vi.   any special dietary/religious/medical needs of the child;

    vii.   information necessary to exercise the reasonable and prudent parent standard for determining age- and developmentally-appropriate activities for the child;

    viii.   upcoming court dates;

    ix.   the child's Guardian *ad Litem*'s name and contact information;

    x.   an understanding of the child's permanency plan; and

    xi.   information necessary for enrollment in child care and/or for child care vouchers.

c. Within five business days of a child's removal from a home, the family's FSC shall make contact to assess the family for grief or loss symptoms, determine the need for services, and evaluate the family's readiness for a new placement.

d. All communications with or about families, including face-to-face encounters, correspondence via mail, e-mail, telephone, or text shall be documented in the CAPSS License screen using the dictation code appropriate for the activity.

**3. Ongoing Quarterly Visits**

a. During the sixth month following license issuance, the FSC shall make the first of ongoing quarterly visits to the foster home. The visits are intended to confirm compliance with foster home Standards of Care as well as to determine the safety and wellbeing of children placed in the home. Both foster parents, if applicable, are required to be present for these visits. The results of observations and interviews while at the home shall be captured on DSS Form 30244: Quarterly Home Visit Guide, as follows.

i.    Current Placements:  The FSC shall discuss and make note of any questions or concerns related to current foster children in the home.  He or she shall review the items for which information should have already been provided (see above). If the parent is lacking one or more of the items, the Foster Care/IFCCS Worker shall be contacted.

ii.    Current Household Composition:  The FSC shall determine if there have been changes to the residents of the household (not to include foster children).  If a child of the home has turned 18 or anyone over the age of 18 has joined the household, background checks must be completed in accordance with Section 740.

iii.    Safety Issues:  The FSC shall complete the form as required, through observation when applicable, and shall interview with foster parents and children otherwise.

iv.    Foster Family Functioning/Interaction with Agency/Biological Family:  The FSC shall discuss and notate any changes to the health or livelihood of any resident of the home.  The foster parents' relationship with the foster care workers should be discussed and any concerns noted.  The foster parents' understanding of and participation in reasonable and prudent parenting and Shared Parenting should be given in detail, including activities in which the foster and biological families have participated since the last quarterly visit.  Section II, item 6 should specifically include activities in which the child has participated to confirm that the family is applying the principles of reasonable and prudent parenting (see Section 760.3 for guidance regarding this standard).

v.    Training:  The FSC shall very the completion of training hours.  Copies of training certificates shall be obtained during the quarterly visit. If the foster parent has concerns about the quality or availability of training, the FSC will make note and discuss the issue with the FSC's Supervisor. vi.    Placement Preferences:  The FSC shall determine if there is additional training or information that could be provided to the foster parents that would encourage the acceptance of children whose behaviors or situations are outside of their original preferences.

vii.    Observations of foster child/foster family interactions:  Each encounter with foster children is an opportunity for agency staff to assess for child safety

and wellbeing.  It is important that the FSC understands the nature of the relationship between foster child and the family in the home.  While it is not necessary for the FSC to interview foster children alone, the practice could identify problems in the home not otherwise observable, especially if the child appears to be hesitant or overly affectionate with the foster parent or member of the family.  Foster parents shall be asked how they apply the principles of reasonable and prudent parenting by encouraging age- and developmentally-appropriate activities for each child in their home (see Section 760.3 for guidance regarding this standard). viii.        Confidentiality and Signatures: These sections shall be answered and signed as appropriate.

   ix.    Three Column Mapping: The FSC shall facilitates a "mapping" discussion with the family and ask, "What is Going Well?," "What are the Concerns?," and "What are Next Steps?."  The FSC shall annotate the details of the mapping for inclusion in the foster family record and CAPSS dictation.

b.  The family shall be reminded at all visits of the need to immediately notify the FSC of any changes to the home or its residents, including, but not limited to:

   i.    significant changes in family income;

   ii.    plans to open a home-based business (including day care);

   iii.    any structural changes for their home;  iv. plans for changes of residence;

   v.    a change in marital status; and

   vi.    the addition of any resident in the home.

If any changes have been made since the license was issued, the FSC shall take appropriate action (note that foster children may be removed from a licensed home while it pends reassessment due to changes).

   i.    In all circumstances of significant change, the Foster Care/IFCCS Worker for a child placed in the home must be notified so a decision can be made whether or not to allow the child (ren) to remain in the home as new assessments are conducted.

   ii.    If a family moves to a different home, the license is not transferrable. Both fire/safety and health/sanitation inspections must be requested, conducted, and passed.

   iii.    If there are structural changes to a licensed home, both fire/safety and health/sanitation inspections must be requested, conducted, and passed.

      iv.    If a person over the age of 18 moves into the home, background checks must be obtained in accordance with Section 740.

      v.    If the foster parents separate or divorce, the impact on the home and financial supports shall be reviewed.  If the separation or divorce is the result of spousal abuse, additional information such as police reports will be required.

      vi.    If the family opens a home-based business, its nature and impact on the home's physical environment and residents must be evaluated.  If the business is a day care, the SCDSS Division of Early Care and Education shall be notified.

c.  At the conclusion of the quarterly visit, the FSC shall set the appointment for the next visit.

d.  Any concerns, questions, or needs that were discovered during a quarterly visit (or other communication with foster parents) that are specifically related to a foster child must be brought to the attention of the child's Foster Care/IFCCS Worker or Supervisor.  This includes any complaints about the worker's visits, visitation with the child's family, and child's behavior after visitation with family, Guardian *ad Litem*, etc.  The FSC shall email the foster care worker and supervisor immediately after notification of the concerns.

e.  All communications with or about families, including face-to-face encounters, correspondence via mail, e-mail, telephone, or text shall be documented in the CAPSS License screen using the dictation code appropriate for the activity.

**Special Considerations:**

**1. Licensing Complaint Concerning a Foster Parent**

    a.  Upon receiving a complaint of a license violation by a foster parent, the FSC shall staff the complaint with his or her supervisor to determine what actions or steps are necessary.

    b.  The FSC shall schedule a visit with the foster family to occur within five working days.

    c.  Upon completion of the evaluation regarding the violation, the FSC shall inform the foster parent by letter of the outcome and file a copy in the licensing record.

d.  If the licensing complaint is verified and the problem is satisfactorily resolved, the FSC shall:

    i.  confirm that the foster parent takes necessary and adequate remedial action (and assist if necessary);

    ii.  discuss the remedial action plan and its ongoing status with his or her supervisor;

    iii.  document in writing the satisfactory completion of remedial action by letter to the foster parent;

    iv.  put a copy of the letter in the licensing record; and

    v.  send a copy of the letter to the Foster Care/IFCCS Worker and/or State Office, depending on whether the complaint comes from that source.

e.  If the licensing complaint is verified and the problem is not satisfactorily resolved, the FSC shall:

    vi.  discuss the situation with the FSC's supervisor; and

    vii.  amend the current license to reflect the situation; or

    viii.  in extreme cases, take steps to revoke the license and close the home.

f.  The FSC shall keep the Foster Care/IFCCS Worker of each child in the foster home informed of the situation and of any actions that may be needed on behalf of the child, including the possibility of removal if the license is revoked.

**DOCUMENTATION:**

- Contacts with foster family and child
- Correspondence with agency staff
- Supporting information regarding license determinations
- Copies of OHAN investigation documents

**COLLABORATION:**

- Regional Foster Family and Licensing Support Coordinator (FSC)
- Regional Foster Family and Licensing Support Supervisor (FSS)
- Initial Licensing Coordinator (ILC)
- Foster Care/IFCCS Worker
- OHAN Unit

**REFERENCES:**

**Legal Citations:**

Multi-Ethnic Placement Act & Interethnic Adoption Provisions

- 42 U.S.C.A. § 671(a)(18): general mandates
- 42 U.S.C.A. § 622(b)(7): diligent recruitment
- 42 U.S.C.A. § 674 & 45 C.F.R. § 1355.38: enforcement
- 42 U.S.C.A. § 1996b: Title VI violation
- 42 U.S.C.A. § 2000a et seq.: Title VI of the Civil Rights Act The Americans with

