IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Eden Rogers et al., )<br>)<br>　　　　　Plaintiffs, )<br>)<br>　　v. )<br>)<br>United States Department of Health and )<br>Human Services et al., )<br>)<br>　　　　　Defendants. ) | Civil Action No. 6:19-cv-01567-JD |

**STATE DEFENDANTS' OPPOSITION TO MOTION TO DISMISS ONE PARTY**

| THE BECKET FUND FOR RELIGIOUS LIBERTY | NELSON MULLINS RILEY & SCARBOROUGH LLP |
|---|---|
| Daniel H. Blomberg*<br>1124 Park West Blvd.<br>Suite 204<br>Mount Pleasant, SC 29466<br>(202) 349-7222<br>　　*Admitted *pro hac vice*<br>*Counsel for Governor Henry McMaster* | Miles E. Coleman<br>2 W. Washington St. / Fourth Floor<br>Greenville, SC 29201<br>miles.coleman@nelsonmullins.com<br>(864) 373-2352<br><br>*Counsel for Governor Henry McMaster and Director Michael Leach* |
| THE BECKET FUND FOR RELIGIOUS LIBERTY | OFFICE OF THE GOVERNOR |
| Lori H. Windham*<br>William J. Haun*<br>Nicholas R. Reaves*<br>1919 Pennsylvania Ave. NW<br>Suite 400<br>Washington, D.C. 20006<br>(202) 955-0095<br><br>　　*Admitted *pro hac vice*<br><br>*Counsel for Governor Henry McMaster* | Thomas A. Limehouse, Jr.<br>*Chief Legal Counsel*<br>Wm. Grayson Lambert<br>*Senior Legal Counsel*<br>Erica W. Shedd<br>*Deputy Legal Counsel*<br>South Carolina State House<br>1100 Gervais Street<br>Columbia, South Carolina 29201<br>(803) 734-2100<br><br>*Counsel for Governor Henry McMaster* |

(*Additional counsel listed on following page*)

(*continued*)

DAVIDSON, WREN & DEMASTERS, P.A.

    Kenneth P. Woodington
    William H. Davidson, II
    1611 Devonshire Drive, 2nd Floor
    Post Office Box 8568
    Columbia, SC 29202-8568
    (803) 806-8222

    *Counsel for Director Michael Leach*

OFFICE OF THE ATTORNEY GENERAL

    Robert D. Cook
    *South Carolina Solicitor General*
    Post Office Box 11549
    Columbia, SC 29211
    (803) 734-3970

    *Counsel for Governor Henry McMaster*

## INTRODUCTION

Defendant Henry McMaster ("Governor McMaster" or "the Governor"), in his official capacity as Governor of the State of South Carolina, and Defendant Michael Leach ("Director Leach"), in his official capacity as the State Director of the South Carolina Department of Social Services ("SCDSS") (collectively the "State Defendants"), oppose the dismissal of the United States Department of Health and Human Services, Xavier Becerra, the Administration for Children and Families, January Contreras, and Jeff Hild (collectively the "Federal Defendants").

For five reasons, Plaintiffs' Motion should be denied. *First*, Plaintiffs' proposed partial dismissal is procedurally improper. *Second*, it is egregiously belated. *Third*, it is based on a faux distinction that makes no difference and doesn't justify a partial dismissal. *Fourth*, it seeks to dismiss necessary and indispensable parties to this case. *Fifth*, the same intertwined set of facts and circumstances gave rise to the claims against both sets of defendants, and Plaintiffs' allegations rely on actions taken together by the State and Federal Defendants. If the claims against the Federal Defendants are dismissed, the Court should dismiss the case entirely.