Disabilities Act

- 29 U.S.C.A. § 794: Section 504 of the Rehabilitation Act of 1973
- 29 U.S.C.A. § 705(20)-(21): Section 504 definition of disability
- 42 U.S.C.A. § 12102: ADA definition of disability
- 42 U.S.C.A. § 12103: ADA definition of auxiliary aids and services
- 42 U.S.C.A. §§ 12131-12134: ADA Title II, Public Services
- 42 U.S.C.A. §§ 12181-12189: ADA Title III, Public Accommodations
- 28 C.F.R. § 35.101 et seq.: ADA Title II regulations
- 28 C.F.R. § 36.101 et seq.: ADA Title IV regulations
- 28 C.F.R. § 42.501 et seq.: Section 504 DOJ regulations
- 45 C.F.R. § 84.1 et seq.: Section 504 DHHS regulations

42 U.S.C.A. § 671(a)(10): licensing standards, RPP requirements

42 U.S.C.A. § 671(a)(20): background check requirements, databases, and registries

45 C.F.R. § 1356.30: background check requirements

S.C. Code Ann. § 63-7-2310: FP contact, other adult notification & contact, FP cooperation

S.C. Code Ann. § 63-7-1210 thru 1230: out-of-home investigations

S.C. Code Ann. § 63-7-2340: fingerprinting

S.C. Code Ann. § 63-7-2345: payment of FBI fingerprinting

S.C. Code Ann. § 63-7-2350: restrictions (child abuse, certain crimes)

S.C. Code Ann. § 63-7-2360: minor sex offenders in the home

S.C. Code Ann. § 63-7-2380: foster parent training

S.C. Code Ann. § 63-11-70: background checks; pardons

S.C. Code Reg. § 114-550: licensing regulations

**Tools:**

**Forms:**
DSS Form 30244: Quarterly Home Visit Guide
DSS Form 30245: Education and Health Passport

**Practice Guidance:**

**REVISION COMMENTS:**
 **South Carolina Department of Social Services Human Services Policy and Procedure Manual**

**CHAPTER 7, Foster Family Licensing & Support**
Revision Number: 16-01
Review Date: 07-21-2016                                    Effective Date: 07-21-2016

---

**760.2 Foster Parent Training**

**PURPOSE STATEMENT:**

As partners in the agency's mission to provide for the safety and wellbeing of children in foster care, foster parents must possess the necessary knowledge and skills. Accordingly, this section describes the procedures by which the agency will apply and monitor foster parent training requirements at initial licensure and on an ongoing basis.

**POLICY:**

1. Training for prospective and current foster parents shall include, when available by subject matter, evidence- and research-based curriculum and information.

2. Foster parent applicants must obtain a minimum of 14 hours of pre-service training prior to initial licensure.  The training will provide information to prospective parents that will promote critical thinking and understanding in the following areas:

    a. birth family issues (including introduction to the Shared Parenting model);

    b. children's identities, cultural heritage, and self-esteem (including MEPA requirements);

    c. permanency for children;

    d. placement stability;

      e.  child growth and developmental stages (including information pertaining to the reasonable and prudent parent standard and Independent Living Program services);

      f.  grief, loss, trauma, and separation issues; and

      g.  behavioral concerns and discipline.

3. Licensed foster parents must obtain a minimum of 14 hours of training per year prior to license renewal (28 hours total).  When two parents are in a home, each must meet this requirement.  Training will be received in the following manner.

      a.  Foster parents may obtain up to 8 recertification hours per 2-year licensing period through on-line training from the National Foster Parent Association or any site linked on their website.

      b.  Foster parents may obtain up to 8 recertification hours per 2-year licensing period through completing mail-in home study modules provided by the Palmetto Health Special Care Center.

      c.  Foster parents may receive up to 4 hours per 2-year licensing periods of childspecific training or instruction as it relates to a foster child placed in the home (e.g. therapy or medical visits with child, WIC education, IEP or 504 conferences with school).

      d.  Foster parents may receive up to 4 hours training recertification hours per 2-year licensing period through attending family strengthening training.

      e.  No more than 8 recertification hours can be claimed on the same topic delivered by the same presenter during a 2-year licensing period.

      f.  Foster parents may obtain unlimited training recertification hours for attending foster care-related training or conferences offered by a State DSS-approved provider.  All 28 recertification training hours may be obtained under this option.

      g.  A maximum of 4 recertification hours may be carried over from one 2-year licensing period to the next.

4. Foster parents who received pre-service training prior to July 1, 2016 must attend specific training related to the reasonable and prudent parent standard.

5. It is the foster parents' responsibility to meet the minimum training required for initial and ongoing licensing.

6. Training will be considered to meet licensing requirements if it is a planned and organized activity designed to impart skills, techniques, and methodologies to a foster

parent or a group of foster parents to assist in maintaining the safety, stability, and wellbeing of foster children who reside within their home

7. Individualized instruction specifically to meet a child's needs is acceptable to meet licensing requirements if the instruction was provided by an authorized source and to benefit a foster child placed in the home at the time of instruction.

8. The viewing of standard television programs or reading of articles from popular magazines or daily newspapers shall not be viewed as complying with the completion of pre-service or annual foster parent training requirements.

9. All recertification training must be relevant to:

    a. the foster care process;

    b. caring for the child in foster care;

    c. meeting the emotional, physical, or educational needs of the child in foster care; or

    d. the impact fostering has on the foster family.

   Unrelated training hours will not be accepted toward foster care recertification.

10. All prospective and current foster families must be afforded the same training opportunities. Further, specific training requirements shall not be targeted based on the race, color, national origin, religion, state of residence, age, disability, political belief, sex, or sexual orientation of the foster child or family. Training on cultural diversity and/or transracial placement must be provided to all prospective caregivers and must be provided in a non-biased, non-threatening environment.

11. A license or license renewal cannot be approved if training requirements are not met.


**PROCEDURES:**


1. All training hours obtained by a foster parent will be documented in the CAPSS Person screen.

    a. Upon notification that a prospective foster parent has completed the 14 hours of pre-service training, the Initial Licensing Coordinator (ILC) shall update the CAPSS record using the code, "Pre-Service (14 hours)" and the date of completion. Brief comments received from the trainer may be entered into the Training Comments field. It is especially important that the ILC document any concerns the trainer may have had regarding the suitability of the prospective parents.

    b. The ILC will file notes and correspondence regarding the pre-service training in the file for reference during application determination.

    c. At each quarterly visit, the Family Support Coordinator (FSC) shall inquire if the foster parents have participated in training. For each new training completed, a copy of the certificate shall be provided to the FSC for the license record.

    d. The FSC shall annotate the CAPSS record using codes appropriate to the type of training obtained.  Most training will fall in the category of "Other" and should be described in the field provided.  The date of completion and any comments from the trainer or about the training should be entered into the Training Comments field.

2. The Foster Family and Licensing Support State Director must approve requests for specialized training for foster parents to meet training requirements.

3. Informal training of foster parents is the responsibility of the FSC and shall occur on an ongoing basis.  Each conversation with a foster family is an opportunity to provide education about the needs of foster children and relevant systemic issues.  These conversations will not be considered as part of the required training.  Topics for which the foster families should have knowledge and skills shall include (but shall not limited to) the following:

    a. protection of foster children from harmful experiences while in care;

    b. relicensing requirements;

    c. the purposes of foster care (and the expectation that it is temporary);

    d. services available to the child and family;

    e. board payment rates and purposes;

    f. reimbursable expenses and how to request reimbursement;

    g. working with birth families;

    h. medical care and expectations for foster children;

    i. legal matters in the life of a foster care case;

    j. the role of DSS and its various program areas;

    k. participation in Foster Care Review Board updates;

    l. the reasonable and prudent parent standard;

    m. special considerations for youth eligible for and/or receiving Independent Living services.

4. Conversations with foster parents on any of the above topics and others should be thoroughly documented in the CAPSS Licensing screen using appropriate dictation codes.