## ARGUMENT

1. *Procedural impropriety.* Under Fed. R. Civ. P. 41(a)(2), a plaintiff may dismiss "an action . . . only by court order, on terms that the court considers proper." The Fourth Circuit and the District of South Carolina have construed Rule 41(a)(2) to apply only to the dismissal of the entire *action*, not to a partial dismissal of some *parties*: "Rule 41 provides for the dismissal of *actions*, rather than *claims*." *Skinner v. First Am. Bank of Va.*, 64 F.3d 659 (table), 1995 WL 507264, at *2 (4th Cir. 1995). In *Skinner*, the court held dismissal was improper because "[t]he expenses of discovery and preparation of a motion for summary judgment may constitute prejudice sufficient to support denial of a voluntary dismissal" and concluded "that 'denial of voluntary

3

dismissal is appropriate where summary judgment is imminent.'" *Id.* (citations omitted). The court employed similar reasoning in *Miller v. Terramite Corp.*, 114 F. App'x 536, 539–40 (4th Cir. 2004), where it affirmed the district court's denial of a Rule 41(a)(2) motion to dismiss one of several claims against sole defendant, holding that Rule 41 does not permit a court to dismiss less than all the claims and that, instead, the motion should have been brought under Rule 15. The court also noted that "[t]he motion came well after discovery had closed"—three months after the close of discovery in *Miller*—and while consideration of a summary judgment motion was underway. *Id.* at 540; *see also Beaumont v. Fed. Nat'l Mortg. Corp.*, No. 9:18-cv-3142-BHH, 2019 WL 13197015 (D.S.C. Oct. 23, 2019) (applying similar reasoning and denying a plaintiff's motion to dismiss voluntarily one of the complaint's two claims, which was asserted against both defendants). Here, Plaintiffs seek dismissal under Rule 41, but they do so long after the close of discovery and longer still after the event that supposedly forms the sole justification for the partial dismissal. Indeed, they delayed until the day before summary judgment motions were due.[1] Plaintiffs should be required to file a motion under Rule 15 if they wish to dismiss the Federal Defendants, and, regardless, should not be permitted to do so on the day before summary judgment briefing is due.

    2. *Belatedness*. The timing of Plaintiffs' Motion is particularly egregious. Not only was it filed one day before summary judgment motions were due, but it is purportedly based on an event that occurred almost one year earlier—an event that Plaintiffs have unquestionably been aware of for more than *ten months*. The sole justification offered by Plaintiffs for the partial dismissal they

---

[1] The first time Plaintiffs even raised the prospect of dismissing the Federal Defendants was one week before summary judgment motions were due, when Plaintiffs' counsel emailed counsel for the State and Federal Defendants to seek consent to a proposed stipulation of dismissal under Rule 41(a)(1)(A)(ii), without any explanation or purported justification.

seek is that the Federal Defendants have "withdrawn the HHS Waiver (ECF No. 204) and, therefore, Plaintiffs no longer wish to pursue claims against them." *See* Pls.' Mot. at 2, ECF No. 238. The withdrawal of HHS' waiver occurred on November 18, 2021—which is 363 days (just two days shy of a full year) before Plaintiffs filed their pending Motion—and Plaintiffs have indisputably been aware of it since at least January 7, 2022, when the Federal Defendants informed the Court and Plaintiffs of that fact, *see* Fed. Defs.' Notice, ECF No. 204. Plaintiffs' delay in raising the topic until the eve of summary judgment filings suggests delay and artifice not countenanced by the rules or by precedent. *See generally J.R. v. Walgreens Boots All., Inc.*, 470 F. Supp. 3d 534, 548 n.2 (D.S.C. 2020) (Norton, J.) ("In local parlance, this strategy would be called 'sandbagging.'"); *see also Skinner*, 64 F.3d 659 (table), 1995 WL 507264, at *2; *Miller*, 114 F. App'x at 539–40.

       3. *Plaintiffs' Motion is based on a distinction that makes no difference*. Even if the procedure was proper and timing was reasonable, Plaintiffs' arguments would still fail because their Motion is based on a justification that, at bottom, is but rhetorical sleight-of-hand. Plaintiffs purportedly wish to abandon their claims against the Federal Defendants because the Federal Defendants withdrew the HHS waiver—as if that withdrawal would have absolved the Federal Defendants of their purported wrongs. *See* Pls.' Mot. at 2, ECF No. 238. But if the Federal Defendants' alleged wrongdoing was granting an accommodation to South Carolina, the withdrawal of the HHS waiver wouldn't change anything. That's because the HHS waiver was duplicated, expanded, and superseded by an HHS Notice of Nonenforcement issued on November 1, 2019—a nonenforcement pledge that is still in force and of which Plaintiffs have been aware for more than three years since the Federal Defendants notified the Court and Plaintiffs of it. *See* Notice Regarding Notice of Nonenforcement (Nov. 5, 2019), ECF No. 70.  Indeed, Plaintiffs are not only