**DOCUMENTATION:**
- Contacts with foster family and training staff/providers
- Copies of training completion documentation
- Approval documentation for non-agency trainings

**COLLABORATION:**
- Initial Licensing Coordinator
- Foster Family and Licensing Support Coordinator (FSC)
- Foster Family and Licensing Support Supervisor (FSS)
- Foster Family and Licensing State Director
- Private Training Providers

**REFERENCES:**

**Legal Citations:**
Multi-Ethnic Placement Act & Interethnic Adoption Provisions
- 42 U.S.C.A. § 671(a)(18): general mandates
- 42 U.S.C.A. § 622(b)(7): diligent recruitment
- 42 U.S.C.A. § 674 & 45 C.F.R. § 1355.38: enforcement
- 42 U.S.C.A. § 1996b: Title VI violation
- 42 U.S.C.A. § 2000a et seq.: Title VI of the Civil Rights Act

42 U.S.C.A. § 622(b)(16): disaster preparedness
42 U.S.C.A. § 671(a)(10): RPP requirements
42 U.S.C.A. § 671(a)(24): foster parent training, RPP training
42 U.S.C.A. § 675(10)-(11): RPP definitions
S.C. Code Ann. § 63-7-2380: foster parent training
S.C. Code Reg. § 114-550: licensing regulations

**Tools:**

**Forms:**

**Practice Guidance:**

**REVISION COMMENTS:**

**South Carolina Department of Social Services Human Services Policy and Procedure Manual**

**CHAPTER 7, Foster Family Licensing & Support**
Revision Number: 16-01
Review Date: 07-21-2016                                         Effective Date: 07-21-2016

---

#### 760.3 Reasonable and Prudent Parenting

**PURPOSE STATEMENT:**

Children in foster care should receive the same opportunities as other children to participate in age- and developmentally-appropriate activities that are "normal" in the life of a child. The agency shall require foster placements to provide normalcy for each child in their care. This section sets forth the policies and procedures by which the agency will define, apply, and monitor the provision of these opportunities.

**POLICY:**

1. The term "reasonable and prudent parent standard" shall mean the standard characterized by careful and sensible parental decisions that maintain the health, safety, and best interests of a child while at the same time encouraging the emotional and developmental growth of the child, that a caregiver shall use when determining whether to allow a child in foster care under the responsibility of the State to participate in extracurricular, enrichment, cultural, and social activities.

2. The term "age- or developmentally-appropriate activities" shall mean:

   a. activities or items that are generally accepted as suitable for children of the same chronological age or level of maturity or that are determined to be developmentally-appropriate for a child, based on the development of cognitive, emotional, physical, and behavioral capacities that are typical for an age or age group; and

   b. in the case of a specific child, activities or items that are suitable for the child based on the developmental stages attained by the child with respect to the cognitive, emotional, physical, and behavioral capacities of the child. Such activities may include, but shall not be limited to:

      a. sports;

      b. field trips;

      c. extracurricular activities;

     d.  social activities;

     e.  afterschool programs or functions;

     f.  vacations with a placement lasting up to two weeks;

     g.  overnight activities away from the placement lasting up to one week;

     h.  employment opportunities; and

     i.  in-state or out-of-state travel, excluding overseas travel.

3.  All foster placements shall satisfy the reasonable and prudent parent standard when facilitating age- and developmentally-appropriate extracurricular, enrichment, cultural, and social activities for children in their care.

     a.  DSS shall apply this requirement as a Standard of Care for all foster family homes (including those managed by private child placing agencies) and group homes in which children are placed.

     b.  DSS shall require the exercise of this standard as a condition in each contract entered into between the state and any private entities that provide placement for foster children.

     c.  DSS shall require that group homes designate at least one on-site official per facility to be the caregiver who is authorized to apply the reasonable and prudent parent standard to decisions involving the participation of each child in age or developmentally-appropriate activities, and who is provided with training in how to use and apply the reasonable and prudent parent standard.

     d.  When using the reasonable and prudent parent standard, a placement shall consider:

         i.  the best interests of the child, based on information known by the placement;

         ii.  the overall health and safety of the child;

         iii.  the child's age, maturity, behavioral history, and ability to participate in the proposed activity;

         iv.  the potential risks and the appropriateness of the proposed activity;

         v.  the importance of encouraging the child's emotional and developmental growth; and vi.    any permissions or prohibitions outlined in an existing court order.

4.  The licensing standards and standards of care laid out in this chapter and in DSS Regulations shall be construed as permitting foster placements' use of the reasonable and prudent parent standard.

a. The agency shall not require that foster placements receive official agency authorization prior to any exercise of the reasonable and prudent parent standard.

b. However, the agency shall require that foster placements inform DSS staff during routine visits about the activities in which the foster children in their care participate. If such an activity involves one of the following situations, the agency shall require reasonable notice in advance of the commencement of such an activity:

    i. out-of-state or otherwise significant travel (excluding overseas travel, which shall require agency authorization);

    ii. supervision of the child by another adult or allowance of a child to be temporarily unsupervised;

    iii. contradiction of a birth family's expressed wishes or belief system (if parental rights have not been terminated or if a relationship between the child and his or her kin still exists after termination);

    iv. an important social, cultural, or religious event (e.g., baptism, confirmation, bar mitzvah, etc.);

    v. any increased level of risk to the child (whether physical or otherwise); or

    vi. any divergence from plans and/or needs previously discussed by the agency and the foster placement.

Such notice may be in the form of a phone call, text message, email, letter, or inperson conversation with the child's worker. If one of the above activities is to take place routinely, the agency shall (unless special circumstances exist or the situation changes) only require advance notice for the initial occurrence of the activity.

c. If, after reasonable notification regarding a proposed activity, the agency has concerns about whether the activity is reasonable, prudent, appropriate, or otherwise in the child's best interests, the agency will (when possible) seek to resolve the issue with the foster placement in a timely manner. In some circumstances, if the disagreement cannot be resolved, the agency may choose to remove the child from the placement.

d. The foster placement shall seek agency authorization in situations in which the agency or birth parent must sign or consent as the child's legal guardian.

e. Special authorization by the agency shall be required for applications to obtain a driver's license for the child (see Special Considerations below).

5. The following activities shall not constitute reasonable and prudent parenting decisions and shall require agency authorization in accordance with policies and procedures in this manual:

    a. arranging for a child's travel outside of the United States;

    b. changing a child's school, school attendance, IEP, or participation in a GED program;

    c. making drastic, permanent, or long-term changes to a child's physical appearance (e.g., through body piercings, tattoos, etc.);

    d. changing a child's psychotropic or other prescribed medication, altering the administration of such medication, and/or altering a child's treatment regimen;

    e. changing a child's religion or involving a child in activities related to a religion against the birth family's wishes (if parental rights have not been terminated or if a relationship between the child and his or her kin still exists after termination);

    f. consenting to medical procedures (except in emergency situations as described in Section 510.6);

    g. disclosing the child and/or birth family's image, name, or other personal information in situations other than those specified in Section 760.5;

    h. changing a child's parent/relative communication or visitation plan in any way;

    i. changing the communication or visitation plan between the child and his or her siblings; and

    j. altering or disrupting a child's case plan or transition plan.

6. Nothing in this section shall give foster placements the authority to:

    a. change the child's placement status, including through reunification with family members;

    b. violate the Standards of Care set forth in this chapter, including those related to discipline practices; or

    c. violate or obstruct a court order or court-ordered plan.

7. All placements shall receive training and training materials about knowledge and skills relating to the reasonable and prudent parent standard, including:

    a. the importance of a child's participation in age- and developmentallyappropriate activities;

    b. the benefits of such activities to a child's wellbeing

    c.  knowledge and skills relating to the developmental stages of the cognitive, emotional, physical, and behavioral capacities of a child; and

    d.  knowledge and skills relating to applying the standard to decisions such as whether to allow the child to engage in social, extracurricular, enrichment, cultural, and social activities, including sports, field trips, and overnight activities lasting one or more days, and to decisions involving the signing of permission slips and arranging of transportation for the child to and from extracurricular, enrichment, and social activities.

8. The agency shall provide liability insurance for foster families, and such insurance shall provide coverage for all liability arising from activities properly undertaken in accordance with the reasonable and prudent parent standard (see Section 706.4).

9. All decisions made by foster placements in accordance with the reasonable and prudent parent standard shall, when possible and appropriate, include consideration and/or involvement of the child's birth family (as set forth in the principles of Shared Parenting).

10. All decisions made by foster placements in accordance with the reasonable and prudent parent standard shall, when possible and appropriate, include consideration and/or involvement of the child's birth family (as set forth in the principles of Shared Parenting).

**PROCEDURES:**

1. For reasonable and prudent parenting as a licensing requirement, see Section 720: Standards of Care and Section 741.1: Foster Family Initial Licensing Assessment.

2. For monitoring of a family's exercise of the reasonable and prudent parent standard by the family's Foster Family and Licensing Support Coordinator, see Section 760.1: Home Visits & Foster Family Contacts.

3. For monitoring of a specific child's access to age- and developmentally-appropriate activities by the child's Foster Care/IFCCS Worker, see Section 510.4: Case Planning & Management.

4. For insurance and liability issues related to reasonable and prudent parenting, see Section 760.4: Foster Parent Insurance & Liability.