aware of it, but they have expressly argued that the HHS waiver and the Notice of Nonenforcement are two of a kind and that analysis of the Notice of Nonenforcement is necessary to the resolution of Plaintiffs' claims. *See* Joint Rule 26.04 Responses at 14 (Pls.' Summary of Claims and Defenses), ECF No. 91; Pls.' Mem. in Supp. Mot. to Compel at 16, ECF No. 107-1.[2] The withdrawal of the HHS waiver does not alter the Federal Defendants' position or South Carolina's ability to accommodate faith-based CPAs. Plaintiffs' Motion is based on a distinction that makes no difference, and "whatever doesn't make any difference, doesn't matter." *McCall v. Finley*, 362 S.E.2d 26, 28 (S.C. Ct. App. 1987) (Sanders, C.J.).

    4. *Necessary and indispensable parties*. Even ignoring the problems noted above (any one of which is an adequate, affirmable basis to deny Plaintiffs' Motion), Plaintiffs' arguments still fail because the Federal Defendants are necessary and indispensable parties. Plaintiffs' claims and requested relief cannot be adjudicated without the presence of the Federal Defendants. The same intertwined set of facts and circumstances gave rise the claims against both sets of defendants, *see* Compl. ¶¶ 3–7, 55, 60–62, 65, 70, ECF No. 1, and Plaintiffs have asserted the same claims against both sets of defendants (albeit in separate causes of action).[3] Furthermore, the allegations and claims asserted in the Complaint expressly rely on the actions taken together by the State and

---

[2] In separate litigation, the same attorneys who represent Plaintiffs in this suit filed papers alleging that the Notice of Nonenforcement is itself causing a variety of alleged harms and injuries to non-Christians, the LGBTQ community, and LGBTQ advocacy groups, *see* Comp. ¶¶ 35–36, 102, 106–08, 124–27, 136, *Facing Foster Care in Alaska et al. v. U.S. Dep't of Health & Human Servs. et al.*, No. 1:21-cv-00308 (D.D.C. Feb. 2, 2021), ECF No. 1, and have vowed to "continue to challenge the non-enforcement policy," *see* Lambda Legal Press Release (July 4, 2022), https://www.lambdalegal.org/news/us_20220705_court-removes-trump-era-rule-that-eliminated-discrimination-protections. It's curious, then, that they now purport to ignore the issue here.

[3] *Compare id*. ¶¶ 97–113 (asserting an Establishment Clause claim against State Defendants) *with* ¶¶ 114–26 (asserting an Establishment Clause claim against the Federal Defendants); *compare id*. ¶¶ 127–40 (asserting a Fourteenth Amendment Equal Protection claim against State Defendants) *with* ¶¶ 141–56 (asserting a Fifth Amendment Equal Protection claim against Federal Defendants).

Federal Defendants, and Plaintiffs explicitly argue that the State Defendants could not and would not have taken their allegedly wrongful actions but for the cooperative actions of the Federal Defendants:

- *Id*. ¶¶ 4–7 (referring repeatedly and collectively to the "Defendants" allegedly wrongful actions);
- *Id*. ¶ 65 ("DSS would not issue Miracle Hill a standard CPA license unless and until HHS granted the requested waiver.");
- *Id*. ¶ 70 ("In reliance on the HHS Waiver, DSS issued a standard CPA license to Miracle Hill. Without the HHS Waiver, Miracle Hill would not have been granted a standard CPA license to continue its foster care work.");
- *Id*. ¶ 116 ("But for the HHS Waiver, the State Defendants would not have provided Miracle Hill with a standard CPA license and authorized its continued use of religious criteria in recruiting and screening prospective foster parents."); and
- *Id*. ¶ 144 ("But for the HHS Waiver, the State Defendants would not have provided Miracle Hill with a standard CPA license and authorized its continued use of religious criteria in recruiting and screening prospective foster parents.").