5. For specific documentation requirements for children with case plans of APPLA, see Section 520.4: Another Planned Permanent Living Arrangement.

**Special Considerations**

    **1. Applications for Youth Driver's Licenses**

        a. For youth whose parent's rights have not been terminated, the Foster Care/IFCCS Worker shall contact the child's birth parent(s) to seek his or her permission and signature for the child's driver's license application.

        b. For youth whose parent's rights have been terminated, the worker shall:

            i. upon a request by a placement to obtain a driver's license for the child, determine whether the child is legally free for adoption;

            ii. if the child is legally free for adoption, determine whether it is in the child's best interests to obtain a license;

            iii. if it is in the child's best interests to obtain a license, seek approval from the County Director, Regional IFCCS Program Director, Adoption Administrator, or Regional Director and provide the basis for determining that such action is in the child's best interests;

            iv. if approval is obtained, offer the placement the opportunity to accept financial responsibility for the child by providing the placement with a copy of the DMV Addendum;

            v. if the placement wishes to accept financial responsibility and sign the DMV Addendum, the worker shall facilitate signature of the document by the placement and the designated agency representative giving approval; and

            vi. instruct the placement to submit the DMV Addendum along with the application for a license or permit.

**DOCUMENTATION:**
- Contacts with foster family and child
- Copies of training completion documentation

**COLLABORATION:**
- Initial Licensing Coordinator

- Initial Licensing Supervisor
- Foster Family and Licensing Support Coordinator (FSC)
- Foster Family and Licensing Support Supervisor (FSS)
- Foster Care/IFCCS Worker
- Training Staff & Providers

**REFERENCES:**

**Legal Citations:**
42 U.S.C.A. § 671(a)(10): RPP requirements
42 U.S.C.A. § 671(a)(24): foster parent training, RPP training
42 U.S.C.A. § 675(10) thru (11): RPP definitions
S.C. Code Ann. § 63-7-20: definitions
S.C. Code Ann. § 63-7-25: reasonable and prudent parenting

**Tools:**
Foster Family Guide for Compliance with the Reason and Prudent Parent Standard
Foster Family Guide for Determining Age- and Developmental-Appropriateness of Extracurricular, Enrichment, Cultural, and Social Activities

**Forms:**
DMV Addendum

**Practice Guidance:**

**REVISION COMMENTS:**

**South Carolina Department of Social Services Human Services Policy and Procedure Manual**

**CHAPTER 7, Foster Family Licensing & Support**
Revision Number: 16-01
Review Date: 07-21-2016                                   Effective Date: 07-21-2016

---

**760.4 Foster Parent Insurance & Liability**

**PURPOSE STATEMENT:**

The agency is committed to supporting foster families in their provision of care for foster children. In the event that an event occurs for which a foster parent may be liable or entitled to protection against damage incurred, the following procedures set forth the policies and procedures related to foster parent insurance.

**POLICY:**

1. The agency shall provide liability insurance for foster families, and such insurance shall provide coverage for all liability arising from activities properly undertaken in accordance with the reasonable and prudent parent standard.
2. There are two liability insurance policies for foster parents who are licensed by the agency. This insurance does not provide coverage for foster homes paid by other child placing agencies.
   a. DSS self-insurance covers small claims up to a limit of $500.
   b. A contracted insurance company provides coverage for larger claims with predetermined limits of liability. This coverage is secondary to any other insurance the foster parent may have such as homeowner's, renter's, or automobile insurance.
   c. There must be a minimum of $50 damage to file a claim. Submission of a claim does not guarantee payment and there is no time limit for reaching a decision regarding a claim.

**PROCEDURES:**

1. It is the responsibility of the foster parent to notify the Regional Foster Family and Licensing Support Coordinator (FSC) of an incident that will likely result in an insurance claim or a lawsuit.

2.  The FSC shall schedule a visit to the foster home the same day as the report in order to view and photograph the damage and to assist the foster parent in completing the DSS Form 3075: Foster Parent Loss/Claim Form.  If the FSC is not available to visit the home on the same day, his or her supervisor will delegate the visit to another FSC in the unit.

3.  The FSC will inform the foster parent that he or she should never agree to pay damages caused by a foster child.

4.  The FSC will prepare a written statement based on observations of the damage and conversations with the foster child and foster parent.  Photographs clearly defining the damage should be included in the report.

5.  The foster parent will need an itemized estimate to repair or replace the damaged property. Additional estimates may be required by the insurance company or by DSS.

6.  If the foster parents had to call the police to their home in connection with the incident that resulted in damage to their real and/or personal property, a copy of the police report must be provided, if one was generated by the police.

7.  If damage is more than $250.00, foster parents must provide proof that they have filed with their primary insurance company, if applicable, or submit a statement from the insurance company that the damage is not covered by their policy prior to submitting a claim to DSS.

8.  After completing the Office Use Only section of the Foster Parent Loss/Claim Form, the FSC will mail the form to the address listed on the Foster Parent Loss/Claim Form along with the following documents:
    a.  the estimate for repair/loss;
    b.  the police report, if applicable;
    c.  any statements by the foster parent or child;
    d.  any statements from the primary insurance company; and
    e.  a copy of the FSC's statement (see above).

9.  The Foster Care/IFCCS Worker managing the child's case should be notified and informed throughout the process.

10. State Office staff will communicate with the FSC and Supervisor regarding the results of the claim.

**DOCUMENTATION:**
- Contacts with foster family and/or insurance companies
- Copy of written statement
- Copy of itemized estimate
- Copy of police report
- Copy of Foster Parent Loss/Claim Form
- Copy of insurance statement, if applicable

**COLLABORATION:**
- Regional Foster Family and Licensing Support Coordinator (FSC)
- Regional Foster Family and Licensing Support Supervisor (FSS)
- Foster Care/IFCCS Worker
- Insurance Provider
- Designated State Office Staff
- Law Enforcement

**REFERENCES:**

**Legal Citations:**
42 U.S.C.A. § 671(a)(10): RPP requirements
S.C. Code Ann. § 63-7-2390: uninsured loss

**Tools:**

**Forms:**
DSS Form 3075: Foster Parent Loss/Claim Form

**Practice Guidance:**

**REVISION COMMENTS:**
**South Carolina Department of Social Services Human Services Policy and Procedure Manual**

**CHAPTER 7, Foster Family Licensing & Support**

Revision Number: 16-01

Review Date: 07-21-2016                           Effective Date: 07-21-2016

**760.5 Foster Parent Records & Confidentiality**

**PURPOSE STATEMENT:**

The information required by the agency and retained in foster parents' files is sensitive and private. Likewise, the information foster parents possess regarding the children in their care and their families is also confidential. The following procedures shall be followed to protect the information of foster families and foster children.

**POLICY:**

1. The agency shall not release information about a foster family or household member to a source outside of the agency unless:
    a. a court orders the release of information;
    b. the agency's legal counsel authorizes the release of information; or
    c. the foster parent signs written consent authorizing the release of the information.

2. Foster families shall not directly or indirectly disclose any information regarding foster children, their biological family, or fictive kin other than to professionals treating, caring for, or providing services to the child or to others as the agency deems appropriate.

3. Although the use of social media by a child shall be considered by the foster family in accordance with the reasonable and prudent parent standard, the foster family themselves shall not share information or pictures regarding the children in their care through any means, including social media. This includes partial disclosures such as initials, stories with names omitted, and/or pictures in which the child's face is not identifiable or visible.

4. In certain situations, it may be reasonable for a child's image, name, or other information to be published by a third party (e.g., the child's name and picture in a yearbook, the child's picture in the newspaper regarding academic or athletic achievements, etc.). If such an opportunity arises for the child, the foster placement shall request consent from the agency prior to allowing the publication of such information. The agency shall consent to the distribution of such information if doing so is in accordance with the reasonable and prudent parent standard and the child's best interests.

5. In extreme cases or cases of repeated violations, failure to protect the privacy of foster children and/or their families may constitute grounds for revocation of a family's license.

6.  Foster families shall be allowed to see their licensing record, with the exception of any information identifying a reporter of a protective services allegation.

**PROCEDURES:**

1.  At the time of the family's first placement and then at each quarterly visit thereafter, the Regional Foster Family and Licensing Support Coordinator (FSC) will discuss with the foster parent the need to maintain the confidentiality of the foster child and his/her biological family when a child is placed.

    a.  The FSC shall emphasize that the foster parent is bound by confidentiality law and licensing regulations and that no foster family may directly or indirectly disclose any information regarding foster children, their biological familyrelatives or other individuals who have had control of the foster child other than to professionals treating, caring for, or providing services to the child or others as the agency deems appropriate.

    b.  Information that is disclosed as set forth above is limited to information that is necessary for the child's needs and the pursuit of the child's best interests. The foster parent must not release or disclose information (including a child's picture, name, etc.) unless authorized by DSS.