*See also id*. ¶¶ 3, 4, 55, 60–62, 84, 92, 94, 101, 115, 143. Plaintiffs have vigorously pursued these claims for three years, and only now, after the close of discovery and on the eve of summary judgment, do Plaintiffs wish to dismiss the Federal Defendants and treat the State Defendants as uniquely responsible for all claims. The Court should deny that request.

Although a plaintiff may in some circumstances elect to pursue claims against fewer than all of the alleged wrongdoers, she cannot do so when the absent defendant is a necessary and indispensable party. *See*, *e.g.*, *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 431 (4th Cir. 2014) (directing dismissal of case where plaintiff failed to join necessary party, and necessary party destroyed diversity jurisdiction). While neither the Fourth Circuit nor the District of South Carolina appear to have confronted this issue in the context of a Rule 41 motion for voluntary dismissal, multiple other courts have, and these courts have applied the "maxim that Rule 41(a)(1) may not properly be used to dismiss an indispensable party." *Frank v. Trilegiant Corp.*, No. 10-5211, 2012 WL 214100, at *4–5 (E.D.N.Y. Jan. 24, 2012); *see also, e.g.*, *Edwards v. General Elec*.

*Co.*, 2011 WL 479991 (N.D. Cal. Feb. 7, 2011) (denying Rule 41(a)(2) motion because defendant was necessary and indispensable under Rule 19); *Mayes v. Fujimoto*, 181 F.R.D. 453, 456–58 (D. Haw. 1998) (denying motion for voluntary dismissal under Rule 41(a) because party was "indispensable" under Rule 19). The Tenth Circuit has similarly stated that under Rule 41, "only a party who is dispensable under Fed. R. Civ. P. 19 may be dismissed," explaining that a corporate defendant "cannot be dropped from the action because a corporation is an indispensable party to a derivative action by a shareholder." *Ravenswood Inv. Co. v. Avalon Correctional Servs.*, 651 F.3d 1219 (10th Cir. 2011).[4] For the same reasons, Rule 41(a) is the wrong method of dismissal in this case.

The federal government is a necessary and indispensable party here. A party is necessary and indispensable when "permitting this suit to continue could subject [the remaining party] to conflicting legal obligations." *Teamsters Loc. Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 918 (4th Cir. 1999); *see also Gunvor SA v. Kayablian*, 948 F.3d 214, 220 (4th Cir. 2020) (party is necessary where "adjudicating the matter" without the party could "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations" (cleaned up)). Similarly, a party is indispensable where "a judgment rendered in [the party's] absence might be prejudicial to the person or those already parties." *Cleland Const. Co. v. Balfour Beatty Const., Inc.*, 229 F.R.D. 521, 526 (D.S.C. 2005).

If the Federal Defendants are dismissed from this lawsuit, the State Defendants could be subject to conflicting legal obligations, thus making the Federal Defendants necessary and

---

[4] While this and other out-of-Circuit cases may imply that it may, in some instances in those jurisdictions, be appropriate to dismiss a *dispensable* party voluntarily from a lawsuit, they agree that (as here) a court cannot dismiss an indispensable party—at least not without dismissing the entire case.

indispensable. This is because Plaintiffs argue that neither the State nor Federal Defendants should be allowed to accommodate Miracle Hill. But the State Defendants argue that they are compelled to provide Miracle Hill with an accommodation. *See* State Defs.' Mot. for Summ. J. at 7–9, 14–23, ECF No. 242; State Defs.' Mot. for J. on the Pleadings at 13–24, ECF No. 173; Gov. McMaster's Mot. to Dismiss at 33–35, ECF No. 57.