2.  The FSC shall advise the foster parents that they may be allowed, upon request, to see their licensing record, except any information identifying a reporter of a protective services allegation.

3.  The FSC shall advise the foster parents that their information will not be released to any source without their written consent, absent a court order to do so.

4.  When appropriate, foster parents may be needed to assist the agency with recruitment efforts.  The FSC should discuss with the family their willingness and availability to participate in recruitment events, media promotions, and/or interviews for a variety of media sources.

    a.  Foster children will not be identified or used in any recruitment efforts.

    b.  Biological or adopted children of a foster family will only be used in recruitment efforts with the parents' knowledge and written consent.

5.  Upon receipt of an application to be licensed as a foster home, the State Office Initial Licensing Coordinator or designee will create a new file record for the family.  The following sections will be included for immediate and future use:

a.   Section I -- separated, tabbed and filed in chronological order

 i.   DSS Form 1513 (copy of unsigned, original of signed)

 ii.   DSS Form 3059

b.   Section II -- separated, tabbed, and filed in chronological order

 i.   Monitoring - Dictation (Print out of dictation in CAPSS (optional))

 ii.   Monitoring - Quarterly Visits (Any forms used for documentation of Quarterly Home Visits) iii.   Monitoring - Documentation of ongoing training.

c.   Section III -- separated by tabbed dividers, and filed in chronological order

 i.   Safety Issue - Background checks (includes SLED, Central Registry, Sexual Offender checks, and fingerprinting  ii. Safety Issue - Fire Inspections

 iii.   Safety Issue - DHEC Inspections  iv. Safety Issue - Medicals

 v.   Safety Issue - Emergency Plans (includes Disaster Plan and Fire Escape Plan)  vi. List of Firearms

d.   Section IV -- grouped together by review period

 i.   Re-licensing assessment summary

 ii.   Certificate of Regulatory Compliance

e.   Section V -- Original Licensing Assessment - information for original licensure unless addressed in other sections, to include:

 i.   Assessment Summary

 ii.   DSS Form 1511

 iii.   References  iv.   Financial forms

 v.   Copies of Driver's Licenses

 vi.   Copies of Social Security cards

 vii.   Documentation of initial training

 viii.   Any other relevant information

f.   Section VI -- separated, tabbed and filed in chronological order

 i.   Correspondence

 ii.   Complaints

 iii.   Miscellaneous -- receipts, vouchers, etc.

g.   CPS information shall never be filed in the licensing record.

h. Note: If a second volume is created, all medical and fingerprinting data should be moved forward to the new volume along with the most recent documents under Sections I, II, III, and IV.

6. A foster family has the right to review their record at any time, except for sections that would disclose a reporter of abuse/neglect in the home.  The FSC assigned to the family shall arrange to supervise the family's review of the record at their home or in the local office in which the record is held.  The family should not be allowed to review the record without DSS staff present.

**DOCUMENTATION:**
- Contacts with foster family, biological family, and child
- Copy of court order, authorization, or written consent

**COLLABORATION:**
- Initial Licensing Coordinator
- Regional Foster Family and Licensing Support Coordinator (FSC)
- Regional Foster Family and Licensing Support Coordinator (FSS)
- Office of General Counsel
- Family Court

**REFERENCES:**

**Legal Citations:**
42 U.S.C.A. § 671(a)(8): confidentiality
S.C. Code Ann. § 63-7-330: confidentiality of reporter information
S.C. Code Reg. § 114-550: licensing regulations

**Tools:**

**Forms:**

**Practice Guidance:**

**REVISION COMMENTS:**

**South Carolina Department of Social Services Human Services Policy and Procedure Manual**

**CHAPTER 7, Foster Family Licensing & Support**
Revision Number: 16-01
Review Date: 07-21-2016                              Effective Date: 07-21-2016

---

**760.6 Foster Parent Associations**

**PURPOSE STATEMENT:**

The agency is committed to a collaborative relationship with Foster Parent Associations that serves the needs of foster families. This section describes the policies and procedures to be followed when facilitating this partnership.

**POLICY:**

1. The agency shall designate Regional Foster Family and Licensing Support Coordinators (FSCs) to be the liaison with the local Foster Parent Associations and shall encourage involvement and support by all staff.

**PROCEDURES:**

1. The Family Support Coordinator shall:

    a.  represent the agency's viewpoint to the Association;

    b.  attend meetings and functions of the Association;

    c.  apprise staff of the Association's activities;

    d.  when appropriate, seek guidance from his or her supervisor and other staff in working with the Association;

    e.  assist the Association with leadership development;

    f.  assist with the program planning for Association meetings;

    g.  assist with development of Association goals and projects;

    h.  facilitate communication between the agency and foster parents;

    i.  provide support services (e.g. arranging meeting space); and

    j.  discuss  with the Association members the impact of MEPA. The FSC shall discuss with the Association members that race, color, national origin, religion, state of residence, age, disability, political belief, sex, or sexual orientation of the

applicant and/or the child involved may not be considered in making foster care placement decisions. Culture may not be used as a proxy for race, color, or national origin in making placement decisions.

**DOCUMENTATION:**
- Contacts with Foster Parent Association
- Correspondence with agency staff

**COLLABORATION:**
- Regional Foster Family and Licensing Support Coordinator (FSC)
- Regional Foster Family and Licensing Support Supervisor (FSS)
- Foster Parent Association
- Foster Families

**REFERENCES:**

    **Legal Citations:**

    **Tools:**

    **Forms:**

    **Practice Guidance:**

**REVISION COMMENTS:**
  **South Carolina Department of Social Services Human Services Policy and Procedure Manual**

**CHAPTER 7, Foster Family Licensing & Support**
Revision Number: 16-01
Review Date: 07-21-2016            Effective Date: 07-21-2016

---

**760.7 Disaster Preparedness Plans**

**PURPOSE STATEMENT:**

As a part of the agency's mission to provide safety for children in foster care, the agency shall partner with foster parents to plan for the occurrence of a disaster event. This section sets forth the requirements for disaster preparedness plans and the instruction to be given to foster parents regarding disaster response.

**POLICY:**

1. Foster families shall have a disaster preparedness plan in place as a prerequisite for initial licensure and for all renewals thereafter. Such a plan shall include the following topics:
   a. flexible and appropriate responses to various scenarios, including locations in which to seek emergency shelter;
   b. additional considerations for medically fragile children;
   c. plans for compliance with mandatory evacuation orders; and
   d. identification of an approved local shelter or, if plan is to evacuate to a residence, steps for ensuring child safety and continued communication with DSS.

**PROCEDURES:**

1. The Initial Licensing Coordinator shall review the foster parents' written evacuation plans during the initial assessment and incorporate the plan into the recommendation for licensing.  The issuance of a license is tacit approval of the plan.

2. Once a foster home license is issued, the Regional Foster Family Licensing and Support Coordinator (FSC) assigned to the family shall be responsible for updating and reviewing the family's disaster plan at the time of license renewal.  The FSC shall be responsible for ensuring the family understands the means by which shelter can and should be utilized during a disaster.

3. The plan (initial and ongoing) should include the following topics:
   a. disaster preparedness plans that are responsive, flexible, appropriate to the situation and include several locations to choose from; and
   b. if a child is considered medically fragile, the plan should reflect attendance at either a medically fragile shelter or a home that can accommodate the child's special needs (refer to the county emergency plan for a listing of shelters to accommodate the medically fragile if a listing is available);

4. The FSC shall instruct the family on an ongoing basis that:

a.  foster children must be evacuated when there is a mandatory evacuation order;

b.  foster parents must evacuate to shelters that have been approved by the local emergency/disaster preparedness plan.  Local law enforcement or Red Cross offices have information regarding approved shelters.  The FSC will assist the family in determining locations of shelters provided by local emergency protective services;

c.  when local shelters are used, the foster parents are to confirm that the foster child's name is listed on an attendance roster;

d.  in the event that the foster parents plan to evacuate to a residence, they must be certain that:

    i.  the location is safe and is large enough to accommodate everyone; and

    ii.  the location of residence is located far enough away to not be threatened by the disaster; and

    iii.  the name, address and telephone number of the residence is available; and

    iv.  the residence is appropriate to the needs of the child.

e.  Foster parents must alert DSS as to the whereabouts of all foster children. Within 24 hours of an evacuation, or, in the event of phone service disruption, immediately upon restoration of service, the foster parent must call the Children's 24-hour Helpline number to supply the Agency with the following information:

    i.  foster child's name;

    ii.  county or office of case management;

    iii.  foster child's whereabouts and situation; and iv.    the telephone numbers where the child/family can be reached.

f.  within 24 hours of the disaster or as soon as communication with the DSS office managing the foster child's case is available, the foster parent shall contact the child's Foster Care/IFCCS Worker with the following information:

    i.  the safety and condition of the foster child and foster family;

    ii.  the current living arrangements;

    iii.  the condition of the home (if known);  iv.   whether  or not if they can reside in the home (if known).