If State Defendants prevail in their argument that they may, or even must, accommodate religious CPAs, they could be back in the same position they were in when the controversy began: accommodating religious CPAs under state law, but facing the threat of federal enforcement because the federal government deems that accommodation contrary to federal regulation. *See Keal Driveaway Co.*, 173 F.3d at 918–19 (finding a party necessary because its dismissal "could subject Keal Driveaway to the double-bind of a judgment in this case vacating the NJSSC ruling and a judgment in another case ordering that the same ruling be enforced"). To avoid that prejudice, the Federal Defendants must remain as parties, subject to this Court's determination of whether the State Defendants *and* the Federal Defendants can, or indeed must, accommodate Miracle Hill's religious exercise.

5. *Dismissal of the Federal Defendants is illogical.* Finally, Plaintiffs' Motion should be denied because there is no logical reason to keep the State Defendants but dismiss the Federal Defendants. Plaintiffs have alleged that Miracle Hill's actions are attributable to the State and Federal Defendants on the same theory: that the religious accommodation granted to Miracle Hill makes both government actors responsible for that private party's actions. Compl. ¶¶ 103–06, 116–20 (attributing Miracle Hill's actions to both the State and Federal Defendants on the same legal theory). Plaintiffs nowhere explain why the federal government is no longer responsible for Miracle Hill's actions, but the state government is. The closest they come is to claim that the

9

federal government has withdrawn a waiver granted to South Carolina that protected Miracle Hill. But that waiver was only necessary to provide Miracle Hill with federal funding, and Miracle Hill no longer receives *any* government funding. Therefore, on the same logic, the claims against the State Defendants should also be dismissed.

## CONCLUSION

For the reasons articulated above, this Court should deny Plaintiffs' Motion to voluntarily dismiss the Federal Defendants from this lawsuit.

Respectfully submitted

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: s/ Miles E. Coleman
 Miles E. Coleman
 Federal Bar No. 11594
 E-Mail: miles.coleman@nelsonmullins.com
 2 W. Washington St. / Fourth Floor
 Greenville, SC 29201
 (864) 373-2352

 *Counsel for Governor Henry McMaster and Director Michael Leach*

OFFICE OF THE GOVERNOR
 Thomas A. Limehouse, Jr.
 Fed. Bar No. 12148
 *Chief Legal Counsel*
 Wm. Grayson Lambert
 Fed. Bar No. 11761
 *Senior Legal Counsel*
 Erica W. Shedd
 Fed. Bar No. 13206
 *Deputy Legal Counsel*
 E-Mail: tlimehouse@governor.sc.gov
 E-Mail: glambert@governor.sc.gov
 E-Mail: eshedd@governor.sc.gov
 South Carolina State House
 1100 Gervais Street
 Columbia, South Carolina 29201
 (803) 734-2100

 *Counsel for Governor Henry McMaster*

OFFICE OF THE ATTORNEY GENERAL

    Robert D. Cook, South Carolina Solicitor General
    Federal Bar No. 285
    E-Mail: bcook@scag.gov
    Post Office Box 11549
    Columbia, SC 29211
    (803) 734-3970

    *Counsel for Governor Henry McMaster*

THE BECKET FUND FOR RELIGIOUS LIBERTY

    Daniel H. Blomberg*
    E-Mail: dblomberg@becketlaw.org
    1124 Park West Blvd.
    Suite 204
    Mount Pleasant, SC 29466
    (202) 349-7222

    Lori H. Windham*
    William J. Haun*
    Nicholas R. Reaves*
    E-Mail: lwindham@becketlaw.org
    E-Mail: whaun@becketlaw.org
    E-Mail: nreaves@becketlaw.org
    1919 Pennsylvania Ave. NW
    Suite 400
    Washington, D.C. 20006
    (202) 955-0095

    **admitted* pro hac vice*

    *Counsel for Governor Henry McMaster*

DAVIDSON, WREN & DEMASTERS, P.A.

    Kenneth P. Woodington, #4741
    William H. Davidson, II #425
    1611 Devonshire Drive, 2nd Floor
    Post Office Box 8568
    Columbia, SC 29202-8568
    wdavidson@dml-law.com
    kwoodington@dml-law.com
    (803) 806-8222

    *Counsel for Director Michael Leach*

November 30, 2022
Greenville, South Carolina