5.  If the home is damaged and requires repair, the FSC shall confirm that repairs meet Standards of Care requirements and fire/safety and health/sanitation requirements.

6. If the foster home is damaged beyond repair or habitation, the foster home license shall be amended to reflect the new address and home environment of the family's residence.  The new residence must meet all the requirements for licensing as described in Section 720: Standards of Care and Section 740 et seq.  Fire/safety and health/sanitation inspections are required to amend a license.

   a. If the new home is located in an area outside of the original Health Services Region, the license must be transferred to the appropriate Regional Office, who will oversee the license amendment.

   b. If the family's new residence is unable to meet licensing requirements or if the family refuses to comply with requirements, the license must be closed and any foster children removed.

   c. If the home is closed and children removed, immediate notice must be given to the Foster Care/IFCCS Worker.

**DOCUMENTATION:**
- Contacts with foster family and children
- Copies of shelter listings
- Copy of current disaster preparedness plan

**COLLABORATION:**
- Initial Licensing Coordinator
- Regional Foster Family and Licensing Support Coordinator (FSC)
- Regional Foster Family and Licensing Support Supervisor (FSS)
- Foster Care/IFCCS Worker

**REFERENCES:**

**Legal Citations:**
42 U.S.C.A. § 622(b)(16): disaster preparedness
S.C. Code Reg. § 114-550: licensing regulations

**Tools:**

**Forms:**
DSS Form 30246: Foster/Adoptive Family Disaster Plan

**Practice Guidance:**

**REVISION COMMENTS:**

**South Carolina Department of Social Services Human Services Policy and Procedure Manual**

**CHAPTER 7, Foster Family Licensing and Support**

Revision Number: 16-01

Review Date: 07-21-2016                                          Effective Date: 07-21-2016

---

### 770. The Interstate Compact on the Placement of Children: The Receiving State

**PURPOSE STATEMENT:**

The agency is committed to promoting the timely and appropriate permanency for children in foster care when a permanent family is available outside of the borders of the state in which their case originates. To this end, this section lays out the policies and procedures to be adhered to when another state seeks to place a child in South Carolina in accordance with the Interstate Compact on the Placement of Children (ICPC).

**POLICY:**

1. The agency shall not deny or delay placement of in-state or out-of-state children due solely to the state residency of the child or their prospective caregiver.

2. The agency shall emphasize safety, wellbeing, and permanency for out-of-state children to the same extent and according to the same policies as in-state children.

3. If requested, the agency shall complete a home study for an out-of-state agency in a thorough and timely manner, but no later than 60 calendar days (for standard Regulation 2 requests) or 18 days (for Regulation 7 requests) after DSS receives a complete request from the out-of-state agency. Financial penalties from Title IV-B and Title IV-E federal funds may be imposed for failure to meet the timelines. These timelines do not include completion of foster family training requirements

4. The agency shall provide services and supervision for out-of-state children placed in South Carolina.

5. Regulation 1 of the Interstate Compact allows a receiving state to conditionally preapprove a placement when a foster child moves to another state with the foster parents. SC DSS may use the documentation from the sending state unless there is substantial evidence to the contrary. If a licensed family is moving into South Carolina, the State Office Interstate Compact (ICPC) Office shall receive this information prior to the family arriving in South Carolina.

6. If an out-of-state agency in a thorough and timely manner, but no later than 60 calendar days (for standard Regulation 2 requests) or 18 days (for Regulation 7 requests) after DSS receives a complete request from the out-of-state agency. Financial penalties from Title IV-B and Title IV-E federal funds may be imposed for failure to meet the timelines. These timelines do not include completion of foster family training requirements

7. The agency shall provide services and supervision for out-of-state children placed in South Carolina.

8. Regulation 1 of the Interstate Compact allows a receiving state to conditionally preapprove a placement when a foster child moves to another state with the foster parents. SC DSS may use the documentation from the sending state unless there is substantial evidence to the contrary. If a licensed family is moving into South Carolina, the State Office Interstate Compact (ICPC) Office shall receive this information prior to the family arriving in South Carolina.

9. If an out-of-state foster family moves to South Carolina without prior approval or adequate notice, it is the agency's policy that every effort will be made to bring the placement into compliance. If the family fails to follow through with becoming licensed or information is later obtained that indicates that this family is not appropriate to become foster parents, the sending state shall be notified immediately that the child must be returned to the sending state. However, if foster parents evacuate to South Carolina from another state due to a catastrophic event, such as a hurricane, the federal Administration for Children and Families may issue exceptions for federal funding eligibility.

10. For completion of a South Carolina home study, see Section 740 et seq.


**PROCEDURES:**

**1. Placement of an Out-of-State Child in South Carolina**

    a. Upon receiving a request for a home study from a sending state, the State Office ICPC Consultant shall enter the case in CAPSS and shall forward the request to the appropriate Regional Foster Family and Licensing Support (FFALS) Office within eight calendar days. The ICPC Consultant shall indicate the due date on the transmittal.

        i. For Regulation 2 requests, the request shall be forwarded via NEICE.

        ii. For Regulation 7 requests, the request shall be forwarded via fax, email, and/or NEICE.

    b. If an incomplete request is received from the sending state, the ICPC Consultant shall contact the sending state. If no additional information is received from the

sending state within three weeks, the packet may be returned to the sending state.

c.  Upon receipt of the request, the Regional Foster Family and Licensing Support Coordinator (FSC) shall immediately review the request and initiate the actions necessary to complete the home evaluation and pre-licensure study. If additional information is needed from the sending state, the worker shall notify the ICPC Consultant no later than ten calendar days after receiving the request.

d.  Within 15 calendar days of receipt, the FSC shall:

    i.  contact the individuals necessary to complete the home study;

    ii.  complete requests for criminal records checks and, if needed, fire and health inspections;

    iii.  identify and notify references;

    iv.  check DSS Family Independence (FI) and food stamp databases and notify
        FI and food stamps workers regarding placement;

    v.  file copies of the requests in the case record and update CAPSS and NEICE.

e.  The FSC shall complete the home study using the HS ICPC Home Study Guide (see Practice Guidance below). All actions related to the home study shall be entered into CAPSS and NEICE.

    i.  The placement must be denied for licensure or relative approval (other than parent) if the individual or household member's criminal record contains a conviction for which S.C. Code Ann. § 63-7-2350 prohibits licensure. Past criminal convictions do not automatically disqualify a parent as a placement—if such a conviction exists, a staffing must be held with the worker's supervisor to determine whether the charge and the relevant circumstances affects the safety of the child.

    ii.  If the child's parents are the individuals being assessed and they have a treatment plan developed by the sending state, the worker shall determine whether the parents have or have not completed the plan. The worker must consider information from the sending state, information from local service providers (if applicable), and any other information gathered during the home study in making this determination.

    iii.  The completed home study must include the date, signature, and certification number of the worker and/or the worker's supervisor. One certification number is mandatory for the study.

      iv.    The worker shall provide the prospective placement with a copy of the completed home study and shall advise them that they have three business days to notify the worker regarding corrections to the information in the study. The prospective placement may request a review by the County Director if the decision is not to recommend the family as a placement for the child. The County Director has the final decision-making authority regarding the agency's recommendation.

f.    If the home study cannot be completed within the 60-day timeframe, the FSC shall provide the ICPC Consultant with a written report by the 50th day. The report must contain the following information:

      i.    information regarding the family members, home environment, and any safety or risk issues;

      ii.    reasons for the delay;

      iii.    an explanation that completing the home study is in the best interests of the child;

      iv.    an explanation that no recommendation is being made at this time until all information has been obtained;

      v.    an estimated date of completion.

g.    The FSC shall forward one copy of the completed report/study to the State ICPC Unit Office.

h.    The ICPC Consultant shall complete and sign DSS Form 3049 (ICPC 100A) approving or denying placement and shall notify the sending state.

i.    The sending state shall accept the home study if approved by DSS standards, unless the sending state notifies the State Office ICPC Unit within 14 days of receipt that reliance on the report would be contrary to the child's welfare.

j.    If the placement is approved, the sending state shall arrange the placement and shall submit DSS Form 30126 (ICPC 100B) to the State Office ICPC Unit verifying the date of placement.

k.    Upon receipt of notification that the child has been placed, the designated county worker shall immediately begin supervision. Supervision can begin prior to receipt of DSS Form 30126 (ICPC 100B) if the receiving state has been informed by other means that the child has been placed pursuant to an approved placement under Article III(d) of the ICPC.

      i.    The sending state shall be responsible for case planning, financial and medical needs, and meeting any identified needs of the child. DSS shall be responsible for assisting the sending state in locating appropriate

resources for the child/family and monitoring the safety and well-being of the child.

    ii. Minimum supervision shall include monthly face-to-face contact with the child and an assessment to confirm safety.

    iii. If custody or guardianship is the permanent plan for the child, the worker shall review the permanent plan after the child has been in the home for at least six months. The worker shall recommend to the sending state that the caregivers receive custody or guardianship of the child, if such a transfer would be in the child's best interests and all parties are in agreement.

    iv. Supervision, including the submission of quarterly reports (see below), shall continue until the sending state sends notification via DSS Form 30126 (ICPC 100B) that supervision is no longer required.

    v. If there are any concerns about the child's safety, the designated county worker shall follow up immediately. If the concerns rise to the level of abuse or neglect, the worker shall report the abuse to OHAN. If threats to safety are identified, the worker shall notify the sending agency immediately and shall contact the ICPC Consultant to arrange for the immediate return of the child to the sending state (if appropriate).

    vi. All actions shall be entered into CAPSS and NEICE.

l. The designated county worker shall complete a progress report to be forwarded to the State Office ICPC Unit no less than quarterly (see Practice Guidance below).

    i. Information must be provided as requested on the DSS Form 3049 (ICPC 100A). The report must also include the specific dates of face-to-face contact with the child and must identify which of the contacts were in the placement setting. If the placement is licensed, the Licensing Worker shall be consulted.

    ii. The worker's supervisor shall review the quarterly or other written reports and shall indicate approval by signing, dating, and forwarding the report to the ICPC Consultant.

m. The designated county worker shall close the case upon receipt of the proper DSS Form 30126 (ICPC 100B) from the State Office ICPC Unit or receipt of a court order approving closure of the case.

## 2. Reconsideration of ICPC Home Study Denial

a. Within 90 days of a denial on an ICPC Form 100A, the sending state can request a reconsideration. If the ICPC Consultant determines that it is appropriate to review the denial, the consultant may either:

    i. send the request to the appropriate Regional FFALS Office for a new study or updated addendum that addresses the reasons for denial and if they have been corrected. DSS will have 50 days to re-examine the situation; or

    ii. make a redetermination based on the evidence provided by the sending state.

b. The ICPC Consultant will convey the determination to the sending state with a new DSS Form 3049 (ICPC 100A).

**3. Disruption of an ICPC Placement**

a. If an ICPC placement disrupts, the designated county worker shall notify the sending state to make arrangements for the child's return and shall submit a written summary of the disruption to the sending state's ICPC Office. Return of the child must occur within five working days of the notice of removal unless alternative arrangements have been agreed upon by the two states.

b. If the designated county worker cannot elicit a response from the sending state, the worker shall contact the State Office ICPC Consultant for assistance.

c. The designated county worker shall document all actions in CAPSS.

**Special Considerations:**

**1. Receipt of a Regulation 7 Request**

a. ICPC Regulation 7 provides for a priority request process. The provision provides that home studies be completed within 30 days provided that the request meets the following criteria and that the criteria is stipulated in the Regulation 7 court order:

    i. unexpected dependency due to a sudden or recent incarceration, incapacitation or death of a parent or guardian. Incapacitation means a parent or guardian is unable to care for a child due to a medical, mental or physical condition of a parent or guardian, or

    ii. the child sought to be placed is four years of age or younger, including older siblings sought to be placed with the same proposed placement resource; or

       iii. the court finds that any child in the sibling group sought to be placed has a substantial relationship with the proposed placement resource. Substantial relationship means the proposed placement has a familial or mentoring role with the child, has spent more than cursory time with the child and has established more than a minimal bond with the child; or iv. the child is currently in an emergency placement; AND

       v. the degree of relationship to the child must be parent, step-parent; grandparent; adult brother/sister or adult aunt/uncle (documentation must include the individual's name, address and telephone number).

b. Within two business days of receiving a completed request packet, the ICPC Consultant shall forward the request to the appropriate FFALS Office.

c. Within fifteen business days, the FSC shall complete the home assessment/study or provide information explaining the delay, along with an estimated date of completion.

d. No later than three business days after receipt of the assessment/study from the FSC, the ICPC Consultant shall send the completed ICPC Form 100A containing the approval or denial of the placement to the sending state.

e. If, at any time, the sending or receive states find that the request lacks certain information, the local sending county worker will be notified of the missing information and the process will halt until the information is communicated. If the sending state fails to correct this information within three business days, the packet will be treated as a normal Regulation 2 request.

**2. Out of State Foster Parents Moving to South Carolina**

a. Upon receiving a request from a sending state to license a foster parent moving to SC, the ICPC Consultant shall:

       i. conduct a review of the materials submitted and may grant a conditional approval contingent upon the foster parent completing all the requirements for licensure;

       ii. forward the licensure request to the appropriate FFALS Office and to the county office which will be responsible for monitoring the child, attention: Human Services Program Coordinator.

b. Upon receipt of the DSS Form 30126 (ICPC 100B), the FFALS Supervisor shall assign an FSC to complete the home study.

c. The FSC shall receive the request for licensing and review documentation of licensure from the sending state including background checks, copies of the

family's license, complaints, training, etc. Documentation of training hours (conducted out-of-state) may be accepted provided that the training was conducted in the past year and the content of the training is appropriate (see Section 760.2).

    i. Note: An exception has been granted to review and consider accepting foster parent training hours received from out of -state child welfare agencies. This exception is to prevent unnecessary placement disruptions for the foster child and is specific only to this situation. Outof-state foster parents must be provided orientation training specific to SC DSS policies and procedures.

d. The FSC shall complete the foster home licensing study within 120 days of receipt of a complete referral.

e. The FFALS Supervisor shall review the completed licensing study and indicate approval by signature and date and forward the study to the ICPC Consultant for review, approval or denial, and processing.

f. The ICPC Consultant shall review and forward the packet of information and a signed DSS Form 3049 (ICPC 100A) to the sending state.

g. The designated county worker shall monitor the placement in accordance with licensing regulations and submit progress reports, through State Office ICPC Office, on a quarterly basis unless requested to use other time frames.

h. The license of the home shall be renewed every 2 years by the Foster Family and Licensing Support Unit.

**DOCUMENTATION:**
- All correspondence with DSS staff
- All communication with receiving/sending state staff
- All contacts with family and/or child
- Copies of all ICPC forms, reports, and documentation
- Dictation or copies of out-of-state dictation

**COLLABORATION:**
- Designated County Worker
- Regional Foster Family and Licensing Support Coordinator (FSC)
- Regional Foster Family and Licensing Support (FFALS) Office
- State Office ICPC Unit
- ICPC Consultant

- ICPC Administrative Assistant
- Sending/Receiving State Staff
- DSS Attorney
- SC Family Court

**REFERENCES:**

**Legal Citations:**
42 U.S.C.A. § 671(a)(23): denying/delaying out-of-state placement
42 U.S.C.A. § 671(a)(25) & (26): ICPC
S.C. Code Ann. § 63-9-2200 thru 2290: ICPC
S.C. Code Ann. § 63-15-300 thru 394: UCCJEA ICPC Regulations,
available at
http://www.aphsa.org/content/AAICPC/en/ICPCRegulations.html

**Tools:**
National Electronic Interstate Compact Enterprise (NEICE)

**Forms:**
DSS Form 3049 (ICPC 100A): ICPC Request
DSS Form 30126 (ICPC 100B): ICPC Report on Child's Placement Status
ICPC Statement of Interest

**Practice Guidance:**

**ICPC Home Study Guide**
This section serves as a guide for completing an interstate home study request. This format is generally agreed upon by all states.

1. Identifying Information

   Name of Caseworker
   Name of Supervisor

   Name of County Office
   Name of Address of Proposed Placement
   Name(s) of ICPC Child(ren)
   Date Prepared

Date of Home Visit(s)

2.  Composition of the Family - Include listing of all household members living in the home, their ages, relationship to the individual being studied, occupations, previous marriages, and an overall assessment of functioning as a family

3.  Physical Description of the Home Environment - Include pertinent information about the condition of the home, sleeping arrangements, plans for accommodating the child to be placed, etc. Review fire and safety hazards (such as unlocked firearms, accessible poison, overloaded outlets or extension cords; exposed electrical wiring, peeling or flaking paint, broken windows, doors, steps; holes in walls or floor or ceilings; rodent or insect infestation, unsanitary plumbing. Indicate if home has easy access to a telephone and to reliable transportation.

4.  Financial Situation - Include specific information on the economic situation of the family, including income, assets, financial obligations, and general money management, etc. Indicate if family is receiving Family Independence (TANF) food stamps or Medicaid.  Note: The family must be informed that FI or FS staff will be notified of proposed placement. The household should not be dependent solely on child's income or board payment.

5.  Medical Information - Include any important past, current or potential health problems.

6.  Family Activities - Include information about activities that the family enjoys participating in.

7.  Motivation and Attitudes of All Family Members Toward the Proposed Placement – Include step-parents, step-siblings, half-siblings, and all other household members

8.  Continued Involvement of the Family with the Biological Parents - Include any visitation with the biological parents, any attitude toward biological parents and siblings, plans to reunite the child with biological parents, the ability to protect the child from the biological parents if necessary, etc. Indicate if family can meet the safety needs of the child.

9.  Assessment of Parenting Capacities - Indicate specifically how the caregivers can or cannot meet the individual needs of the child including the child's safety,

permanency, physical and mental health, well-being, (emotional and physical development of the child). Describe observations or history of indicators of alcohol or other drug abuse, of domestic violence, child abuse or neglect, mental health, mental retardations, physical disabilities, education & occupations. Describe the family, their relationship with their own parents and siblings in childhood and early adult years, their styles of parenting, relationship with their children, sibling relationship, methods of discipline, and willingness to seek and use help from appropriate social agencies.

> Note: Placement of a child cannot be recommended for a caregiver or household member, who has an indicated case for abuse or neglect or has a conviction for a criminal offense for crimes listed in SC Statute 20 – 7-1642. If a biological or legal parent has a conviction, consideration must be given to the circumstances and how that affects the safety of the child. Describe rehabilitation efforts since the criminal conviction.

10. Treatment Resources Available in the Community - Include information about medical facilities, educational resources such as special services for the emotionally handicapped, availability of counseling services in the community as necessary or potentially necessary for the child based on the information given by the sending state.

11. Type of Board Payments - Specify whether child will be receiving regular or Title IV-E Board Payments (if applicable).

12. Medical Plan – Indicate what the plan is to meet the medical needs of the child; if the caregiver will be assuming responsibility for meeting costs of medical needs, obtain a statement from the caregiver indicating the willingness and resources available. If child is not IV-E eligible for SC Medicaid, indicate how caregivers can utilize Medicaid from the other state, including the necessity of identifying a provider willing to accept reimbursement from another state.

13. Caregiver's Perception of Permanent Plan for the Child - Does the caregiver expect this to be a short or long term placement, plan to adopt, etc.? Specify if the home environment will meet the permanency needs of the child until the child reaches age 18.

14. References - Include references from at least two non-related persons regarding the family's ability to care for the child. References should have known the family at least three years of the last six years.

15. Other comments:

16. Determination of Home Environment to meet the Individual Needs of the Child- The home study must have a determination whether a placement is appropriate and whether there are any risk factors identified. If the parents are completing a treatment plan and they are not in a position to care for the children at this time, then describe the obstacle and what issues need to change.

**Progress/Quarterly Report Guide**

This section provides clarification regarding Interstate Compact progress reports. Progress reports must be submitted (at a minimum) on a quarterly basis to the sending state through the State Office Interstate Compact unit. The following outline describes the information to be included and applies to parents, relative and other caregivers.

1. Identifying Information:
   Name and date of birth of child;
   Name, relationship, and address of the placement resource;
   Date of Placement with resource; name of the sending state;

2. Dates and types of contacts: report must specify which contacts are face to face;

3. Physical condition of the home;

4. Current status of caretaker and family: any changes in family composition, health, financial situation, work, legal involvement, social relationships;

5. Child care arrangements, if any;

6. Current functioning of children: adjustment to placement, school (include name and grade), health, relationships with peers and adults, behaviors/emotional concerns, delinquent activity, special services, results of any new evaluations, special interests/hobbies/events (including all age- or developmentally-appropriate activities undertaken pursuant to the reasonable and prudent parent standard);

7. Contacts with biological parents or relatives, what type, where? With whom? quality of contact?, and the child's reaction?.

8. Financial/medical provisions for child and caregiver: how child is supported. If sending state is responsible, are there any problems/is there a problem with medical coverage. Suggestions for resolution;

9. Assessment of placement: must include current safety assessment; is the caretaker meeting child's needs/ what is the caretaker's commitment to child? List strengths and weaknesses;

10. Permanent plan status: what progress has been made toward permanent goal? Has goal changed? Are there any recommendations?

11. Recommendation for transfer of custody, adoption, or discharge of sending state's legal jurisdiction (when appropriate); if transfer of custody is recommended, specify how family functioning demonstrates the stability of the placement without agency support.

12. Signature of worker and supervisor, date, and name and telephone number of county office.

**REVISION COMMENTS:**

**South Carolina Department of Social Services Human Services Policy and Procedure Manual**

**CHAPTER 7, Foster Family Licensing & Support**
Revision Number: 16-1
Review Date: 07-21-2016                                    Effective Date: 07-21-2016

---

### 780. Appeal of an Adverse Agency Decision

**PURPOSE STATEMENT:**

In the event that DSS makes a decision that is adverse to the interests or desires of the foster parents, the agency will provide fair review process. The following section sets forth the policies and procedures to be followed when a foster parent chooses to appeal an agency decision.

**POLICY:**

1. The agency shall inform all foster families and foster family applicants of their right to appeal a denial or revocation.
2. Upon receipt of a request for an appeal, the Office of Administrative Hearing (OAH) shall schedule a Fair Hearing. The Hearing shall be conducted by a three member panel comprised of a Hearings Officer and two members appointed by the State Director.  A decision shall be reached within 30 days of the hearing and the written result shall be sent to all parties.

**PROCEDURES:**

1. When a license or renewal is not recommended for approval or renewal, the family must be informed of their right to appeal.
   a. The ILC or FSC shall provide assistance to the family as needed to begin the appeal process, including providing services to comply with language or medical barriers.
   b. If an application or renewal is denied, the ILC or FSC supervisor shall draft a letter which specifies the reason(s) for the denial, including references to applicable statutes and/or agency policies and/or applicable foster care regulations, and which advises the applicant of the right to appeal this decision by submitting a written request to the Office of Administrative Hearings (OAH),

        P.O. Box 1520, Columbia, SC 29202 within thirty (30) days of the date of receipt of the letter.

    c.   The letter shall be submitted to the State Licensing Manager or designee for review and mailing.  The letter will inform the family of the right to request a conference with the State or Regional Director or his or her designee.

2.   The ILC or FSC shall cooperate with State Office staff and testify at any hearings or deposition interviews

3.   All information shall be dictated into the CAPSS Licensing screen as appropriate.

**DOCUMENTATION:**
- Contacts with foster family
- Correspondence with agency staff
- Copy of denial letter
- Copy of written request for hearing
- Copy of final OAH order

**COLLABORATION:**
- Initial Licensing Coordinator (ILC)
- Regional Foster Family and Licensing Support Coordinator (FSC)
- State Licensing Manager
- State/Regional Director and/or Designee
- Office of Administrative Hearings (OAH)

**REFERENCES:**

**Legal Citations:**
42 U.S.C.A. § 671(a)(12): fair hearing requirements
S.C. Code Ann. § 1-23-310 et seq.: Administrative Procedures
Rules of Procedure for the Administrative Law Court

**Tools:**

**Forms:**

**Practice Guidance:**

**REVISION COMMENTS:**